UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF BIRMINGHAM FIREMEN'S AND POLICEMEN'S SUPPLEMENTAL PENSION SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br> - against -<br><br>PLURALSIGHT, INC., AARON SKONNARD, and JAMES BUDGE,<br><br>      Defendants. | Case No. 1:19-cv-07563 (AKH)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE DISTRICT OF UTAH** |

Ignacio E. Salceda, *pro hac vice*
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 565-1000
isalceda@wsgr.com

Gregory L. Watts, *pro hac vice*
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104
Telephone: (206) 883-2500
Facsimile: (206) 883-2699
gwatts@wsgr.com

*Counsel for Defendants Pluralsight, Inc.,
Aaron Skonnard and James Budge*

October 18, 2019

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

ARGUMENT.....................................................................................................................2

I.      THE MOTION TO TRANSFER IS TIMELY .........................................................2

II.     THE DISTRICT OF UTAH IS A PROPER FORUM.............................................3

III.    THE INTEREST OF JUSTICE AND CONVENIENCE OF PARTIES AND
        WITNESSES STRONGLY FAVOR TRANSFER TO THE DISTRICT OF
        UTAH ......................................................................................................................4

        A.      Plaintiff's Choice of Forum Is Entitled to Little Weight in this Shareholder
                Class Action ................................................................................................4

        B.      Locus of Operative Facts Favors Transfer....................................................5

        C.      Convenience of Parties Favors Transfer.......................................................9

        D.      Convenience of Witnesses Favors Transfer.................................................10

        E.      Location of Documents Favors Transfer .....................................................11

        F.      Availability of Process Is a Non-Factor......................................................12

        G.      Familiarity with Applicable Law Is a Non-Factor......................................12

        H.      Interest of Justice Favors Transfer..............................................................12

CONCLUSION.................................................................................................................12

-i-

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. Microfield Graphics, Inc.*,
No. 00 Civ. 0629 (MBM), 2000 WL 1716340 (S.D.N.Y. Nov. 16, 2000)...............................10

*Albert Fadem Tr. v. Duke Energy Corp.*,
214 F. Supp. 2d 341 (S.D.N.Y. 2002)....................................................................................10

*In re AtheroGenics Sec. Litig.*,
No. 05 Civ. 00061 (RJH), 2006 WL 851708 (S.D.N.Y. Mar. 31, 2006)..................................9

*Big Apple Pyrotechnics & Multimedia Inc. v. Sparktacular Inc.*,
05 Civ. 9994 (KMW), 2007 WL 747807 (S.D.N.Y. Mar. 9, 2007) ........................................10

*Bondali v. Yum! Brands, Inc.*,
No. SACV 13-117-JST, 2013 U.S. Dist. LEXIS 196916 (C.D. Cal. May 1,
2013) .......................................................................................................................................7

*City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*,
No. 14-cv-3644 (VSB), 2015 WL 12659925 (S.D.N.Y. April 30, 2015).....................3, 10, 11

*City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*,
No. 13 Civ. 5158 (JSB), 2013 WL 5656086 (S.D.N.Y. Oct. 9, 2013) ..............................3, 8, 9

*In re Connetics Sec. Litig.*,
06 Civ. 11496 (SWK), 2007 WL 1522614 (S.D.N.Y. May 23, 2007) ......................................6

*Connors v. Lexington Ins. Co.*,
666 F. Supp. 434 (E.D.N.Y. 1987) ..........................................................................................3

*DiRienzo v. Phillip Servs. Corp.*,
294 F.3d 21 (2d Cir. 2002)......................................................................................................5

*Doshi v. Gen. Cable Corp.*,
No. 13 Civ. 7409 (RA), No. 13 Civ. 8634 (RA), 2014 WL 12774226
(S.D.N.Y. Feb. 5, 2014) .......................................................................................................3, 9

*Essex Crane Rental Corp. v. Vic Kirsch Constr. Co.*,
486 F. Supp. 529 (S.D.N.Y. 1980) .......................................................................................2, 3

*Fireman's Fund Ins. Co. v. Pers. Communs. Devices, LLC*,
09-cv-1349 (SHS), 2009 WL 10666098 (S.D.N.Y. July 9, 2009)............................................7

