Gregory L. Watts (# 17782)
gwatts@wsgr.com
Stephanie L. Jensen (*pro hac vice*)
sjensen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104
Telephone: (206) 883-2500

Ignacio E. Salceda (*pro hac vice*)
isalceda@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA  94304
Telephone: (650) 493-9300

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM and PUBLIC SCHOOL TEACHERS' PENSION AND RETIREMENT FUND OF CHICAGO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PLURALSIGHT, INC.; AARON SKONNARD; and JAMES BUDGE,<br><br>Defendants. | **Case No. 1:19-CV-00128-DBB-DAO**<br><br>**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT**<br><br>Honorable David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

Defendants Pluralsight, Inc. ("Pluralsight" or the "Company"), Aaron Skonnard, and James Budge (together with Pluralsight, "Defendants") hereby answer the Second Amended Complaint ("Complaint"), ECF No. 173, filed in the above-captioned action on November 4, 2022 by Lead Plaintiffs the Indiana Public Retirement System ("INPRS") and the Public School Teachers' Pension and Retirement Fund of Chicago ("CTPF," together with INPRS, "Plaintiffs").

To the extent the paragraphs of the Complaint are grouped under headings and subheadings, Defendants respond generally that the partial and/or pejorative phrases used in the headings do not constitute factual averments, and thus the headings are not included herein. To the extent a response is deemed necessary, Defendants deny each and every heading and sub-heading in the Complaint and incorporate by reference this response in each paragraph below as if fully set forth therein.

Except as explicitly admitted herein, Defendants deny any and all allegations set forth in the Complaint. Defendants further answer the numbered paragraphs in the Complaint as follows.

1.      Defendants admit that Plaintiffs purport to bring claims against Defendants under Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"). Defendants admit that Plaintiffs purport to bring these claims on behalf of a putative class of persons who purchased Pluralsight Class A common stock between January 16, 2019 and July 31, 2019, inclusive. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 1.

2.      Defendants admit that Pluralsight describes itself as an enterprise software company that offers a cloud-based technology skills platform, and that it sells subscriptions to its platform to businesses and individuals. Defendants admit that Pluralsight's platform provides the

1

Company's customers access to a library of thousands of technology skills courses, skill and role assessments, learning paths designed to help users master particular subject areas, and business analytics tools to enable business customers to track and address the technology skills of their employees. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 2.

3. Defendants deny the allegations in paragraph 3 to the extent that Plaintiffs attempt to characterize Pluralsight as unsuccessful or experiencing negative growth. Defendants admit that Pluralsight did not achieve profitability during the Class Period and that the net losses referenced in footnote 1 are accurate. Defendants deny the allegations in paragraph 3 to the extent that Plaintiffs attempt to characterize the Company as "unable to attract investors by operating profitably" and to the extent that Plaintiffs attempt to characterize billings as the only metric that could be used to measure Pluralsight's performance. Defendants admit that billings were one metric used by Pluralsight to measure its growth and that Pluralsight achieved eight straight quarters of billings growth leading up to the second quarter of 2019. Defendants deny the allegations in paragraph 3 to the extent that Plaintiffs attempt to characterize the Company as having "told investors that this level of billings growth was built into the Company's long-term business model." Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 3 and footnote 1.

4. Defendants admit that the Company has represented that billings were at least partially dependent on the capacity, experience, efficiency, and productivity of Pluralsight's sales force. Defendants admit that the Company filed certain documents with the SEC prior to and throughout the Class Period. Defendants admit that the Company has stated that 85% of its billings

were derived from business customers.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 4.

5.    Defendants lack sufficient knowledge or information to form a belief as to the interests of securities analysts and, on that basis, deny the allegations contained in the first sentence of paragraph 5.  Defendants admit that prior to the Class Period, Defendants made certain positive statements regarding, inter alia, the growth, productivity, and effectiveness of Pluralsight's sales force.  Defendants deny the allegations in paragraph 5 to the extent that Plaintiffs attempt to characterize the continued growth of Pluralsight's sales force as the sole reason Pluralsight achieved year-over-year billings growth and to the extent that Plaintiffs attempt to characterize the Company as having given a firm timeline for when a sales representative achieves the ability to meet sales quota.  Defendants lack knowledge or information sufficient to form a belief as to what investors found to be relevant and, on that basis, deny the allegations in the final sentence of paragraph 5.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 5.

6.    Defendants deny the allegations in the first sentence of paragraph 6, except to the extent that the allegations contain legal conclusions, to which no response is required.  Defendants admit that on January 16, 2019, while speaking at the Needham Growth Conference, Mr. Budge estimated the number of Pluralsight's sales force to be "about 250" representatives.  Defendants deny that Plaintiffs' selective quotation is complete or presented with full context and Defendants deny Plaintiffs' characterization of this statement.  The phrase "the start of 2019" is vague and Defendants therefore are unable to answer the allegations contained in the final sentence of

paragraph 6.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 6.

7.       Defendants deny the allegations contained in the first sentence of paragraph 7, except to the extent that they state a legal conclusion to which no response is required.  Defendants admit that on February 13, 2019, the Company held an earnings call during which it discussed, inter alia, Pluralsight's sales force.  Defendants deny the allegations in paragraph 7 to the extent that Plaintiffs attempt to characterize Mr. Budge as speaking of the sales force "in glowing terms." Defendants admit that Mr. Skonnard stated that "our teams continue to execute with strong focus and commitment to customer success as demonstrated by our dollar-based net retention rate reaching 128%."  Defendants deny that Plaintiffs' selective quotation is complete or presented with full context and deny Plaintiffs' characterization of Mr. Skonnard's statements.  Defendants deny the allegations in paragraph 7 to the extent that Plaintiffs attempt to characterize Mr. Skonnard's remarks as referring exclusively to Pluralsight's sales force.  Defendants admit that on May 1, 2019, the Company held an earnings call during which Mr. Budge stated that "we like where we are with our sales reps," "love our growth there," and "[w]e have a plan to grow… which continues on the really outstanding progression we've had over the last few years where we've massively expanded our sales force."  Defendants admit that Mr. Budge used the quoted language, but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context.  Defendants deny the allegations in paragraph 7 to the extent that Plaintiffs attempt to characterize Mr. Budge as referring to the "pace" of hiring being dictated by the need to hire more sales representatives.  The final sentence of paragraph 7 states a legal conclusion to which no

response is required.   Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 7.

8.      Defendants deny the allegations contained in the first and second sentences of paragraph 8, except to the extent that they state legal conclusions to which no response is required. Defendants admit that Pluralsight's Class A common stock closed at $19.01 on December 24, 2018.  Defendants admit that Mr. Skonnard entered into a 10b5-1 trading plan on September 14, 2018.  Defendants admit that Mr. Budge entered into a 10b5-1 trading plan on November 28, 2018. Defendants admit that Mr. DiBartolomeo entered into a 10b5-1 trading plan on December 14, 2018.  Defendants deny the allegations in paragraph 8 to the extent that Plaintiffs attempt to characterize Mr. Skonnard, Mr. Budge, and Mr. DiBartolomeo as having sold "massive quantities of their Pluralsight shares" during the Class Period or having sold "significant percentages of their respective holdings."  Defendants deny Plaintiffs' characterization of these sales as "suspicious[,]" that they "represented significant percentages of their respective holdings," or that they occurred within a concentrated period."   Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 8.

9.      Defendants deny the allegations in paragraph 9, except to the extent that the allegations contain legal conclusions and/or statements alleging mental state or scienter, to which no response is required.  Defendants admit that Pluralsight's Class A common stock closed at $19.01 on December 24, 2018, and at $29.99 on February 15, 2019.  Defendants deny the allegations in paragraph 9 to the extent that Plaintiffs characterize the alleged "magnitude" of Mr. Skonnard's or Mr. Budge's stock sales, their alleged motivations for the sales, and any alleged connection between the challenged statements and the stock sales.  Defendants admit that Mr.

Skonnard sold $1.47 million in Pluralsight shares on January 28, 2019, at an average price of $29.36 per share.  Defendants admit that Mr. Budge sold $9.99 million in Pluralsight shares between February 19 and February 22, 2019, at an average price of $29.44 per share.  Defendants admit that Mr. DiBartolomeo sold $7.93 million in Pluralsight shares on February 15 and February 22, 2019, at an average price of $29.81 per share.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 9 and footnote 2.

10.     Defendants admit that Pluralsight offered shares in its Initial Public Offering at $15 per share and that, on December 24, 2018, Pluralsight's share price closed at $19.01 per share.  Defendants admit that Pluralsight held a Secondary Public Offering ("SPO") on March 7, 2019,[1] through which $456 million was raised.  Defendants deny the remaining allegations in the first sentence of paragraph 10, except to the extent that the allegations contain legal conclusions, to which no response is required.  Defendants admit that Pluralsight filed SPO Offering Documents with the SEC on March 4 through March 7, 2019, and sold 13,558,464 shares pursuant to the SPO at an offering price of $29.25 per share.  Defendants admit that the underwriters of this offering were granted an option to purchase up to 2,033,770 additional shares from "selling shareholders." Defendants admit that, through the SPO, Mr. Skonnard sold $13.63 million in shares; Mr. Budge sold $5.04 million in shares; and Mr. DiBartolomeo sold $1.7 million in shares.  Defendants deny the remaining allegations in sentence four of paragraph 10, except to the extent that the allegations

---

[1] The registration statement and preliminary prospectus was filed with the SEC on Form S-1 on March 4, 2019.  ¶ 71.  On March 7, 2019, the Company filed a free writing prospectus and a final prospectus.  ¶ 72.  Plaintiffs' Complaint defines "Offering Documents" to include the prospectus and registration statement, collectively; for purposes of this pleading, we adopt Plaintiffs' defined term and use the date of March 7, 2019 for all challenged statements from the "Offering Documents."

contain legal conclusions, to which no response is required.  Defendants admit that the phrases "significantly expanded[,]" "productivity[,]" and "effectiveness" appear in the Offering Documents in reference to Pluralsight's sales force, but Defendants deny that Plaintiffs' selective quotations from the Offering Documents are complete or presented with full context and Defendants deny Plaintiffs' characterization of the information presented in those documents. Defendants deny the allegations in paragraph 10 to the extent that Plaintiffs imply that, as of January 2019, there were too few sales representatives to sustain billings growth in the coming quarters.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 10 and footnote 3.

11.     Defendants deny the allegations in paragraph 11 to the extent that Plaintiffs attempt to characterize Defendants as failing to disclose material information or making false statements. Defendants admit that Mr. Skonnard, Mr. Budge, and Mr. DiBartolomeo sold $22.2, $15.1, and $9.7 million in stock, respectively, during the seven-month Class Period.  Defendants deny the remaining allegations in paragraph 11, except to the extent that the allegations contain legal conclusions, to which no response is required.

