UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM and PUBLIC SCHOOL TEACHERS' PENSION AND RETIREMENT FUND OF CHICAGO, individually and on behalf of all others similarly situated,<br><br>                         Plaintiffs,<br><br>  v.<br><br>PLURALSIGHT, INC.; AARON SKONNARD; and JAMES BUDGE,<br><br>                        Defendants. | **ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD-COPY DOCUMENTS (DOC. NO. 187)**<br><br>Case No. 1:19-cv-00128<br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

The parties filed a Stipulated Motion for Entry of Order Regarding the Production of Electronically Stored Information and Hard-Copy Documents.[1]  In light of the parties' stipulation and for good cause shown, the motion is GRANTED and the court orders enters the following order governing the production of ESI and hard-copy documents.

IT IS HEREBY ORDERED THAT:

1.      **GENERAL STIPULATIONS**

1.1      The Parties have entered into this Protocol to, consistent with Federal Rule of Civil Procedure 1, facilitate the just, speedy, and inexpensive determination of this action. Nothing herein shall be construed to limit the scope of discovery available to the Parties pursuant to Federal Rule of Civil Procedure 26(b).

---

[1] ("Mot.," Doc. No. 187.)

1.2    The procedures and protocols outlined herein govern the production of all documents and ESI, including all computer-generated information or data of any kind, by the Parties.  This Protocol governs all Parties to these proceedings, whether they are currently involved or become so in the future.  All disclosures and productions made pursuant to this Protocol are subject to the Stipulated Modified Standard Protective Order entered in this matter.

1.3    Nothing in this Protocol shall be interpreted to require disclosure of privileged or otherwise protected information.

1.4    This Protocol does not address, limit, or determine the authenticity, admissibility, relevance, or discoverability of any document or ESI.  The Parties are not waiving the right to seek any discovery and are not waiving any objections to any discovery requests.

1.5    All documents produced hereunder are fully protected and covered by the Parties' confidentiality agreements, by any clawback agreements entered into by the Parties, and by the Stipulated Modified Standard Protective Order and any other applicable orders entered by this Court in this matter.

2.    **DEFINITIONS**

2.1    "Custodian" means an individual who controls or is responsible for the management or physical storage of records.

2.2    "Custodial ESI" means ESI associated with a particular individual, such as emails authored, sent, or received by a Custodian.

2.3    "Document" or "Documents" means any source of information identified in Rule 34(a) of the Federal Rules of Civil Procedure, and includes but is not limited to emails stored locally or on cloud-based repositories; non-email electronic files stored

locally or on cloud-based repositories; data stored or transmitted through messaging platforms such as Slack, Discord, or Microsoft Teams; phone records; data transmitted through SMS texting or iMessage; and paper files.

2.4    "Electronically stored information" or "ESI" means any Document or information stored or transmitted electronically, regardless of the media or whether it is in the original format in which it was created. This definition includes but is not limited to information stored locally or in cloud-based repositories.

2.5    "Hard-Copy Document" means any Document existing in paper form at the time of collection.

2.6    "Hash Value" is a mathematical algorithm that calculates a unique value for a given set of data, similar to a digital fingerprint, representing the binary content of the data to assist in subsequently ensuring that data has not been modified.

2.7    "Include" and "Including" are construed without limitation.

2.8    "Instant Messaging" or "IM" means form of electronic communication involving immediate correspondence between two or more online users, including communications via Microsoft Teams, Slack, or other platforms.

2.9    "Load Files" means electronic files provided with a production set of Documents and images used to load that production set into a Requesting Party's Document review platform.

2.10    "Metadata" means the information of a document that contains data about the document, as opposed to describing the content of the document, including information about a document that is created and applied to the document by a computer process or application—such as the date or location a document was created, saved, modified—and information about a document that is created and applied to the document

3

by a user, such as the addressees of an email, annotations to a document, or objective coding information. Metadata includes the information identified in Attachment A.

2.11   "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.  For example, the Native Format of an Excel workbook is a .xls or .xslx file.

