# Exhibit A

Carol V. Gilden (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Email: cgilden@cohenmilstein.com

Keith M. Woodwell (#7353)
**CLYDE, SNOW & SESSIONS, P.C.**
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 322-2516
Facsimile: (801) 521-6280
Email: kmw@clydesnow.com

*Attorneys for Lead Plaintiffs*

*[Additional Counsel on Signature Page]*

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
NORTHERN DIVISION**

---

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, *et al.*, | Case No. 1:19-cv-00128 |
| Plaintiffs, | District Judge David Barlow |
| v. | Magistrate Judge Daphne A. Oberg |
| PLURALSIGHT, INC. *et al.*, | |
| Defendants. | |

---

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS**

Lead Plaintiffs the Indiana Public Retirement System ("INPRS") and the Public School Teachers' Pension and Retirement Fund of Chicago ("CTPF") (collectively, "Lead Plaintiffs"), by and through their counsel, hereby serve on Defendants Pluralsight, Inc. ("Pluralsight"), Aaron Skonnard and James Budge (collectively, "Defendants"), this First Set of Requests for Production to Defendants.

In accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs request that each of the Defendants electronically produce the documents requested below within thirty (30) days of service to:

Norhan Bassiouny
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, Fourteenth Floor
New York, NY 10005
nbassiouny@cohenmilstein.com

Plaintiffs reserve the right to serve further discovery requests at a later point in time. Plaintiffs reserve all rights regarding future discovery requests, including the right to serve additional document requests related to the requests below, or on any other subject.

**DEFINITIONS**

1.     All definitions and abbreviations in Plaintiffs' Second Amended Class Action Complaint (ECF No. 173) (the "Complaint") have the same meaning here, unless otherwise specified.

2.     "10b5-1 Plan" refers to any contract, instruction, or written plan that specifies or provides a mechanism for determining the amount, price, or date of transactions of Pluralsight securities, including any modifications or amendments to such 10b5-1 Plans.

3.     "2019 CRO Plan" refers to the 2019 Chief Revenue Officer Compensation Plan referred to in Pluralsight's March 18, 2020 Schedule 14A.

4.    "Action" refers to the case captioned *Indiana Public Retirement System v. Pluralsight, Inc.*, No. 1:19-cv-00128 (D. Utah).

5.    "All," "any," and "each" shall each be construed as encompassing any and all.

6.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7.    "Audit and Professional Engagement Period" is defined to be synonymous in meaning and equal in scope to the usage of the term in 17 C.F.R. § 210.2-01(f)(5).

8.    "Pluralsight" means Pluralsight, Inc. and each of its divisions, business units, subsidiaries, affiliates, predecessors, successors-in-interest, and companies under its direct or indirect management or control, as well as any of its present and former agents, directors, officers, managers, analysts, accountants, attorneys, representatives, servants, employees, or other persons acting or purporting to act on its behalf or under its direction or control.

9.    "Billings" and "Billings Growth" refers to Pluralsight's business metric disclosed in its filings with the SEC and other communications to analysts and investors.

10.    "Board" refers to Pluralsight's Board of Directors.

11.    "Board Management Application" refers to any application, software, platform, or system used for corporate board management and governance, such as Diligent Boards.

12.    "Business Intelligence Application" refers to any application, software, platform, or system to collect, store, analyze, share, report, or visualize business data, such as Tableau, Domo, or Power BI.

13.    "Class Period" means January 16, 2019 to July 31, 2019, inclusive.

14.    "Communication" means any exchange of information by any means of

transmission, including all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, voicemails, letters, notes, telegrams, facsimiles, email, memoranda, documents, writings, text messages, instant messages, electronic chat messages, Slack messages, or other forms of communications, including both oral and written communications.

15.    "Concerning" means constituting, reflecting, referring to, describing, evidencing, demonstrating, showing, involving, regarding, referencing, incorporating, effecting, or otherwise pertaining to or relating to, either directly or indirectly, or being in any way logically or factually connected with the subject matter of the Request.

