# Exhibit D

# COHENMILSTEIN

Jan Messerschmidt
Will Wilder
(202) 408-4663
(202) 408-4699
wwilder@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

April 15, 2023

Stephanie L. Jensen
Caitlin McKelvie
Wilson Sonsini Goodrich & Rosati
701 Fifth Avenue, Suite 5100
Seattle, Washington 98104-7036
sjensen@wsgr.com
cmckelvie@wsgr.com

> Re:   *Indiana Public Retirement System and Public School Teachers' Pension and Retirement Fund of Chicago v. Pluralsight, Inc., et al.*

Dear Stephanie:

This letter responds to your April 4, 2023 letter setting out Defendants' understanding of the April 3, 2023 meet and confer call between the parties regarding Plaintiffs' First Set of Requests for Production to Defendants ("RFPs") and Defendants' Responses and Objections to the RFPs ("R&Os"). Below are some clarifications about the parties' discussions during our April 3 call and additional responses on certain items. Plaintiffs reserve all rights with respect to the RFPs.

## I.   <u>Global Issues</u>

**Meaning of possession, custody, or control:** We agree with your account as to the parties' disagreement regarding the definition of "possession, custody, or control." As we explained during the call, Defendants' objection to the definition of this term is inconsistent with consistent caselaw in this district and nationwide. *OL Private Counsel, LLC, v. Olson*, 2022 WL 16574308 (D. Utah Nov. 1, 2022) (Oberg, M.J.) ("Courts will find documents to be within a party's control if the party has actual possession, custody, control, or the legal right to obtain the documents on demand."); ; *United States ex rel. Polukoff v. Sorensen*, 2020 WL 4904164, at *10 (D. Utah Aug. 20, 2020) (Oberg, M.J.). Please let us know by April 21 whether you agree to this definition.

COHENMILSTEIN

April 15, 2023
Page 2

**Relevant Time Period:** We largely agree with your account of our discussions as to the Relevant Time Period, but add one clarification that, during our call, we stated we would consider a shorter time period if there was an objective and nonarbitrary basis for doing so. We have since conferred internally and considered whether there is such a basis for a shorter period, including your proposed period of October 1, 2018 through September 30, 2019, and have concluded that there is not. Accordingly, we stand on our request for the period of August 1, 2018 through January 31, 2020 inclusive as the "Relevant Time Period", which is warranted, reasonable, and proportionate to the needs of the case.

The Second Amended Complaint ("Complaint") specifically alleges facts showing why the Relevant Time Period is relevant to both falsity and scienter. For starters, the Complaint alleges that Defendants made statements beginning on August 1, 2018 that are relevant to both falsity and scienter. ¶¶ 47-56, 123. On August 1, for instance, Budge told investors that the Company relied on deals he called "doubles and triples" that typically took "5 to 6 months" to progress through the sales pipeline. ¶ 51. Budge added that "because the Company closely monitored its billings pipeline, including the amount of time the sales team took to close deals, management felt 'great' about the pipeline for the 'next several quarters.'" *Id.* To "achieve consistent billings growth," though, Budge told investors that the Company needed to "take into account not just the sales representative headcount" but also whether those sales representatives were sufficiently "ramped" to reach their "full quota." ¶ 52. This ramping process, Budge explained, typically takes at least 15 to 18 months before sales representatives "are producing enough annual quota to meet the internal budgets that we have" and "[a]t around the 2-plus year mark, they are starting to achieve their full quota." *Id.*

Further, on January 14, 2020, Budge made specific statements to analysts about his prior statements that explained that it was "well documented we had a capacity gap the first half of 2019," the Company "came into the year with fewer sales reps than we had planned," and "didn't decide where they should go early enough in 2018 leading in 2019." ¶ 101.

Thus, Defendants' own statements, as detailed in specific allegations in the Complaint, demonstrate why the Relevant Time Period is warranted and reasonable. To assess the falsity of Budge's January 16, 2019 statement that the Company had "about 250" "quota-bearing reps on the ground," and whether Defendants acted with scienter, necessarily requires an inquiry into both the number and productivity of sales representatives well before that statement and at least as early as August 1. And Budge's statement on January 14, 2020 shows that there are likely to be documents reflecting Defendants' own internal account of why such a target was not met. We believe the Relevant Time Period is thus firmly supported by the facts alleged in the Complaint and is more than reasonable given that courts have consistently approved of time periods far longer. *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 1812822, at *5–6 (S.D. Cal. May 6, 2021) (affirming Magistrate Judge's approval of discovery period five months before and eight months after the class period and rejecting as "arbitrary" defendants' proposal based on the start and end of fiscal quarters).

