# Exhibit G

**WILSON SONSINI**

Wilson Sonsini Goodrich & Rosati
Professional Corporation

Stephanie L. Jensen

701 Fifth Avenue, Suite 5100
Seattle, Washington 98104-7036

O: 206.883.2556

sjensen@wsgr.com

June 24, 2023

*Via Email*

Jan Messerschmidt
Will Wilder
Cohen Milstein Sellers & Toll, PLLC
1100 New York Avenue NW
Fifth Floor
Washington, DC 20005
jmesserschmidt@cohenmilstein.com
wwilder@cohenmilstein.com

> Re: *Indiana Public Retirement System and Public School Teachers' Pension and Retirement Fund of Chicago v. Pluralsight, Inc., et al.*

Messrs. Messerschmidt and Wilder:

Defendants write in response to Plaintiffs' June 14, 2023 letter regarding the June 8, 2023 meet and confer between the parties concerning Plaintiffs' First Set of Requests for Production to Defendants ("RFPs") and Defendants' Responses and Objections to the RFPs ("R&Os"). Because the mediation of this case interrupted the parties' negotiations regarding these discovery requests and objections, this letter aims to memorialize Defendants' understanding of all relevant discussions between the parties to date. This includes the April 3, April 27, and June 8, 2023 meet and confers, as well as Defendants' April 4, 2023 letter and Plaintiffs' April 15, May 3, and June 23, 2023 letters regarding the RFPs and R&Os. Nothing in this letter should be taken as a waiver of Defendants' objections in response to Plaintiffs' RFPs.

## I.     Global Issues

**Production Readability Issues**: Defendants appreciate Plaintiffs notifying us of certain readability issues with certain documents in Defendants' prior productions. As we have previously conveyed via email, Defendants are working to resolve these issues as soon as practicable. Once a solution is identified, Defendants will reproduce the implicated documents.

**Google Drive and Other Cloud or Modern Attachments**: Plaintiffs' contention that the ESI Protocol requires producing linked documents as attachments is incorrect. The ESI Protocol makes no mention of hyperlinked documents and instead states only that "emails and their attachments shall be treated as a single Family Group." ESI Order ¶ 9.15. If Plaintiffs wanted hyperlinked documents to be produced in Family Groups, they should have (1) communicated that position to Defendants and (2) proposed such a provision in the text of the draft ESI Protocol. Plaintiffs failed to do so, and they cannot now try to rewrite the meaning of the ESI Protocol.

Plaintiffs' attempt to now redefine hyperlinked emails as "modern attachments" is inherently contradictory to the fundamental nature of the links contained in emails and the separate documents residing at the destination of the links. When a document is attached to an email, that document and its associated text and metadata are static—the document collected as the attachment is an accurate reflection of the document as it existed when it was attached to the email. Conversely, hyperlinked documents are not static. Indeed, the very reason for sending a link to a "live" document is often to

**WILSON SONSINI**

Cohen Milstein Sellers & Toll, PLLC
June 24, 2023
Page 2

allow access for revisions to take place in a jointly accessible and editable version of the document. As a result of normal business operations, many of the documents linked to in emails are likely to be substantially different at the time of collection than they were at the time the email was sent. Labeling these modified and updated documents as a "family," and representing that there is a "parent-child relationship" between the email and a specific document as it was later finalized would all but ensure an inaccurate record.

Second, the linked documents do not exist within the email system. Instead, the linked documents exist in their own separate systems (e.g., Google Drive), which constitute a different data source that is not and cannot be collected in conjunction with an email collection. These linked documents require a separate collection process and may be in the possession solely of document custodians that the parties otherwise did not agree to collect (or in the possession of a document custodian who is not within the control of Defendants). And even where the emails and documents **have** both been collected, there is no automated means through which the email and document can be coupled. Instead, connecting the link in an email to the document that it links to must be done manually for every single instance. It would be exceedingly costly and unreasonable to demand that Defendants engage in this manual process for every single email that links to a document—and such a process is unlikely to result in the production of any additional, non-duplicative relevant documents.

Accordingly, Defendants maintain their position that document links are not—and will not be treated as—attachments. *See Nichols v. Noom Inc.*, No. 20-CV-3677 (LGS) (KHP), 2021 U.S. Dist. LEXIS 46860, at *12 (S.D.N.Y. Mar. 11, 2021) ("[T]he Court does not agree that a hyperlinked document is an attachment.").

To be clear, Defendants **will** collect electronic documents from the to-be agreed-upon sources of the to-be agreed-upon custodians during the to-be agreed-upon relevant time period, will review those documents that hit on to-be agreed-upon search terms, and will produce those documents to the extent they are responsive to the to-be agreed-upon scope of RFPs and are not privileged. Thus Plaintiffs should still receive the documents, but such documents will be produced with accurate metadata.

