Gregory L. Watts (#17782)
gwatts@wsgr.com
Caitlin E. McKelvie (#16511)
cmckelvie@wsgr.com
Stevenson C. Smith (#18546)
stevenson.smith@wsgr.com
Tamara Lemmon (#18462)
tlemmon@wsgr.com
Wilson Sonsini Goodrich & Rosati, P.C.
15 West South Temple
Gateway Tower West, Suite 1700
Salt Lake City, UT 84101
Telephone: (801) 401-8510

Ignacio E. Salceda (*pro hac vice*)
isalceda@wsgr.com
Wilson Sonsini Goodrich & Rosati, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300

Stephanie L. Jensen (*pro hac vice*)
sjensen@wsgr.com
Tyre L. Tindall (*pro hac vice*)
ttindall@wsgr.com
McKinney Wheeler (*pro hac vice*)
mckinney.wheeler@wsgr.com
Wilson Sonsini Goodrich & Rosati, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104
Telephone: (206) 883-2500

*Attorneys for Defendants Pluralsight, Inc., Aaron
Skonnard, and James Budge*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM and PUBLIC SCHOOL TEACHERS' PENSION AND RETIREMENT FUND OF CHICAGO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>PLURALSIGHT, INC.; AARON SKONNARD; and JAMES BUDGE,<br><br>Defendants. | **DECLARATION OF CAITLIN E. McKELVIE IN SUPPORT OF DEFENDANTS' OPPOSITION TO LEAD PLAINTIFFS' SHORT FORM DISCOVERY MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS FROM THE REQUESTED TIME PERIOD**<br><br>**Case No. 1:19-CV-00128-DBB-DAO**<br><br>Honorable David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

I, Caitlin E. McKelvie, declare:

I am an attorney duly admitted to practice law in the State of Utah and in the United States District Court for the District of Utah.

1.  I am an associate at the law firm of Wilson Sonsini Goodrich & Rosati, P.C., and am counsel of record for Pluralsight, Inc. ("Pluralsight"), Aaron Skonnard, and James Budge (with Pluralsight, "Defendants"). I have personal knowledge of, and if called as a witness would competently testify to, the matters stated herein. This declaration is submitted in support of Defendants' Opposition to Lead Plaintiffs' Short Form Discovery Motion to Compel Defendants to Produce Documents from the Requested Time Period, filed herewith.

2.  On February 3, 2023, Plaintiffs served their First Set of Requests for Production to Defendants (the "RFPs"). Plaintiffs' RFPs sought a relevant time period of August 1, 2018 to January 31, 2020. Dkt. 201-2 at 10. Throughout meet and confer negotiations, Plaintiffs have not departed from their initial time period, *see* Dkt. Nos. 201-5 at 2; 201-6 at 1; 201-7 at 6, and now move the Court to compel Defendants to produce documents in accordance with this unchanged time period, Dkt. No. 201.

3.  On March 6, 2023, Defendants responded and objected to Plaintiffs' First Set of Request for Production (the "R&O's"). Dkt. 201-3. In their R&O's, Defendants objected to the August 1, 2018 to January 31, 2020 relevant time period as overly broad, unduly burdensome, and not proportional to the needs of the case, and subject to certain exceptions addressed in response to specific RFPs, proffered a relevant time period of January 1, 2019 to July 31, 2019. Dkt. 201-3 at 4.

1

4.       With respect to RFP Nos. 5, 6, 15, 19, 21, 22, and 27, Defendants proffered production of "Categorical Documents" and "Topical Documents," defined as follows.

5.       **Categorical Documents:**

a.       Final materials (including scripts or talking points) for, transcripts of, press releases regarding, and final materials or presentations used during the January 16, 2019 Needham & Company, LLC Growth Conference; Pluralsight's July 31, 2019 earnings call regarding its financial results for the second quarter of 2019; and the January 14, 2020 Needham & Company, LLC Growth Conference;

b.       Final meeting materials or presentations for and minutes of Pluralsight's Board of Directors and Board Committee meetings, and meetings of the executive leadership team and/or department leaders during the Company's first quarter of 2019 ("Q1 19") and second quarter of 2019 ("Q2 19") regarding historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force; and

c.       To the extent budgets, projections, or quotas for Q1 19 or Q2 19 were finalized during meetings held during the Company's fourth quarter of 2018 ("Q4 19"), Defendants proffered to also provide those final meeting materials or presentations for and minutes of such meetings.

