# Exhibit O

**Redacted Version**

# COHENMILSTEIN

Jan Messerschmidt
(202) 408-3644
jmeserschmidt@cohenmilstein.com

August 10, 2023

Stephanie L. Jensen
Wilson Sonsini Goodrich & Rosati
701 Fifth Avenue, Suite 5100
Seattle, Washington 98104-7036

Re:     *Indiana Public Retirement Sys. et al. v. Pluralsight, Inc. et al.,* 1:19-cv-00128 (D. Utah)

Dear Stephanie:

We write in response to your August 9, 2023 letter demanding production of Cohen Milstein's portfolio monitoring agreements and unredacted fee schedules with CTPF and INPRS. Defendants' demand for production of all agreements between Plaintiffs and their legal counsel is improper, unsupported, and unwarranted.

Through document productions, correspondence, and deposition testimony, Plaintiffs have provided ample information about their agreements with counsel that could be conceivably relevant to class certification. To begin with, Plaintiffs produced copies of their retention agreements with Cohen Milstein that were completely unredacted except for the fee schedules. And in our prior letter, we provided the relevant information about Plaintiffs' monitoring agreements, representing that both CTPF and INPRS maintained "non-exclusive" portfolio monitoring agreements with multiple law firms and that CTPF and INPRS retained full discretion over their decision to file a lawsuit and their retention of counsel.[1]

Further, your suggestion that INPRS's representative was "unprepared" to testify about INPRS's agreements with counsel is baseless. To be clear, none of Defendants' 30(b)(6) deposition topics sought testimony about Plaintiffs' retainer, fee, or portfolio monitoring agreements with counsel, much less the specific terms of those agreements. Instead, Defendants sought testimony about "all services that You have received from Lead Counsel." We objected to that topic because, among other things, it failed to describe with reasonable particularity the matters for examination, as required by Rule 30. But we agreed to "provide *general testimony* about nonprivileged information known or reasonably available to INPRS concerning Cohen Milstein's *general provision* of securities litigation portfolio monitoring services to INPRS during the Class Period and the fact of Cohen Milstein's representation of INPRS in ongoing litigation." We echoed that position in our later correspondence and calls,

---

[1] Pls. 8/1 Ltr. at 1-2.

COHENMILSTEIN

August 10, 2023
Page 2

explaining that Defendants were free to seek "*general* nonprivileged information about INPRS's monitoring agreement with Cohen Milstein through their deposition of INPRS's representative, as they did with CTPF's representative."

Both ██████ and ████████ testified consistent ████████████████████████████████████ ████████████████████████████████████████ Indeed, CTPF's representative answered every single question that Defendants' counsel asked about ████████████████████████████████ ██.[2] For its part, INPRS confirmed all the potentially relevant facts about its ████████████ █████████████ testifying that (1) ████████████████████████████████████████ ████████████████████████ (2) ████████████████████████████████████████ ████████████████████████████████████████ (3) ████████████████████ ████████████████████████████████ (4) ████████████████████ ████████████████████████████████.[3] That testimony is all Plaintiffs agreed to provide and is more than enough to show that the ████████████████████ are irrelevant to class certification.

None of the other information you point to was within the scope of the deposition topics. Defendants never asked for (and Plaintiffs never agreed to provide) testimony about "how or whether" Plaintiffs' agreements with counsel "were negotiated," "how many agreements there were," the "terms of the agreements," or the specifics of the "fee arrangements between INPRS and Cohen Milstein." But at any rate, CTPF and INPRS both provided extensive testimony about ████████████████████



█████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████.[6]

Given all the information that Plaintiffs have already provided, we are flummoxed by Defendants' demand for Plaintiffs' agreements with their counsel. We do not know what possible information you think exists in those agreements, how it could be relevant to class certification, or why you cannot get that information through less intrusive means. Your only support for your demands are conclusory assertions of their relevance to adequacy and inapposite case law that has been roundly rejected by courts as limited to facts not present here.[7]

---

[2] CTPF Dep. ████████████

[3] INPRS Dep. ████████████████████████

[4] CTPF Dep. ████████   INPRS Dep. ████

[5] CTPF INPRS Dep. ████████

[6] INPRS Dep. ████████

[7] As we have explained, courts have repeatedly distinguished the two cases you rely on, explaining that those decisions concerned monitoring agreements that, unlike those here, provided monitoring in exchange for a guarantee that if the monitoring firm's attorneys "recommended bringing a securities class action, the pension fund would retain those same

