Keith M. Woodwell (#7353)
CLYDE, SNOW & SESSIONS, P.C.
201 South Main Street, Suite 2200
Salt Lake City, Utah 84111
Telephone: (801) 322-2516
Facsimile: (801) 521-6280
kmw@clydesnow.com

*Counsel for Lead Plaintiffs Indiana Public Retirement System and Public School Teachers' Pension and Retirement Fund of Chicago and Liaison Counsel for the Class*

Carol V. Gilden
COHEN MILSTEIN SELLERS & TOLL, PLLC
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

Steven J. Toll (admitted *pro hac vice*)
Jan Messerschmidt (admitted *pro hac vice*)
1100 New York Avenue NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

*Counsel for Lead Plaintiffs Indiana Public Retirement System and Public School Teachers' Pension and Retirement Fund of Chicago and Lead Counsel for the Class*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PLURALSIGHT, INC. *et al.*,<br><br>Defendants. | **DECLARATION OF JAN MESSERSCHMIDT IN SUPPORT OF LEAD PLAINTIFFS' SHORT-FORM MOTION TO COMPEL DEFENDANTS TO PRODUCE AUDIT-RELATED DOCUMENTS**<br><br>Case No. 1:19-cv-00128<br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

I, Jan Messerschmidt, declare as follows:

1. I am an attorney at the law firm of Cohen Milstein Sellers & Toll PLLC and have been admitted to this Court pro hac vice. I submit this declaration in support of Lead Plaintiffs' short-form

discovery motion to compel Defendants to produce documents related to audits and reviews by Pluralsight's outside auditors, PricewaterhouseCoopers LLP ("PwC") and Ernst & Young LLP ("EY"). I have personal knowledge of the facts set forth herein and, if called as a witness, I could competently testify as the matters set forth herein.

**Plaintiffs' Document Requests and Defendants' Objections**

2. On February 3, 2023, Plaintiffs served their first set of requests for production of documents on Defendants ("RFPs" or "Requests"). Plaintiffs defined the "Relevant Period" for their requests to encompass, unless otherwise indicated, "all responsive documents that were created or used during the time period from August 1, 2018 to January 31, 2020 inclusive," including all documents and information concerning the Relevant Period, even though prepared, created, used, or published outside the Relevant Period." Ex. A at 10. Plaintiffs added that "[i]f a document prepared before or after this period is necessary for a correct or complete understanding of any document covered by a Request, You must produce the earlier or subsequent document as well." *Id.*

3. **Requests 17 and 18.** Two of the Requests focused on documents related to the audits and interim reviews conducted by Pluralsight's two outside auditors: PwC and EY:[1]

> **REQUEST FOR PRODUCTION No. 17:**
>
> All Documents Concerning PwC's audits, interim reviews, analyses, evaluations, or testing 14 of Pluralsight's accounting for, disclosure of, or internal control over financial reporting of revenue, deferred revenue, Billings, key business metrics, or other

---

[1] PwC served as Pluralsight's auditor until approximately August 2019, when the Company replaced PwC with EY. Pluralsight's termination of PwC came shortly after Pluralsight filed a restatement of its annual financial statements for 2018, explaining that a "material error" was identified in the Company's reporting of equity-based compensation, along with a "material weakness" in Pluralsight's "internal control over financial reporting." Pluralsight, Form 10-K/A for Fiscal Year ended December 31, 2018, filed June 27, 2019, https://www.sec.gov/Archives/edgar/data/1725579/000172557919000036/ps10-ka123118.htm.

> GAAP or non-GAAP financial measures during the Audit and Professional Engagement Period for any audit or non-audit services PwC provided during the Relevant Period.[2]
>
> **REQUEST FOR PRODUCTION NO. 18:**
>
> All Documents Concerning EY's audits, interim reviews, analyses, evaluations, or testing of Pluralsight's accounting for, disclosure of, or internal control over financial reporting of revenue, deferred revenue, Billings, key business metrics, or other GAAP or non-GAAP financial measures during the Audit and Professional Engagement Period for any audit or non-audit services EY provided during the Relevant Period.