*Funke v. Life Fin. Corp.*,
No. 99 Civ. 11877 (CBM), 2003 WL 194204 (S.D.N.Y. Jan. 28, 2003) .................................7

*Garity v. Tetraphase Pharm. Inc.*,
No. 1:18-cv-06797 (ALC), 2019 WL 2314691 (S.D.N.Y. May 30, 2019) ..........................3, 7

*In re Geopharma, Inc.*,
04 Civ. 9463 (SAS), 2005 WL 1123883 (S.D.N.Y. May 11, 2005)..........................................5

*In re Glob. Cash Access Holding, Inc. Sec. Litig.*,
No. 08 Civ. 3516 (SWK), 2008 WL 4344531 (S.D.N.Y. Sept. 18, 2008) ..............................7

*Greenwood Partners v. New Frontier Media*,
No. 99 Civ. 9099, 2000 WL 278086 (S.D.N.Y. March 14, 2000)...........................................11

*In re Hanger Orthopedic Grp., Inc. Sec. Litig.*,
418 F. Supp. 2d 164 (E.D.N.Y. 2006) ...............................................................................5, 10

*Laborers Local 100 and 397 Pension Fund v. Bausch & Lomb Inc.*,
No. 06 Civ. 1942 (HB), 2006 WL 1524590 (S.D.N.Y. June 5, 2006)..............................2, 5, 6

*Micromuse, Inc. v. Aprisma Mgmt. Techs., Inc.*,
05 Civ. 0894 (SAS), 2005 WL 1241924 (S.D.N.Y. May 24, 2005).......................................11

*In re Nematron Corp. Sec. Litig.*,
30 F. Supp. 2d 397 (S.D.N.Y. 1998)................................................................................7, 10

*Parchmann v. MetLife, Inc.*,
No. 18-CV-780 (SJ), 2018 WL 5115075 (E.D.N.Y. Sept. 28, 2018)...................................4, 5

*Steck v. Santander Consumer USA Holdings Inc.*,
No. 14-CV-6942 (JPO), 2015 U.S. ............................................................................... *passim*

*In re Stillwater Mining Co. Sec. Litig.*,
No. 02 Civ. 2806 (DC), 2003 WL 21087953 (S.D.N.Y. May 12, 2003)............................9, 11

*Strougo v. Brantley Capital Corp.*,
243 F.R.D. 100 (S.D.N.Y. 2007) ..........................................................................................3

*Sunshine Cellular v. Vanguard Cellular Sys., Inc.*,
810 F. Supp. 486 (S.D.N.Y. 1992) ........................................................................................4

*Truk Int'l Fund LP v. Wehlmann*,
08 Civ. 8462 (PGG), 2009 WL 1456650 (S.D.N.Y. May 20, 2009) .......................................9

**Statutes**

15 U.S.C. § 78a.....................................................................................................................3

15 U.S.C § 78u–4(a)(3)(B) .....................................................................................................2

28 U.S.C. § 1404(a) ....................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995,
    Pub. L. 104-67, 109 Stat. 737 ("PSLRA")................................................................................2

**Other Authorities**

*New High Risk Ventures: Obligations of Underwriters, Brokers and Dealers*, SEC
    RELEASE NO. 9671, 17 CFR Parts 231, 241, 1972 WL 125474 (July 27, 1972).......................8

Defendants Pluralsight, Inc. ("Pluralsight" or "Company"), Aaron Skonnard, its Chief Executive Officer ("CEO"), and James Budge, its Chief Financial Officer ("CFO") (together, "Individual Defendants," collectively with Pluralsight, "Defendants"), respectfully submit this reply in support of their motion to transfer venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Utah, ECF No. 17.

## **INTRODUCTION**

This purported securities class action should be in the District of Utah, where the issuer is based, not the Southern District of New York. Pluralsight is headquartered near Salt Lake City, Utah. Mr. Skonnard and Mr. Budge, the Individual Defendants, work at headquarters with the rest of the Company's management. The Company has no New York office, and only ten of the Company's nearly 1,500 employees are located in New York. Plaintiff concedes that all but one of the alleged false or misleading statements—in press releases, SEC filings and earnings calls— were made or issued from the Company's Utah headquarters. Not only were the vast majority of the challenged statements made or issued in Utah, but the information those statements allegedly misrepresented or hid from investors related to Pluralsight's business metrics and activities centered in Utah regarding the calculation and creation of revenue, billings results, and projections, and the hiring and training of the Company's salesforce.