12.     Defendants admit that on July 26, 2019, Mr. Skonnard sold $2.57 million in Pluralsight shares at an average price of $30.47 per share.  Defendants deny the remaining allegations in the first sentence of paragraph 12, except to the extent that the allegations contain legal conclusions, to which no response is required.  Defendants admit that on July 31, 2019, the Company held a second quarter earnings call and that during that call Mr. Budge used the phrases "ramped capacity," "first and second quarter," and "expressed itself with the outcome you saw in the second quarter."  Defendants deny that Plaintiffs' selective quotations from the second quarter

earnings call are complete or presented with full context, and deny Plaintiffs' characterization of the information presented by Mr. Budge during that call. Defendants deny the allegations in paragraph 12 to the extent that Plaintiffs attempt to characterize any issues with the Company's sales representatives as the sole cause of a decline in Pluralsight's billings growth. Defendants admit that Pluralsight's billings grew by 48% in the first quarter of 2019 and by another 27% in the second quarter of 2019. Defendants deny the allegations in paragraph 12 to the extent that Plaintiffs attempt to characterize this earnings growth as a "collapse." Defendants admit that Mr. Budge discussed the Company's need to bring on board more sales representatives to meet the Company's high-growth goals. Defendants admit that Mr. Budge used the phrases "end of last year," "needed to bring on board," "dozens of reps," "so they would ramp and become fully productive in the second quarter," and "a few months behind." Defendants admit that Mr. Skonnard stated that there "was not enough capacity in the system to sustain our high-growth expectations as we entered the year [2019]," and Mr. Skonnard used the phrase "annual sales ramp capacity plan." Defendants deny that Plaintiffs' selective quotations are complete or presented with full context and Defendants deny Plaintiffs' characterization of the information presented by Mr. Budge and Mr. Skonnard during the second quarter earnings call. Defendants deny the allegations in paragraph 12 to the extent that Plaintiffs attempt to characterize Mr. Budge's statement that the Company "needed to bring on board" sales representatives to refer only to hiring representatives and not to the processes of assigning, training, and supporting sales representatives. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 12.

13. Defendants lack knowledge or information sufficient to form a belief as to the emotional reaction of analysts and investors and, on that basis, deny the allegations in the first

8

sentence of paragraph 13. Defendants admit that the Company held an earnings call on May 1, 2019, and that the transcript of that call contains the quoted language, but deny that Plaintiffs' selective quotations are complete or presented with full context. Defendants deny Plaintiffs' characterization of Mr. Budge's motivations. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 13.

14. Defendants admit that on May 2, 2019, SunTrust issued a report titled "Where Did That Come From?" and that the report contains the quoted language, but deny that Plaintiffs' selective quotation is accurate, complete, or provides full context. Defendants admit that J.P. Morgan published a report on August 1, 2019, entitled "2Q19, Reaction Overdone" and that the report contains the quoted language, including the partial sentence: "management pointed out that it saw it was behind on sales hiring coming into this year…" Defendants deny the allegations in paragraph 14 to the extent that Plaintiffs attempt to mischaracterize the report by failing to quote the end of the quoted sentence in which the analyst admits that Pluralsight's management believed that a high level of execution within the sales force could maintain high levels of billings growth. Defendants deny that Plaintiffs' selective quotation is accurate, complete, or provides full context. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 14.

15. Defendants admit that on September 4, 2019, *Seeking Alpha* published an article titled "Pluralsight: Nobody Wants to Hear About Sales Execution Issues" and that the article contains the quoted language, but deny that Plaintiffs' selective quotation is accurate, complete, or provides full context. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 15.

16.     Defendants admit that on September 4, 2019, *Seeking Alpha* published an article entitled "Pluralsight: Good Problems To Have, But Needs to Address A Major Concern," and that the article contained the quoted language.  Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context and deny Plaintiffs' characterization of the article. Defendants deny the allegations in paragraph 16 to the extent that Plaintiffs characterize the article as implying that the Company's officers engaged in deceit or were evasive during the earnings call.  Defendants aver that the word "deceit" does not appear in the article, nor does the word "evasive."  Defendants aver that the article does say that "Pluralsight had a good quarter," and that "[b]y any standard, Pluralsight is definitely underpriced at the moment."  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 16.

17.     Defendants lack knowledge or information sufficient to form a belief as to the feelings of securities analysts and, on that basis, deny the allegations in the first sentence of paragraph 17.  Defendants admit that Pluralsight's shares traded as high as $30.69 during the Class Period and closed at $18.56 on August 1, 2019.  Defendants deny the allegations in paragraph 17 to the extent that Plaintiffs attempt to characterize the movement of Pluralsight's stock as a "collapse."  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 17, except to the extent the allegations contain legal conclusions, to which no response is required.

18.     Defendants admit that Plaintiffs purport to bring these claims as a class action with causes of action purportedly arising under Sections 10(b), 20A, and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t-1, and 78t(a)) and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5).  Except as

explicitly admitted herein, Defendants deny the allegations contained in paragraph 18, except to the extent that paragraph 18 states legal conclusions to which no response is required.

19.     Defendants admit paragraph 19, except to the extent that paragraph 19 states legal conclusions to which no response is required.

20.     Defendants admit that Pluralsight is headquartered and conducts business in this District and had agents or transacted or conducted business in this District.  Defendants deny the remaining allegations in paragraph 20, except to the extent that paragraph 20 states legal conclusions to which no response is required.

21.     Defendants admit that they, directly or indirectly, used the means and instrumentalities of interstate commerce during their course of business.  Defendants deny the remaining allegations in paragraph 21, except to the extent that paragraph 21 states legal conclusions to which no response is required.

22.     Defendants admit that Morgan Stanley & Co. LLC was a lead underwriter of the SPO.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 22 relating to Plaintiffs' stock ownership and, on that basis, deny the allegations contained in paragraph 22.

23.     Defendants admit that KeyBanc Capital Markets, Inc. was one of the underwriters of the SPO.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations relating to Plaintiffs' stock ownership and, on that basis, deny the allegations contained in paragraph 23.

24.     Defendants deny the allegations in paragraph 24, except to the extent that paragraph 24 states legal conclusions to which no response is required.

25. Defendants admit that Pluralsight is an enterprise software company that offers a cloud-based technology skills platform and is incorporated in Delaware. Defendants deny that Pluralsight is headquartered in Farmington, Utah, and aver that Pluralsight is headquartered in Draper, Utah.

26. Defendants admit that Pluralsight had three authorized classes of common stock outstanding during the Class Period: Class A, Class B, and Class C, and that Pluralsight's Class A common stock traded on NASDAQ under the symbol "PS." Defendants admit that Class A common stock and Class B common stock carried one vote per share, while Class C common stock carried ten votes per share and that Mr. Skonnard held 100% of Class C common stock, which vested him with voting control of the Company. Defendants admit that on January 31, 2019, the Company filed an annual report on Form 10-K for 2018 with the SEC, and that according to this report, the Company had 137,488,519 shares of Pluralsight common stock outstanding, consisting of 66,639,109 shares of Class A common stock, 56,206,481 shares of Class B common stock, and 14,642,929 shares of Class C common stock. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 26 and footnote 4.

27. Defendants admit that Mr. Skonnard co-founded Pluralsight in 2004, has served as its Chief Executive Officer since October 2009, and served as Chairman of the Board during the Class Period. Defendants admit that the clause "a day-to-day basis, he works closely with the entire executive team in different capacities, including recruiting … marketing, sales" appeared on the Pluralsight website during the Class Period. Defendants deny that Plaintiffs' selective quotations from the Pluralsight website are accurate, complete, or provide full context and deny

12

Plaintiffs' characterization of the information presented on the website. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 27.

28.    Defendants admit that during the Class Period, Mr. Skonnard signed Pluralsight's filings with the SEC, including the Registration Statement, the annual report on Form 10-K for 2018, and the certification as part of the annual report. Defendants admit that the certification that Mr. Skonnard signed contains the quoted language. Defendants admit that Mr. Skonnard, as a representative of Pluralsight, communicated with investors, including securities analysts, both before and during the Class Period and that those communications sometimes included discussions about the Company's performance and the importance of the Company's sales force. Defendants deny the allegations in paragraph 28 to the extent that Plaintiffs attempt to characterize the two quotes from Mr. Skonnard as being related in time, space, or subject matter. Defendants aver that on August 29, 2018, during an analyst meeting at Pluralsight Live, Mr. Skonnard stated that he believed that the company would be "able to keep attracting all the talent we need" to the Utah office. Defendants aver that Mr. Skonnard used the quoted language only to specifically distinguish recruiting persons into the Utah office as opposed to the growth that was also occurring around the world (which Mr. Skonnard addressed immediately prior to discussing Utah). Defendants further aver that it was not until May 1, 2019, nine months later, that Mr. Skonnard remarked on an earnings call that "[r]evenue and billings growth continue to be strong with both up over 40% year over year." Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 28.

29.    Defendants admit that the total estimated value of Mr. Skonnard's compensation, including the estimated value of stock and option awards, in 2018 was $12,951,975, and in 2019

was $6,476,664.  Defendants object to the allegations in paragraph 29 to the extent that Plaintiffs include stock and option awards within the description of Mr. Skonnard's compensation package in the first sentence of paragraph 29, and then attempt to distinguish stock and option awards from the total value of Mr. Skonnard's compensation package in the last sentence.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 29.

30.     Defendants admit that through the SPO, Mr. Skonnard sold 480,618 shares of Class A common stock at $29.25 per share ($28.37 per share net of the underwriters' discount), for net proceeds of $13,636,334.21.  Defendants admit that during the Class Period, Mr. Skonnard sold $22,187,840.52 in Pluralsight Class A common stock.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 30.

31.     Defendants admit that Mr. Budge served as Pluralsight's Chief Financial Officer since April 2017 and through the Class Period.  Defendants admit that the quoted language appeared on Pluralsight's website at some point in the past.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 31.

32.     Defendants admit that during the Class Period, Mr. Budge signed Pluralsight's filings with the SEC, including the Registration Statement, the annual report on Form 10-K for 2018, and the certification as part of the annual report.  Defendants admit that the certification that Mr. Budge signed contains the quoted language.  Defendants admit that Mr. Budge, as a representative of Pluralsight, communicated with investors, including securities analysts, both before and during the Class Period and that those communications sometimes included discussions about the Company's performance and the importance of the Company's sales force.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 32.

33.     Defendants admit paragraph 33.

34.     Defendants admit that through the SPO, Mr. Budge sold 177,854 shares of Class A common stock at $29.25 per share ($28.37 per share net of the underwriters' discount), for net proceeds of $5,046,162.62.  Defendants admit that during the Class Period, Mr. Budge sold $15,102,980.54 in Pluralsight Class A common stock.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 34.