2.12   "Party" means any party to this action, including all of its officers, directors, employees, consultants, retained experts or consultants, and Outside Counsel of Record (and their support staffs).

2.13   "Producing Party" means and refers to the Party upon whom a request for the production of Documents is served.

2.14   "Requesting Party" means and refers to the Party that serves a request for the production of Documents.

2.15   "Searchable Text" means the text extracted or generated using OCR from any Document that allows the Document to be electronically searched.

**3.     PRESERVATION OF DOCUMENTS**

3.1   The Parties will fully abide by all preservation duties established by Rule 26 of the Federal Rules of Civil Procedure. By preserving information for purposes of this litigation, the Parties are not conceding that such material is discoverable.

3.2   The Parties will take reasonable and proportionate steps to preserve all potentially relevant, unique ESI that is within their respective possession, custody, or control; and was created or received between January 1, 2018 and January 31, 2020. As

4

part of this preservation process, the Parties shall halt any automatic document deletion process that creates a risk of deleting potentially relevant ESI.

3.3    To the extent they exist and are within the Parties' possession, custody, or control and are likely to contain potentially relevant, unique ESI, the systems and sources from which the Parties will preserve data will include:

a.    Emails stored locally or on cloud-based repositories;

b.    Non-email electronic files stored locally or on cloud-based repositories;

c.    Non-email electronic files from local files;

d.    Data stored or transmitted through messaging platforms such as Slack, Discord, or Microsoft Teams; and

e.    Paper records.

3.4    Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a.    Deleted, slack, fragmented, or other data only accessible by forensics;

b.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

c.    Online access data such as temporary internet files, history, cache, cookies, and the like;

d.    Data in metadata fields that are frequently updated automatically, such as last-opened dates;

e.      Social media data, with the exception of accounts likely to contain potentially relevant ESI that are maintained by Aaron Skonnard, James Budge, and Joe DiBartolomeo (to the extent it exists and is within the Parties' possession, custody, or control), as well as any official Pluralsight social media accounts.

3.5    When duplicate copies of potentially relevant ESI exist in more than one location, this Order does not require a Party to preserve all duplicates as follows:

a.      Electronic data created, stored, or transmitted on mobile devices need not be preserved *provided that* duplicate copies of such data, including metadata, are preserved in another location reasonably accessible to the party.

b.      Back-up data of potentially relevant ESI need not be preserved *provided that* duplicate copies of that ESI, including metadata, have been preserved in another location reasonably accessible to the party.

3.6    The Parties will meet and confer about any disputes regarding the scope and manner of preservation.

## 4.      COOPERATION

4.1    The parties shall cooperate to identify and facilitate access to the contents of encrypted, password-protected, corrupted or difficult-to-access files produced. The parties will work cooperatively to fashion reasonable, precise, and cost-effective search strategies. Parties are obliged to be forthcoming and transparent in disclosing their use of mechanized tools to cull responsive data and encouraged to bring technically adept personnel together to resolve e-discovery issues.

5.    **ESI DISCLOSURES**

5.1    Within 15 days after the date of this Order, or at a time agreed to by the parties, each party shall disclose:

a.    **Priority Document Custodians.** The seven custodians most likely to have discoverable ESI in their possession, custody, or control. The identification of Priority Document Custodians is intended only to streamline the initial discovery conferral process by identifying Custodians most likely to have relevant information.

5.2    The parties will disclose non-custodial, third-party, and inaccessible data sources likely to contain information that is potentially responsive to a discovery request within the meet and confer process related to such discovery request.

6.    **IDENTIFICATION OF RESPONSIVE DOCUMENTS**

6.1    **Search Methodology.** The Parties shall timely confer to attempt to reach agreement on appropriate search methodology, including search terms, date restrictions, and data sources (including custodians). To facilitate good faith negotiations over the search terms or other search methodology, the Producing Party shall provide a reasonable search term hit list or hit report after global de-duplication (including the number of documents that hit on each term) in Microsoft Excel format or other format as agreed to by both parties that includes the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, with and without families).  Nothing in this paragraph will require a Producing Party to reveal information that constitutes attorney work product in negotiating search terms.