16.    "Customer Relationship Management Application" or "CRM Application" refers to a computer program, system, or database that helps manage communications with and sales to customers and contains contact information, such as Salesforce, Microsoft Dynamics 365, SAP Sales Cloud, and Oracle NetSuite.

17.    "Defendants" means Pluralsight and the Individual Defendants.

18.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes communications, "writings" and "recordings" (as defined by Rule 1001 of the Federal Rules of Evidence), and all forms of ESI. Documents that are identical but are in the possession of more than one person or entity are separate documents within the meaning of this term. A draft or non-identical copy or translation is a separate document within the meaning of this term.

19.    "EY" refers to Ernst & Young LLP and each of its divisions, business units, subsidiaries, affiliates, predecessors, successors-in-interest, and companies under its direct or indirect management or control, as well as any of its present and former agents, directors, officers, managers, analysts, accountants, attorneys, representatives, servants, employees, or other persons

4

acting or purporting to act on its behalf or under its direction or control.

20.    "ESI" means information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, and shall be construed consistent with its usage in Federal Rule of Civil Procedure 34 and the Advisory Committee Notes to Rule 34.

21.    "Identify," when referring to a person, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addressee(s) and recipient(s); and (v) starting and ending Bates numbers or privilege log identification numbers. When referring to things that are not persons or documents, "to identify" means to clearly establish or indicate what that thing is.

22.    The "Individual Defendants" means Aaron Skonnard and James Budge.

23.    "Including" means "including, without limitation."

24.    "Meeting" refers to any contemporaneous presence or gathering of any natural persons (including in person, by telephone, or by video conference) for any purpose, regardless of whether the presence or gathering was by chance or prearranged, and regardless of whether the presence or gathering was formal or informal or occurred in connection with some other activity.

25.    "Person" means any natural person or any legal entity, including any business or governmental entity or association.

26.    "Personnel" refers to any of Your current or former directors, officers, or employees, or independent contractors employed by You.

27.    "Policies," "procedures" or "guidelines" means any rule, policy, directive, program, custom or course of conduct, whether formal or informal, written or unwritten, recorded

or unrecorded.

28.     "PwC" refers to PricewaterhouseCoopers LLP and each of its divisions, business units, subsidiaries, affiliates, predecessors, successors-in-interest, and companies under its direct or indirect management or control, as well as any of its present and former agents, directors, officers, managers, analysts, accountants, attorneys, representatives, servants, employees, or other persons acting or purporting to act on its behalf or under its direction or control.

29.     "SPO" refers to the secondary public offering of Pluralsight Class A common stock.

30.     "SPO Underwriters" refers to Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC, Barclays Capital, Inc., Merrill Lynch, Pierce, Fenner & Smith Inc., Citigroup Global Markets Inc., KeyBanc Capital Markets Inc., Raymond James & Associates, Inc., Needham & Company, LLC, SunTrust Robinson Humphrey, Inc., First Analysis Securities Corporation, and Robert W. Baird & Co. Incorporated.

31.     "You" (capitalized) or "Your" (capitalized) refers to the Defendant responding to these Requests, plus (a) if You are a corporate entity, that entity and each of its divisions, business units, subsidiaries, affiliates, predecessors, successors-in-interest, and companies under its direct or indirect management or control, as well as any of its present and former agents, directors, officers, managers, analysts, accountants, attorneys, representatives, servants, employees, or other persons acting or purporting to act on its behalf or under its direction or control; or (b) if You are a natural person, that natural person and each of his or her employees, partners, representatives, agents, attorneys, accountants, advisors, assigns, and any other entities or individuals acting or purporting to act on their behalf or at their direction, in their capacities as such.

6

## INSTRUCTIONS

1.      The use of the singular form of any word includes the plural and vice versa.

2.      The use of any verb in any tense includes the use of that verb in all other tenses.

3.      Unless otherwise specified, the use of the capitalized form of a term includes the non-capitalized form of the term and vice versa.