COHENMILSTEIN

April 15, 2023
Page 3


Please let us know by April 21 whether Defendants agree to produce documents created or used during the Relevant Time Period.

## II.    Specific Requests and Responses

**Request No. 1:** We agree, in part, with your account of our discussions as to Request Nos. 1 and 2. In your R&Os, you stated that you would produce "Pluralsight's corporate structure chart" and "organizational charts" for the seven persons identified in your initial disclosures for the period of January 16, 2019 to July 31, 2019. When we noted that this was a different period than your proposed time period that started 15 days earlier, you stated the January 16th date was an error. We otherwise agree with your proposal to limit the scope of this Request to Pluralsight's corporate structure chart and organizational charts for those seven persons, conditional on your acceptance of the Relevant Time Period as defined in the RFPs and referred to above for this Request.

**Request No. 2:** We agree to limit the scope of this Request to the seven persons identified by Defendants in their initial disclosures, conditional on your acceptance of the Relevant Time Period as defined in the RFPs and referred to above for this Request.

**Request No. 3:** We agree, in part, with your account as to Request No. 3. During our April 3 call, we noted that any of Joe DiBartolomeo's employment agreements during the Relevant Time Period are relevant. We will agree to limit this Request to the employment agreements for Budge, Skonnard, and DiBartolomeo drafted, prepared, or in effect during the Relevant Time Period. For the avoidance of doubt, we do not agree to limit this Request to only final employment agreements.

**Request Nos. 4, 23-25:** We agree with your account as these Requests. Please let us know by April 21 if your position has changed or if you would like to further discuss the scope of these Requests.

**Request No. 5, 6, 9, 15, 16, 19, 21, 22, 27, 29, 32-33, 37-38.** Plaintiffs disagree, in part, with Defendants' account of our discussion of these Requests. The parties agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement as to search terms, custodians, and time period. Plaintiffs made no other representations about any other portion of Defendants' responses to these Requests as it was unnecessary given the parties' agreement. Conditional on your acceptance of the Relevant Time Period as defined in the RFPs and referred to above, and subject to negotiation of relevant custodians and search terms, the Parties are in agreement on the scope of these Requests.

**Request No. 7:** We agree with your account as to Request No. 7. After conferring internally, we stand on the need for and relevance of this specific Request given that Defendants' statements make clear that metrics or statistics as to sales representatives were regularly created and are relevant. We agree to limit this Request to documents sufficient to identify summary

COHENMILSTEIN

April 15, 2023
Page 4

statistics or metrics showing the total headcount of sales representatives, quota-bearing sales representatives, enterprise sales representatives, and tenured sales representatives for any day such statistics or metrics were calculated or documented from August 1, 2018 to July 31, 2019. Please let us know by April 21 whether you will produce these documents.

**Request No. 8:** Plaintiffs agree with your account as to this Request, and we stand on this Request as written. Please let us know by April 21 if your position has changed or if you would like to further discuss the scope of this Request.

**Request No. 10:** Plaintiffs disagree, in part, with your account as to this Request. Defendants suggested that the Request could be interpreted to require disclosure of all logs of use of Microsoft Excel. Plaintiffs explained that to narrow the request, more information is likely needed about the applications, internal databases, or other systems used by Defendants. Conditional on Defendants' agreement to an ESI Protocol substantially similar to the Plaintiffs' draft sent to Defendants on March 20, 2023, Plaintiffs will agree to defer this Request until after Defendants make the required disclosures under that protocol.

**Request No. 11:** Plaintiffs disagree, in part, with your account of the parties' discussions as to this Request. Defendants made conclusory assertions that the Request seeks irrelevant documents. Plaintiffs stand on this Request as written.[1] Please let us know by April 21, 2023 if you have changed your position or whether you would like to discuss this Request further.

**Request No. 12:** Defendants proposed limiting their production in response to this Request to Defendants Skonnard and Budge and to Joe DiBartolomeo. Plaintiffs have further considered this proposal and do not agree to it. Defendants have identified seven persons as likely to possess information that they are likely to use as a defense. Plaintiffs thus stand on this Request as written. Please let us know your position on this Request by April 21, 2023.

**Request No. 13:** Defendants clarified their position that while they would not produce entire calendars in response to this Request, they would produce calendar appointments that were responsive to search terms. Conditional on your acceptance of the

---

[1] Plaintiffs undertook no obligation to provide case law to support their request, which flips the burdens for discovery. But at any rate, it has been a bedrock principle for nearly a century that the scope of relevance encompasses "the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts." Fed. R. Civ. P. 26(b) (1937). After eight decades, that express language was removed from the text of Rule 26(b) because, as the Advisory Committee explained, "[d]iscovery of such matters is so *deeply entrenched in practice* that it is no longer necessary to clutter the long text of Rule 26 with these examples." Fed. R. Civ. P. 26 (advisory committee notes on 2015 amendment) (emphasis added).