**Relevant Time Period**: Plaintiffs have indicated an unwillingness to deviate from their initially requested relevant time period of August 1, 2018, through January 31, 2020, which Plaintiffs have made applicable to all discovery requests. Plaintiffs have not provided a reasonable basis for the relevance of such a sweeping time period, let alone for applying that time period uniformly across all of Plaintiffs' requests for production. Such an expansive time period is not narrowly tailored, and it places an unnecessary and undue burden on Defendants to collect, review, and produce documents unlikely to have any relevance to the claims and defenses at issue in this case.

In the R&Os, Defendants proffered a relevant time period of January 1, 2019 through July 31, 2019 and certain "Topical Documents" and "Categorical Documents," as defined below:

**Topical Documents**: non-privileged documents from the sources and custodians to be negotiated by the parties, that are within the January 1, 2019 through July 31, 2019 time frame, that hit on one or more of the search terms to be negotiated by the parties, and concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force.

**Categorical Documents**: (1) final materials (including scripts or talking points) for, transcripts of, press releases regarding, and final materials or presentations used during the January

**WILSON SONSINI**

Cohen Milstein Sellers & Toll, PLLC
June 24, 2023
Page 3

16, 2019 Needham & Company, LLC Growth Conference; Pluralsight's July 31, 2019 earnings call regarding its financial results for the second quarter of 2019; and the January 14, 2020 Needham & Company, LLC Growth Conference; and (2) final meeting materials or presentations for and minutes of Pluralsight's Board of Directors and Board Committee meetings, and meetings of the executive leadership team and/or department leaders during the Company's first quarter of 2019 ("Q1 19") and second quarter of 2019 ("Q2 19") regarding historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force. Defendants also proffered to produce final meeting materials or presentations for and minutes of meetings held during the Company's fourth quarter of 2018 ("Q4 18") to the extent budgets, projections, or quotas for Q1 19 or Q2 19 were finalized during such meetings.

This proffer was tailored to include all documents regarding any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case.

Defendants have already compromised by agreeing to substantially extend their initially proposed relevant time period of January 1, 2019 through July 31, 2019 to October 1, 2018 through September 30, 2019, in addition to the Categorical Documents described above. This compromise would encompass more than the full quarter before the challenged January 16, 2019 statement, and the full quarter following Q2 19 (including two months following the alleged corrective disclosure on July 31, 2019), in addition to documents related to the January 14, 2020 Needham & Company, LLC Growth Conference statement that Plaintiffs frame as an alleged "admission." Because Pluralsight was a publicly traded company during this time, it necessarily analyzed key business metrics on at least a quarterly basis, as reflected in its quarterly earnings releases, conference calls, and 10-Qs. As such, a relevant time period that encompasses a full quarter before the challenged statement and a full quarter following the close of the quarter in which the alleged corrective disclosure occurred is highly likely to encompass all communication and documents relevant to this case. Indeed, documents that predate October 1, 2018 are highly likely to be outdated by the time of the single challenged statement at issue in this case (made on January 16, 2019 regarding the number of quota-bearing sales representatives). To the extent these documents could have any relevance to Plaintiffs' claims, the burden on Defendants of collecting, reviewing, and producing such documents would be disproportionate to any possible benefit to Plaintiffs.

In addition to proposing a generally applicable relevant time period of October 1, 2018 through September 30, 2019, Defendants have compromised further by agreeing to produce certain categories of documents prepared before October 1, 2018 or after September 30, 2019 where relevant. For example, Defendants have agreed to produce the employment agreements of Messrs. Skonnard, Budge, and DiBartolomeo (Request No. 3), indemnification agreements between Pluralsight and Skonnard and Budge (Request No. 37), Skonnard's and Budge's 10b5-1 Plans (Request No. 30), Defendants' liability insurance policies (Request No. 36), written policies created before October 1, 2018 but effective during the class period (Requests Nos. 8, 32, 33, and 38), final materials (including scripts or talking points) for, transcripts for, press releases regarding, and final materials or presentations used during the January 14, 2020 Needham & Company, LLC Growth Conference (Request Nos. 5, 6, and 19), and Pluralsight's final correspondence with FINRA between August 2019 and April 2020 (Request Nos. 26 and 35). Defendants will also produce final correspondence between

**WILSON SONSINI**

Cohen Milstein Sellers & Toll, PLLC
June 24, 2023
Page 4

Pluralsight, Mr. Skonnard, and the SEC between September 2019 and November 2019 (Request Nos. 26 and 35).[1]

It is disappointing that Plaintiffs are unwilling to compromise in any way on their initially requested relevant time period. For the reasons stated above, Defendants believe Plaintiffs' position is unreasonable.

**Custodians**: Pursuant to the Court's May 22, 2023 Order Regarding the Production of Electronically Stored Information ("ESI") and Hard-Copy Documents (the "ESI Order"), each party was required to disclose the seven custodians most likely to have discoverable ESI in their possession, custody, or control ("Priority Document Custodians"). In the interests of compromise, and as a gesture of good faith, Defendants identified eight Priority Document Custodians. The eight individuals identified included all but two individuals listed in Defendants' Initial Disclosures (the two omitted were Archana Daniels and Mark McReynolds) and added three additional individuals (Brandon Peay, Eric Teuscher, and Jimmy Wing). Given the narrow scope of this case (a single statement regarding the number of quota-bearing sales representatives), Defendants believe that these eight custodians represent those most likely to have responsive, non-duplicative documents in their possession, custody, or control.