6.  **Topical Documents:**  Non-privileged documents from the sources and custodians to be negotiated by the parties, that are within the January 1, 2019 through July 31, 2019 time frame, that hit on one or more of the search terms to be negotiated by the parties, and concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force.

2

7.     On April 4, 2023, in an effort to compromise, Defendants noted they would be amenable to a relevant time period of October 1, 2018 to September 30, 2019 for those RFPs for which a relevant time period is applicable.

8.     The parties are still in the meet and confer process regarding the scope of responsiveness for the RFPs, as well as custodians, non-custodial data sources, and search terms.

9.     Plaintiffs are seeking an 18-month responsive period for all RFPs.  This constitutes a 50% longer responsive period than the 12-month responsive period Defendants have proffered.

10.     Defendants cannot estimate the specific burden associated with a 50% longer responsive time period because the parties are still in the process of meeting and conferring regarding the underlying scope of the RFPs.  Additionally, for the RFPs subject to custodians and search terms, the parties are still meeting and conferring regarding the custodians and search terms that will be employed, along with the parameters applicable to non-custodial data sources. Accordingly, the scope of responsiveness, and the universe of data that must be reviewed for responsive documents, has not yet been set.  However, I am able to estimate a portion of the burden associated with just a subset of data.

11.     Although the Order Regarding the Production of Electronically Stored Information and Hard-Copy Documents (Dkt. 188) (the "ESI Protocol") required the disclosure of seven priority document custodians, Defendants disclosed eight priority document custodians.

12.     In addition to the eight priority document custodians identified by Defendants, Plaintiffs have currently requested an additional nine initial document custodians, for a total of seventeen initial document custodians.  However, Plaintiffs have also continued to maintain their

3

right to seek additional document custodians in the future, including, but not limited to, any of *sixty-one* individuals contained on a particular list referenced by Plaintiffs.

13.    Defendants have tentatively agreed to five of the additional document custodians sought by Plaintiffs, pending an overall agreement on document custodians.  The parties are continuing to meet and confer regarding the four additional document custodians requested by Plaintiffs and the overall parameters for additional document custodians.

14.    The eight priority document custodians, along with the five additional document custodians tentatively agreed upon by Defendants are referred to herein as the "Thirteen Document Custodians."

15.    Pluralsight has engaged a vendor—Lighthouse Global Technologies, Inc. ("Lighthouse")—to assist in document collection, processing, promotion, hosting, and production.

16.    Pluralsight has collected, processed, and promoted available data from certain data sources for these Thirteen Document Custodians, including the custodians' email, the custodians' non-shared Google Drive files, and Slack, for the 12-month time period of October 1, 2018 through September 30, 2019.

17.    Consistent with the ESI Protocol, Defendants have instructed Lighthouse to de-duplicate the data collected from these document custodians.  Based on this deduplication, if ten of the Thirteen Document Custodians are in possession of the same email, the email will only constitute a single document in any search results within Relativity.

18.    When Lighthouse promotes data, it is available for my review through a platform called Relativity.  The data available for my review has been deduplicated.

4

19.     I performed searches in Relativity to identify the promoted documents for the Thirteen Document Custodians, limited to the time period of October 1, 2018 through September 30, 2019 and limited to the sources of those custodians' non-shared Google Drive files, email, and Slack.

20.     These searches resulted in more than 500,000 unique (deduplicated) documents for the Thirteen Document Custodians, solely from those custodians' non-shared Google Drive files, email, and Slack, for the time period of October 1, 2018 through September 30, 2019.

21.     These figures do not include other custodial and non-custodial data sources.  As an example, these figures do not include Dropbox, which contains a very substantial volume of data, or shared Google Drives.

22.     Based on the assumption of an approximately equal distribution of the volume of data over time in the custodial and non-custodial sources at issue in response to Defendants' current offered scope for the RFPs, I believe it is reasonable to assume that the approximate overall volume of data in those at-issue sources during the 18-month period requested by Plaintiffs could be roughly 50% larger than the volume of data in those sources during the 12-month period offered by Defendants.