COHENMILSTEIN

August 10, 2023
Page 3


To state the obvious, that is not enough. If Defendants' position is that a plaintiff's fee and portfolio monitoring agreements with counsel are *always* relevant to class certification, courts have uniformly rejected that argument—including in your own cited cases. *See, e.g., See 37 Besen Parkway, LLC v. John Hancock Life Ins. Co. (U.S.A.)*, 2017 WL 5126103, at *2 (S.D.N.Y. Oct. 5, 2017) ("the overwhelming weight of authority holds that the terms of the retainer agreement are not relevant to certification issues");[8] *Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*, 2020 WL 5757695, at *8 (D. Minn. Sept. 28, 2020) ("Courts have routinely rejected attacks on the propriety of portfolio monitoring agreements.").[9] And in case after case, courts have consistently rejected attempts to compel production of

---

attorneys, on a contingency fee basis, to represent it in that action." *Burges v. Bancorpsouth, Inc.*, 2017 WL 2772122, at *5 (M.D. Tenn. June 26, 2017) (distinguishing *Iron Workers* and collecting cases); *see also Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*, 2020 WL 5757695, at *8 (D. Minn. Sept. 28, 2020) (distinguishing *Kosmos Energy* because that case criticized a "portfolio monitoring arrangement when plaintiff had exclusive portfolio monitoring agreement with one law firm and plaintiff failed to attend multiple proceedings and a demonstrated no knowledge of the allegations in the complaint"); *Berg v. Guthart*, 2014 WL 3749780, at *4 (N.D. Cal. July 30, 2014) (criticizing *In re Kosmos* and collecting cases that have "rejected the notion that the existence of a portfolio monitoring agreement with counsel renders a plaintiff unsuitable to represent the interests of a class"). As we explained in our prior letter, and as INPRS testified, Plaintiffs' monitoring agreements have none of the features that were at issue in *Iron Workers* or *In re Kosmos* and are precisely the sort of agreements that courts routinely find to have no bearing on adequacy or any other aspect of class certification.

None of your other cited cases have anything to do with whether a plaintiff's fee or portfolio monitoring agreements are relevant and discoverable for class certification. *Gaus v. Conair Corp.*, 2000 WL 358387, at *3 (S.D.N.Y. April 7, 2000) (denying motion to compel retention agreement with counsel in patent infringement case because the defendant failed to show the agreement contained relevant information); *In re Allergan PLC Securities Litigation*, 2020 WL 5796763, at *6 (S.D.N.Y. Sept. 29, 2020) (denying motion to seal opinion concerning a fee arrangement between two law firms, not between a plaintiff and counsel, in which the Court had appointed one of the law firms as lead counsel with the "explicit instruction that there was to be one and only one law firm serving as lead counsel"); *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 107 (S.D.N.Y. 2009) (finding retainer agreement not protected by attorney-client privilege in derivative action where retention agreement was relevant to the plaintiff's standing to sue).

[8] *Accord Allergan*, 2020 WL 5796763, at *9 (citing cases and noting that courts "routinely appoint institutional investors who are subject to monitoring agreements as class representative"); *Clark v. Berkshire Med. Ctr., Inc.*, 2019 WL 78994, at *3 (D. Mass. Jan. 2, 2019) (collecting cases and noting that "the majority rule is that pre-certification discovery of fee and retainer agreements is rarely appropriate."); *Piazza v. First Am. Title Ins. Co.*, 2007 WL 4287469, at *1 (D. Conn. Dec. 5, 2007) (recognizing that "leading cases and treatises have held that the fee arrangements between a plaintiff and her counsel are not relevant to certification issues").

[9] *See also, e.g., Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*, 2020 WL 5757695, at *8 (D. Minn. Sept. 28, 2020) ("Courts have routinely rejected attacks on the propriety of portfolio monitoring agreements."); *Milbeck v. TrueCar, Inc.*, 2019 WL 2353010, at *4 (C.D. Cal. May 24, 2019) (rejecting argument that plaintiff's portfolio monitoring agreements implicate its adequacy); *In re SandRidge Energy, Inc. Sec. Litig.*, 2019 WL 4752268, at *5 (W.D. Okla. Sept. 30, 2019) ("[C]ourts have refused to find that the presence of monitoring agreements precludes the proper certification and maintenance of class actions."); *Willis v. Big Lots, Inc.*, 2017 WL 1063479 at * 10 (S.D. Ohio March 17, 2017) (fact that plaintiff learned of case through monitoring agreement did not render plaintiff inadequate to serve as class representative); *City of Livonia Employees' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 180 (S.D.N.Y. 2012) (noting that "courts routinely appoint institutional investors with monitoring agreements as lead plaintiffs and class representatives" and "find[ing] that the existence of a monitoring agreement between Pipefitters and counsel is in no way disqualifying); *In re Gen. Elec. Sec. Litig,* 2009 WL 2259502, at *6 (S.D.N.Y. July 29, 2009) (finding unpersuasive the argument that potential lead plaintiff "abdicated its oversight role" because counsel may have performed free monitoring services); *Silversman v. Motorola, Inc.,* 259 F.R.D. 163, 173 (N.D. Ill. 2009) (rejecting defendants' argument that plaintiffs were inadequate class representatives because they had monitoring

COHENMILSTEIN

August 10, 2023
Page 4

fee and portfolio monitoring agreements, holding that such agreements are not discoverable without (1) a concrete and nonspeculative basis for their relevance and the necessity of disclosure, and (2) a showing that the information sought cannot be obtained through less intrusive discovery.[10] You have not come close to satisfying either requirement.