Ex. A at 13-14. These document requests were informed by Plaintiffs' counsel's experience that, consistent with audit standards and principles, outside auditors typically audit, review, and evaluate a company's disclosures about its revenue, billings, and sales. Those reviews and evaluations are not limited to a company's audited financial statements, but also include, among other things, reviews of interim financial information or statements disclosed by the company in quarterly filings, press releases, and investor conferences, meetings, and conference calls.[3] Further, as EY explained in one of its audit opinions for Pluralsight, their audits "included performing procedures to assess the risks of material misstatement of the financial statements, whether due to error or fraud, and performing procedures that respond to those risks," and that "[s]uch procedures included examining, on a test basis, evidence regarding the amounts and disclosures in the financial statements" as well as "evaluating the accounting principles used and significant estimates made by management, as well as evaluating the overall presentation of the financial statements."[4] In addition, EY explained that it identified Pluralsight's

---

[2] The RFPs defined the term "Billings" to mean "Pluralsight's business metric disclosed in its filings with the SEC and other communications to analysts and investors." Ex. A at 3

[3] *See, e.g.,* Public Company Accounting Oversight Board (PCAOB), *Auditing Standards* (AS 4105: Reviews of Interim Financial Information), https://pcaobus.org/oversight/standards/auditing-standards/details/AS4105.

[4] *See* Pluralsight, Form 10-K/A for Fiscal Year ended December 31, 2019, filed February 25, 2020, https://www.sec.gov/Archives/edgar/data/1725579/000172557919000036/ps10-ka123118.htm.

3

revenue recognition practices as a "critical audit matter" and thus its auditors "obtained an understanding, evaluated the design and tested the operating effectiveness of controls over the Company's" revenue recognition practices, "testing a sample of contracts to understand and evaluate management's assessment" and "test[ing] the accuracy and completeness of all relevant underlying data."[5] Thus, Plaintiffs concluded that Defendants likely possess relevant documents and communications related to PwC's and EY's processes above and those documents would be relevant regardless of whether PwC or EY identified material misstatements, errors, or weaknesses in internal controls.

4. **Requests 26 and 35.** Plaintiffs also included two Requests focused on communications from, requests for documents or information by, or investigations conducted by any governmental or regulatory agency, including the U.S. Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA"), as well as any documents produced in connection with any other civil, criminal, or regulatory proceedings:

> **REQUEST FOR PRODUCTION NO. 26:**
>
> All documents concerning communications with, requests by, or actions of any governmental or regulatory agency, including, but not limited to, the U.S. Securities and Exchange Commission ("SEC") the Financial Industry Regulatory Authority ("FINRA"), or NASDAQ concerning Defendants' public statements or transactions in Pluralsight securities. This request includes all documents produced or provided to any governmental or regulatory agency and any transcripts, notes, or documents memorializing any interviews, depositions, or testimony by the Individual Defendants.
>
> **REQUEST FOR PRODUCTION NO. 35:**
>
> All documents produced in connection with any other civil, criminal, or regulatory proceeding, including any transcripts of depositions or testimony, concerning Defendants' public statements, transactions in Pluralsight securities, or Pluralsight's billings, revenues, or sales during the Relevant Period.

---

[5] *Id.*

Ex. A at 16-17, 18-19.[6]

5. On March 6, 2023, Defendants served their responses and objections to Plaintiffs' Requests, in which Defendants objected to Requests 17, 18, 26, and 35 on a variety of grounds, including relevance, proportionality, overbreadth, and particularity. Ex. B at 20-21, 32-33, 43-44. In their responses to Requests 17 and 18, Defendants also stated that "Defendants will not produce documents responsive" to those Requests. Ex. B at 20-21.

6. In their response to Request 26, after listing their various objections, Defendants proffered that "during the class period Pluralsight did not receive inquiries from the SEC…regarding issues relevant to this case," but stated "Defendants will produce Pluralsight's final correspondence with FINRA between August 2019 and April 2020":

> Subject to and without waiving the foregoing objections, Defendants proffer that during the class period Pluralsight did not receive inquiries from the SEC or NASDAQ regarding issues relevant to this case. Defendants will produce Pluralsight's final correspondence with FINRA between August 2019 and April 2020.

Ex. B at 32-33. And in their response to Request 35, after listing their various objections, Defendants stated that "[s]ubject to and without waiving the foregoing objections, Defendants will produce relevant correspondence with FINRA between August 2019 and April 2020." Ex. B at 44.