The Opposition, ECF No. 22, tries to create the illusion of a New York-centric lawsuit by identifying every possible connection to New York, no matter how insignificant or hypothetical, and ignoring actual connections to Utah, no matter how important and numerous. Indeed, the Opposition bases much of its argument not on the Complaint Plaintiff actually filed, but on an amended complaint Plaintiff or an appointed lead plaintiff might possibly file. Basically, Plaintiff argues that New York is a more appropriate forum than Utah because Pluralsight is listed on

NASDAQ, worked with New York-based underwriters on its secondary public offering ("SPO"), and attended some investor conferences there.  These facts do not pull the "center of gravity" away from Utah.  Again, if this were enough to establish New York as a more appropriate forum, "the SDNY would have even more business and every plaintiff that sued a NYSE [or NASDAQ] firm could nestle in right here at 500 Pearl Street."  *Laborers Local 100 and 397 Pension Fund v. Bausch & Lomb Inc.*, No. 06 Civ. 1942 (HB), 2006 WL 1524590, at *4 (S.D.N.Y. June 5, 2006).  The Court should grant the motion and transfer the action to the District of Utah.

## ARGUMENT

### I.    THE MOTION TO TRANSFER IS TIMELY

Without citation to pertinent authority, the Opposition suggests that a motion to transfer cannot be made or granted until a lead plaintiff determination is made.  Opp. 1–4, 11.  This is simply not true.[1]  Mem. 12 n.7.  As this Court has stated: "No hard and fast rule should preclude the making of [a Section 1404(a)] motion at any time that does not operate to delay unduly the disposition of the action.  Indeed, since [Section] 1404(a) looks to sound judicial administration, a court is not foreclosed from ordering a transfer whenever the factors enumerated in the statute are made to appear, whether this is at an early stage of the action or at a much later point of time."[2]

---

[1] The presumptive lead plaintiffs in this action, the candidate group with the largest financial interest in class recovery, are the Indiana Public Retirement System ("INPRS") and Public School Teachers' Pension and Retirement Fund of Chicago ("CTPF").  In their moving papers for appointment as lead plaintiffs filed on October 15, 2019, INPRS and CTPF indicated that they would respond to Defendants' motion to transfer.  ECF No. 27 at 1 n.1.  On October 17, 2019, counsel for Defendants contacted INPRS and CTPF's counsel, requesting their position with respect to the motion to transfer.  Counsel for INPRS and CTPF indicated that their clients oppose transfer to the District of Utah.

[2] Plaintiff cites the lead plaintiff provisions of the PSLRA, Opp. 1–2, but those provisions are silent as to transfer.  Interestingly, the PSLRA does specify that lead plaintiff determinations should be deferred until after cases have been consolidated, 15 U.S.C § 78u–4(a)(3)(B), suggesting, if anything, a concern that cases be consolidated in the right place before a lead plaintiff is appointed.

*Essex Crane Rental Corp. v. Vic Kirsch Constr. Co.*, 486 F. Supp. 529, 535 (S.D.N.Y. 1980). Indeed, there are myriad examples of this Court leaving lead plaintiff determinations to the transferee court. *See, e.g.*, *Garity v. Tetraphase Pharm. Inc.*, No. 1:18-cv-06797 (ALC), 2019 WL 2314691, at *5 (S.D.N.Y. May 30, 2019) ("leav[ing] [] determination" to transferee court); *Steck v. Santander Consumer USA Holdings Inc.*, No. 14-CV-6942 (JPO), 2015 U.S. WL 3767445, at *10 (S.D.N.Y. June 17, 2015) (same); *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, No. 14-cv-3644 (VSB), 2015 WL 12659925, at *2 (S.D.N.Y. April 30, 2015) (denying lead plaintiff motion "without prejudice to renewal"); *Doshi v. Gen. Cable Corp.*, No. 13 Civ. 7409 (RA), No. 13 Civ. 8634 (RA), 2014 WL 12774226, at *1 (S.D.N.Y. Feb. 5, 2014) ("refrain[ing] from ruling" on lead plaintiff motion); *City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*, No. 13 Civ. 5158 (JSB), 2013 WL 5656086, at *2 (S.D.N.Y. Oct. 9, 2013) ("entrust[ing] [] resolution to the transferee district"). It makes sense that such motions should be decided by the court "ultimately responsible for the litigation." *Connors v. Lexington Ins. Co.*, 666 F. Supp. 434, 456 (E.D.N.Y. 1987).