35.     Defendants admit that Mr. Skonnard and Mr. Budge, because of their positions within the Company, possessed the authority to change the contents of Pluralsight's reports filed with the SEC.  Defendants deny the allegations in paragraph 35 to the extent that Plaintiffs attempt to characterize Mr. Skonnard and Mr. Budge as exercising personal oversight over the details and contents of all of Pluralsight's reports filed with the SEC, reports to investors, press releases, or presentations to securities analysts, money and portfolio managers, and institutional investors. Defendants deny the allegations in the final sentence of paragraph 35, except to the extent that the allegations contain legal conclusions, to which no response is required.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 35.

36.     Defendants admit paragraph 36, except to the extent that paragraph 36 states legal conclusions to which no response is required.

37.     Defendants admit that it describes itself as an enterprise software company that offers a cloud-based technology skills platform and that the Pluralsight platform provides the Company's customers access to a library of thousands of technology skills courses, skill and role assessments, learning paths designed to help users master particular subject areas, and business analytics tools to enable business customers to track and address the technology skills of their

15

employees.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 37.

38.    Defendants admit that on May 17, 2018, Pluralsight conducted an initial public offering (the "IPO") issuing 23.8 million shares at $15 per share, and that through the IPO the Company raised $332.1 million in net proceeds, which increased Pluralsight's capitalization to approximately $2 billion.  Defendants admit that a Forbes.com article purported that this valuation exceeded the Company's last private valuation of about $1 billion.  Defendants admit that the proceeds from the IPO were used to purchase LLC units in Pluralsight's holding company, Pluralsight Holdings, which the holding company then used to repay the offering's expenses, pay down Pluralsight's debts, for working capital, and for other general corporate purposes. Defendants admit that Forbes.com published a statement that included the quoted language, but Defendants deny that Plaintiffs' selective quotation is accurate, complete, or provides full context. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 38 and footnote 5.

39.    Defendants admit that Pluralsight went public in May 2018, that the Company has not achieved profitability, and that the Company discussed billings as one metric for measuring the growth of the Company.  Defendants deny the allegations in paragraph 39 to the extent that Plaintiffs characterize promoting the sales force as the only way that the Company "garnered investor interest."  Defendants deny the allegations in paragraph 39 to the extent that Plaintiffs attempt to characterize billings as the only metric that could be used, or was used by analysts, to measure Pluralsight's performance.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 39.

16

40. Defendants admit that the Company has, from time to time, discussed "billings" as "total revenue plus the change in deferred revenue in the period." Defendants admit that Pluralsight generates most of its revenue through software subscriptions, and that subscriptions within the Business-to-Business ("B2B") category were more significant than those to individuals. Defendants admit that within the B2B segment, the "commercial" segment was defined during the Class Period as encompassing businesses with less than 4,000 users and the "enterprise" segment was defined during the Class Period as encompassing businesses with more than 4,000 users. Defendants admit that the SPO Offering Documents indicate that at the start of the Class Period more than 340 of the 2018 Fortune 500 were Pluralsight customers. Defendants admit that, from time to time during the Class Period, the Company discussed the importance of enterprise customers. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 40.

41. Defendants admit paragraph 41.

42. Defendants admit that billings in any given quarter represented amounts invoiced to customers in the form of subscription renewals, sales to existing customers, and sales to new customers. Defendants lack sufficient knowledge or information to form a belief as to what third parties would consider to be a "crucial indicator of future revenue" and, on that basis, deny the allegations regarding revenue versus billings in the second sentence of paragraph 42. Defendants admit that the Company discussed billings with analysts and investors as one metric reflecting the growth of the Company. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 42.

43. It is unclear to whom Plaintiffs attribute the two phrases quoted in the first sentence of paragraph 43 and, as a result, Defendants deny the allegations in that sentence. Defendants admit that they discussed the Company's year-over-year billings growth with investors and attributed that growth, at least in part, to the capacity, experience, efficiency, and/or productivity of the sales force. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in the final sentence of paragraph 43 regarding what was or was not clear as to the link between the sales force and billings and, on that basis, deny the allegations. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 43.

44. Defendants admit paragraph 44.

45. Defendants deny the allegations in paragraph 45 to the extent that Plaintiffs attempt to characterize expanding the sales force and increasing its productivity as the only method by which the Company could increase billings. Defendants deny the allegations in paragraph 45 to the extent that they characterize Defendants as having "promised" a certain amount of growth to investors in each financial period. Defendants admit that Pluralsight worked to expand its sales force and increase its productivity. Defendants admit that having more fully ramped sales representatives may have resulted in increased billings. Defendants deny the allegations in paragraph 45 to the extent they are Plaintiffs' characterizations. Defendants admit that, from time to time, they indicated that the productivity of Pluralsight's sales representatives contributed to the growth of the Company. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 45.

46. Defendants deny the allegations in paragraph 46 to the extent that Plaintiffs characterize Defendants as "fastidiously" tracking the growth and ramping of the sales force and

to the extent that Plaintiffs characterize billings as a "much-touted" metric.  Defendants admit that the Company used pipelines to track the progression of deals from potential customer to closing, and that these pipelines provided some information regarding when some deals were expected to close.  Defendants deny the allegations in paragraph 46 to the extent that Plaintiffs attempt to characterize information from the pipeline as sufficient to allow Defendants to accurately track current and future billings growth.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 46.

47.     Defendants admit that on August 1, 2018, the Company hosted an earnings call and announced that in the second quarter of 2018, Pluralsight had achieved total billings growth of 42% and B2B billings growth of 52%, which represented the Company's fifth consecutive quarter of greater than 50% growth.  Defendants deny the allegations in paragraph 47 to the extent that Plaintiffs attempt to characterize Defendants as having attributed billings growth only, or even primarily, to expansion of the Company's sales force.  Defendants aver that during the August 2018 earnings call, Mr. Budge discussed several factors responsible for billings growth including: "[o]ur land and expand strategy…the number of customers with annual billings greater than $100,000 increased by 84%"; an increase in the percentage of total billings coming from B2B; and an increase in the "dollar-based net retention" for B2B customers.  Defendants aver that Mr. Skonnard noted that billings growth was driven by "billings from our top 25 customers for the last 12 months increased by approximately 13 times from the billings we generated from those same customers in the year of their initial purchase."  Defendants aver that on the earnings call, neither Mr. Budge nor Mr. Skonnard attributed billings growth to the size of the Company's sales force.  Defendants admit that on the earnings call, Mr. Budge responded to a question from Brian Lee

Essex at Morgan Stanley regarding the efficiency and maturation of the sales force, and that in response to that question Mr. Budge used the words "heavy," "sales and marketing," "efficiencies," and "tenured sales reps." Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context and deny Plaintiffs' characterization of Mr. Budge's answer. Defendants deny the allegations in paragraph 47 to the extent that Plaintiffs attempt to connect the efficiency and maturation of the sales force directly with billings growth. Defendants aver that the word "billings" does not appear in Mr. Essex's question, rather Mr. Essex referenced margin and revenue. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 47.

48.     Defendants admit that in August 2018, the Company held an annual conference, "Pluralsight Live," at which an investor and analyst meeting was offered. Defendants admit that Mr. Budge spoke at this meeting and that a transcript of the meeting reflects that he used the phrases "all of the support functions that wrapped around," "critical," "built [] out through 2017," and "really great amount of focus." Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context, and deny Plaintiffs' characterization of Mr. Budge's remarks. Defendants deny paragraph 48 to the extent that Plaintiffs attempt to characterize Mr. Budge's remarks as supporting their theory that the Company tied billings growth to the size of the sales force. Defendants aver that in the quoted language, Mr. Budge was attributing billings growth in part to the Company's ability to generate billings from existing customers, not simply to an increase in the number of sales representatives. Defendants aver that Mr. Budge specifically noted that billings growth could be attributed to improving "all of the support functions," building

a CSM organization, and increasing net retention.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 48, including footnote 6.

49.    Defendants admit that at Pluralsight Live, Mr. Skonnard stated that the Company had access to talent everywhere, was proactive in bringing talent to Utah, and would continue to attract talent as needed.  Defendants deny the allegations in paragraph 49 to the extent that Plaintiffs attempt to characterize Mr. Skonnard's remarks regarding recruitment to Utah as being offered in the context of a discussion regarding billings growth.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 49, except to the extent that the allegations contain legal conclusions and/or statements alleging mental state and scienter, to which no response is required.

50.    Defendants deny the allegations in the first sentence of paragraph 50 to the extent that Plaintiffs assert that "[t]hese statements regarding successful investments in the sales force" (referring to the statements made by Mr. Skonnard and Mr. Budge at the Pluralsight Live Conference and discussed in paragraphs 48 & 49) "had the desired effect" (referring to the conclusions drawn by J.P. Morgan in their report "2Q18: Companies Can Learn From PS First Quarter Post IPO").  Defendants aver that the comments made by management at Pluralsight Live could not have had *any* effect on the J.P. Morgan report because the J.P. Morgan report was published on August 2, 2018, and Defendants offered the quoted remarks at the Pluralsight Live Conference on August 29, 2018.  Defendants admit that J.P. Morgan published a report on August 2, 2018, entitled "2Q18: Companies Can Learn From PS First Quarter Past IPO" in which the quoted language appeared.  Defendants deny that Plaintiffs' selective quotation is accurate, complete, or provides full context.  Defendants admit that SunTrust published a report on August

29, 2018, entitled "Lots of Positive Takeaways at Pluralsight Live; Strong Upside Potential" in which the quoted language appeared. Defendants deny that Plaintiffs' selective quotation is accurate, complete, or provides full context. Defendants deny the allegations in paragraph 50 to the extent that Plaintiffs attempt to characterize Defendants as having "trumpeted" claims that increasing the sales force was the primary factor needed to maintain billings growth. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 50, except to the extent that the allegations contain legal conclusions and/or statements alleging mental state and scienter, to which no response is required.

51. Defendants deny the allegations in paragraph 51 to the extent that Plaintiffs attempt to characterize Defendants as having "assured" investors that they had "clear" knowledge of exactly what was required to achieve billings growth quarter after quarter. Defendants admit that on the August 1, 2018 earnings call, Mr. Budge used the phrases "targets," "doubles and triples," "home runs," and "5 to 6 months," to address the progression of deals through the pipeline, but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context. Defendants deny Plaintiffs' allegations in paragraph 51 to the extent that Plaintiffs attempt to characterize Pluralsight as having the ability to reliably approximate future revenue and billings. Defendants aver that Mr. Budge also stated that there are deals "that close as quickly as a month," which would preclude visibility six months in advance. Defendants deny the allegations in the final sentence of paragraph 51 to the extent that Plaintiffs attempt to characterize the Company as "closely monitoring" the composition of the billings pipeline. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 51.