6.2     The Parties acknowledge that there may be instances where a potential modification to a previous agreement on search methodology, including modification of search terms, data restrictions, and data sources (including custodians), is necessary. To facilitate continued good faith negotiations, the parties shall timely confer to attempt to reach agreement on any proposed modification to a previously agreed-upon search methodology, including by providing the information in Section 6.1, unless unduly burdensome.

6.3     Nothing in this protocol prevents the Parties from using technology-assisted review, including continuous active learning, or other e-discovery tools or techniques to identify ESI likely to contain discoverable information insofar as their use improves the efficiency of discovery and minimizes the Parties' burden. The Parties agree to meet and confer in good faith to reach a mutually agreeable protocol for the use of such technologies if such technologies are to be used to exclude documents from review. The Parties agree not to use TAR on paper documents that cannot be reliably OCR'd or on structured data types.  The Parties do not need to disclose the use of TAR solely for the purposes of sorting or prioritizing documents for review.

6.4     The Producing Party will disclose to the Requesting Party the search software (including version number) they plan to use to run search terms, including providing the "stop" or "noise" words used by the search software and the syntax of the search software.

6.5     The fact that any electronic document has been identified in agreed-upon searches shall not prevent any party from withholding such document from production on

the grounds that the Document does not contain any responsive information or that it is protected from disclosure by an applicable privilege or immunity.

## 7.    PROCESSING SPECIFICATIONS FOR ESI

7.1    **Metadata**. ESI shall be processed in a manner that preserves the source native file and relevant metadata without modification, including their existing time, date, and time-zone metadata consistent with the requirements provided in this Order.  Except as otherwise set forth in this Stipulation, ESI items shall be produced with each of the data fields set forth in Attachment A that can be extracted from a document without undue burden. This Order does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the Document. These fields should be populated for all produced ESI regardless of whether the fields can be populated pursuant to an automated process, unless unduly burdensome. To the extent providing these metadata fields is unduly burdensome, the Parties shall meet and confer to determine appropriate solutions.

7.2    For hard copy documents or scanned documents to the extent the associated metadata is unlikely to be relevant (such as insurance policies), the Parties shall produce, at a minimum, the following metadata fields, if available: BEGBATES, ENDBATES, CUSTODIAN, PARENT_BATES, CHILD_BATES, and ATTACH_RANGE. The Parties shall have no obligation to generate metadata for such documents beyond these fields.

7.3    **De-Duplication**.  A Producing Party may remove Documents identified as duplicative based on MD5 or SHA-1 hash values of the full text of the Documents at the family level across custodians and sources.  The de-duplication method(s) employed and

any changes thereto should remain consistent across each production or otherwise be discussed and agreed to among the Parties.  The Producing Party shall produce a Metadata field for all produced Documents for which duplicate Documents were removed listing the Custodians that possessed a duplicate Document that was removed. The above shall not impose on a Party any obligation to produce duplicative documents.

7.4    **E-mail Threading**.  The Parties are permitted to use commercially reasonable e-mail threading tools to remove e-mails and their attachments where the contents of the e-mail and its attachments are wholly included within another e-mail that is not removed.

7.5    **De-NISTing.**  Non-user-generated files may be removed from review and production using the list of non-user-generated files maintained by the National Institute of Standards and Technology (NIST).  Additional culling of system files based on file extension may include:  WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), Program Installers.

7.6    **Auto date/time stamp**s. ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, if available, not the date of collection or processing.