4.      You are requested to produce all documents described below that can be located by a reasonable search of materials within Your possession, custody or control, or in the possession, custody or control of Your officers, directors, agents, employees, representatives, affiliated or associated companies or any other person or entity acting or purporting to act on Your behalf.

5.      These Requests are continuing in accordance with Federal Rule of Civil Procedure 26(e). You must supplement Your responses within a reasonable time if You obtain, discover, or become aware of additional documents responsive to these Requests between the time of initial production and the time of the trial.  Such supplemental documents must be produced promptly upon discovery.  Plaintiffs specifically reserve the right to seek supplementary responses and the additional supplementary production of documents before trial.

6.      Unless otherwise indicated, the documents requested include all documents in Your possession, custody, or control. Without limitation of the terms "possession, custody, or control," as used in the preceding sentence, a document is in Your possession, custody, or control if You have actual possession or custody or the right or practical ability to obtain the document or a copy of the document upon demand from one or more of Your representatives, advisors, attorneys, or any other person or public or private entity that has actual physical possession of the document.

7

7.      As the term "possession" relates to email, the term includes email contained in Your electronic email directories, including (a) "deleted" emails that have not been permanently deleted, including all subdirectories irrespective of the title of the subdirectories; (b) "sent" emails, including all subdirectories irrespective of the title of the subdirectories; and (c) "received" emails, including all subdirectories irrespective of the title of the subdirectories.

8.      With respect to the documents produced, You must produce them as they are kept in the usual course of business, including producing any tabs, labels, or directories of files identifying the documents.

9.      You must produce entire documents including attachments, enclosures, cover letters, parent emails, memoranda, and appendices. Documents not otherwise responsive to the Requests are to be produced if the documents are attached to, or enclosed with, any document that is responsive. Examples of these documents include email attachments, routing slips, transmittal memoranda or letters, comments, evaluations, and similar documents. In the case of email attachments, if either the email or any of its attachments is responsive, produce the email and all of the corresponding attachments. Documents attached to each other must not be separated.

10.     A document with handwritten, typewritten, or other recorded notes, editing marks, modifications, additions, or deletions is not and will not be deemed to be identical to one without the notes, editing marks, modifications, additions, or deletions.

11.     The term "original" includes the file copy or copies of any document if there is no actual original copy.

12.     All ESI and other documents that exist in electronic form must be produced in accordance with any operative ESI protocol as agreed to by the Parties.

13.     In accordance with Federal Rule of Civil Procedure 26(b)(5), if any document

responsive to a Request below is withheld from production on the basis of any claim of privilege, You must submit, in lieu of the document, a written privilege log entry in accordance with the operative ESI protocol that has been entered by the Court.

14.    In accordance with Federal Rule of Civil Procedure 34(b)(2)(C), if You object to any individual Request, You must state whether any responsive materials are being withheld on the basis of that objection, and You must specify the part of the Request to which You are objecting and produce all materials that are responsive to the remainder of the Request.

15.    If You object to part of a request, You must state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all documents called for by the portion of the request to which You do not object.

16.    If You object to any Request on the ground that it is overbroad or unduly burdensome for any reason, respond to that Request as narrowed to the least extent necessary, in Your judgment, to render it not overbroad or unduly burdensome and state specifically the extent to which You have narrowed that Request for purposes of Your response and the factual basis for Your conclusion.

17.    You are further requested to provide all portions of requested documents that are not subject to a claim of privilege by redacting, excising or otherwise protecting the portions for which a privilege is asserted.