COHENMILSTEIN

April 15, 2023
Page 5

Relevant Time Period as defined in the RFPs and referred to above, and subject to negotiation of relevant custodians and search terms, the Parties are in agreement on the scope of these Request.

Request Nos. 14, 17-18: Defendants clarified that their interpretation of the term "revenue" would include deferred revenue and agreed to produce final memoranda about accounting principles for revenue, billings, and sales. Plaintiffs undertook to further consider whether they could provide more specifics for these Requests as to "key business metrics, and other GAAP and non-GAAP financial measures used or disclosed by Pluralsight." Plaintiff agrees to limit these Request to revenue (including any other reported revenue metric, such as deferred revenue), billings, sales, and any key business metrics and non-GAAP financial measures disclosed in Pluralsight's Form 10-K and 10-K/A for fiscal year ended December 31, 2018.  Please confirm your position on these Requests by April 21, 2023.

Request No. 26: Defendants agreed to confirm whether the SEC or NASDAQ communicated with or investigated Pluralsight between August 1, 2018 and January 30, 2020. Please let us know whether such communications or investigations occurred by April 21, 2023.

Request No. 28: Plaintiffs agreed to further consider Defendants' responses to this Request. After further consideration, Plaintiffs stand on this Request as originally written. Documents from custodians other than Mr. Skonnard and Mr. Budge, such as members of Pluralsight's Board of Directors or Investor Relations department, may be highly relevant to the claims in this case. Plaintiffs propose making this Request subject to a future agreement on search terms and custodians. Please state your position by April 21, 2023.

Request No. 30: Defendants clarified that they intend to produce the 10b5-1 trading plans for Defendants Skonnard and Budge that were in effect during the year 2019. Plaintiffs stand on this request as written. Documents concerning the formation of the 10b5-1 trading plans and any amendments or modifications to the 10b5-1 trading plans are highly relevant to the insider trading and scienter allegations in this matter. Please state your position by April 21, 2023.

Request No. 31: Plaintiffs undertook to follow up with Defendants to confirm their agreement on this Request. After conferring internally, Plaintiffs agree on the scope of this Request, as described in your April 3, 2023 letter, subject to negotiation of relevant time frame and search terms.

Request No. 34: The Parties did not agree on the scope of this Request. Plaintiffs reiterate their position that the termination from Pluralsight of Joe DiBartolomeo is highly relevant to this case. The Amended Complaint alleges that DiBartolomeo was responsible for sales team productively and intimately familiar with the true condition of the Company's sales force, both at the time of the alleged false statement and at the time of the insider sales of

COHENMILSTEIN

April 15, 2023
Page 6

Pluralsight stock. Further, Defendant Skonnard also announced DiBartolomeo's departure from the company on the same July 31, 2019 earnings call that disclosed the drop in billings growth and sales execution challenges at the heart of this case. The reasons for and circumstances of DiBartolomeo's departure from Pluralsight are thus highly relevant to Plaintiffs' claims. Please let us know whether you will produce documents, or stand on your objections, by April 21, 2023.

**Request No. 35:** The Parties agreed to further discuss this Request after Defendants confirm whether the SEC or NASDAQ communicated with or investigated Pluralsight between August 1, 2018 and January 30, 2020.

**Request No. 36:** The Parties agree that Defendants will produce all documents responsive to this Request as written in full.

**Request No. 39:** The Parties disagreed as to this Request. Plaintiffs are willing to defer this Request at this time, but reserve their right to insist on its production at a later date.

**Request No. 40:** Plaintiffs disagree, in part, with Defendants' account of these Requests. Defendants recognized and agreed that they have an obligation to produce documents that they intend to use to support their claims or defenses. Plaintiffs understand that the parties agree that Defendants will respond to this Request in full as written. Plaintiffs made no other representations about any other portion of Defendants' responses to these requests as it was unnecessary given the parties' agreement.

Please let us know by April 21 whether you agree with the above or whether you would like to discuss any of these matters further. Nothing in this letter should be taken as an agreement as to the propriety of Defendants' objections and Plaintiffs reserve all rights with respect to their Requests, including the right to seek any additional documents responsive to their Requests.

Additionally, please provide your further edits to the draft ESI agreement and Protective Order by April 21.

Sincerely,

*/s/ Jan Messerschmidt*
Jan Messerschmidt
Will Wilder