In your June 20, 2023 letter, you agreed to the exclusion of Ms. Daniels, but objected to the exclusion of Mr. McReynolds. As we explained during our June 8, 2023 meet and confer, we believe that to the extent Mr. McReynolds had relevant documents, those documents are highly likely to also include one or more of the eight identified Priority Document Custodians and would, therefore, be duplicative. In the interest of compromising, we agree to include Mr. McReynolds as a Priority Document Custodian, bringing the total number of Priority Document Custodians to nine.

In addition to Mr. McReynolds, you proposed eight additional Priority Document Custodians, for a total of seventeen Priority Document Custodians. This is ***more than double*** the number of Priority Document Custodians contemplated in the ESI that the parties agreed to identify. We are conferring with our client regarding these additional eight individuals and agree to meet and confer on this issue, but we want to be clear that we believe seventeen custodians is exceedingly disproportionate to this single-statement case.

**ESI Repository Disclosures**: Defendants agreed to prioritize disclosure of non-custodial, third-party, and inaccessible data sources likely to contain information that is potentially responsive to the RFPs for which Defendants have agreed to run search terms. Defendants will endeavor to provide this information by June 30, 2023.

**Search Terms**: Defendants agreed to prepare the first draft of proposed search terms for the specific Requests Defendants have agreed to run searches for across custodians. Defendants will endeavor to send Plaintiffs a proposed list of search terms by June 30, 2023.

**Definitions of "All Documents" and "Concerning"**: Defendants reiterate and maintain their objections to all of Plaintiffs' Requests that seek "All Documents" or use Plaintiffs' impermissibly

---

[1] Defendants' production of their final correspondence with FINRA and the SEC will include the information requested in Plaintiffs' June 23, 2023 letter. Defendants will endeavor to produce these documents by June 30, 2023.

**WILSON SONSINI**

Cohen Milstein Sellers & Toll, PLLC
June 24, 2023
Page 5

broad definition of "Concerning." Such discovery requests are overbroad, disproportionate, and lack reasonable particularity; moreover, they are out-of-step with civil practice in the District of Utah and the Tenth Circuit. *See Schmelzer v. IHC Health Servs.*, No. 2:19-cv-00965-TS-JCB, 2022 U.S. Dist. LEXIS 200954, at *12 (D. Utah Feb. 10, 2022) (denying motion to compel and sanctioning plaintiff for making overbroad discovery requests; "The reasonable particularity requirement should cause counsel to think at least twice about issuing document requests for 'all documents' that include communications 'related to' and 'regarding any' of a long series of items. The Tenth Circuit, among other courts, have put counsel on notice that serving such broad requests fails Rule 34's 'reasonable particularity' requirement"). In indicating a willingness to produce documents in response to a particular Request, subject to the negotiation of search terms, custodians, and time period, Defendants are not waiving this objection. Instead, Defendants are necessarily applying a limiting principle to Plaintiffs' overbroad and disproportionate requests for production. Most commonly, Defendants only agree to produce non-privileged documents responsive to a certain Request that (1) hit on the search terms and custodians to be negotiated by the parties and (2) actually concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force (i.e., the issues relevant to this case). And, to avoid any ambiguity, Defendants are using "concern" in accordance with its generally accepted definition. For example, in indicating they will produce documents that concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force, Defendants will not consider documents that discuss a single sale or a single sales representative as responsive unless it is otherwise responsive.

## II.    <u>Specific Requests and Responses</u>

**Request No. 1:** Plaintiffs' June 14, 2023 letter states: "The Parties have agreed to limit the scope of this Request to Pluralsight's corporate structure chart and organizational charts for the seven persons identified in your initial disclosures, and with that limitation and subject to the Court's ruling on the Relevant Time Period, Defendants would produce documents responsive to the request in full as written." To be clear, Defendants **have not** agreed to "produce documents responsive to the request in full as written," nor do Defendants intend to run search terms across custodians for this Request. Instead, Defendants have produced a copy of Pluralsight's corporate structure in effect as of January 16, 2019, and as of July 31, 2019 (PS00000996-PS00000997), as well as the organizational charts as of January 16, 2019, and as of July 31, 2019, for Aaron Skonnard and James Budge (PS00002224-PS00002231). Defendants will additionally produce the organizational charts as of January 16, 2019, and as of July 31, 2019, for the remaining Priority Document Custodians identified above, to the extent such organizational charts are available.

**Request No. 2:** Plaintiffs' June 14, 2023 letter states: "The parties have agreed to limit the scope of this Request to the seven persons identified by Defendants in their initial disclosures and that, with that limitation and subject the Court's ruling on the Relevant Time Period, Defendants would produce documents responsive to the request in full as written." To be clear, Defendants **have not** agreed to "produce documents responsive to the request in full as written," nor do Defendants intend to run search terms across custodians for this Request. Instead, Defendants will produce copies of the job descriptions in effect during the class period for the nine Priority Document Custodians identified above, to the extent such job descriptions exist.