23.     Based on the assumption of a roughly 50% increase in the amount of data involved during an 18-month period over a 12-month period, I also believe it is reasonable to assume an increase of up to 50% in almost all discovery expenses, with the exception of collection and initial processing costs associated with a limited number of data sources.[1]

---

[1] Most data sources at issue can be collected utilizing date range cutoffs to limit the data collected.  However, some data sources must first be collected and processed before a date range cut can be applied.  In these scenarios, the collection and processing charges would not change for

24.     Based on an equal distribution in the volume of data, the Thirteen Document Custodians would have around 250,000 additional unique documents solely from the Thirteen Document Custodians' Google Drive, email, and Slack, in the additional six months requested by Plaintiffs—August 1, 2018 through September 30, 2018, and October 1, 2019 through January 31, 2019.  This does not include the increase in at-issue data from additional custodial and non-custodial data sources for the Thirteen Document Custodians (including Dropbox and shared Google Drives) or any increase in at-issue data from additional custodians.

25.     The number of documents subject to review will depend upon the ultimate search terms applied (in addition to final agreement on the document custodians and non-custodial data sources).  Because the parties have not reached an agreement on search terms, I cannot estimate the number of unique documents that would be subject to review, either during the 12-month period offered by Defendants for most RFPs or the 18-month period requested by Plaintiffs.  However, Defendants will not stipulate to search terms that do not materially reduce the universe of documents subject to review for responsiveness.

26.     The speed with which documents are reviewed is highly dependent upon the type of documents covered by the review.  It is faster to review short emails than it is to review 100-page presentations or complex spreadsheets.

27.     As an average rate of review throughout an entire case, I anticipate that the level of review from Wilson Sonsini attorneys will be done at roughly 45–55 documents per hour.  Certain

---

these data sources.  However, the promotion, hosting, and document review costs will still increase incrementally for these data sources.

6

documents will additionally go through an additional level of review.  The speed of this additional level of review will vary.

28.    The Wilson Sonsini attorneys conducting the review have a billing rate of at least $615 per hour.

29.    Assuming that rate of $615 per hour and an average review rate of 50 documents per hour, if the 250,000 approximate additional documents for the Thirteen Document Custodians for email, non-shared Google Drive files, and Slack alone were not reduced for Wilson Sonsini review based on search terms or other methods, Defendants would incur additional attorneys' fees of at least $3,075,000 simply to review those documents.  This would not include any other costs associated with collecting, processing, promoting, hosting, or producing such additional documents.

30.    Although I cannot estimate the precise additional cost of a responsive time period of 18 months instead of 12 months without finalized search terms, custodians, and data sources (along with completing actual collections and incurring associated expenses), the expanded time period could implicate hundreds of thousands of additional documents and require several million dollars of additional expense in document collection, promotion, hosting, and production through Lighthouse, and document review through Wilson Sonsini.

31.    These additional costs include an approximately 50% increase in costs for:

   a.   Document review, charged by Wilson Sonsini at a minimum of $615 per hour;

7

b.   Much of the data collection, charged by Lighthouse per hour[2];

c.   Most data processing, charged by Lighthouse per gigabyte;

d.   Project management, charged by Lighthouse per hour;

e.   Technical support, charged by Lighthouse per hour;

f.   Senior management and expert consulting services, charged by Lighthouse per hour;

g.   Data promoting for review, charged by Lighthouse per gigabyte;

h.   Data hosting, charged by Lighthouse per gigabyte per month;

i.   OCR, charged by Lighthouse per page; and

j.   Document production, charged by Lighthouse per hour.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in Salt Lake City, Utah on this 2nd day of August, 2023.

*/s/ Caitlin E. McKelvie*
Caitlin E. McKelvie (#16511)

*/s/ Gregory L. Watts (Filing Attorney)*
Gregory L. Watts (#17782)

---

[2] Pluralsight is contractually obligated to keep confidential the specific rates charged by Lighthouse due to the sensitive and competitive nature of those rates.

8