In short, after eight months of discovery, two extensions of time, production of thousands of pages of documents from Plaintiffs and their investment managers, and five depositions of plaintiffs, Defendants might be disappointed that they have found nothing that could undermine class certification. But disappointment that discovery did not yield the evidence you wanted is not a basis for demanding further discovery—particularly when that demand is supported by nothing more than speculation. Because Defendants have no legal or factual basis for demanding Plaintiffs' fee and portfolio monitoring agreements with counsel, we cannot agree to produce them. To avoid burdening the Court with a frivolous motion to compel, however, we are willing to provide additional, nonprivileged

---

agreements with counsel); *In re Am. Italian Pasta Co. Sec. Litig.,* 2007 WL 927745 (W.D. Mo. 2007) ("the Court is not surprised Lead Plaintiff has arranged for a law firm to keep it apprised of events (including lawsuits) that might be of interest"); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.,* 2004 WL 5326262 (C.D. Cal. 2004) ( "Nothing about these [monitoring agreements] renders Carpenters inadequate as a class representative."); *see also* Michael J. Kaufman & John M. Wunderlich, *The Bromberg Balance: Proper Portfolio-Monitoring Agreements in Securities Class Actions*, 68 SMU L. Rev. 771 (2015) (reviewing case law and suggesting that non-exclusive portfolio monitoring agreements that provide for investors' independent decision-making do not render plaintiffs inadequate).

[10] *Blaise v. Transworld Sys. Inc.*, 2022 WL 3026946, at *2 (N.D. Ill. Aug. 1, 2022) (denying motion to compel fee agreement with counsel because "Defendant has not made a sufficient preliminary showing that the Agreement is relevant to a potential defense against class certification or any other claim or defense" and thus "Defendant's claim amounts to mere speculation"); *Grundy v. FCA US LLC*, 2022 WL 909351, at *3 (E.D. Mich. Mar. 28, 2022) (denying motion to compel retainer and fee agreements because defendants had not "flush[ed] out potential certification concerns via less intrusive discovery" and made "a preliminary showing of need for the production of the retainer/fee agreements"); *Edwards v. McDermott Int'l, Inc.*, 2021 WL 5121853, at *5 (S.D. Tex. Nov. 4, 2021) (denying motion to compel and concluding that "discovery of fee arrangements between lead counsel and other firms" did not have "any bearing on whether lead counsel is qualified, experienced, and able to actively pursue the litigation"); *City of Rockford v. Mallinckrodt ARD, Inc.*, 2020 WL 11191817, at *3 (N.D. Ill. Feb. 26, 2020) (denying motion to compel and agreeing with "the proposition that when the nature of a potential conflict is speculative, retainer and fee agreements are not discoverable"); *In re Riddell Concussion Reduction Litig.*, 2016 WL 7325512, at *3 (D.N.J. Jan. 19, 2016) ("Fee agreements are generally not discoverable *unless* the party seeking the discovery makes a preliminary showing of a relevant conflict or a prima facie challenge to the class representatives' adequacy to act as a class representative."); *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 2013 WL 1896934, at *2 (S.D.N.Y. May 7, 2013) (rejecting motion to compel production of retainer and monitoring agreements because defendants "provided no non-speculative basis" for their relevance and because they would "have the opportunity to question the lead plaintiffs at deposition on their adequacy to represent the class without the necessity of disclosure of the retainer and monitoring agreements"); *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 2013 WL 4778157, at *2 (S.D.N.Y. Sept. 6, 2013) (rejecting motion to compel production of monitoring agreements because "Defendants will have an opportunity to depose plaintiffs to question their fitness to represent the class" and "[t]heir monitoring agreements will have no bearing on that analysis"); *In re Front Loading Washing Mach. Class Action Litig.*, 2010 WL 3025141, at *4 (D.N.J. July 29, 2010) ("[W]hile discovery is broad at the pretrial stage, this Court finds that Defendant failed to demonstrate how the information is relevant or necessary."); *Piazza*, 2007 WL 4287469, at *1 ("The defendant presents no factual basis for speculating about conflicts of interest among counsel or between counsel and the plaintiff.").

COHENMILSTEIN

August 10, 2023
Page 5

information about the agreements to the extent you have specific and reasonable questions about facts that could be relevant to class certification.

Very truly yours,

*/s/  Jan Messerschmidt*