**The Parties' Initial Conferral and Correspondence**

7. On April 3, 2023, the parties met and conferred about Defendants' responses and objections to Plaintiffs' Requests. During that meeting, Defendants' counsel stated their view that Requests 17

---

[6] As explained *infra,* at ¶¶ 19, Defendants' responses to Requests 26 and 35 are relevant to their responses to Requests 17 and 18 and the relevance of the audit-related documents sought by those requests. The parties' negotiations as to Defendants' specific responses to Requests 26 and 35 are ongoing and separate from their discussions on Requests 17 and 18.

and 18 sought irrelevant information because the alleged false statement at issue was not an "audited statement" and that the requests for information related to "key business metrics, and other GAAP and non-GAAP financial measures" were too broad. In response, Plaintiffs' counsel explained that consistent with audit standards and practices, Pluralsight's auditors would have reviewed both GAAP financial measures (such as revenue) and non-GAAP financial measures (such as billings and billings growth), which are metrics at the heart of this case. Plaintiffs' counsel also explained that auditors would also likely have reviewed statements by the Company and its executives in press releases, investor calls and conferences, and other unaudited disclosures. Plaintiffs nevertheless stated that they would undertake to narrow their requests to be more specific, which Defendants stated they would consider. Ex. C at 3.

8. During the April 3 meeting, Plaintiffs also asked Defendants about their responses to Requests 26 and 35, noting that while Defendants stated they would produce correspondence with FINRA from August 2019 to April 2020, they proffered that Pluralsight received no inquiries from the SEC "during the Class Period," which is January 16 to July 31, 2019. Noting the discrepancy between Defendants' statements about inquiries from FINRA and the SEC, and that Plaintiffs' requests encompassed the period from August 1, 2018 to January 31, 2020, Plaintiffs asked if Defendants were aware of any inquiries from the SEC or other governmental or regulatory agencies outside of the class period. Defendants' counsel stated that they were "not sure" but would confirm whether such inquiries took place.

9. On April 4, 2023, Defendants sent Plaintiffs a letter that memorialized Defendants' understanding of the April 3 meeting, which noted that with respect to Request 26, "[p]ursuant to Plaintiffs' request, Defendants undertook to confirm whether their Response with respect to the SEC and NASDAQ would also apply to the period August 2018 through January 2020." Ex. C at 3. Defendants

6

also noted that "Plaintiffs agreed to hold on" Request 35 "until Defendants provide follow up information relating to Request No. 26." *Id.*

10. On April 15, 2023, Plaintiffs sent Defendants a letter that memorialized their understanding of the parties' discussions during their April 3 meeting, which included Plaintiffs' proposal to limit Requests 17 and 18 to "revenue (including any other reported revenue metric, such as deferred revenue), billings, sales, and any key business metrics and non-GAAP financial measures disclosed in Pluralsight's Form 10-K and 10-K/A for fiscal year ended December 31, 2018." Plaintiffs asked Defendants to confirm whether they would accept Plaintiffs' proposal by April 21, 2023. Ex. D at 5. Like Defendants' April 4 letter, Plaintiffs' April 15 letter also documented Defendants' agreement "to confirm whether the SEC or NASDAQ communicated with or investigated Pluralsight between August 1, 2018 and January 30, 2020," asking Defendants to let Plaintiffs "know whether such communications or investigations occurred by April 21, 2023." *Id.* Likewise, Plaintiffs noted that the parties agreed to further discuss Request 35 "after Defendants confirm[ed] whether the SEC or NASDAQ communicated with or investigated Pluralsight between August 1, 2018 and January 30, 2020." *Id.* at 6.

11. Defendants did not respond in writing to Plaintiffs' April 15 letter and, on April 27, the parties met and conferred again about Defendants' objections to the Requests. Plaintiffs memorialized their understanding of that meeting in a May 3 letter to Defendants, in which Plaintiffs explained that during the April 27 meeting, Defendants stated they were unwilling to produce documents responsive to Requests 17 and 18 "unless such documents were also responsive to another request agreed to by the Parties, adding that they would not agree to add search terms referring to PwC or EY." Ex. E at 2. Plaintiffs responded that they would likely move to compel on this issue unless Defendants changed their position and Defendants then stated that they would undertake "to further consider this issue and notify Plaintiffs whether their position has changed by May 5, 2023." *Id.* at 2-3. As to Requests 26

7

and 35, Plaintiffs noted that during their April 27 meeting, "Defendants stated that they have not yet been able to confirm whether the SEC or NASDAQ contacted Pluralsight during the Relevant Time Period," and asked that Defendants "provide an answer by May 5, 2023." *Id.* at 3.