Plaintiff suggests in the Opposition that the Parties' joint adjournment request supports the view that the motion to transfer venue is premature, Opp. 1, 3, but this Court has previously rejected this argument: "[Such a ] stipulation . . . does not even impliedly address a potential motion to transfer venue, nor could it possibly be construed so as to limit this Court's authority to decide such a motion." *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 103 n.2 (S.D.N.Y. 2007).

## II. THE DISTRICT OF UTAH IS A PROPER FORUM

The first question on a Section 1404(a) motion is whether the action could have been brought in the transferee court. Mem. 4–5. The Opposition does not dispute, nor could it, that the District of Utah is a proper forum under 15 U.S.C. § 78a, so the first question is satisfied.

III.    **THE INTEREST OF JUSTICE AND CONVENIENCE OF PARTIES AND WITNESSES STRONGLY FAVOR TRANSFER TO THE DISTRICT OF UTAH**

The second question on a Section 1404(a) motion is whether the interest of justice and convenience of parties and witnesses favors transfer. Here, the District of Utah is "a more appropriate venue." Opp. 1.

A.    **Plaintiff's Choice of Forum Is Entitled to Little Weight in this Shareholder Class Action**

A plaintiff's choice of forum is entitled to deference, but the degree of deference varies with the circumstances. Mem. 5–6. As explained in the opening Memorandum, a plaintiff's choice of forum is entitled to greater deference when brought close to home, and lesser deference when brought away from it. *Id*. (citing case law). Moreover, a plaintiff's choice is also entitled to "less" or "little" weight when the plaintiff purports to represent a widely dispersed, nationwide class. *Id*. (citation omitted). Here, the deference accorded to Plaintiff's choice of forum is diminished for both of these reasons. *Id*. Plaintiff is not a resident of New York; it is a resident of Alabama. Mem. 6 n.5; Opp. 8. None of the lead plaintiff candidates are residents of New York. *See* ECF No. 23 (California, Oklahoma, Alabama); ECF No. 26 (Indiana, Illinois); ECF No. 29 (Pennsylvania); ECF No. 33 (Puerto Rico, Florida); ECF No. 35 (Florida); ECF No. 40 (unknown). Indeed, the presumptive lead plaintiffs, the candidate group with the largest financial interest in class recovery, are the Indiana Public Retirement System and Public School Teachers' Pension and Retirement Fund of Chicago, residents of Indiana and Illinois, respectively. ECF No. 26. All proposed lead plaintiffs seek to represent a nationwide class of Pluralsight shareholders.

The Opposition cites *Sunshine Cellular v. Vanguard Cellular Sys., Inc.*, 810 F. Supp. 486, 500 (S.D.N.Y. 1992) (Opp. 5), for the proposition that Plaintiff's choice of forum is still entitled to "significant weight," but that case was not a class action and is therefore inapposite. The Opposition also cites *Parchmann v. MetLife, Inc.*, No. 18-CV-780 (SJ), 2018 WL 5115075, at *4

-4-

(E.D.N.Y. Sept. 28, 2018) (Opp. 3–4), but that case merely confirms Defendants' argument that a plaintiff's choice of forum is entitled to "diminished" deference when the plaintiff represents a class.[3]  Opp. 4–5.