22

52.     Defendants lack sufficient knowledge or information to form a belief as to what was clear to investors and, on that basis, deny the allegations in the first sentence of paragraph 52. Defendants admit that Mr. Budge addressed attendees at the Pluralsight Live conference in August 2018 and that the quoted language was included in his remarks. Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context, and Defendants deny Plaintiffs' characterization of Mr. Budge's remarks. Defendants deny the allegations in paragraph 52 to the extent that Plaintiffs attempt to characterize the Company's measurement or tracking of the productivity of sales representatives. Defendants lack sufficient knowledge or information to form a belief as to what investors may have believed and, on that basis, deny the allegations contained in the final sentence of paragraph 52. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 52.

53.     Defendants admit that on October 24, 2018, Pluralsight held a conference call discussing the Company's Q3 2018 results and that the transcript of this call reflects the Company reporting year-over-year billings growth of 44% and B2B year-over-year billings growth of 53%. Defendants admit that the transcript reflects that Mr. Skonnard stated that this represented the "sixth consecutive quarter of greater than 50% growth in B2B billings." Defendants deny the allegations in paragraph 53 to the extent that Plaintiffs attempt to characterize Mr. Skonnard as having "trumpeted" his remarks. Defendants admit that Mr. Skonnard used the phrase "strong focus and commitment." Defendants deny, however, that this remark was directed at the Company's sales team or their role in billings growth. Rather, Defendants aver that Mr. Skonnard stated that the Company's teams had a "strong focus and commitment to customer success, as demonstrated by our dollar-based net retention rate reaching 128%." Defendants deny that

23

Plaintiffs' selective quotations are accurate, complete, or provide full context. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 53.

54. Defendants admit that the transcript of this call reflects that an analyst on the call asked, "where are you in the ramping of the productivity of sales reps? And where are you in terms of your hiring plans?" Defendants admit that the transcript of this call reflects that Mr. Budge answered this question and that his answer contained the word "efficiencies," and the phrase "economies of scale." Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context, and Defendants deny Plaintiffs' characterization of Mr. Budge's answer. Defendants admit that Mr. Budge concluded with the quoted language, but deny that Plaintiffs' selective quotations are accurate, complete, or provide full context. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 54.

55. Defendants admit that the transcript of the Q3 2018 Earnings Call reflects that Mr. Skonnard used the words "experience" and "capability" and the phrase "above the power line immediately." Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context, and Defendants deny Plaintiffs' characterization of Mr. Skonnard's remarks. Defendants deny the allegations in paragraph 55 to the extent that Plaintiffs attempt to characterize Mr. Skonnard's remarks as pertaining to the sales team. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 55.

56. Defendants lack sufficient knowledge or information to form a belief as to what analysts thought about Mr. Budge and Mr. Skonnard's remarks and, on that basis, deny the allegations contained in the first sentence of paragraph 56. Defendants admit that on October 24, 2018, J.P. Morgan published a report entitled "3Q18: B2B Delivers Big Beat and Raise," and that

24

the report contained the quoted language.  Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 56.

57.    Defendants admit that Plaintiffs' putative class period begins on January 16, 2019, and that on January 16, 2019, Mr. Budge addressed attendees at the Needham & Company, LLC Growth Conference.  Defendants admit that a transcript from the conference reflects that Mr. Budge discussed Pluralsight's sales force and infrastructure and used the phrases "killing it," "great infrastructure around them," "didn't have to keep growing," and "improved our retention massively and we're now at scale."  Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context, and Defendants deny Plaintiffs' characterization of Mr. Budge's remarks.  Defendants deny the allegations in paragraph 57 to the extent that Plaintiffs attempt to characterize Mr. Budge's remarks as implying that the Company did not need to continue growing their sales force or sales enablement team.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 57.

58.    Defendants admit that the transcript of the conference reflects that Mr. Budge used the phrases "about 80 quota-bearing" and "enough … quota-bearing reps on the ground" as well as the word "about" followed by the number "250."  Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context.  Defendants deny the allegations in paragraph 58 to the extent that Plaintiffs attempt to characterize Mr. Budge's remarks as comments that were intended to provide an exact count of the number of salespersons currently employed at Pluralsight or a promise as to how many salespersons would be hired in the future.  Defendants aver that Mr. Budge did not use the words "carefully," "calculated," or "plan" in his

25

remarks.  Defendants deny the allegations in paragraph 58 to the extent that Plaintiffs attempt to characterize Mr. Budge as having withheld information from investors.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 58.

59.    Defendants admit that the transcript of the conference reflects that Mr. Budge discussed the Company's infrastructure including the growth of the infrastructure supporting the sales team and that he used the quoted language.  Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context.  Defendants deny the allegations in paragraph 59 to the extent that Plaintiffs attempt to characterize Mr. Budge's statements as implying that the Company was done hiring sales representatives or improving the infrastructure supporting the sales team.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 59.

60.    Defendants admit that on February 13, 2019, Pluralsight issued a press release announcing financial results for the fourth quarter and for the year ending December 31, 2018, and that this press release was filed with the SEC as an exhibit to the Company's Form 8-K. Defendants admit that this release stated that Pluralsight's fourth quarter billings had grown 42% year-over-year, its fourth quarter B2B billings had grown 51% year-over-year, and its full year billings had grown 43% year-over-year.  Defendants admit that Mr. Skonnard stated that this was the Company's "seventh consecutive quarter of greater than 50% growth in B2B billings."  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 60.

61.    Defendants admit that on February 13, 2019, Pluralsight held an earnings call and that during that call Mr. Budge discussed the sales force.  Defendants admit that the transcript of that call reflects that Mr. Skonnard stated "our teams continue to execute with strong focus and

26

commitment to customer success as demonstrated by our dollar-based retention rate reaching 128%." Defendants deny that Plaintiffs' selective quotation is accurate, complete, or provides full context. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 61, except to the extent that the allegations contain legal conclusions, to which no response is required.

62. Defendants admit that on February 13, 2019, SunTrust published a report entitled "Billings Momentum Continues in 4Q" and that the report reflects that SunTrust maintained a "buy" rating on Pluralsight with a price target of $40. Defendants admit that the SunTrust report included the phrases "growth investments" and "driving top-line growth acceleration," but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context. Defendants aver that the full sentence from the SunTrust report provides needed context: "Market receptivity to Pluralsight and growth investments are driving top-line growth acceleration." Defendants admit that on February 14, 2019, Bank of America raised its target price for Pluralsight stock from $32 to $35. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 62.

63. Defendants admit that on February 21, 2019, Pluralsight filed a Form 10-K with the SEC for the year ended December 31, 2018, and that this form was signed by Mr. Budge and Mr. Skonnard. Defendants admit footnote 7. Defendants admit that the image in paragraph 63 purports to show that net billings in 2018 increased 43% year-over-year from billings in 2017 (from $205.80 million to $293.58 million) and that 85% of 2018 billings were from "business customers." Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 63.

64.     Defendants admit that in the Form 10-K, Pluralsight acknowledged that business customers will be a "significant source of future revenue growth and a key factor affecting our long-term performance," and that, among other metrics, the Company used "business customers, billings, and certain related key business metrics to help us evaluate our business, identify trends affecting our business, formulate business plans, and make strategic decisions." Defendants deny the allegations in paragraph 64 to the extent that Plaintiffs attempt to characterize the Form 10-K. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 64.

65.     Defendants admit that on February 27, 2019, *Seeking Alpha* published an article entitled "Pluralsight: The Sight Of All Those Beat And Raise Quarters," and that the article contained the quoted language. Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 65.

66.     Defendants admit that Pluralsight's stock traded at $19.01 per share on December 24, 2018, and at $29.65 per share on February 20, 2019. Defendants lack sufficient knowledge or information to form a belief as to what caused the rise in Pluralsight's stock price and, on that basis, deny the allegations contained in the first sentence of paragraph 66. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 66.

67.     Defendants admit that from January 7 through January 9, 2019, Mr. Skonnard sold 74,600 shares of Pluralsight Class A common stock at an average price per share of $26.06, for total proceeds of $1,944,041.19; and that on January 28, 2019, Mr. Skonnard sold 50,000 shares of Pluralsight Class A common stock at an average price per share of $29.36, for total proceeds of $1,468,000.08. Defendants aver that each of these transactions was made according to Mr.

28

Skonnard's pre-determined 10b5-1 trading plan.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 67.

68.    Defendants admit that on February 15, 2019, Mr. DiBartolomeo exercised 255,720 options to purchase 255,720 shares of Pluralsight Class A common stock and then sold that stock in two tranches: 254,920 shares at an average price per share of $30.1258, and 800 shares an average price per share of $30.87, for total proceeds of $7,704,364.94.  Defendants aver that each of these transactions was made according to Mr. DiBartolomeo's pre-determined 10b5-1 trading plan.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 68.

69.    Defendants admit that on February 19 and February 20, 2019, Mr. Budge exercised 333,091 options to purchase 333,091 shares of Pluralsight Class A common stock and then sold that stock in three tranches: 199,400 shares at an average price per share of $29.2674; 133,091 shares at an average price per share of $29.6968; and 600 shares an average price per share of $30, for total proceeds of $9,806,296.37.  Defendants aver that the average sell price for the tranche of 133,091 was $29.6968 per share, not $29.67 per share.  Defendants aver that each of these transactions was made according to Mr. Budge's pre-determined 10b5-1 trading plan.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 69.

70.    Defendants admit that on February 22, 2019, Mr. Budge sold 6,206 shares of Pluralsight Class A common stock at an average price per share of $29.66, for total proceeds of $184,072.44.  Defendants aver that these shares were sold to cover Mr. Budge's tax liability in connection with the vesting of restricted stock units.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 70.

29

71.     Defendants admit that on March 4, 2019, Pluralsight filed with the SEC a registration statement and preliminary prospectus on Form S-1 for the SPO of 13,558,464 shares of Class A common stock; that this Form was signed by Mr. Skonnard and Mr. Budge; and that the SPO allowed Mr. Skonnard, Mr. Budge, Mr. DiBartolomeo, and other Company insiders to sell some of their shares pursuant to SEC regulations.  Defendants admit footnote 8.  Defendants admit that on September 21, 2018, Pluralsight filed a draft registration statement for a secondary offering and that the Company chose not to issue a secondary offering at that time.  Defendants deny the allegations in footnote 9 to the extent that Plaintiffs attempt to characterize the reasons why the Company chose not to pursue a secondary offering in 2018.  Defendants admit that the Company announced that the proceeds of the SPO would accrue to the selling stockholders. Defendants admit footnote 10.   Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 71 and accompanying footnotes.