10

7.7     **Searchable Text**.  Text will be extracted directly from the native electronic file of ESI unless the Document requires redaction, is an image file or is any other native electronic file that does not contain text to extract (*e.g.*, non-searchable PDFs), in which case Searchable Text may be created using OCR.  Extracted text will include all comments, revisions, tracked changes, speaker's notes and text from Documents with comments or tracked changes, and hidden worksheets, slides, columns and rows.  Extracted text from e-mails will include all header information that would be visible if the e-mail was viewed natively including:  (1) the individuals to whom the communication was directed, (2) the author of the e-mail communication, (3) who was copied and blind copied on such e-mail, (4) the subject line of the e-mail, (5) the date and time of the e-mail and (6) the names of any attachments.

7.8     **Exception Files**.  The Parties will use commercially reasonable efforts to address Documents that present processing or production problems (including encrypted, unsupported, and/or protected files) ("Exception Files").  Exception Files that are attached to produced Documents will be produced as a Bates-stamped placeholder TIFF bearing a legend indicating the document is unable to be processed.  If the Parties cannot reach agreement on the handling of Exception Files through the meet-and-confer process, the matter may be submitted to the Court for resolution pursuant to the District of Utah's Local Rule 37-1(b).

7.9     **Password-Protected or Encrypted Files**. With respect to any ESI items that are password-protected or encrypted, the Producing Party will take reasonable steps based on industry standards to break the protection or locate the necessary passwords so that the document can be reviewed and/or produced. In the event that the Producing Party

is unable to produce unencrypted and reviewable copies of such documents that are reasonably likely to be responsive to document requests, the Producing Party shall let the Requesting Party know the total number of such documents for each custodian and non-custodial data source, and each Producing Party shall timely confer with the Requesting Party.

7.10   **Microsoft "Auto" Feature and Macros**. Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business. If "auto date," "auto file name," "auto file path," or similar features are identified, the produced document shall be branded with the words "Auto Date," "Auto File Name," "Auto File Path" or similar words that describe the "auto" feature. Similarly, if a document contains a "macro," the document shall be branded with the word "Macro."

7.11   **Hidden text**. ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

7.12   **Embedded Objects**.  Files that are embedded in other files ("Embedded Objects"), including email inline images and Microsoft Office embedded images, need not be extracted as separate files and treated as attachments to the parent Document.

7.13   **Compressed Files and Encrypted Files**. Compressed file types (*e.g.*, .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that

a zip within a zip is decompressed into the lowest possible compression resulting in individual files

## 8.      PROCESSING SPECIFICATIONS FOR HARD-COPY DOCUMENTS

8.1      **General**.  To the extent the Parties agree on the production of any Hard-Copy Documents, such Hard-Copy Documents will be scanned as single-page TIFF images as they are kept in the ordinary course of business.

8.2      **Unitization of Paper Documents**. Paper documents should be logically unitized for production based on the Producing Party's reasonable best efforts. Therefore, when scanning paper documents for production, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records.

8.3      **Custodian Identification**. The Producing Party will utilize reasonable best efforts to ensure that paper records for a particular custodian or department-level custodian, which are included in a single production, are produced in consecutive Bates stamp order, to the extent reasonably feasible.

8.4      **Identification**. Where a Document or group of Documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced to the extent practicable.

8.5      **Coding Fields.**  For any produced Hard-Copy Documents, the Producing Party shall, to the extent the information is reasonably available, provide information in the load file accompany production of hard-copy documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) PgCount, (f) Custodian, (g) Confidentiality, and (h) Redacted (Y/N). Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y."

8.6    **Identification**. Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

8.7    **Searchable Text**.  For any produced Hard-Copy Documents, the Producing Party shall take reasonable steps to create Searchable Text using OCR.

8.8    **Storage**. During the pendency of this litigation, the Parties shall make reasonable efforts to preserve the originals of all Hard-Copy Documents as to which there may be issues of legibility of all or any part of the production copy.  Each party reserves the right to request to inspect such original documents of the opposing party or Parties if there are issues of legibility, which request shall not be unreasonably denied.  If such request to inspect is denied, the party may seek relief from the Court.