18.    If any document responsive to any Request once was, but is no longer, in Your possession, custody, or control, or has been lost, destroyed, discarded, or otherwise disposed of, You are requested to identify the document as completely as possible, including the following information:

(a)    the nature of the document;

9

(b)    the person(s) who prepared or authorized the document and, if applicable, the person(s) to whom the document was sent;

(c)    the date on which the document was prepared or transmitted; and

(d)    if possible, what has happened to the document and where it or any copies of it may be located, or if the document was lost or destroyed, the date on which the document was lost or destroyed, and, if destroyed, the conditions of and the reasons for destruction and the persons requesting and performing the destruction.

19.    Each Request is to be construed independently, and no Request is to be viewed as limiting the scope of any other Request.

20.    Each document is to be produced along with all drafts, without abbreviation or redaction.

21.    If no documents are responsive to a particular Request, You are to state that no responsive documents exist. If You object to the scope or breadth of any Request, You should identify, to the extent possible, those documents that You will produce notwithstanding the objection.

**RELEVANT TIME PERIOD**

Unless otherwise stated, these Requests seek copies of all responsive documents that were created or used during the time period from August 1, 2018 to January 31, 2020 inclusive (the "Relevant Period"), and include all documents and information concerning the Relevant Period, even though prepared, created, used, or published outside the Relevant Period. If a document prepared before or after this period is necessary for a correct or complete understanding of any document covered by a Request, You must produce the earlier or subsequent document as well. If any document is undated and the date of its preparation cannot be determined, the document must be produced if otherwise responsive to these Requests.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Directories, organizational charts, or other documents sufficient to identify Pluralsight's organization, officers and employees, and reporting structure, including all organizational charts showing either formal or informal (*i.e.*, "dotted-line") reporting relationships between or among any officers, directors, Board committees, or business units of Pluralsight.

**REQUEST FOR PRODUCTION NO. 2:**

Documents sufficient to describe the responsibilities, powers, and authorities of the Individual Defendants and each current or former Pluralsight employee identified in Defendants' Rule 26(a)(1) disclosures.

**REQUEST FOR PRODUCTION NO. 3:**

The employment agreements for each of the Individual Defendants and each current or former Pluralsight employee identified in Defendants' Rule 26(a)(1) disclosures.

**REQUEST FOR PRODUCTION NO. 4:**

The most current resume or curriculum vitae for each of the Individual Defendants and each current or former Pluralsight employee identified in Defendants' Rule 26(a)(1) disclosures.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents Concerning the recording, tracking of, monitoring of, calculation of, accounting for, or disclosure of historical, current, or projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents prepared for, distributed at, or memorializing any meetings, whether internal or external to Pluralsight, involving the Individual Defendants or any other officer or Executive of Pluralsight, during which historical, current, or projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force was discussed.

11

**REQUEST FOR PRODUCTION NO. 7:**

Documents containing summary statistics or metrics for calendar years 2018 and 2019 showing the total headcount of sales representatives, quota-bearing sales representatives, enterprise sales representatives, and tenured sales representatives.

**REQUEST FOR PRODUCTION NO. 8:**

Any policies, procedures or guidelines concerning the recording, reporting, tracking, categorizing, or accounting for sales to customers, including subscriptions, subscription renewals, sale commitments, and discounts, and all communications regarding with or violations of those policies, procedures, or guidelines.

**REQUEST FOR PRODUCTION NO. 9:**

Documents sufficient to identify all CRM and Business Intelligence Applications, internal databases, or other systems used to record, track, monitor, calculate, visualize, or account for historical, current, or projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force.

**REQUEST FOR PRODUCTION NO. 10:**

Documents sufficient to show the use of or access to any applications, internal databases, or other systems identified in documents responsive to Request No. 9, including, but not limited to, user activity reports, logins, and data viewed, by the Individual Defendants and each current or former Pluralsight employee identified in Defendants' Rule 26(a)(1) disclosures.

**REQUEST FOR PRODUCTION NO. 11:**

Documents sufficient to identify all personal, business, and mobile phone numbers, desktop or laptop computers, mobile or tablet devices, email accounts and addresses, instant messaging accounts, and social media aliases, screen names, or handles for each of the Individual Defendants and for each current or former Pluralsight employee identified in Defendants' Rule 26(a)(1) disclosures.