**Request No. 3:** The parties have agreed to limit this Request to Messrs. Skonnard, Budge, and DiBartolomeo. The parties disagree on whether this Request extends to draft employment agreements. Defendants have produced the final employment agreements for Skonnard, Budge, and

**WILSON SONSINI**

Cohen Milstein Sellers & Toll, PLLC
June 24, 2023
Page 6


DiBartolomeo (PS00000956–00000995).  However, Request No. 3—by its own terms—does not seek draft employment agreements, and Defendants are unwilling to agree to an expansion of its scope.

**Request No. 4:**  Plaintiffs' June 14, 2023 letter states:  "Defendants undertook to consider whether they would agree to produce documents responsive to this Request. Please confirm your agreement by June 16."  Defendants have not agreed to, and do not intend to, produce documents responsive to this Request, unless they are otherwise response to other Requests.

**Request No. 5:**  Plaintiffs' June 14, 2023 letter states:  "The Parties have agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period."  To be clear, Defendants **have not** agreed to produce documents in response to this Request in full and as written.  Plaintiffs' June 14 letter further misrepresents[2] Defendants by claiming that, during the June 8, 2023 meet and confer, "You stated that you did not intend to revisit any objections that you had asserted to these requests, but only wanted to clarify certain statements about what you agreed to produce."  This is the opposite of what Defendants stated during the June 8 meet and confer.[3]  Defendants maintain—and have never waived—their objections to Request No. 5 as stated in Defendants' R&Os, and stand on their offer as follows:

- First, Defendants will produce "Categorical Documents," which include:  (1) final materials (including scripts or talking points) for, transcripts of, press releases regarding, and final materials or presentations used during the January 16, 2019 Needham & Company, LLC Growth Conference; Pluralsight's July 31, 2019 earnings call regarding its financial results for the second quarter of 2019; and the January 14, 2020 Needham & Company, LLC Growth conference; (2) final meeting materials or presentations for, and minutes of, Pluralsight's Board of Directors and Board Committee meetings, and meetings of the executive leadership team and/or department leaders during the Company's first quarter of 2019 ("Q1 10") and second quarter of 2019 ("Q2 19") regarding historical, current, and projected billings, revenue,

---

[2]    Plaintiffs have engaged in a consistent practice of misrepresenting Defendants' positions stated during the parties' meet and confers.  Defendants lodged a series of thoughtful and specific objections to each of Plaintiffs' RFPs and identified specific parameters of the documents Defendants are willing to produce.  During the first meet and confer between the parties on April 3, 2023, Plaintiffs did not respond or otherwise object to most of Defendants' objections and the parameters of what Defendants stated would be produced in response to the requests.  Defendants summarized Plaintiffs' position immediately after the meet and confer by letter, dated April 4, 2023, writing: "Pending resolution of the relevant time period, and the parties' negotiation of custodians and search terms, Plaintiffs did not otherwise object to Defendants' Responses to these Requests."  Plaintiffs responded to this letter on April 15, 2023 and attempted to rewrite the record to say the *exact opposite*, writing (in relevant part): "Plaintiffs disagree, in part, with Defendants' account of our discussion of these Requests.  The parties agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement as to search terms, custodians, and time period."  Plaintiffs have continued to further misrepresent the state of agreement in subsequent correspondence.  Clearly, no agreement or meeting of the minds was reached on this issue, and Plaintiffs' attempt to recast this disagreement as a settled matter is unproductive.

[3]    This same misrepresentation exists for dozens of other requests.  Defendants will not continue to address this misrepresentation in this letter.

**WILSON SONSINI**

Cohen Milstein Sellers & Toll, PLLC
June 24, 2023
Page 7

> or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force; and (3) final meeting materials or presentations for, and minutes of, such meetings held during the Company's fourth quarter of 2018 ("Q4 18") regarding historic, current, and projected billings revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force to the extent budget projections, or quotas for Q1 19 or Q2 19 were finalized during those meetings.

- Second, and subject to the relevant time period, Defendants will produce non-privileged "Topical Documents" responsive to this Request that hit on one or more of the search terms and custodians negotiated by the parties and concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force.

**Request No. 6:** Plaintiffs' June 14, 2023 letter states:  "The Parties have agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period."  To be clear, Defendants **have not** agreed to produce documents in response to this Request in full and as written.  And Defendants maintain—and have never waived—their objections to Request No. 6 as stated in Defendants' R&Os.  That said, Defendants have agreed to produce non-privileged documents responsive to this Request (subject to the relevant time period) that hit on the search terms and custodians negotiated by the parties and concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force.  Defendants will also produce the "Categorical Documents" discussed above regarding Request No. 5.