12. When Defendants did not respond by May 5, Plaintiffs' counsel emailed Defendants' counsel on May 9 about the "outstanding issues related to our First Set of Requests for Production," noting that Defendants informed Plaintiffs "at the April 27 meet and confer that [they] would further consider [their] position" on Requests 17, 18, 26, and 35, and asking if Defendants had "any update for us on your position regarding these specific RFPs." Ex. F at 2-3.

13. In a reply email that same day, Defendants' counsel did not specifically respond to Plaintiffs' request for an update on Defendants' positions on these Requests, stating that "[i]n order for both sides to be prepared for the mediation later this month, we propose prioritizing the ESI protocol. As soon as the parties agree upon the stipulation and submit it to the Court, Defendants can begin a rolling production of documents that are not in dispute" and "[o]nce that rolling production is underway, we would be happy to resume the RFP negotiations." *Id.* at 1-2.

14. The next day, on May 10, Plaintiffs' counsel responded in an email, writing that while Plaintiffs agreed with prioritizing resolution of the ESI Protocol, and thus were "fine with deferring our conferral as to search terms and custodians until that protocol is finalized," Plaintiffs believed that the parties could quickly reach agreement, and that Plaintiffs thus wanted to "schedule times to resume the RFP negotiations next week as we are already approaching the seventh month of discovery without any productions from either party." Ex. F at 1. Plaintiffs noted that during the parties' April 27 meeting, Plaintiffs asked Defendants to address certain priority items—which included Requests 17, 18, 26, and 35, by May 5—adding that Defendants' "position on these matters is important and, as we explained, might require Plaintiffs to seek intervention by the Court." *Id.* For that reason, Plaintiffs

8

asked Defendants to "respond to these priority matters by the end of this week," adding that Plaintiffs believed it is "important that the parties make it a priority to respond and resolve disputes consistent with the parties' expectations, and, if they are unable to do so, to promptly notify the other parties of that fact." *Id.* Defendants did not respond to Plaintiffs' May 10 email.

**Defendants' Initial Selected Document Production**

15. In early May 2023, Defendants requested Plaintiffs' consent to a stipulated motion for a two-month extension of time for Defendants to file their opposition to class certification. The parties ultimately agreed that, in connection with the extension and in advance of the then upcoming mediation on May 31, Defendants would produce an initial set of selected, relevant documents. In accordance with that agreement, on May 20 and 26, Defendants produced approximately 234 documents to Plaintiffs.

16. Notwithstanding that this production was small, limited to documents collected from three custodians, and selected by counsel at their sole discretion, Defendants' document production showed that PwC and EY were involved with Pluralsight's disclosures relevant to this case, including its disclosures about revenue and billings. Those documents show, among other things, that PwC (i) conducted quarterly reviews of Pluralsight's disclosures for each quarter during the Class Period, (ii) reviewed the financial disclosures contained in the offering materials for the secondary offering in March 2019, (iii) attended all audit committee meetings during the class period, gave presentations to the audit committee, and met with the audit committee in executive session, without management, and (iv) conducted a review and evaluation of the design and operating effectiveness of Pluralsight's internal control over financial reporting, including assessing key reports used in control activities, sampling

9

and testing the operation of key controls, identifying deficiencies, and collecting and providing evidence supporting controls.[7]

**Plaintiffs' subpoenas to PricewaterhouseCoopers and Ernst & Young**

17. In May 2023, Plaintiffs served subpoenas on PwC and EY, which requested documents related to their audits and interim reviews for Pluralsight. In connection with those subpoenas, Plaintiffs conferred with PwC's and EY's counsel, and conveyed their willingness to minimize the burden on PwC and EY by agreeing to an initial limited production of audit workpapers that are related to the claims in this case, including, among other things, workpapers related to (i) communications with shareholders, analysts, and the public; (ii) revenue, billings, and sales; (iii) executive and equity-based compensation; (iii) insider trading processes, policies, and practices; (iv) internal control over financial reporting; and (v) communications between PwC and EY. Plaintiffs' negotiations with PwC and EY are ongoing, but both audit firms have made initial productions of documents.