>    **B.**    **Locus of Operative Facts Favors Transfer**

The Opposition identifies every possible connection to New York, no matter how insignificant or hypothetical, and ignores actual connections to Utah, no matter how significant and numerous.  The result is the Complaint as seen in a funhouse mirror, with small features greatly exaggerated (New York), and large ones shrinking to nothing at all (Utah).  The locus of operative facts in this case is Pluralsight's Utah corporate headquarters, where Mr. Skonnard, Mr. Budge and over 880 other employees live and work (Mem. 2), where corporate statements in press releases, SEC filings, and quarterly earnings calls are made (Mem. 2, 6, 7), and where the Company is managed.  Mem. 6–8.

All but one of the statements challenged in the Complaint as false and misleading—in press releases, SEC filings and earnings calls—were made or issued from Pluralsight headquarters in Utah.  Compl. ¶¶ 28–48.  This alone establishes Utah as the "center of gravity" in this securities lawsuit, in which the locus is usually the corporate headquarters from which the allegedly false statements (or at least most of them) issued.  *Bausch & Lomb*, 2006 WL 1524590, at *5; *see also*

---

[3] Plaintiff also relies on *In re Geopharma, Inc.*, 04 Civ. 9463 (SAS), 2005 WL 1123883 (S.D.N.Y. May 11, 2005) (Opp. 8), but that case just held that there was no *per se* rule requiring that securities cases be transferred to the district where the defendant company is headquartered. *See In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006) (summarizing *Geopharma*).  Further, Plaintiff relies on *DiRienzo v. Phillip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002) (Opp. 5), but that decision involved a motion to dismiss for *forum non conveniens*, not a Section 1404(a) motion: dismissal in favor of litigation in a foreign country is vastly different than transfer to another district court within the United States.

*In re Connetics Sec. Litig.*, 06 Civ. 11496 (SWK), 2007 WL 1522614, at \*10 (S.D.N.Y. May 23, 2007) (same); Mem. 6, 7 (citing authority).

Not only were the vast majority of the challenged statements made or issued in Utah, but the information those statements allegedly misrepresented or hid from investors was about Pluralsight's business metrics and activities centered in Utah. The Complaint alleges that Defendants "failed to disclose that Pluralsight was experiencing substantial delays in hiring and properly training the salesforce necessary to meet its lofty billing projections." Compl. ¶ 3. The entire Pluralsight executive team live and work in Utah. Hansen Decl., ¶¶ 8, 9 (ECF No. 19). The current heads of finance, sales, investor relations, and human resources all work out of the Company's Utah offices. *Id.*, ¶ 9. The operational results on which the Complaint is based are calculated at the Utah headquarters. *Id.*, ¶ 11. The revenue and billing projections the Complaint alleges were premised on sales and training objectives Defendants knew the Company had not achieved were generated at the Utah headquarters. *Id.*, ¶ 12. The Company's sales enablement team, responsible for salesforce training, operates out of the Utah headquarters. *Id.*, ¶ 13.

Dodging these facts and the inconvenient truths that Pluralsight has no New York office and only ten of its nearly 1,500 employees are in New York, *id*. ¶ 7, Plaintiff argues against transfer because Pluralsight's stock is listed on NASDAQ and the Company conducted a secondary public offering ("SPO") with the assistance of underwriters with offices in New York. Plaintiff does not (and cannot) deny that this is true for nearly every publicly traded company in the United States, which means, according to Plaintiff, every federal securities class action belongs in the Southern District of New York. *See Bausch & Lomb*, 2006 WL 1524590, at \*4. No such rule exists.

Plaintiff also fundamentally exaggerates the importance of the SPO to the overall Complaint. The Complaint's purported false and misleading statements are laid out over twenty-

two paragraphs, Compl. ¶¶ 28–48; only two of those relate to the SPO, ¶¶ 43–44. Indeed, the entire Complaint devotes what looks to be only six paragraphs to the SPO. *Id*. ¶¶ 2–3, 8, 43–44, 50. Contrary to the suggestion that the SPO was central to the alleged fraud, the SPO takes place very late in the purported class period. Defendants have shown that the "bulk" of the relevant action is in Utah, not New York. Mem. 8 (citation omitted). A public offering is not enough to pull the center of gravity away from Utah. *See Steck*, 2015 WL 3767445, at *6–7 (transferring to Texas despite New York IPO because most of the work was done at corporate headquarters); *Garity*, 2019 WL 2314691, at *4 (transferring to Massachusetts because "acts in New York relating to a secondary offering" were insufficient to shift center of gravity); *In re Glob. Cash Access Holding, Inc. Sec. Litig.*, No. 08 Civ. 3516 (SWK), 2008 WL 4344531, at *6 (S.D.N.Y. Sept. 18, 2008) (transferring to Nevada despite fact that certain aspects of the IPO and secondary offering occurred in New York); *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998) (transferring to Michigan despite fact that purchase and sale occurred in New York).[4]