72.     Defendants admit that on March 7, 2019, Pluralsight filed with the SEC a free writing prospectus (dated March 6) that listed the offering price for the SPO at $29.25, and that this share price was approximately 95% higher than the $15 share price of Pluralsight's initial public offering.  Defendants admit that the prospectus listed a trade date of March 7, 2019, and a settlement date of March 11, 2019.  Defendants further admit that the quoted language appeared in the prospectus, but deny that Plaintiffs' selective quotations are accurate, complete, or provide full context.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 72.

73.     Defendants admit that the Offering Documents reflected the fact that billings from business customers constituted 85% of Pluralsight's billings in 2018, which represented a 50%

increase year-over-year from 2017 to 2018. Defendants deny the allegations in paragraph 73 to the extent that Plaintiffs attempt to characterize this information as being "driven home" by the Company or given a disproportionate amount of weight in the Offering Documents. Defendants admit that the image in paragraph 73 purports to show that billings from business customers had grown at over 50% year-over-year in 2017 and 2018. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 73.

74.     Defendants admit that the SPO grossed approximately $456 million in proceeds. Defendants deny Plaintiffs' characterization of these proceeds as flowing to "Company insiders and related parties." Defendants admit that Mr. Skonnard sold 480,618 shares as part of the SPO for total proceeds of $13,626,334.20 and that Mr. Budge sold 177,854 shares as part of the SPO for total proceeds of $5,046,162.62. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 74.

75.     Defendants admit that Pluralsight's second financial quarter of 2019 began on April 1, 2019. Defendants lack sufficient knowledge or information to form a belief as to what analysts believed regarding Defendants' statements about the Company's sales force and, on that basis, deny the allegations contained in the second sentence of paragraph 75. Defendants admit that on April 11, 2019, SunTrust published a report entitled "List of Upside Drivers Just Got Bigger With Google Partnership; Reiterate Buy" in which SunTrust retained its $40 price target for Pluralsight. Defendants admit that the quoted language appeared in the SunTrust report, but deny that Plaintiffs' selective quotations are accurate, complete, or provide full context. Defendants deny the allegations in paragraph 75 to the extent that Plaintiffs attempt to highlight expanded sales capacity as a driver of revenue growth while excluding the other two factors mentioned by

31

SunTrust as driving revenue growth. Defendants aver that the first half of the first quoted sentence provides important context. The full sentence reads: "In addition to new products and enhancements to existing solutions, the company has also benefited from significantly expanded sales capacity." Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 75.

76.    Defendants admit that the SunTrust report recommended Pluralsight "as a core holding for software investors," but Defendants deny that Plaintiffs' selective quotation is accurate, complete, or provides full context. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 76.

77.    Defendants admit that on May 1, 2019, SunTrust published a report entitled "Customer Conversation Reflects Well on Key Growth Engine, B2B Segment; Reiterate Buy," in which SunTrust retained its $40 price target for Pluralsight. Defendants admit that the quoted language appeared in the SunTrust report, but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context. Defendants deny the allegations in paragraph 77 to the extent that Plaintiffs attempt to characterize the SunTrust report as connecting "aggressive growth investments" with sustaining 30%-plus revenue growth. Defendants aver that the two quotes are found in separate paragraphs within the article. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 77.

78.    Defendants admit that on May 1, 2019, Pluralsight announced its earnings for the first quarter of 2019, which ended on March 31, 2019. Defendants deny the allegations in paragraph 78 to the extent that Plaintiffs attempt to imply that the Company's earnings release was in any way related, in timing or otherwise, to SunTrust's article. Defendants admit that on the

32

Company's Form 10-Q, signed by Mr. Skonnard and Mr. Budge, and filed as an exhibit to Form 8-K, the Company listed total billings growth of 41% year-over-year and B2B billings growth of 48% year-over-year. Defendants admit that the Form 10-Q also stated that 86% of the Company's overall billings had come from B2B billings, and that the image in paragraph 78 purports to be an excerpt from the Form 10-Q. Defendants deny the allegations in paragraph 78 to the extent that they are Plaintiffs' characterizations. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 78.

79. Defendants lack sufficient knowledge or information to form a belief as to what analysts absorbed and, on that basis, deny the allegations contained in the first sentence of paragraph 79. Defendants admit that on May 1, 2019, J.P. Morgan published a report entitled "1Q19: Customer Additions and 128% Net Retention Highlight the Quarter," and that in that report, J.P. Morgan raised its price target for Pluralsight from $40 to $44. Defendants admit that on May 2, 2019, SunTrust published a report entitled "Reports 1Q19; Higher Growth Theme Intact; Strategic Acquisition; Reiterate Buy," in which it maintained its price target for Pluralsight at $40. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 79.

80. Defendants admit that on May 1, 2019, Pluralsight held an earnings call during which Mr. Skonnard and Mr. Budge spoke. Defendants admit that the transcript of that call reflects that Mr. Budge used the quoted language, but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 80.

81.     Defendants admit that the transcript for the call reflects that Mr. Budge did not state that the Company was behind in any plans for the hiring or ramping of sales representatives. Defendants deny the allegations in paragraph 81 to the extent that Plaintiffs characterize the analysts' questions or Mr. Budge's responses.  Defendants admit that the transcript reflects that SunTrust analyst Terrell Tilman asked Mr. Budge to "talk about the retention of existing sales reps," and asked Mr. Budge "where are you or how are you doing in terms of the hiring to your targeted sales headcount by the end of the year?"  Defendants admit that the transcript reflects that Mr. Budge responded, in part, that "we like where we are with our sales reps."  Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context of Mr. Tilman's questions or Mr. Budge's responses.  Defendants deny the allegations in paragraph 81 to the extent that Plaintiffs attempt to characterize Mr. Budge's statements.  Defendants aver that Mr. Budge discussed difficulties in retaining salespersons saying that the Company would prefer retention "to be higher and the churn to be lower, particularly with our sales reps."  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 81.

82.     Defendants aver that Plaintiffs are using the same quoted language multiple times and that this is the same quoted language that was discussed in paragraph 80.  Defendants deny the allegations in paragraph 82 to the extent that Plaintiffs attempt to characterize Pluralsight's pace of hiring.  As in Defendant's answer to paragraph 80, Defendants deny the allegations in paragraph 82 to the extent that Plaintiffs attempt to characterize Mr. Budge's statements. Defendants admit that the transcript of the call reflects that Mr. Budge discussed the Company's goal that sales enablement would "continue to drive growth of greater than 40% and near 50% on B2B," as one part of a "long and sustainable business model."  Defendants deny that Plaintiffs'

selective quotations are accurate, complete, or provide full context. Defendants deny the allegations in paragraph 82 to the extent that they attempt to characterize Mr. Budge as saying that a "pace" of hiring would "drive" 40% year-over-year billings growth, or near 50% B2B growth. Defendants aver that the full sentence provides context where Mr. Budge stated that "[a]s long as we can continue to drive growth of greater than 40% and near 50% on B2B, that's sufficient for us over time." Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 82.

83.    Defendants admit that on June 24, 2019, SunTrust published a report entitled "Highlighting Three Billings/Growth Catalysts; Reiterate Buy and Raising PT," and that the report reflects that SunTrust raised its price target for Pluralsight from $40 to $41. Defendants admit that the quoted language appeared in the report, but deny that Plaintiffs' selective quotations are accurate, complete, or provide full context. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 83.

84.    Defendants admit that on July 31, 2019, Pluralsight announced its financial results for second quarter 2019, which ended on June 30, 2019. Defendants admit that Pluralsight filed with the SEC a Form 10-Q, signed by Mr. Skonnard and Mr. Budge, that stated that "sales execution challenges" were present in the second quarter. Defendants admit that the Form 10-Q also showed total billings growth of 23% year-over-year and B2B billings growth of 27% year-over-year. Defendants deny the allegations in paragraph 84 to the extent that Plaintiffs attempt to characterize sales execution challenges as the sole reason for a slight decline in year-over-year billings growth and to the extent that Plaintiffs characterize Pluralsight's quarterly results as "dismal." Defendants deny Plaintiffs' attempts to characterize the second quarter results as "an

35

abrupt and dramatic departure from the Company's performance in previous quarters." Defendants admit that the images in paragraph 84 purport to show the change in billings growth quarter-over-quarter. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 84, and footnote 11.

85. Defendants admit that the quoted language appeared on Pluralsight's Form 10-Q for the second quarter of 2019, but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 85.

86. Defendants admit that on July 31, 2019, Pluralsight held an earnings call and that Mr. Budge and Mr. Skonnard spoke on the call. Defendants admit that the transcript of that call reflects that Mr. Skonnard and Mr. Budge discussed the difficulty in hiring, ramping, and assigning new sales representatives to territories, and used the phrase "we suffered from that in the first half." Defendants deny that Plaintiffs' selective quotation is accurate, complete, or provides full context. Defendants deny the allegations in paragraph 86 to the extent that Plaintiffs characterize Mr. Budge's statements as an admission. Defendants admit that on September 4, 2019, *Seeking Alpha* published an article entitled "Tech and Growth, Pluralsight: Good Problems to Have, But Needs To Address A Major Concern," in which the words "we have not sat in at a worse one" appeared. Defendants deny, however, that Plaintiffs' selective quotation is accurate, complete, or provides full context, and Defendants deny Plaintiffs' characterization of the *Seeking Alpha* article. Defendants lack sufficient knowledge or information to form a belief as to how analysts on the earnings call were feeling and, on that basis, deny the allegations in the final sentence of paragraph

86. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 86 and footnote 12.

87. Defendants admit that on the earnings call, Mr. Skonnard stated that there "was not enough capacity in the system to sustain our high-growth expectations as we entered the year," but Defendants deny that Plaintiffs' selective quotation is accurate, complete, or provides full context. Defendants refer to their answer to paragraph 51. Defendants deny Plaintiffs' allegations in paragraph 87 to the extent that Plaintiffs attempt to characterize Pluralsight as having the ability to reliably approximate future revenue and billings growth based on the size of the salesforce and the number of deals in the pipeline. Defendants aver that in a prior earnings call, Mr. Budge stated that there are deals "that close as quickly as a month," which would preclude visibility six months in advance. Defendants lack sufficient knowledge or information to form a belief as to what, if anything, could have been done in January 2019 to result in more billings in the spring of 2019 and, on that basis, deny the allegations contained in the final sentence of paragraph 87. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 87.

88. Defendants admit that the transcript of the call reflects that Mr. Budge used the quoted language on the earnings call, but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context, and deny Plaintiffs' characterizations of the call. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 88.

89. Defendants admit that the transcript of the call reflects that Mr. Budge used the quoted language on the earnings call, but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context, and deny Plaintiffs' characterizations of the call. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 89.