9.    **PRODUCTION FORMAT**

9.1    **File Format**.  Except as otherwise provided herein, the Parties will produce ESI in TIFF format, except for the file formats listed in Attachment B, which will be produced in native format.  Presentation files shall either be produced in their native format or, if produced in TIFF format, shall be produced with speaker notes and any hidden content showing.  If documents have tracked changes or comments, they will be produced with those tracked changes and comments visible.  For Documents produced in Native Format, a Bates-stamped placeholder TIFF bearing a legend indicating the document is being produced in native format shall also be produced in the same manner as other TIFFs.  Native Files shall have a file name that includes the Bates number and Confidentiality Designation.  Any Party printing the Native File for use in this matter shall append and use the placeholder TIFF as a cover sheet to the Native File at all times.

Additionally, the Requesting Party may request the production of a specific document in native format where the native format is reasonably necessary to that document's comprehension or use.  The parties will meet and confer about any such request.

9.2    **Production of Hard-copy Documents in TIFF Format**.  Hard-copy documents shall be produced as TIFF files whenever practicable. All TIFFs produced by any party in this matter will be single-page Group IV TIFF format with 300 dpi quality with 1 bit depth or better.  TIFF files will be named according to the corresponding Bates-numbered images.  Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the Producing Party, a particular item requires a different page size.

9.3    All Documents that contain comments, deletions and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the image.  All TIFF images will be branded in the lower right-hand corner with its corresponding Bates number, and in the lower left-hand corner with its Confidentiality Designation, if any, using a consistent font type and size.  If the Requesting Party believes that a Bates number or Confidentiality Designation obscures the content of a Document, then the Requesting Party may request that the Document be produced with the Bates number in a different position.

9.4    **Production of Data from Messaging Platforms**. Responsive ESI from electronic messaging platforms such as Slack or Microsoft Teams will be produced in TIFF format with load files in the format set forth herein.  The Producing Party will produce messaging platform data in an organized, chronological format with specific

channel information and all necessary metadata fields to identify user identification details and each message's date and time stamp, to the extent reasonably available. The family group of a relevant data file from an electronic messaging platform shall include the responsive message and all other messages sent or received in the same channel or conversation on that date. The Requesting Party reserves the right to request the production of message files that have not been produced and which are reasonably likely to contain other messages necessary for contextual relevance. The parties will meet and confer about any such request.

9.5    **Bates Numbering**.  Each document produced under this Order should be assigned a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length of eight numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters; and (4) be sequential within a given Document.  The Producing Party will identify the Bates number range of each production in a cover letter or production log accompanying the production.  If a Producing Party intentionally skips a Bates number or set of Bates numbers in a production, the Producing Party will identify and note the gap in the cover letter or production log accompanying the production.

9.6    **Load Files**.  Productions will include image load files in Opticon format and Concordance format data (.dat) files with reasonably available Metadata for all Documents.  All Metadata will be produced in UTF-7 or UTF-8 with Byte Order Mark format.

9.7    **Text Files**.  A single document-level text file containing the Searchable Text shall be provided for each Document.  The text file name shall be the same as the

16

Bates number of the first page of the Document with the Document extension ".txt" suffixed.  File names shall not have any special characters or embedded spaces. Searchable Text shall be provided in UTF-8 or Western European (Windows) with Byte Order Mark format text.  The .DAT load file shall include a link to the corresponding text file.

9.8     **Databases, Structured, Aggregated or Application Data**.  For requests in which responsive information is contained in a database or other structured or aggregated data source or otherwise maintained by an application, the Parties will meet and confer to determine an appropriate format for review and production.  If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution pursuant to this Court's Local Rule 37.1.

9.9     **Redactions**.  Parties may redact information that is subject to the attorney-client privilege or work-product protection or other claims of privilege from disclosure. Additionally, the Parties may redact information that is personally or commercially sensitive, such as social security numbers, bank account and other sensitive financial information, passwords, and similar information, so long as that information is not responsive to any agreed requests for production.  Any redaction shall state the reason for the redaction in the text of the redaction box, or, in the case of personally or commercially sensitive information, the type of information redacted, where reasonably feasible.  Redacted Documents shall be identified as such in the Metadata.  If the Producing Party redacts non-responsive information that is personally or commercially sensitive, upon the Requesting Party's reasonable request, the Producing Party will

disclose the type of information redacted, without disclosing its substance, if not already stated in the text of the redaction box.