**REQUEST FOR PRODUCTION NO. 12:**

Documents sufficient to identify the names, titles, phone numbers, and email addresses for any personal or executive assistants for each of the Individual Defendants and for each current or former Pluralsight employee identified in Defendants' Rule 26(a)(1) disclosures.

**REQUEST FOR PRODUCTION NO. 13:**

All calendars, date books, appointment books, telephone logs, or business, personal, or mobile phone records for each Individual Defendant and each current or former Pluralsight employee identified in Defendants' Rule 26(a)(1) disclosures.

**REQUEST FOR PRODUCTION NO. 14:**

All documents concerning the accounting principles used or estimates and assumptions made in connection with determining, accounting for, recognizing, or disclosing revenue, deferred revenue, Billings, key business metrics, and other GAAP and non-GAAP financial measures used or disclosed by Pluralsight.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents prepared for, distributed to, created in connection with, or used in any formal or informal meeting of Pluralsight's Board, including any committee meetings of the Board, including, but not limited to, board packages, board books, financial closing packages, meeting minutes, exhibits, agendas, materials, presentations, memoranda, and resolutions (whether adopted or discussed).

**REQUEST FOR PRODUCTION NO. 16:**

Documents sufficient to identify any Board Management Applications used by Pluralsight, its Board and members of the Board, the Individual Defendants, or any current or former Pluralsight employee identified in Defendants' Rule 26(a)(1) disclosures.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents Concerning PwC's audits, interim reviews, analyses, evaluations, or testing

13

of Pluralsight's accounting for, disclosure of, or internal control over financial reporting of revenue, deferred revenue, Billings, key business metrics, or other GAAP or non-GAAP financial measures during the Audit and Professional Engagement Period for any audit or non-audit services PwC provided during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents Concerning EY's audits, interim reviews, analyses, evaluations, or testing of Pluralsight's accounting for, disclosure of, or internal control over financial reporting of revenue, deferred revenue, Billings, key business metrics, or other GAAP or non-GAAP financial measures during the Audit and Professional Engagement Period for any audit or non-audit services EY provided during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents Concerning any communications, press releases, conference calls, webcasts, presentations, or meetings with any Pluralsight shareholders, securities analysts, financial analysts, institutional investors, financial publications, or investment banks, including, but not limited to:

    (a)    Pluralsight's August 2018 annual investor and analyst meeting;

    (b)    Pluralsight's August 1, 2018 earnings call;

    (c)    Pluralsight's October 24, 2018 earnings call;

    (d)    January 16, 2019 Needham & Company, LLC Growth Conference;

    (e)    Pluralsight's February 13, 2019 earnings call;

    (f)    Pluralsight's May 1, 2019 earnings call;

    (g)    Pluralsight's May 1, 2019 earnings call; and

    (h)    Pluralsight's January 14, 2020 Needham & Company, LLC Growth Conference.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents Concerning the recognition or disclosure of revenue, deferred revenue,

14

Billings, key business metrics, or other GAAP and non-GAAP financial measures in any filings by Pluralsight or the Individual Defendants with the SEC, including, but not limited to the:

    (a)      August 1, 2018 Form 10-Q;

    (b)      September 21, 2018 Draft Registration Statement;

    (c)      October 24, 2018 Form 10-Q;

    (d)      February 21, 2019 Form 10-K for the year ended December 31, 2018;

    (e)      March 4, 2019 Form S-1;

    (f)      March 7, 2019 free writing prospectus and prospectus;

    (g)      Pluralsight's May 1, 2019 Form 10-Q;

    (h)      Pluralsight's June 27, 2019 Form 10-K/A; and

    (i)      Pluralsight's July 31, 2019 Form 10-Q.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents Concerning the following January 16, 2019 statements by Budge (*see* Complaint ¶¶ 58-59):

(a) "[W]e went from roughly 0 enterprise-class reps to today, we have about 120 of those reps."