**Request No. 7:** Plaintiffs' June 14, 2023 letter states:  "The Parties agreed to limit this request to documents sufficient to identify the total headcount of sales representatives, quota-bearing sales representatives, enterprise sales representatives, and tenured sales representatives for each day it was calculated during the Relevant Time Period, subject to an agreement on search terms or other proportional search and retrieval methods."  Defendants generally agree with this summary, but also maintain their previous position that there must be a limitation of relevant custodians.  As detailed above, Defendants will provide initial proposed search terms, will respond to Plaintiffs' request to more than double the Priority Document Custodians, and remain available to meet and confer regarding reasonable search and retrieval methods.

**Request No. 8:** Plaintiffs' June 14, 2023 letter states: Defendants agreed to produce written policies, procedures, or guidelines concerning the recording, reporting, tracking, categorizing, or accounting for sales and billings to the extent such policies exist. For the avoidance of doubt, we understand that Defendants agree to produce all communications with or violations of such policies, procedures, or guidelines, subject to an agreement on search terms and custodians and a Court ruling on time period.  Please confirm your agreement by June 16."  Defendants did agree to produce relevant formal and written policies, procedures, or guidelines regarding the recording, reporting, tracking, categorizing, or accounting for billings and/or billings growth in effect during the class period.  However, Defendants **did not** agree to produce all communications with or alleged violations of such policies.  At no point during any meet and confer call was it discussed or suggested that Defendants would agree to produce any communications in response to this Request or that Defendants would agree to search terms or custodians relative to this Request.  And the position in your June 14 letter is contradictory to your May 3 letter, which acknowledged that "Defendants agreed to produce written policies concerning the recording, reporting, tracking, categorizing, or accounting for sales and billings

**WILSON SONSINI**

Cohen Milstein Sellers & Toll, PLLC
June 24, 2023
Page 8

to the extent such policies exist." Defendants stand on their objections and do not intend to run search terms across custodians for this Request.

**Request No. 9:** Plaintiffs' June 14, 2023 letter states: "The Parties have agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period." To be clear, Defendants **have not** agreed to produce documents in response to this Request in full and as written. And Defendants maintain—and have never waived—their objections to Request No. 9 as stated in Defendants' R&Os. And because this is a "documents sufficient to show" request, Defendants will not run search terms across custodians for this Request. Instead, subject to the relevant time period, Defendants offered to produce documents sufficient to identify systems used to record, track, monitor, calculate, visualize, or account for historical, current, or projected billings and documents sufficient to identify systems used to record, track, monitor, calculate, visualize, or account for the size, capacity, retention, and productivity of Pluralsight's sales force (to the extent such documents exist).

**Request No. 10:** Plaintiffs' June 14, 2023 letter states: "Plaintiffs agreed to defer negotiations on the scope of this request until Defendants disclosed information about data sources likely to contain responsive documents." Defendants agree with that summary, but clarify that any disclosure "about data sources likely to contain responsive documents" will be limited to the documents Defendants produce responsive to Request No. 9.

**Request No. 11:** Plaintiffs' June 14, 2023 letter states that the parties have "agreed to limit Request No. 11 to the electronic devices, accounts, and addresses for each of the Individual Defendants and current or former employees identified in Defendants' initial disclosures to the extent such devices and accounts were used to conduct Pluralsight business or are otherwise likely to contain potentially relevant information." To be clear, Defendants **have not** "agreed to produce documents responsive to these requests in full as written." Rather, Defendants have made clear that they will produce non-privileged documents sufficient to show this information to the extent they exist, but will not independently create documents listing the requested information for each Individual Defendant and each individual identified in Defendants' Initial Disclosures.

**Request No. 12**: Plaintiffs' June 14, 2023 letter accurately summarizes that the parties have "agreed to limit Request No. 12 to documents sufficient to identify the executive assistants or chiefs of staff for any of the seven individuals mentioned in the Initial Disclosures to the extent such individuals had executive assistants or chiefs of staff." Plaintiffs' letter seeks to amend this agreement to cover the employees identified in Defendants' disclosures of priority document custodians as opposed to the individuals mentioned in Defendants' initial disclosures. Defendants will agree to this amendment, but note that their agreement is limited to personal or executive assistants for the relevant individuals during the class period.

**Request No. 13:** Plaintiffs' June 14, 2023 letter states: "Defendants agreed to produce calendars, appointment books, telephone logs, or other business, personal, or mobile phone records for each Individual Defendant and each current or former Pluralsight employee identified in Defendants' initial disclosures, subject to an agreement custodians and search terms or other proportional search and retrieval methods and a Court ruling on time period. We are also willing to amend the scope of this agreement to encompass the current or former employees identified in your disclosures of priority document custodians." Defendants **did not** make this agreement, nor was such a broad sweeping scope discussed during the meet and confer process. Defendants maintain—and have never waived—their objections to Request No. 13 as stated in Defendants' R&Os. To be clear,

**WILSON SONSINI**

Cohen Milstein Sellers & Toll, PLLC
June 24, 2023
Page 9

Defendants agreed to produce non-privileged documents (including appointment-related emails that are generated by calendar invites) that are within their possession, custody, or control that hit on the search terms and custodians to be negotiated by the parties, are within the to-be resolved relevant time period, and which concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force. In other words, Defendants will produce non-privileged documents to the extent they are responsive to other Requests, but will not otherwise produce documents solely in response to this Request.