18. Specifically, in June and August 2023, EY and PwC produced initial document productions, which showed that that: (i) PwC identified a fraud risk relating to manual entries to revenue through the override of controls; (ii) EY and PwC reviewed Pluralsight's disclosures of billings and revenue growth in its financial statements, quarterly filings, and press releases; (iii) EY reviewed and confirmed Pluralsight's disclosures about the number of employees, sales and marketing expenses, and sales employee compensation costs; (iv) EY identified a fraud risk related to improper revenue recognition due to undisclosed side agreements between the Company's sales representatives and customers; and (v)

---

[7] Because many of these documents and others described below have been designated as confidential by Defendants or nonparties EY and PwC, Plaintiffs do not attach most of these documents as exhibits to avoid potentially unnecessary motions for leave to file the documents under seal. Plaintiffs can, of course, make the documents available at the Court's request.

EY inspected and reviewed Pluralsight's insider trading policy as part of its understanding and evaluation of Pluralsight's internal controls.

19.  In addition, EY also produced an audit workpaper that described EY's review of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓:



Ex. G.

**Plaintiffs notify Defendants that EY's production confirmed the relevance of the audits and that the SEC conducted an investigation about matters central to this case**

20.  On June 8, 2023, the parties met and conferred again on Defendants' objections to Plaintiffs' Requests, which Plaintiffs memorialized in a June 14 letter to Defendants. In their letter, Plaintiffs summarized the parties' discussions on Requests 17 and 18, including their understanding that Defendants' position had not changed, adding that Plaintiffs' initial review of EY's first document production confirmed the relevance of its audits. Ex. H at 6-7. As to Requests 26 and 35, Plaintiffs noted that Defendants stated that they still "had been unable to confirm whether SEC or NASDAQ contacted Pluralsight during the Relevant Time Period but would do so as soon as possible." *Id.* at 9. Plaintiffs asked Defendants to "provide this information by June 16." *Id.*

11

21. Over the next two weeks, Plaintiffs continued their review of documents produced by EY, during which they reviewed EY's audit workpaper that documented ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See supra* ¶ 19; Ex. G.

22. On June 23, Plaintiffs sent Defendants a letter notifying them that—despite Defendants' representation in its discovery responses that Pluralsight "did not receive inquiries from the SEC" about relevant issues "during the Class Period"—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ the SEC began an investigation into insider trading in connection with the July 31, 2019 disclosure at issue here. Ex. I at 1-3. By that time, it had been nearly three months since Defendants first told Plaintiffs they would confirm whether Pluralsight received relevant inquiries from the SEC from August 2018 to January 2020. During those three months, Plaintiffs asked Defendants to confirm that fact in three conference calls,[8] three letters,[9] and one email.[10] Each time Plaintiffs asked, Defendants either did not respond or told Plaintiffs that they still had been unable to confirm whether an SEC investigation took place.[11]

**Defendants finally acknowledge existence of SEC investigation, but continue to refuse to agree to search terms to identify documents responsive to Requests 17 and 18**

23. The next day, on June 24, Defendants sent Plaintiffs a letter that acknowledged for the first time that "Pluralsight and Mr. Skonnard did receive an inquiry from the local SEC office on September 12, 2019" that related to Skonnard's "July 26, 2019 sale of Pluralsight securities." Ex. J at 11. That July

---

[8] Ex. C at 3; Ex. E at 3; Ex. H at 9.

[9] Ex. D at 5; Ex. E at 3; Ex. H at 9.

[10] Ex. F at 1-3.

[11] Ex. E at 3; Ex. H at 9.

26 transaction is one of the insider trades alleged in the Complaint. Second Amended Complaint, ECF No. 173, at ¶¶ 108-9 ("On July 26, 2019, in brazen disregard of the fact that the Company was days away from shocking the market with the truth about the condition of its sales force, just ***five days before the disastrous Q2 2019 earnings call***, Skonnard sold 84,594 shares of Class A common stock at an average price of $30.47, for a total value of $2,577,849.88."); *see also id.* ¶ 12 ("On July 31, 2019, after all the massive insider trading was completed at inflated prices—including an additional $2.57 million of insider sales by Skonnard on July 26, 2019, at $30.47 per share—Pluralsight, Skonnard, and Budge disclosed the true condition of the Company's sales force."). Defendants then stated that "[w]hile this correspondence post-dates the class period, in the interest of compromise, Defendants will produce final correspondence between Pluralsight, Mr. Skonnard, and the SEC during this period." Ex. J at 11.