Seeking to enhance this lawsuit's New York flavor, the Opposition focuses not on the Complaint Plaintiff actually filed, but on the one Plaintiff or an appointed lead plaintiff might file in the future. Opp. 2, 3, 6, 8. But Plaintiff cannot oppose a motion to transfer with speculation about a hypothetical new pleading. *See Fireman's Fund Ins. Co. v. Pers. Communs. Devices, LLC*, 09-cv-1349 (SHS), 2009 WL 10666098, at *4 n.2 (S.D.N.Y. July 9, 2009), *11 n.2 ("the focus of a court's inquiry in deciding a motion to transfer under § 1404(a) is on the action as filed") (citation omitted) (emphasis added); *Bondali v. Yum! Brands, Inc.*, No. SACV 13-117-JST (JPRx), 2013

---

[4] *Funke v. Life Fin. Corp.*, No. 99 Civ. 11877 (CBM), 2003 WL 194204 (S.D.N.Y. Jan. 28, 2003) (Opp. 7), is not to the contrary because, in that case, unlike here, the plaintiffs filed a Section 11 case that focused entirely on statements in the registration statement and prospectus. *Id*. at *1.

U.S. Dist. LEXIS 196916, at \*13 (C.D. Cal. May 1, 2013) ("[T]he fact that FT *might* file a consolidated complaint that *might* include allegations involving Taco Bell is not reason to defer deciding this motion[.]").   Regardless, even the hypothetical amended complaint Plaintiff describes would not sufficiently alter the analysis to preclude transfer to the District of Utah.

Plaintiff argues that an amended complaint would add the underwriters of Pluralsight's SPO as defendants.  Opp. 2.  But the co-lead underwriters of the SPO were J.P. Morgan and Morgan Stanley, and Defendants have shown that the actual bankers working on the SPO were in these firms' Northern California offices.  Hansen Decl. ¶ 16.  Whatever the address on the registration statement, much of the underwriters' actual work on the SPO was done outside of New York.  *See Kohl's*, 2013 WL 5656086, at \*2 ("[Defendant]'s outside auditor . . . is headquartered in New York, but its auditing and accounting work in connection with this matter was conducted primarily from its Milwaukee office, with assistance from its Minneapolis and Chicago offices.").  As to the non-lead underwriters Plaintiff claims will be added as defendants, they had a more limited role than the two lead underwriters.[5]  Regardless, adding the underwriters will not change the alleged false or misleading statements in the Complaint, generally, or the SPO documents, specifically.  While it will add a potential underwriters' due diligence defense to the case, that defense will "arise only if liability is established," suggesting it is not a core part of the case.  *Steck*, 2015 WL 3767445, at \*4.

---

[5] "The participating underwriter's reasonable investigation may not be as heavy a burden as that of the managing underwriter's, and . . . the participating underwriter need not duplicate the investigation made by the manager." *New High Risk Ventures: Obligations of Underwriters, Brokers and Dealers*, SEC RELEASE NO. 9671, 17 CFR Parts 231, 241, 1972 WL 125474, at \*6 (July 27, 1972).  "[T]he public looks more to the managing underwriter than to the participant for protection." *Id.* at \*6 n.27. Moreover, the fact that the underwriting agreement is governed by New York law has no bearing on whether New York is a more appropriate forum.  This is not an action on the underwriting agreement and it is not even mentioned in the Complaint.  Compl. ¶¶ 1–79.

Plaintiff argues that an amended complaint would add Pluralsight's directors as defendants, including three who are allegedly located in New York. Opp. 2. But Plaintiff argues these directors' alleged liability would be premised on their signing of the SPO registration statement and 10-K filed with the SEC. *Id*. Neither document *per se* constitutes a New York activity, and Plaintiff makes no argument that Pluralsight's board meetings were in New York.