90.    Defendants admit that the transcript of the call reflects that Mr. Skonnard stated that "we've nearly caught up with our annual sales ramp capacity plan, which will strengthen the balance of the year and into 2020," and that Mr. Budge stated that the Company had "nearly caught up on our sales capacity gaps." Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context, and deny Plaintiffs' characterizations of Mr. Budge's statements. Defendants deny the allegations in paragraph 90 to the extent that Plaintiffs attempt to characterize Mr. Skonnard's or Mr. Budge's remarks as applying exclusively to the process of hiring sales representatives. Defendants aver that, for example, Mr. Skonnard's statement that "we've nearly caught up with our annual sales ramp capacity plan" was offered as part of a discussion regarding problems with training and enablement, not with hiring. Defendants aver that immediately prior to Plaintiffs' quoted language, Mr. Skonnard stated, "the type of fast growth we've enjoyed requires us to provide prescriptive and effective sales enablement, and we didn't invest enough in that area of our business. And finally, we need more leaders with experiences at scale to help our sales teams execute more effectively." Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 90.

91.    Defendants deny the allegations in paragraph 91 to the extent that Plaintiffs attempt to characterize Defendants' statements as "admissions" that they had been aware of information that should have been disclosed and failed to disclose it. Defendants lack sufficient knowledge or information to form a belief as to whether analysts were logical in asking a particular question and, on that basis, deny the allegations contained in the first sentence of paragraph 91. Defendants admit that the transcript reflects that an analyst asked, "why didn't we hear this on last quarter's call?" and that Mr. Budge responded with the quoted language. Defendants deny, however, that

38

Plaintiffs' selective quotations are accurate, complete, or provide full context, and deny Plaintiffs' characterizations of the statements.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 91, except to the extent that the allegations contain legal conclusions, to which no response is required.

92.     Defendants deny the allegations in paragraph 92 to the extent that Plaintiffs attempt to characterize Mr. Skonnard's remarks as relating to the cause of a "billings collapse." Defendants admit that Mr. Skonnard used the quoted language, but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context.  Defendants aver that Mr. Skonnard's remarks specifically addressed a question from an analyst regarding the churn Pluralsight experienced in its sales force and that neither the analyst's question, nor Mr. Skonnard's answer, referenced "billings."  Defendants further deny the allegations in paragraph 92 to the extent that Plaintiffs attempt to characterize Mr. Skonnard's remarks as excluding churn as a factor in the performance of the sales team.  Defendants aver that Mr. Skonnard stated that some of the Company's "top performing reps" occasionally leave for other opportunities and the Company would prefer that they did not.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 92.

93.     Defendants deny the allegations in paragraph 93 to the extent that they attempt to portray aspirational goals as a firm trajectory from which the Company could "fall off." Defendants admit that the transcript of the call reflects that Mr. Skonnard used the quoted language in discussing the numerous factors, other than the size of the sales force, that impacted sales efficiency and billings growth, and that he announced that Mr. DiBartolomeo would be departing Pluralsight, that the Company would be "adding key people and investing in sales operations,

customer success and sales enablement to support our newly hired sales teams," and that Mr. Skonnard was "confident that these are the right changes for the business and that they'll get it quickly back to our expected long-term growth trajectory" and to "execute more effectively." Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 93.

94. Defendants admit that Pluralsight shares closed at $18.56 on August 1, 2019, on trading volume of 22 million shares. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 94, except to the extent that the allegations contain legal conclusions, to which no response is required.

95. Defendants deny the allegations in paragraph 95, except to the extent that the allegations contain legal conclusions, to which no response is required.

96. Defendants deny the allegations in paragraph 96 to the extent that Plaintiffs attempt to characterize the movement of Pluralsight's stock. Defendants lack sufficient knowledge or information to form a belief as to what investors or analysts felt and, on that basis, deny the allegations contained in the first sentence of paragraph 96. Defendants admit that on August 1, 2019, SunTrust published a report entitled "Where Did That Come From?" and J.P. Morgan published a report entitled "2Q19: Reaction Overdone." Defendants admit that the quoted language appears in the J.P. Morgan report, but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 96.

97.     Defendants admit that on August 1, 2019, *Seeking Alpha* published an article entitled "Pluralsight: Nobody Wants To Hear About Sales Execution Issues" and that the quoted language appeared in that article.  Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 97.

98.     Defendants admit that on August 5, 2019, *Seeking Alpha* published an article and that the quoted language appeared in that article. Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context. Defendants deny the allegations in paragraph 98 to the extent that Plaintiffs attempt to characterize the *Seeking Alpha* article as providing analysis of Pluralsight's earnings.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 98.

99.     Defendants admit that on September 4, 2019, *Seeking Alpha* published another article and that the quoted language appeared in that article.  Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context.  Defendants deny the allegations in paragraph 99 to the extent that Plaintiffs characterize the *Seeking Alpha* article as "calling Defendants out for their deceit" or accusing Mr. Skonnard or Mr. Budge of being evasive during the earnings call.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 99.

100.    Defendants admit that the *Seeking Alpha* article reflects the quoted phrase, but deny that Plaintiffs' selective quotations are accurate, complete, or provide full context, and deny Plaintiffs' characterization of the article.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 100.

101.   Defendants admit that on January 14, 2020, Mr. Budge attended the Needham Growth Conference on behalf of Pluralsight and spoke to attendees.  Defendants admit that the transcript of the conference reflects that Scott Randolph Berg asked questions of Mr. Budge, but deny that those questions were regarding Pluralsight's "failures."  Defendants admit that the transcript reflects that Mr. Budge responded with the quoted language, but deny that Plaintiffs' selective quotations are accurate, complete, or provide full context.  Defendants deny the allegations in paragraph 101 to the extent that Plaintiffs attempt to characterize Mr. Budge's comments as "admissions" or an acknowledgement that the Company had too few adequately productive sales representatives from the start of the Class Period.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 101, except to the extent that the allegations contain legal conclusions, to which no response is required.

102.   Defendants deny the allegations in paragraph 102 to the extent that Plaintiffs attempt to characterize their prior claims as "facts."  Defendants deny the allegations in paragraph 102, except to the extent that the allegations contain legal conclusions, to which no response is required.

103.   Defendants deny the allegations in paragraph 103 to the extent that Plaintiffs attempt to characterize their prior claims as "facts."  Defendants deny the allegations in paragraph 103, except to the extent that the allegations contain legal conclusions and/or statements alleging mental state and scienter, to which no response is required.

104.   Defendants deny the allegations in paragraph 104 to the extent that Plaintiffs characterize Mr. Skonnard and Mr. Budge as having known information that should have been disclosed to shareholders and deliberately deciding not to do so.  Defendants admit that on July

42

31, 2019, the Company held an earnings call and that the transcript of the call reflects that Mr. Budge and Mr. Skonnard used the quoted language, but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context.  Defendants deny the allegations in paragraph 104 to the extent that Plaintiffs attempt to characterize Mr. Budge's and Mr. Skonnard's statements as reflecting that they knew that problems existed since the end of 2018 and deliberately choose not to tell investors.  Defendants deny the allegations in paragraph 104, section c to the extent that Plaintiffs imply that Mr. Skonnard and Mr. Budge attempted to hide information from investors.  Except as explicitly admitted herein, Defendants deny the allegations in paragraph 104, except to the extent that the allegations contain legal conclusions and/or statements alleging mental state and scienter, to which no response is required.

105.    Defendants admit that Mr. Budge spoke at the Needham Growth Conference on January 14, 2020, and that the transcript of the conference reflects that Mr. Budge used the quoted language, but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context, and deny Plaintiffs' characterizations of the statements.  Except as explicitly admitted herein, Defendants deny the allegations in paragraph 105.

106.    Defendants admit that Mr. Skonnard and Mr. Budge executed stock sales pursuant to their established 10b5-1 trading plans.  Except as explicitly admitted herein, Defendants deny the allegations in paragraph 106, except to the extent that the allegations contain legal conclusions, to which no response is required.

107.    Defendants admit that Mr. Skonnard's and Mr. Budge's stock sales within the Class Period were greater than their sales outside the Class Period and that the shares sold during the Class Period, on average, sold for a higher price per share than their sales outside the Class Period.

Defendants deny the allegations in paragraph 107 to the extent that Plaintiffs attempt to characterize the sales as "far exceed[ing]" sales at the start of the Class Period, for profits that "far exceeded their total compensation," or at prices "far higher than those of prior or subsequent sales." Defendants further deny Plaintiffs' allegations of any "incentive[,]" that Defendants made false or misleading statements, concealed material adverse information, "artificially boost[ed the Company's share price[,]" or that the Company's stock price was inflated. Except as explicitly admitted herein, Defendants deny the allegations in paragraph 107, except to the extent that the allegations contain legal conclusions, to which no response is required.

108. Defendants deny the allegations in paragraph 108 to the extent that Plaintiffs characterize Mr. Skonnard's trading activity during the Class Period as "suspicious." Defendants admit that Mr. Skonnard made no purchase of Pluralsight stock on the open market. Defendants admit that the chart in paragraph 108 purports to summarize Mr. Skonnard's trading activity, as reported on the Form 4s filed with the SEC. Except as explicitly admitted herein, Defendants deny the allegations in paragraph 108 and footnote 13.

109. Defendants admit that on July 26, 2019, Mr. Skonnard sold 84,594 shares of Pluralsight Class A common stock at an average price per share of $30.47, for total proceeds of $2,577,849.88. Defendants aver that these shares were sold to cover Mr. Skonnard's tax liability in connection with the vesting of restricted stock units. Defendants deny the allegations in paragraph 109 to the extent that Plaintiffs attempt to characterize Mr. Skonnard's sale, or the Company's Q2 2019 earnings call. Defendants admit that the average trading price in the 90 days after the Q2 2019 earnings call was $16.65. Except as explicitly admitted herein, Defendants deny the allegations in paragraph 109.

110.    Defendants admit that on April 26, 2019, Mr. Skonnard sold two blocks of Pluralsight shares for total proceeds of $4,497,074.53.   Defendants deny the allegations in paragraph 110 to the extent that Plaintiffs characterize Mr. Skonnard's sales.  Defendants aver that the first block of shares (83,395) were sold to satisfy Mr. Skonnard's tax liability in connection with the vesting of restricted stock units, and the second block of shares (50,000) were sold pursuant to Mr. Skonnard's Rule 10b5-1 trading plan.  Defendants admit that on April 30, 2019, Pluralsight's stock reached its highest share price of the Class Period at $35.49.   Except as explicitly admitted herein, Defendants deny the allegations in paragraph 110, except to the extent that the allegations contain legal conclusions and/or statements alleging mental state and scienter, to which no response is required.

111.    Defendants admit that during the Class Period, Mr. Skonnard sold more than $22 million in Pluralsight Class A common stock.  Defendants admit that the total value of Mr. Skonnard's compensation package in 2019 was $6,476,664 and in 2018 was $12,951,975.  Except as explicitly admitted herein, Defendants deny the allegations in paragraph 111.