9.10    Redactions of Excel and PowerPoint files. For Excel and PowerPoint type files that are printed to TIFF for redaction and redacted, the following printing options shall be enabled:

9.11    **Excel Print to TIFF Options**

a.    Unhide columns and rows

b.    Unhide worksheets

c.    Autofit columns and rows, settings to be over by columns first, and then down by rows

d.    Wrap text

e.    Print gridlines

f.    Do not apply Autofilter

g.    Display headings

h.    Display comments

9.12    PowerPoint Print to TIFF Options

a.    Print notes pages

b.    Print hidden slides

c.    Print comments

9.13    The Producing Party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images because of redactions are formatted so as to be legible.  For redacted items which were originally ESI, all metadata fields noted in this protocol that do not contain privileged or protected information will be provided and will

include all non-redacted data.  A Document's status as redacted does not relieve the Producing Party from providing all metadata required herein that is not the subject of a claim of privilege or similar immunity from discovery.

9.14    **Parent-Child Relationships**.  Parent-child relationships (the association between an attachment and its parent Document or between embedded Documents and their parent) will be preserved through the production of the PARENTBATES and CHILDBATES Metadata fields detailed in Attachment A.  Parent-child relationships shall also be preserved by assigning sequential Bates numbers to all items within the parent-child group, where reasonably feasible.

9.15    **Family Groups**.  Unless otherwise indicated in this Order, emails and their attachments shall be treated as a single Family Group.  To the extent one or more member of a Family Group is deemed responsive, the entire Family Group will treated as responsive.  Members of a responsive Family Group that are wholly privileged may be excluded from production provided that a slipsheet with the placeholder "Document Withheld as Privileged" is produced.

9.16    **Production Methods**. Whenever possible, the Producing Party shall produce documents electronically via FTP or other secure online transfer methods. If electronic delivery for any set of documents is not feasible, the Producing Party will notify the Requesting Party and meet and confer about production through non-electronic means.

## 10.    PRIVILEGE LOG

10.1    A Producing Party shall produce a privilege log of all the responsive documents withheld from production on the basis of attorney-client privilege or work-product protection.

10.2    Privilege logs shall be provided in Microsoft Excel format and shall include a unique identification number for each document, the Basis for Withholding (i.e., attorney-client privileged or work-product protection), and a Document Description. For ESI, privilege log fields, apart from the Basis for Withholding, may be generated using relevant available non-privileged metadata that the parties have agreed to produce, such as:  BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, ALLCUSTODIANS, DATESENT, DATERCVD, LASTMODDATE, FAMILYDATE, DOCUMENTTYPE, AUTHOR, FROM, TO, CC, BCC, SUBJECT, TITLE, and FILENAME, Basis for Withholding. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the Producing Party shall include such additional information as required by the Federal Rules of Civil Procedure.

      a.    In listing the "Basis for Withholding," the Producing Party shall expressly make the specific claim of privilege being asserted.

      b.    In listing the "Document Description," the Producing Party shall describe the nature of the document in a manner that, without revealing information itself privileged or protected, will enable the Requesting Party to assess the claim.  This Document Description may be satisfied with the inclusion of metadata fields sufficient to provide the requisite information regarding the

nature of the document in a manner that enables the Requesting Party to assess the claim without providing an additional description.

10.3    In the event that the Producing Party asserts privilege stemming from the involvement of the Party's in-house counsel, the Producing Party shall also produce a separate document listing the in-house counsel identified on the privilege log.

10.4    The parties are not required to include on any privilege log communications between a party and its legal counsel regarding this action, or attorney work-product created in connection with the litigation of this action.