(b) "[T]he aggregate quota-bearing reps went from about 80 at that time to today we have about 250."

(c) "We'll grow that to over 300 as we go through 2019."

(d) "So while we'll continue to add a good 70 to 80 a year, it's lower as a percentage of the total growth that we have, which is a reason why you're seeing some of the efficiencies in the model."

(e) "In the second quarter of this year -- of last year, I should say, last year 2018, it was the first quarter in the previous 8 quarters where we actually grew our B2B billings number faster than our sales and marketing line."

(f) "[W]e'd kind of crossed over into where we were starting to see some of the efficiencies of our models. We built out some of the infrastructure around sales to scale. We didn't have to keep growing it."

(g) "[I]n the third quarter, we grew our B2B billings by 53% and only grew our sales and

15

marketing expense by 29%."

(h) "So I think you're starting now to see some of that efficiency flow through the business, which is why we were able to get back to cash flow profitable in the third quarter."

(i) "We expected, we said we would do it again in the fourth quarter. You can assume we did do that in the fourth quarter, where we hit our cash flow profitable on operating cash on a free cash basis."

(j) "So…it seems to be working. So we had a lot of great sales reps. They're killing it. And a lot of great infrastructure around them that has improved our retention massively and we're now at scale, we're starting to see the efficiencies around that."

**REQUEST FOR PRODUCTION NO. 22:**

All documents concerning Pluralsight's disclosure on July 31, 2019 of "sales execution challenges," billings growth of 23% year-over-year, and B2B billings growth of 27% year-over-year.

**REQUEST FOR PRODUCTION NO. 23:**

All documents concerning or memorializing communications with the SPO Underwriters in connection with the September 21, 2018 Draft Registration Statement, the March 2019 SPO, or the SPO Offering Documents in which Pluralsight's historical or projected billings, sales, revenue, profitability, common stock's trading or offering price, or the timing of the SPO, was discussed.

**REQUEST FOR PRODUCTION NO. 24:**

All documents concerning or memorializing discussions with or between Pluralsight's officers, directors or employees, or with third parties, concerning the SPO, the SPO's timing, number of shares, offering price, the decision not to proceed with the September 21, 2018 Registration Statement or the decision to proceed with the March 2019 offering.

**REQUEST FOR PRODUCTION NO. 25:**

All documents concerning the March 2019 SPO, including the number of shares to be sold, the identities of the selling shareholders, and the timing of the SPO.

**REQUEST FOR PRODUCTION NO. 26:**

All documents concerning communications with, requests by, or actions of any

16

governmental or regulatory agency, including, but not limited to, the U.S. Securities and Exchange Commission ("SEC") the Financial Industry Regulatory Authority ("FINRA"), or NASDAQ concerning Defendants' public statements or transactions in Pluralsight securities. This request includes all documents produced or provided to any governmental or regulatory agency and any transcripts, notes, or documents memorializing any interviews, depositions, or testimony by the Individual Defendants.

**REQUEST FOR PRODUCTION NO. 27:**

All documents concerning the retention, engagement, or consultation with any third party, including public relations consultants, disclosure consultants, or legal advisors in connection with Pluralsight's public disclosures.

**REQUEST FOR PRODUCTION NO. 28:**

All documents and communications concerning Pluralsight's share price, market capitalization, number of shareholders, volume of shares traded, the value of any Pluralsight securities, or coverage of Pluralsight securities analysts or the news media.

**REQUEST FOR PRODUCTION NO. 29:**

Documents sufficient to identify any Individual Defendant's actual or potential compensation from Pluralsight for or during calendar years 2018 and 2019, including, but not limited to, documents related to:

(a) any severance package, termination agreement or parachute payments;

(b) payments made pursuant to §280G of the Internal Revenue Code, 26 U.S.C. §280G;

(c) all bonuses and/or other compensation policies, terms and agreements;

(d) any performance reviews;

(e) the benchmarking of salaries against peer groups; and

(f) all payments, loans or taxable benefits received from Pluralsight.