**Request No. 14:** Plaintiffs' June 14, 2023 letter states: "The Parties agreed that Defendants will produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period." However, Plaintiffs' May 3, 2023 letter states: "The Parties agreed to defer further consideration of this RFP to a future discussion about search terms and custodians." To be clear, Defendants **have not** agreed to produce documents responsive to this Request "in full as written." Instead, Defendants agreed to produce final memoranda regarding the accounting principles used or estimates and assumptions made in connection with determining, accounting for, recognizing, or disclosing, revenue, billings, sales, and any key business metrics and non-GAAP financial measures disclosed in Pluralsight's Form 10-K and 10-K/A for fiscal year ended December 31, 2018. Defendants will also produce non-privileged documents responsive to this Request that hit on the search terms and custodians to be negotiated by the parties, are within the to-be agreed relevant time period, and that concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force. However, Defendants do not anticipate creating additional search terms specific to this Request that are not otherwise covered by the search terms for Plaintiffs other RFPs.

**Request No. 15:** Plaintiffs' June 14, 2023 letter states: "The Parties have agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period." To be clear, Defendants **have not** agreed to produce documents in response to this Request in full and as written. And Defendants maintain—and have never waived—their objections to Request No. 15 as stated in Defendants' R&Os. That said, Defendants have agreed to produce final meeting materials or presentations for, and minutes of, Pluralsight's Board of Directors and Board Committee meetings during Q1 19 and Q2 19 regarding historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force. To the extent that budgets, projections, or quotas for Q1 19 or Q2 19 were finalized during Board or Board Committee meetings held during Q4 18, Defendants will also provide those final meeting materials or presentations for, and minutes of, such meetings. Subject to the to-be agreed-to relevant time period, search terms, and custodians, Defendants will also produce non-privileged documents responsive to this Request that concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force.

**Request No. 16:** Plaintiffs' June 14, 2023 letter states: "The Parties have agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period." To ensure clarity, Defendants **did not** reach such an agreement. However, Defendants believe that this Request has been resolved in full based on the proffered written response in Defendants' R&Os.

**Request Nos. 17 and 18:** Plaintiffs' June 24, 2023 letter indicates that Plaintiffs intend to file a motion to compel on these Requests if Defendants do not change their position. In Plaintiffs' April 15, 2023 letter, Plaintiffs indicated they agreed to "limit these Request to revenue (including any

**WILSON SONSINI**

Cohen Milstein Sellers & Toll, PLLC
June 24, 2023
Page 10

other reported revenue metric, such as deferred revenue), billings, sales, and any key business metrics and non-GAAP financial measures disclosed in Pluralsight's Form 10-K and 10-K/A for fiscal year ended December 31, 2018." To ensure that Plaintiffs understand Defendants' position in full, Defendants reiterate that they will not craft special search terms for these Requests or locate and produce "All Documents Concerning" EY's and PwC's audits of Pluralsight. Nevertheless, and subject to the relevant time period, Defendants will produce non-privileged documents responsive to the Request (as limited in Plaintiffs' April 15, 2023 letter) that hit on the to-be agreed-to search terms and custodians, are within the to-be agreed-to relevant time period, and that concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force. Defendants do not believe that any other audit materials are relevant to this case, or that Plaintiffs' Request Nos. 17 and 18 warrant any special search terms or procedures to locate, collect, and produce responsive documents.

**Request No. 19:** Plaintiffs' June 14, 2023 letter states: "The Parties have agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period." To be clear, Defendants **have not** agreed to produce documents in response to this Request in full and as written. And Defendants maintain—and have never waived—their objections to Request No. 19 as stated in Defendants' R&Os. That said, Defendants will produce non-privileged documents responsive to this Request that hit on the to-be agreed-to search terms and custodians, are within the to-be agreed-to relevant time period, and that concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force.

**Request No. 20:** Plaintiffs' June 14, 2023 letter states: "The Parties have agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period." To be clear, Defendants **have not** agreed to produce documents in response to this Request in full and as written. Defendants maintain—and have never waived—their objections to Request No. 20 as stated in Defendants' R&Os. In the parties April 3, 2023 meet and confer, Plaintiffs agreed to undertake to further consider ways to narrow this Request. Plaintiffs have not provided a proposal for narrowing this Request. Defendants request that Plaintiffs provide a narrowed proposal, and are available to further meet and confer regarding this Request.