24. In their June 24 letter, Defendants also addressed Requests 17 and 18, writing:

> To ensure that Plaintiffs understand Defendants' position in full, Defendants reiterate that they will not craft special search terms for these Requests or locate and produce "All Documents Concerning" EY's and PwC's audits of Pluralsight. Nevertheless, and subject to the relevant time period, Defendants will produce non-privileged documents responsive to the Request (as limited in Plaintiffs' April 15, 2023 letter) that hit on the to-be agreed-to search terms and custodians, are within the to-be agreed-to relevant time period, and that concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force. Defendants do not believe that any other audit materials are relevant to this case, or that Plaintiffs' Request Nos. 17 and 18 warrant any special search terms or procedures to locate, collect, and produce responsive documents.

Ex. J at 9-10.

25. On June 30, Defendants produced to Plaintiffs a set of documents that they described as consisting of "final correspondence" between Pluralsight and the SEC and FINRA. ███████████
███████████████████████████████████████████████████████████████████████████████



Ex. K at 1.

26. On July 3, 2023, Plaintiffs sent Defendants a letter responding to Defendants' June 24 letter. Ex. L. In their letter, Plaintiffs stated that they did not agree that Defendants satisfied Requests 26 and 35 by producing, as Defendants described the documents produced on June 30, "final correspondence" between Pluralsight and the SEC and FINRA. *Id.* at 9-10. Plaintiffs noted that they were dismayed to "learn only now that the SEC formally investigated the disclosures and trading activity at issue here, particularly given that Defendants' counsel served as counsel to Pluralsight and Skonnard for that investigation." *Id.* Plaintiffs wrote that they thus could not "agree to limit the scope of Requests 26 and 35 to 'final correspondence,'" noting that "[t]here is no question that the SEC's and FINRA's investigations are relevant" and that Plaintiffs thus expected "production of all nonprivileged

14

communications and documents related to these investigations, including, but not limited to, all communications with and documents provided to the SEC and FINRA, and all notes, transcripts, or documents memorializing any meetings, depositions, or testimony." *Id.*

27. In addition, because Plaintiffs did not fully understand Defendants' position on Requests 17 and 18 as described by Defendants in their June 24, Plaintiffs sought to clarify Defendants' position on those requests in their July 3 letter, writing as follows:

> We understand that Defendants' position on these requests, as articulated in your June 24 letter, is that they do not agree to produce documents responsive to these requests that are not otherwise responsive to other agreed upon requests, that they do not agree to craft search terms specific to this request, and that they will not agree to search terms that refer to Pluralsight's outside auditors (e.g., "PricewaterhouseCoopers," "PwC," "Ernst & Young," "EY"), their personnel (e.g., "Danny w/2 Wallace," "Nick w/2 Velhorn"), or the audits. If this is Defendants' position, Plaintiffs consider your response to amount to refusing to produce documents responsive to these requests and anticipate moving to compel. Please confirm by July 7 whether this is your position.

Ex. L at 8-9.

28. Defendants did not respond to Plaintiffs' July 3 letter until more than three weeks later, in a letter on July 26, 2023. In their letter, Defendants asserted that their position on Requests 17 and 18 was not a complete "refusal to produce documents responsive to these Requests," but instead "an attempt to compromise by indicating that we would produce documents responsive to this request but that they would need to concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force." Ex. M at 3. But Defendants "reiterated that we would not agree to any special search terms for these Requests, including search terms that refer to Pluralsight's outside auditors" and that "[i]f this compromise is still unsatisfactory to Plaintiffs, then Defendants agree that Plaintiffs will need to move to compel." *Id.*