Finally, Plaintiff argues that an amended complaint would include allegations that Pluralsight attended several investor conferences in New York during the class period, as part of a larger schedule that included visits to San Francisco, Boston, and London. Opp. 5 & n.4. Alleging that a company went on a road show or presented at an investor conference does not shift the locus of operative facts from Utah.[6] *See Doshi*, 2014 WL 12774226, at *2 (transferring from New York despite fact that company "attended and hosted investor conferences in New York"); *Truk Int'l Fund LP v. Wehlmann*, 08 Civ. 8462 (PGG), 2009 WL 1456650, at *5 (S.D.N.Y. May 20, 2009) (despite "secondary offering [that] occurred in New York" and "road show and [] industry conference" there); *In re AtheroGenics Sec. Litig.*, No. 05 Civ. 00061 (RJH), 2006 WL 851708, at *3–4 (S.D.N.Y. Mar. 31, 2006) (despite sale and purchase in New York and CEO appearances there); *In re Stillwater Mining Co. Sec. Litig.*, No. 02 Civ. 2806 (DC), 2003 WL 21087953, at *4 (S.D.N.Y. May 12, 2003) (despite important institutional investor meeting there).

### C.      Convenience of Parties Favors Transfer

Obviously, the convenience of Defendants favors transfer to Utah. Mem. 8, 9. The corporate defendant, Pluralsight, is headquartered near Salt Lake City, and Mr. Skonnard and Mr.

---

[6] Plaintiff devotes a few sentences to the argument that it might want to talk to unidentified analysts from New York, Opp. 2, 6, but this Court has rejected such "threadbare" allegations. *See Kohl's*, 2013 WL 5656086, at *1 (granting transfer and dismissing allegations that plaintiff might need to call "certain stock analysts" who "work[ed] for New York firms").

Budge work at headquarters and reside nearby.  Hansen Decl., ¶ 8.  Plaintiff is not located in New York; it is located in Alabama.  Mem. 6 & n.5, 9.  The lead plaintiff candidates are not located in New York, either.  And the presumptive lead plaintiffs are located in Indiana and Illinois.  ECF No. 26.  Where, as here, a plaintiff is not located in either of the proposed fora, "its convenience is not a factor in determining whether [one forum] or [another] would be [] more convenient."[7] *Dell*, 2015 WL 12659925, at *5; *see also In re Hanger Orthopedic Grp., Inc., Sec. Litig.*, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006) (same).  The Opposition conveniently ignores this.  In any case, "trials in securities class actions focus almost entirely on the defendants' conduct," meaning a lead plaintiff's actions will be far less relevant to the case.  *Nematron*, 30 F. Supp. 2d at 402.

The Opposition suggests that the Court need not consider the relative convenience of the parties because it "effectively cancels out," Opp. 8 (citing *Big Apple Pyrotechnics & Multimedia Inc. v. Sparktacular Inc.*, 05 Civ. 9994 (KMW), 2007 WL 747807, at *8 (S.D.N.Y. Mar. 9, 2007)), but that case involved two plaintiffs who brought suit where they lived and not on behalf of a purported nationwide class.

### D.    Convenience of Witnesses Favors Transfer

Convenience of the witnesses is also a critical factor that favors Defendants.  As explained above, the locus of operative events was Pluralsight corporate headquarters outside Salt Lake City, Utah.  For similar reasons, most of the relevant witnesses will be found there.  In a securities fraud case, the key issues revolve around the "accuracy of [] statements and defendants' state of mind," *Adair v. Microfield Graphics, Inc.*, No. 00 Civ. 0629 (MBM), 2000 WL 1716340, at *2 (S.D.N.Y.

---

[7] Plaintiff relies on *Albert Fadem Tr. v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 344–345 (S.D.N.Y. 2002) (Opp. 8, 10), but the court in that case relied on unusual criteria not found in the traditional Section 1404(a) test, such as the total number of lawsuits filed in the respective fora, the favorability of case law in the respective fora, and the parties' choice of counsel.