112.    Defendants admit paragraph 112, except to the extent that the allegations contain legal conclusions and/or statements alleging mental state and scienter, to which no response is required.

113.    Defendants deny the allegations in paragraph 113 to the extent that Plaintiffs allege that Mr. Skonnard "sold a substantial amount of his tradable Class A shares at inflated prices" or that he did so "to maximize his profits."  Defendants admit that Pluralsight's 2019 Proxy Statement shows that as of January 31, 2019, Mr. Skonnard beneficially owned 841,883 shares of Class A common stock.  Defendants admit that Mr. Skonnard possessed voting rights through his holdings

of Class C common stock and that Class C common stock could not be sold on the open market. Defendants admit that Pluralsight's SPO Offering Documents show that as of January 31, 2019, Mr. Skonnard held 14,642,929 Class C shares and 841,883 Class A shares which (including the 50,000 shares Mr. Skonnard held before his January 28, 2019 sale) totals 15,534,812 in combined Class A and Class C shares. Defendants agree that the total amount of shares sold by Mr. Skonnard during the Class Period was 748,881 shares and that this represented an extremely small percentage of Mr. Skonnard's total holdings in Pluralsight (4.8%). Except as explicitly admitted herein, Defendants deny the allegations in paragraph 113, except to the extent that the allegations contain legal conclusions and/or statements alleging mental state and scienter, to which no response is required.

114. Defendants deny the allegations in paragraph 114 to the extent that Plaintiffs attempt to characterize Mr. Skonnard as having been unable to sell more of his stock, while still maintaining majority voting control, had he so desired. Defendants admit that Mr. Skonnard held 54.7% of total voting power prior to the SPO and, after selling 460,618 shares (representing 3% of his total holdings), held 53.6% of total voting power. Defendants deny the allegations in paragraph 114 to the extent that Plaintiffs attempt to characterize Mr. Skonnard's motives as maximizing profits, Pluralsight's stock as artificially inflated, and Mr. Skonnard as having made false or misleading statements or omissions. Except as explicitly admitted herein, Defendants deny the allegations in paragraph 114, except to the extent that the allegations contain legal conclusions and/or statements alleging mental state and scienter, to which no response is required.

115. Defendants deny the allegations in paragraph 115, except to the extent that the allegations contain legal conclusions, to which no response is required.

116.    Defendants admit that Mr. Budge made one purchase of Pluralsight shares on the open market during the Class Period: 750 shares at an average price of $23.29 per share, for a total cost of $17,467.50 on December 6, 2018.  Defendants admit that the chart in paragraph 116 purports to summarize Mr. Budge's sales of Pluralsight stock.  Except as explicitly admitted herein, Defendants deny the allegations in paragraph 116 and footnote 14.

117.    Defendants deny the allegations in paragraph 117 to the extent that Plaintiffs attempt to characterize Mr. Budge's trades.  Defendants admit that on November 28, 2018, Mr. Budge adopted a 10b5-1 trading plan.  Defendants deny the allegations in paragraph 117 to the extent that Plaintiffs attempt to characterize Mr. Budge as having made trades during the Class Period that were not part of his 10b5-1 trading plan.  Defendants aver that (with the exception of the SPO) all of Mr. Budge's stock sales during the Class Period were either in accordance with his Rule 10b5-1 trading plan (sales of Feb. 19 and 20) or they were to cover tax liabilities from the vesting of restricted share units (all other sales).  Defendants admit that on February 19 and February 20, 2019, Mr. Budge sold Pluralsight stock for total proceeds of $9,990,368.81.  Defendants admit that the Company held an earnings call on February 13, 2019, and that the transcript of the call reflects that Mr. Budge used the quoted language, but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context.  Defendants aver that neither the analyst questioning Mr. Budge nor Mr. Budge used the word "plan" in their discussion of hiring salespersons.  Defendants deny the allegations in paragraph 117 to the extent that Plaintiffs attempt to imply that there was any connection between Mr. Budge's pre-planned sale of stock on February 19 and 20, 2019 and the statements made by Mr. Budge on the earnings

47

call. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 117.

118.    Defendants admit that Mr. Budge sold stock through the SPO for proceeds of $5,046,162.62. Defendants admit that the average price at which Mr. Budge sold shares was $29.08, and that the average end-of-day trading price in the 90 days after Pluralsight's 2Q19 earnings call was $16.65. Defendants deny the allegations in paragraph 118 to the extent that Plaintiffs attempt to characterize Mr. Budge's stock sales or Pluralsight's 2Q19 earnings call. Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 118, except to the extent that the allegations contain legal conclusions, to which no response is required.

119.    Defendants admit that during the Class Period, Mr. Budge sold more than $15 million in Pluralsight Class A common stock. Defendants admit that the total value of Mr. Budge's compensation package in 2019 was $2,830,594 and in 2018 was $7,427,500. Defendants deny the allegations in paragraph 119 to the extent that Plaintiffs characterize the prices at which Mr. Budge sold his shares. Except as explicitly admitted herein, Defendants deny the allegations in paragraph 119 and footnote 15.

120.    Defendants admit that the average price per share at which Mr. Budge sold his stock during the Class Period was $29.09, and that the average end-of-day trading price in the 90 days after Pluralsight's 2Q19 earnings call was $16.65. Except as explicitly admitted herein, Defendants deny the allegations in paragraph 120.

121.    Defendants deny the allegations in paragraph 121 to the extent that Plaintiffs characterize Mr. Budge's stock sales. Defendants admit that according to the Form 4s filed with the SEC in connection with the SPO, as of March 6, 2019, Mr. Budge owned 354,412 of Class A

common stock and that Mr. Budge sold 177,854 shares through the SPO.  Except as explicitly admitted herein, Defendants deny the allegations in paragraph 121 and footnotes 16 and 17, except to the extent that the allegations contain legal conclusions and/or statements alleging mental state and scienter, to which no response is required.

122.    Defendants deny the allegations in paragraph 122, except to the extent that the allegations contain legal conclusions, to which no response is required.

123.    Defendants deny the allegations in paragraph 123 to the extent that Plaintiffs attempt to characterize the personal knowledge of Mr. Budge or Mr. Skonnard.  Defendants admit that on August 29, 2018, the Company hosted Pluralsight Live, and that a transcript of the event reflects that Mr. Budge made the statements quoted in paragraph 123(a), but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context.  Defendants admit that a transcript of the event reflects that Mr. Skonnard discussed the Company's sales force and used the words and phrases quoted in paragraph 123(b), but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context, and deny Plaintiffs' characterization of Mr. Skonnard's remarks.  Defendants admit that on October 24, 2018, Mr. Budge spoke on an earnings call and that a transcript of the call reflects that he used the phrase "really good."  Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context and Defendants deny Plaintiffs' characterization of Mr. Budge's remarks.  Defendants admit that on January 26, 2019, the Company participated in the Needham Growth Conference and that a transcript of the conference reflects that Mr. Budge used the phrases "about 250," "killing it," and "some of the efficiencies in the model" while discussing Pluralsight's sales force.  Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete,

or provide full context, and Defendants deny Plaintiffs' characterization of Mr. Budge's remarks. Defendants admit that on May 1, 2019, the Company held an earnings call and that a transcript of the call reflects that Mr. Budge used the phrases "on pace" and "love our growth there" while discussing the sales force. Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context, and Defendants deny Plaintiffs' characterization of Mr. Budge's remarks. Defendants admit that on July 31, 2019, the Company held an earnings call and that a transcript of the call reflects that Mr. Budge discussed "metrics around how quickly a sales rep ramped," and what it takes to "ramp and become fully productive in the second quarter." Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context, and Defendants deny Plaintiffs' characterization of Mr. Budge's remarks. Defendants admit that the transcript of the Company's July 31, 2019 earnings call reflects that Mr. Skonnard said "we have benchmarks that we look out regularly for." Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context, and Defendants deny Plaintiffs' characterization of Mr. Skonnard's remarks. Except as explicitly admitted herein, Defendants deny the allegations in paragraph 123.

124.    Defendants deny the allegations in paragraph 124 to the extent that Plaintiffs attempt to equate a familiarity with deals in the pipeline with detailed knowledge of billings, revenue, and "how many deals were reasonably likely to close in the second quarter of 2019." Defendants admit that on August 1, 2018, the Company held an earnings call and that a transcript of the call reflects that Mr. Budge made the quoted statements. Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context. Defendants admit that on October 24, 2018, the Company held an earnings call and that a transcript of the call reflects

50

that Mr. Budge made the quoted statement.  Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context.  Defendants admit that on February 13, 2019, the Company held an earnings call and that a transcript of the call reflects that Mr. Budge made the quoted statement.  Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context.  Defendants admit that on July 31, 2019, the Company held an earnings call and that a transcript of the call reflects that Mr. Budge used the phrase "material change in the timing of getting deals over the finish line."  Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context, and Defendants deny Plaintiffs' characterization of Mr. Budge's remarks.  Except as explicitly admitted herein, Defendants deny the allegations in paragraph 124.

125.    Defendants admit that, among other things, sales capacity was discussed in earnings calls and at presentations during the Class Period.  The phrase "figured prominently" is ambiguous and Defendants, on that basis, deny the allegations in the first sentence of paragraph 125.  Defendants admit that transcripts of the calls reflect that the questions quoted were asked by analysts, among many other inquiries.  Except as explicitly admitted herein, Defendants deny the allegations in paragraph 125.

126.    Defendants deny the allegations in paragraph 126 to the extent that Plaintiffs attempt to characterize Mr. Budge as having given "specific headcount numbers" of sales representatives at either the Pluralsight Live conference or the Needham Growth Conference.  Defendants admit that the conference transcripts reflect that Mr. Budge discussed the infrastructure that was being built at Pluralsight.  Defendants deny the allegations in paragraph 126 to the extent

51

that Plaintiffs attempt to characterize the build out of infrastructure or sales representatives as complete.  Except as explicitly admitted herein, Defendants deny the allegations in paragraph 126.

127.    Defendants lack sufficient knowledge or information to form a belief as to why analysts asked specific questions and, on that basis, deny the allegations referencing analysts in this paragraph.  Defendants deny the allegations in paragraph 127, except to the extent that the allegations contain legal conclusions and/or statements alleging mental state and scienter, to which no response is required.

128.    Defendants deny the allegations in paragraph 128 to the extent that they constitute Plaintiffs' characterizations.  Defendants deny the allegations in paragraph 128, except to the extent that the allegations contain legal conclusions and/or statements alleging mental state and scienter, to which no response is required.

129.    The phrase "utmost importance" is ambiguous and Defendants, on that basis, deny the allegations in the first sentence of paragraph 129.  Defendants deny the allegations in paragraph 129 except to the extent that the allegations contain legal conclusions and/or statements alleging mental state and scienter, to which no response is required.