## 11.    THIRD-PARTY DOCUMENTS AND ESI

11.1    The Party that issues a subpoena upon any third party ("Issuing Party") after the execution of this ESI Protocol shall include a copy of this ESI Protocol and any protective order agreed and/or entered in this litigation with the subpoena and state that the Parties in this litigation have requested that third parties produce documents in accordance with the specifications set forth herein.

11.2    The Issuing Party shall request that third parties produce the same documents to all Parties simultaneously.  In the event that the third party fails to do so (as indicated by, among other means, failing to address both Parties in its production cover letter), the Issuing Party shall produce a copy to all other Parties of any documents and ESI (including any metadata) obtained under subpoena to a third party in the same form and format as produced by that third party within three (3) business days of receipt from the third party, and may not use those documents in this Action until such production has been made.

21

11.3     If a third-party production is not Bates-stamped, the Issuing Party will endorse its production with a unique Bates prefix and numbering scheme prior to reproducing them to all other Parties.  Any Party may designate all or part of a third-party production as confidential.

11.4     Nothing herein shall impact third-party productions made prior to the execution of this ESI Protocol.

**12.     MODIFICATION**

12.1     Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical production of documents or ESI and is otherwise consistent with the Federal Rules of Civil Procedure.

DATED this 22nd of May, 2023.

Daphne A. Oberg
United States Magistrate Judge

.

**ATTACHMENT A**

The metadata of electronic documents should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| BEGBATES | EDC0000001 | First Bates number of native file document/email |
| ENDBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| DATE_HC | 10/12/2020 | The date a hard copy document was produced. |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s) |

| | | |
|---|---|---|
| | | **semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion. Native: (empty) **This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion. Email: Time zone Native: (empty) |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty) Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty) Native: Time the document was created including time zone **This data must be a separate field and cannot be |
| DATE_MOD | 10/12/2010 | Email: (empty) Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty) Native: Time the document was last modified including the time zone |

24

|  |  |  |
|---|---|---|
|  |  | **This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last accessed including the time zone<br>**This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |
| HEADER | Return-Path:<br><example_from@dc.edu><br>X-SpamCatcher-Score:1[X]<br>Received:from[136.167.40.119]<br>(HELO dc.edu)<br>by fe3.dc.edu (CommuniGate Pro SMTP4.1.8)<br>with ESMTP-TLS id 61258719 for example_to@mail.dc.edu;<br>Mon, 23 Aug 2004 11:40:10 -0400<br>Message-ID:<br><4129F3CA.2020509@dc.edu><br>Date: Mon, 23 Aug 2005 11:40:36 -400<br>From: Taylor Evans<br><example_from@dc.edu><br>User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1)<br>Gecko/20020823 Netscape/7.0<br>X-Accept-Language:en-us,en<br>MIME-Version:1.0<br>To: Jon Smith<br><example_to@mail.dc.edu><br>Subject:Business Development Meeting<br>Content-Type: text/plain;charset=us-ascii; format=flowed<br>Content-Transfer-Encoding:7bit | Email: The email header information<br>Native: (empty) |

| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
|---|---|---|
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

**Attachment B**

Unless otherwise addressed in the Stipulated Modified Standard Protective Order, Documents should be provided in native format for the following file formats:

**1.  Document Formats**

| File Type | Possible Extensions/Format |
|---|---|
| Microsoft Excel | .xls, .xlsx, .xlt, .xls95, .xlt5, .xlsm, .xlr, .xlsb |

**2.  Image and CAD Formats**

| File Type | Possible Extensions/Format |
|---|---|
| CAD | .dgn, .dwg, .dxf |

**3.  Audio and Video**

| File Type | Possible Extensions/Format |
|---|---|
| Most common audio and video formats | .mp3, .aac, .wma, .wav, .flac, .m4a, .ogg, .aiff, .oga, .amr, .vox, .mpg, .mpeg, .avi, .wmv, .flv, .ogv, .mov, .qt, .m4v, .mp4, .webm, .mpe, .asf, .opus |