**REQUEST FOR PRODUCTION NO. 30:**

All documents concerning the Formation and terms of the Individual Defendants' 10b5-1 plans, including amendments and modifications.

**REQUEST FOR PRODUCTION NO. 31:**

All documents concerning the Individual Defendants' holdings and transactions in Pluralsight securities for or during calendar years 2018 and 2019, including, but not limited to:

(a) Pluralsight securities held;

(b) purchases, sales, donations, or use of Pluralsight securities as collateral;

(c) Any loans of Pluralsight stock or options, including, but not limited to, any prepaid variable forward contract or sale lending agreement; and

(d) the use of 10b5-1 Plans for such transactions.

**REQUEST FOR PRODUCTION NO. 32:**

Any policies, procedures, or guidelines concerning public disclosures to investors in place at Pluralsight and all communications regarding compliance with or violations of those policies, procedures, or guidelines.

**REQUEST FOR PRODUCTION NO. 33:**

Any policies, procedures, or guidelines concerning insider trading or 10b5-1 Plans in place at Pluralsight and all communications regarding compliance with or violations of those policies, procedures, or guidelines.

**REQUEST FOR PRODUCTION NO. 34:**

All documents concerning the resignation or termination from Pluralsight of Joe DiBartolomeo, including, but not limited to, any performance evaluations or reviews and documents concerning the 2019 CRO Plan.

**REQUEST FOR PRODUCTION NO. 35:**

All documents produced in connection with any other civil, criminal, or regulatory proceeding, including any transcripts of depositions or testimony, concerning Defendants' public

18

statements, transactions in Pluralsight securities, or Pluralsight's billings, revenues, or sales during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 36:**

Liability insurance policies carried by Pluralsight or the Individual Defendants providing or potentially providing coverage to any of the Defendants in connection with the claims asserted in this Action.

**REQUEST FOR PRODUCTION NO. 37:**

Any indemnification agreements between Pluralsight and either of the Individual Defendants, including agreements to assume liability, agreements to assume the defense, and joint defense agreements made by Defendants, any insurer for Defendants or any other entities that may be financially affected by the claims in this Action.

**REQUEST FOR PRODUCTION NO. 38:**

Any policies, procedures, or guidelines concerning document retention and destruction policies in place at Pluralsight and all communications regarding compliance with or violations of those policies, procedures, or guidelines.

**REQUEST FOR PRODUCTION NO. 39:**

Documents sufficient to identify the date and recipients of any document retention notices sent or provided to the Individual Defendants, each current or former Pluralsight employee identified in Defendants' Rule 26(a)(1) disclosures, and any other current or former Pluralsight officer, director, or employee.

**REQUEST FOR PRODUCTION NO. 40:**

All documents identified in Defendants' Rule 26(a)(1) disclosures.

Dated:  February 3, 2023

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By:    */s/ Carol V. Gilden*

Carol V. Gilden (admitted *pro hac vice*)

190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
Email: cgilden@cohenmilstein.com

Steven J. Toll (admitted *pro hac vice*)
Jan Messerschmidt (admitted *pro hac vice*)
William Wilder (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave NW, Suite 500 East
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: stoll@cohenmilstein.com
        jmesserschmidt@cohenmilstein.com
        wwilder@cohenmilstein.com

Norhan Bassiouny (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, Fourteenth Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: nbassiouny@cohenmilstein.com

Keith M. Woodwell (#7353)
**CLYDE, SNOW & SESSIONS, P.C.**
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 322-2516
Facsimile: (801) 521-6280
Email: kmw@clydesnow.com

*Counsel for Lead Plaintiffs Indiana Public*
*Retirement System and Public School Teachers'*
*Pension and Retirement Fund of Chicago and the*
*Proposed Class*

20