**Request No. 21:** Plaintiffs' June 14, 2023 letter states: "The Parties have agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period." To be clear, Defendants **have not** agreed to produce documents in response to this Request in full and as written. And Defendants maintain—and have never waived—their objections to Request No. 21 as stated in Defendants' R&Os. That said, Defendants will produce non-privileged documents responsive to this Request that hit on the to-be agreed-to search terms and custodians, are within the to-be agreed-to relevant time period, and that concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force. Defendants will also produce the Categorical Documents discussed above in response to Request No. 5.

**Request No. 22:** Plaintiffs' June 14, 2023 letter states: "The Parties have agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period." To be clear, Defendants **have not** agreed to produce documents in response

**WILSON SONSINI**

Cohen Milstein Sellers & Toll, PLLC
June 24, 2023
Page 11

to this Request in full and as written. And Defendants maintain—and have never waived—their objections to Request No. 22 as stated in Defendants' R&Os. That said, Defendants will produce non-privileged documents responsive to this Request that hit on the to-be agreed-to search terms and custodians, are within the to-be agreed-to relevant time period, and that concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force. Defendants will also produce the Categorical Documents discussed above in response to Request No. 5.

      **Request Nos. 23-25:** Plaintiffs' June 14, 2023 letter states: "Defendants agreed during the April 3 meet and confer to consider whether they would agree to produce documents responsive to these requests. In our April 15 letter, we asked you to confirm your agreement by April 21. Please confirm your agreement to produce documents responsive to these Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period." Defendants do not agree to produce documents responsive to this Request "in full as written." Defendants maintain their position that these Requests are outside the scope of the operative complaint and not relevant to any claim or defense in this case because all causes of action relating to the SPO were dismissed. Accordingly, Defendants will not craft any special search terms related to the SPO or produce "All Documents Concerning" the March 2019 SPO or the September 21, 2018 Draft Registration Statement.

      **Request No. 26:** As Defendants disclosed in their R&Os, Defendants agreed to produce Pluralsight's final correspondence with FINRA between August 2019 and April 2020, and proffered that during the class period, Pluralsight did not receive inquiries from the SEC or NASDAQ regarding issues relevant to this case. Plaintiffs June 14, 2023 letter asks Defendants to confirm whether Pluralsight received any inquiries from the SEC or NASDAQ regarding issues relevant to this case, during the broader time period of August 1, 2018, through January 31, 2020. Defendants confirm that they did not receive any inquiries from NASDAQ regarding issues relevant to this case between August 1, 2018, through January 31, 2020. Pluralsight and Mr. Skonnard did receive an inquiry from the local SEC office on September 12, 2019, after the close of the class period, regarding Mr. Skonnard's July 26, 2019 sale of Pluralsight securities, which was a "sell-to-cover" transaction. Pluralsight and Mr. Skonnard provided certain documents to the SEC, and the SEC closed its investigation on November 19, 2019, recommending no enforcement action. While this correspondence post-dates the class period, in the interest of compromise, Defendants will produce final correspondence between Pluralsight, Mr. Skonnard, and the SEC during this period.

      **Request No. 27:** Plaintiffs' June 14, 2023 letter states: "The Parties have agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period." To be clear, Defendants **have not** agreed to produce documents in response to this Request in full and as written. And Defendants maintain—and have never waived—their objections to Request No. 27 as stated in Defendants' R&Os. That said, Defendants will produce non-privileged documents responsive to this Request that hit on the to-be agreed-to search terms and custodians, are within the to-be agreed-to relevant time period, and that concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force. Defendants will also produce the Categorical Documents discussed above in response to Request No. 5.

      **Request No. 28:** Plaintiffs' June 14, 2023 letter indicates that the parties have "agreed to defer further consideration of this Request to a future discussion about search terms and custodians." Defendants agree with this summary but note at the outset that they will not agree to running search terms on this Request for any custodians other than Messer. Skonnard and Budge.

**WILSON SONSINI**

Cohen Milstein Sellers & Toll, PLLC
June 24, 2023
Page 12

**Request No. 29:**  Plaintiffs' June 14, 2023 letter states:  "The Parties have agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period."  To be clear, Defendants **have not** agreed to produce documents in response to this Request in full and as written, nor do Defendants intend to run search terms across custodians for this Request.  And Defendants maintain—and have never waived—their objections to Request No. 29 as stated in Defendants' R&Os.  That said, Defendants will produce documents sufficient to show Pluralsight's actual compensation to Messers. Skonnard and Budge during the class period.

**Request No. 30:**  Plaintiffs' June 14, 2023 letter states:  "The Parties have agreed that Defendants will produce documents responsive to this Request in full as written subject to an agreement on search terms and custodians and a Court ruling on time period."  To be clear, Defendants **have not** agreed to produce documents responsive to this Request "in full as written."  Instead, Defendants have agreed to produce Messers. Skonnard's and Budge's final 10b5-1 plans that were in effect during the class period.  Subject to the relevant time period, and limited to Messrs. Skonnard and Budge as custodians, Defendants will also agree to produce non-privileged responsive documents that hit on one or more of the search terms negotiated by the parties and concern the entry or modification of either of Messers. Skonnard's or Budge's 10b5-1 Plan.