29. The next week, on August 2, Plaintiffs sent Defendants a letter confirming the parties' respective positions on Requests 17 and 18, writing that Plaintiffs understood Defendants to have confirmed that (1) Defendants "will not produce documents specifically responsive to [Requests 17 and 18] unless they also 'concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force'" and (2) Defendants "will 'not agree to any special search terms for these Requests, including search terms that refer to Pluralsight's outside auditors.'" Ex. N at 9. Plaintiffs reiterated their position that "Defendants' conditions are unacceptable," noting that "Ernst & Young's document production shows that audit-related documents are relevant not only to Pluralsight's public disclosures, but also to its insider trading policies and practices" and that Defendants had "produced documents provided to FINRA that confirm that Pricewaterhouse-Coopers and other accounting firms 'participated in or were privy to information' about Pluralsight's financial results for the second quarter of 2019 before the Company's July 31, 2019 disclosure." *Id.*

30. Defendants have not disputed that Requests 17 and 18 seek relevant information. Nor have Defendants provided any justification for prematurely excluding audit-related search terms before the parties have even negotiated the search terms to be used to identify responsive documents for the rest of Plaintiffs' requests. The parties have just begun those negotiations and Defendants' initial proposal consisted mostly of search terms that are combinations of terms and Boolean operators.[12] The parties will continue to negotiate and refine an initial set of agreed-upon search terms, with a goal to identify terms that are neither excessively overinclusive nor unreasonably underinclusive, a task that will be

---

[12] For example, Defendants' initial proposal included terms like "billings w/5 q2," "forecast* w/5 billings," "historic* w/5 billings," "projecte* w/5 billings," and "to-date w/5 billings," which would identify documents containing the term "billings" within five words of the terms "q2," "forecasted," "historical," "projected," and "to-date."

informed by hit reports from Defendants showing the number of documents identified by each proposed search term. Throughout that process, some terms may prove to be more effective at identifying documents responsive to certain requests, but not others. And an important way to craft targeted search terms for Requests 17 and 18 would be to include audit-related terms. If Defendants' hit reports show that using such audit-related terms yields additional documents not identified by other search terms, then using audit-related terms would ensure a more targeted and less burdensome search and review process. And if Defendants' hit reports show that audit-related terms are redundant of other terms, yielding a minimal number of additional documents, then there will be no need to use them. In either case, the parties' consideration of audit-related terms imposes no greater burden on Defendants than consideration of any other search term. And prematurely excluding audit-related terms from that process creates a serious risk of the Defendants failing to identify a swath of potentially relevant documents without the parties even knowing that those documents exist.

31. Attached are true and correct copies of the following documents:

| | |
|---|---|
| Exhibit A | Lead Plaintiffs' First Set of Requests for Production to Defendants, dated February 3, 2023. |
| Exhibit B | Defendants' Responses and Objections to Plaintiffs' First Set of Requests for Production, dated March 6, 2023 |
| Exhibit C | Letter from Defendants' counsel to Plaintiffs' counsel, dated April 4, 2023. |
| Exhibit D | Letter from Plaintiffs' counsel to Defendants' counsel, dated April 15, 2023. |
| Exhibit E | Letter from Plaintiffs' counsel to Defendants' counsel, dated May 3, 2023. |
| Exhibit F | Email chain between Plaintiffs' counsel and Defendants' counsel, dated May 9 & 10, 2023. |
| Exhibit G | Document produced by Ernst & Young bearing Bates number EY-PS-00000311 and titled "Pluralsight, Inc. A03.3 – Press Release Review Q3 – 9/30/2019." |
| Exhibit H | Letter from Plaintiffs' counsel to Defendants' counsel, dated June 14, 2023 |
| Exhibit I | Letter from Plaintiffs' counsel to Defendants' counsel, dated June 23, 2023. |

| | | |
|---|---|---|
| Exhibit J | | Letter from Defendants' counsel to Plaintiffs' counsel, dated June 24, 2023. |
| Exhibit K | | Document produced by Pluralsight, Inc. bearing Bates number PS00002403_CONFIDENTIAL and titled "FINRA Sched A. PS.csv." |
| Exhibit L | | Letter from Plaintiffs' counsel to Defendants' counsel, dated July 3, 2023 |
| Exhibit M | | Letter from Defendants' counsel to Plaintiffs' counsel, dated July 26, 2023. |
| Exhibit N | | Letter from Plaintiffs' counsel to Defendants' counsel, dated August 2, 2023. |

This declaration is executed in Washington, D.C. on September 18, 2023, under penalty of perjury pursuant to the laws of the United States.

*/s/ Jan Messerschmidt*
Jan Messerschmidt