Nov. 16, 2000), and the key witnesses are the officers and employees who participated in drafting and disseminating the allegedly false statements, *see Dell*, 2015 WL 12659925, at *4; *Steck*, 2015 WL 3767445, at *3; *Stillwater*, 2003 WL 21087953, at *3–4. Here, the vast majority of those people work at Pluralsight's headquarters in Utah. Hansen Decl., ¶¶ 8–11, 13. As to non-party witnesses, the Company's outside auditor during the purported class period, PricewaterhouseCoopers, worked out of its Salt Lake City office with help from Northern California and Colorado, *id*., ¶ 15, and the lead underwriters of the Company's SPO, Morgan Stanley and J.P. Morgan, worked largely out of their Northern California offices in Menlo Park and San Francisco, although New York bankers worked on it as well. *Id*., ¶ 16.[8]

Again, the Opposition tries its best to pile on insignificant details of peripheral connections to New York. But Defendants do not need to show that every witness will be found in Utah, only that "more of the important [ones] reside" there. *Steck*, 2015 WL 3767445, at *5 (where "the largest concentration of material witnesses will be"); *Greenwood Partners v. New Frontier Media*, No. 99 Civ. 9099, 2000 WL 278086, at *3, 5–6 (S.D.N.Y. March 14, 2000) (balancing the "many" and the "few"). The more important ones here reside in Utah.

### E.    Location of Documents Favors Transfer

Although not the most important factor in the analysis, Opp. 7–8, the location of documents in Utah still weighs in favor of transfer, Mem. 11 (citing case law).

---

[8] While the court in *Micromuse, Inc. v. Aprisma Mgmt. Techs., Inc.*, 05 Civ. 0894 (SAS), 2005 WL 1241924, at *4 (S.D.N.Y. May 24, 2005) (Opp. 7 n.8), found that it might be easier for witnesses from Ohio, Texas, Nebraska, Missouri, Wisconsin, Florida and Colorado to travel to New York rather than New Hampshire, it does not follow that it would be easier for witnesses from Northern California or Colorado to travel to New York City rather than Salt Lake City. Indeed, the notion is absurd.

### F.    Availability of Process Is a Non-Factor

Neither party is aware of any non-party witnesses in New York that would be unwilling to testify if called.  Mem. 11; Opp. 9.  Thus, availability of process is a non-factor.

### G.    Familiarity with Applicable Law Is a Non-Factor

Familiarity with applicable law neither favors nor disfavors transfer as federal courts are assumed to be equally adept at applying federal law, Mem. 11 (citing case law), as Plaintiff concedes, Opp. 9–10.

### H.    Interest of Justice Favors Transfer

Transfer to the District of Utah is in the interest of justice.  This is a putative securities fraud case against an issuer headquartered outside Salt Lake City.  The two Individual Defendants, Mr. Skonnard and Mr. Budge, work and reside in Utah.  All but one of the statements challenged in the Complaint issued from Company headquarters in Utah.  Securities fraud cases typically revolve around what the Individual Defendants knew at the time the statements were made—thus far more of the relevant information will be found in Utah than New York.  Mem. 11, 12 (citing authority).  This case is in its infancy and transfer will not cause undue delay.  While every federal court is very busy these days, the District of Utah's caseload is approximately two-thirds of the caseload in the Southern District of New York.  Mem. 12.

### CONCLUSION

This case should be transferred to the District of Utah.  The locus of operative facts clearly is in Utah.  Pluralsight has no office and only ten employees in New York.  While New York defendants might be added in an amended complaint, these defendants would be peripheral.  The listing of Pluralsight's stock on NASDAQ and an offering in New York are facts present in virtually every securities class action lawsuit, and do not justify denying the motion to transfer.

-12-

Dated: October 18, 2019

Respectfully Submitted,

WILSON SONSINI GOODRICH & ROSATI, P.C.

/s/ Ignacio E. Salceda
Ignacio E. Salceda, *pro hac vice*
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 565-1000
isalceda@wsgr.com

Gregory L. Watts, *pro hac vice*
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104
Telephone: (206) 883-2500
Facsimile: (206) 883-2699
gwatts@wsgr.com

*Counsel for Defendants Pluralsight, Inc.,
Aaron Skonnard and James Budge*

-13-