130.    Defendants deny the allegations in paragraph 130, except to the extent that the allegations contain legal conclusions and/or statements alleging mental state and scienter, to which no response is required.

131.    Defendants admit that on January 16, 2019, Mr. Budge participated in a question-and-answer session as part of the Needham Growth Conference and that a transcript of the session is publicly available.  Except as explicitly admitted herein, Defendants deny the allegations in paragraph 131.

132.    Defendants admit that the transcript of the session includes the quoted language, but Defendants deny that Plaintiffs' selective quotations are accurate, complete, or provide full context.  Except as explicitly admitted herein, Defendants deny the allegations in paragraph 132.

133.    Paragraph 133 contains legal conclusions and statements alleging mental state and scienter, to which no response is required.

134.    Paragraph 133 contains legal conclusions and statements alleging mental state and scienter, to which no response is required.

135.    Defendants admit that Pluralsight Class A common stock traded as high as $35.49 on April 30, 2019.  Defendants lack sufficient knowledge or information to form a belief as to Plaintiffs' alleged losses and, on that basis, deny the allegations regarding the existence of losses. Paragraph 135 contains legal conclusions and statements alleging mental state and scienter, to which no response is required.  Except as explicitly admitted herein, Defendants deny the allegations in paragraph 135.

136.    Defendants admit that on July 31, 2019, the Company held an earnings call, but deny Plaintiffs' characterizations of that call.  Paragraph 136 contains legal conclusions and statements alleging mental state and scienter, to which no response is required.  Except as explicitly admitted herein, Defendants deny the allegations in paragraph 136.

137.    Defendant admits that on July 31, 2019, Pluralsight shares closed at $30.69 and on August 1, 2019, they closed at $18.56.  Defendants deny the allegations in paragraph 137 to the extent that Plaintiffs attempt to characterize the decline in the Company's share price or the trading volume.  Except as explicitly admitted herein, Defendants deny the allegations in paragraph 137, except to the extent that the allegations contain legal conclusions, to which no response is required.

138.    Defendants lack sufficient knowledge or information to form a belief as to how analysts felt and, on that basis, deny the allegations contained in the first sentence of paragraph 138. Defendants admit that on August 1, 2019, SunTrust published a report entitled "Where Did That Come From?" and J.P. Morgan published a report entitled "2Q19. Reaction Overdone," in which the quoted language appears. Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context. Except as explicitly admitted herein, Defendants deny the allegations in paragraph 138.

139.    Defendants admit that on August 1, 2019, *Seeking Alpha* published an article entitled "Pluralsight. Nobody Wants To Hear About Sales Execution Issues," in which the quoted language appears. Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context. Except as explicitly admitted herein, Defendants deny the allegations in paragraph 139.

140.    Defendants admit that on August 5, 2019, *Seeking Alpha* published an article in which the quoted language appears. Defendants deny, however, that Plaintiffs' selective quotations are accurate, complete, or provide full context. Except as explicitly admitted herein, Defendants deny the allegations in paragraph 140.

141.    Defendants deny the allegations in paragraph 141 to the extent that Plaintiffs attempt to characterize Pluralsight's Q2 2019 earnings call as a "corrective disclosure." Paragraph 141 contains legal conclusions and statements alleging mental state and scienter, to which no response is required. Except as explicitly admitted herein, Defendants deny the allegations in paragraph 141.

142.    Paragraph 142 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 142.

143.    Paragraph 143 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 143.

144.    Paragraph 144 states legal conclusions, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 144.

145.    Paragraph 145 states legal conclusions, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 145.

146.    Defendants repeat each and every response contained above and further respond as follows.

147.    Paragraph 147 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 147.

148.    Paragraph 148 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 148.

149.    Paragraph 149 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 149.

150.    Paragraph 150 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 150.

151.    Paragraph 151 states legal conclusions, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 151.

152.    Paragraph 152 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 152.

153.    Paragraph 153 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 153.

154.    Paragraph 154 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 154.

155.    Defendants repeat each and every response contained above and further respond as follows.

156.    Paragraph 156 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 156.

157.    Paragraph 157 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 157.

158.    Defendants repeat each and every response contained above and further respond as follows.

159.    Paragraph 159 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 159.

160.    Paragraph 160 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 160 and footnote 18.

161.    Defendants admit that the quoted language is taken from the statute.

162.    Defendants lack sufficient knowledge or information to form a belief as to the purchases made by Plaintiffs and, on that basis, deny the allegations contained in paragraph 162.

163.    Defendants lack sufficient knowledge or information to form a belief as to Plaintiffs' motivations or purported damages and, on that basis, deny the allegations contained in paragraph 163.

164.    Defendants admit that Plaintiffs purport to bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of certain persons or entities who

57

purchased Pluralsight Class A common stock.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 164.

165.    Defendants admit that according to Pluralsight's Form 10-Q for the second quarter of 2019, as of June 30, 2019, the Company had approximately 10,096,472 shares outstanding, held by thousands of investors.  Except as explicitly admitted herein, Defendants deny the allegations contained in paragraph 165, except to the extent the allegations contain legal conclusions, to which no response is required.

166.    Paragraph 166 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 166.

167.    Paragraph 167 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 167.

168.    Paragraph 168 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 168.

169.    Paragraph 169 states a legal conclusion, to which no response is required.  To the extent a response is deemed necessary, Defendants deny each and every allegation in paragraph 169.

## DEFENDANTS' AFFIRMATIVE DEFENSES

### First Defense

This action is barred, in whole or in part, because Defendants are immune from liability for statements of opinion and/or puffery.

### Second Defense

This action is barred, in whole or in part, because if any false or misleading statement was made, or if any material fact required to be stated or necessary to make any statement not misleading was omitted, which Defendants deny, then every act or omission was done or omitted in good faith conformity with the rules and regulations of the SEC and, thus, under Section 23(a) of the Securities Act of 1934, there is no liability for any act or omission alleged.

### Third Defense

This action is barred, in whole or in part, because the information that Plaintiffs allege to have been omitted or the truth behind what was allegedly misrepresented was in fact publicly disclosed, available, and/or widely known to the market.

### Fourth Defense

This action is barred, in whole or in part, because Defendants had no duty to disclose any facts allegedly not disclosed.  All statements in or omissions from the Offering Materials were in conformity with SEC rules and regulations.

### Fifth Defense

This action is barred, in whole or in part, because each and every Defendant alleged to be a control person under Section 20(a) of the Exchange Act acted in good faith and did not directly or indirectly induce the act or acts constituting the alleged violation and causes of action.

59

**Sixth Defense**

The losses by Plaintiffs or other putative class members, if any, were not caused by any misstatement or omission by Defendants, and in any event any recovery for damages allegedly incurred by Lead Plaintiff or members of the putative class is barred, in whole or in part, by the damages limitations in Section 21D(e) of the Exchange Act, 15 U.S.C. § 78u-4(e).

**Seventh Defense**

To the extent that Plaintiffs or other putative class members were aware of the allegedly omitted information or the truth behind the alleged misstatement and/or did not rely upon the omission or the alleged misstatement in purchasing Pluralsight's securities, their claims are barred by a lack of reliance.

**Eighth Defense**

This action is barred, in whole or in part, because each Plaintiff or other putative class member would have acquired Pluralsight's securities even if, when those securities were acquired, each Plaintiff and member of the putative class would have known of the allegedly untrue statements of material fact, omissions of material fact, misleading statements, or other wrongful conduct upon which Defendants' purported liability rests.

**Ninth Defense**

All or a portion of the damages alleged by Plaintiffs and members of the putative class are attributable to causes other than any actions or omissions for which Defendants are allegedly responsible.

60

### Tenth Defense

This action is barred, in whole or in part, because any increase or decrease in the value of Pluralsight's securities was and is, wholly or partially, the result of market conditions or other factors and not the result of any alleged wrongful conduct by Defendants.

### Eleventh Defense

Any recovery for damages allegedly incurred by Plaintiffs and members of the putative class is subject to offset in the amount of any tax benefits or other benefits received by Plaintiffs or members of the putative class through their investments.

### Twelfth Defense

This action is barred, in whole or in part, to the extent that claims asserted by Plaintiffs and members of the putative class are based on any predictions, expressions of opinion, or forward-looking statements, as such claims are not actionable under the statutory safe harbor in the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-5(c)(1)(A), (B) and/or the bespeaks caution doctrine.

### Thirteenth Defense

This action is not maintainable as a class action because the requirements of Rule 23 of the Federal Rules of Civil Procedure are not met.

### Fourteenth Defense

This action is barred, in whole or in part, by the doctrine of assumption of risk because the risks of investing in Pluralsight's securities were publicly disclosed to Plaintiffs and the market at all relevant times.  Plaintiffs and members of the putative class knew or should have known the

61

risks inherent in investing in the securities at issue and thus assumed the risk of a decline in the value of their investments.

### Fifteenth Defense

Defendants may be entitled to a right of contribution from other individuals or entities whose acts or omissions may have contributed to the occurrence of the alleged injury, damage and/or loss, if any, should Plaintiffs receive judgment against Defendants.

### Sixteenth Defense

The claims of Plaintiffs and members of the putative class are barred, in whole or in part, because Defendants relied in good faith on the advice and professional judgments of experts and professional advisors as to matters which they reasonably believed to be within such persons' professional or expert competence.

### Seventeenth Defense

Section 21D(f) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(f)(3)(A), provides that if Plaintiffs do not establish a knowing violation, a covered person against whom a final judgment is entered shall be liable solely for the portion of the judgment that corresponds to the percentage of responsibility of that covered person. This provision further provides that any recovery for damages allegedly incurred by Plaintiffs or members of the class is limited to the percentage of responsibility by a defendant in proportion to the total fault of all persons, named as parties to this action or not, who caused or contributed to such alleged damages. Based upon the allegations, and other facts Defendants believe will be developed through discovery, if Plaintiffs were to obtain a judgment for damages, Defendants would show that they are not liable in whole or in part pursuant to this provision.

## Additional Affirmative Defenses

Defendants may have additional, as yet unidentified defenses available against Plaintiffs and/or putative class members and thus reserve the right to assert such defenses in a timely fashion after the facts to support such defenses become known to them.

## DEFENDANTS' PRAYER FOR RELIEF

WHEREFORE, Defendants pray that the Court enter judgment as follows:

1.     That judgment be entered in favor of Defendants;

2.     That Plaintiffs and the putative class take nothing from Defendants by this Second Amended Complaint, and that the same be dismissed with prejudice; and

3.     For such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED this 9th day of December 2022.

WILSON SONSINI GOODRICH & ROSATI, P.C.

/s/ Gregory L. Watts
Gregory L. Watts (#17782)
Ignacio E. Salceda (*pro hac vice*)
Stephanie L. Jensen (*pro hac vice*)

*Attorneys for Defendants*