**Request No. 31:**  Plaintiffs' June 14, 2023 letter states:  "The Parties have agreed to limit this Request to documents sufficient to show the Individual Defendants' holdings and transactions of Pluralsight securities, subject to an agreement on search terms and custodians and a Court ruling on time period."  To be clear, Defendants **have not** agreed to search terms or custodians for this Request.  In Defendants' April 4, 2023 letter, Defendants clarified they will only produce documents "sufficient to show" the holdings and transactions for Messrs. Skonnard and Budge during the covered timeframe.  In response to this letter, on April 15, 2023, Plaintiffs "agree[d] on the scope of this Request, as described in [Defendants'] April 3, 2023 letter, subject to negotiation of relevant time frame and search terms."   As Defendants have agreed, subject to the relevant time period, to produce documents "sufficient to show" show Messrs. Skonnard's and Budge's holdings and transactions in Pluralsight securities; Defendants will not include in the forthcoming list of proposed search terms terms that are solely related to this Request.

**Request No. 32:**  Plaintiffs' June 14, 2023 letter states:  "The Parties have agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period."  To be clear, Defendants **have not** agreed to produce documents in response to this Request in full and as written, nor do Defendants intend to run search terms across custodians for this Request.  And Defendants maintain—and have never waived—their objections to Request No. 32 as stated in Defendants' R&Os.  That said, Defendants have agreed to produce formal, written policies, procedures, or guidelines concerning public disclosures to investors that were in effect during the class period, to the extent they exist.

**Request No. 33:**  Plaintiffs' June 14, 2023 letter states:  "The Parties have agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period."  To be clear, Defendants **have not** agreed to produce documents in response to this Request in full and as written, nor do Defendants intend to run search terms across custodians for this Request.  And Defendants maintain—and have never waived—their objections to Request No. 33 as stated in Defendants' R&Os.  That said, Defendants have agreed to produce Pluralsight's written

**WILSON SONSINI**

Cohen Milstein Sellers & Toll, PLLC
June 24, 2023
Page 13

insider trading policy that was in effect during the class period, as well as Messrs. Skonnard's and Budge's final 10b5-1 Plans that were in effect during the class period.

**Request No. 34:** Plaintiffs' June 14, 2023 letter states: "The Parties have agreed that Defendants will produce documents responsive to this Request in full as written subject to an agreement on search terms and custodians and a Court ruling on time period." To be clear, Defendants **have not** agreed to produce documents responsive to this Request "in full as written." Defendants maintain their objection that this Request is overbroad, but they are amenable to discussing with Plaintiffs a more narrowed request.

**Request No. 35:** Plaintiffs asked Defendants to confirm whether Pluralsight received any inquiries from the SEC or NASDAQ regarding issues relevant to this case, during the period of August 1, 2018, through January 31, 2020. Defendants provide the requested information in response to Request No. 26 above.

**Request No. 36:** Defendants have produced copies of the relevant Directors & Officers' liability policies.

**Request No. 37:** Plaintiffs' June 14, 2023 letter states: "The Parties have agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period." To be clear, Defendants **have not** agreed to produce documents in response to this Request in full and as written, nor do Defendants intend to run search terms across custodians for this Request. And Defendants maintain—and have never waived—their objections to Request No. 37 as stated in Defendants' R&Os. That said, Defendants will produce the final indemnification agreements between Messrs. Skonnard or Budge and Pluralsight effective during the class period, to the extent such documents exist.

**Request No. 38:** Plaintiffs' June 14, 2023 letter states: "The Parties have agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement on search terms and custodians and a Court ruling on time period." To be clear, Defendants **have not** agreed to produce documents in response to this Request in full and as written, nor do Defendants intend to run search terms across custodians for this Request. And Defendants maintain—and have never waived—their objections to Request No. 38 as stated in Defendants' R&Os. That said, Defendants have agreed to produce any formal, written policies, procedures, or guidelines concerning document retention and destruction that were in place during the class period, to the extent such documents exist.

**Request No. 39:** Plaintiffs' June 14, 2023 letter states: "Plaintiffs have agreed to defer this Request, but reserve their right to insist on its production at a later date." Defendants agree with this summary.

**Request No. 40:** Plaintiffs' June 14, 2023 letter states: "The Parties have agreed that Defendants will produce documents responsive to this request in full as written." Defendants have stated that they intend to produce any documents Defendants intend to use to support their claims or defenses in this case. Defendants have also already produced copies of the relevant Directors & Officers' liability policies.

\*      \*      \*

**WILSON SONSINI**

Cohen Milstein Sellers & Toll, PLLC
June 24, 2023
Page 14


Please let us know Plaintiffs' position on the issues raised above.  This letter confirms that the parties are continuing to meet and confer in good faith in an effort to eliminate the need for motion practice or to eliminate as many of the disputes as possible.  Nothing in this letter should be taken as a waiver of Defendants' objections in response to Plaintiffs' RFPs.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*Stephanie L. Jensen*

Stephanie L. Jensen