# Exhibit L

**COHEN**MILSTEIN

Jan Messerschmidt
(202) 408-3644
jmeserschmidt@cohenmilstein.com

July 3, 2023

Stephanie L. Jensen
Caitlin McKelvie
Wilson Sonsini Goodrich & Rosati
701 Fifth Avenue, Suite 5100
Seattle, Washington 98104-7036

   Re: *Indiana Public Retirement Sys. et al. v. Pluralsight, Inc. et al.,* 1:19-cv-00128 (D. Utah)

Dear Stephanie:

This letter responds to your June 24, 2023 letter regarding the June 8, 2023 meet and confer about Plaintiffs' document requests. In your letter, Defendants seek to effectively erase months of negotiations that resulted in undisputed and settled agreements on nearly every document request. That is unacceptable, breaches your duty to cooperate in good faith, and appears to further no purpose other than to cause unnecessary delay and needlessly increase the cost of litigation. Plaintiffs will not renegotiate agreements that were resolved months ago and which Defendants never *once* disputed. If Defendants will not adhere to their prior commitments, Plaintiffs will be forced to seek Court intervention.[1]

## I. Review of Prior Negotiations and Agreements

In your letter, you purport to memorialize Defendants' understanding of "all relevant discussions between the parties to date," including our initial two meetings on the RFPs held on April 3 and 27, as well as Plaintiffs' April 15 and May 3 letters memorializing those meetings. But for nearly two months, Defendants never once disputed Plaintiffs' account of those meetings. Your purported basis for suddenly doing so now is that the "mediation of this case interrupted the parties' negotiations regarding these discovery requests and objections." That is both untrue and implausible.

For starters, the parties reached agreements on most of Plaintiffs' document requests nearly two months before our May 31 mediation, when we first met and conferred on April 3rd. The next day, on April 4th, Defendants sent a letter that recounted their understanding of our April 3 meeting, which concluded by stating, "If you believe there is anything inaccurate about my summary of our call, please contact me immediately." Defs. 4/4 Ltr. at 4. One week later, on April 15, Plaintiffs responded by identifying the portions of Defendants' summary that we believed to be inaccurate and clarifying the parties' discussions

---

[1] *See High Point SARL v. Sprint Nextel Corp.*, 2011 WL 4036424, at *11 (D. Kan. Sept. 12, 2011) (sanctioning party after finding that the party's "purpose in continuing to reassert…general objections was for the improper purpose of causing unnecessary delay of discovery").

COHENMILSTEIN

July 3, 2023
Page 2

and agreements on the requests. Among other things, Plaintiffs explained that the parties had reached agreement on nearly all the requests, including Requests 5, 6, 9, 15, 16, 19, 21, 22, 27, 29, 32-33, and 37-38, noting that the parties agreed that Defendants' responses to those requests "amounted to an agreement to produce documents responsive to the Requests *in full as written*, subject to an agreement as to search terms, custodians, and time period." Pls. 4/15 Ltr. at 3 (emphasis added). Like Defendants, Plaintiffs concluded their letter by asking Defendants to let us know by April 21 whether they disagreed with Plaintiffs' account. But for nearly two months, Defendants never once said they disagreed with any aspect of our April 15 letter.

When the parties next met and conferred about Plaintiffs' document requests on April 27, Defendants again voiced no disagreement or dispute with Plaintiffs' account of the parties' agreements. Nor did Defendants dispute our May 3 letter memorializing our April 27 meeting, which again confirmed our April 15 letter's account that the parties were "in agreement on the scope" of most of the requests, including Requests 5, 6, 9, 15, 16, 19, 21, 22, 27, 29, 32-33, and 37-38. Pls. 5/3 Ltr. at 3.

Less than one week later, when the parties exchanged emails about the requests on May 9, Defendants again raised no questions, inaccuracies, or disagreements with either Plaintiffs' April 15 or May 3 letters. To the contrary, in our May 9 email, we confirmed in writing for the *third time* that the parties had "r*eached agreement on the scope of most of our RFPs pending discussion of search terms and custodians*" and thus asked for Defendants to provide their availability to confer about custodians and search terms. Email from J. Messerschmidt to counsel, May 9, 2023 (emphasis added). In response, Defendants did not disagree, but noted only that because of the "mediation later this month, we propose prioritizing the ESI protocol," that "[a]s soon as the parties agree upon the stipulation and submit it to the Court, *Defendants can begin a rolling production of documents that are not in dispute,"* and that "[o]nce that rolling production is underway, we would be happy to resume the RFP negotiations." Email from S. Jensen to W. Wilder, May 9, 2023 (emphasis added). Responding the next day, Plaintiffs agreed to prioritize the ESI Protocol, but stated that we expected to soon resolve our remaining disagreements on the protocol, and thus asked Defendants to address certain priority and unresolved matters raised in our May 3 letter and May 9 email. Email from J. Messerschmidt to S. Jensen, May 10, 2023. And we added that Plaintiffs had then agreed to Defendants' request to forgo a structured process for resolving disputes in the ESI Protocol based on Defendants' assurances that such formal processes were unnecessary to ensure prompt and cooperative resolution of discovery disputes. *Id.* We thus emphasized that the parties should "*make it a priority to respond and resolve disputes consistent with the parties' expectations*, and, if they are unable to do so, to *promptly notify the other parties of that fact.*" *Id.* (emphases added). Defendants never responded to this email.

Several weeks later, on June 8, the parties resumed their negotiations on the remaining disputes about Plaintiffs' RFPs, namely Defendants' position on the relevant period and Requests 17 and 18 (Defendants said their position had not changed), and whether Defendants had confirmed whether the SEC or NASDAQ had communicated with Defendants during the Relevant Period about matters related to this case (Defendants said they had not but would do so as soon as possible). For the first time in nearly two months, Defendants vaguely stated they wanted to "clarify" certain aspects of their agreement as to specific requests, providing, as their only example, that Defendants "proposed narrowing the definition of policies and procedures" and were not going to produce "unwritten" policies. After we noted that Defendants needed to specify, in writing, which "objections you are maintaining," you responded by stating that

COHENMILSTEIN

July 3, 2023
Page 3

Defendants were working on a letter and you "just didn't want to ambush" Plaintiffs, stating that their intended clarifications were "less about the objections" and more about certain specific types of documents they had agreed to produce. To illustrate the potential clarifications you intended to raise, you again provided the same example that Defendants would produce "written policies." When we then asked Defendants to provide us with any written clarification as soon as possible, noting they may require Plaintiffs to move to compel, you responded that Defendants could probably do so by the beginning of the next week.[2] One week later, having still not received anything from Defendants, Plaintiffs sent their June 14 letter, documenting our understanding of our June 8 meeting.

Ten days later, and more than two months after our April 15 letter, you sent your June 24 letter, disputing our account in writing for the first time. Far from mere "clarifications," your June 24 letter improperly claims far after the fact that its memorializing Defendants' understanding of "all relevant discussion between the parties to date," including our April 3 and 27 meetings and Plaintiffs' April 15 and May 3 letters, none of which you had previously questioned or disputed. To justify your belated response, you claim that "mediation of this case interrupted the parties' negotiations." Defs. 6/24 Ltr at 1. That is simply untrue. To begin with, as Plaintiffs recounted in multiple written correspondence, the parties agreed on most of Plaintiff's document requests on April 3, which we repeatedly confirmed on April 27, May 3, and May 9. Our mediation was not held till weeks later, on May 31, and nothing prevented you from voicing your disagreement, especially given that Defendants apparently harbored vast and significant differences with our understanding.

As such, we will not revisit the parties' prior agreements. Please confirm no later than July 7 whether Defendants will adhere to the parties' agreement as memorialized in our April 15 and May 3 letters. If Defendants will not agree to do so, we will be left with no choice but to seek Court intervention.

Below, we address outstanding matters raised during our June 8 meeting and in your June 24 letter. If you disagree with anything below, please communicate your disagreement no later than July 7.

---

[2] Your accusations that Plaintiffs have "misrepresented" the parties' discussions are neither accurate nor productive. Plaintiffs have consistently memorialized our understanding of each the parties' meetings based on careful and written notes of what was discussed, promptly sharing our written accounts with Defendants so that they could correct any inaccuracies or misunderstandings. In the one and only instance when Defendants shared their own written account of the parties' discussion in their April 4 letter, Plaintiffs quickly responded with a letter detailing each of our disagreements and clarifications of our understanding of what was discussed. Plaintiffs would have done so in the ordinary course anyway, but also did so to respond with your request to "immediately" communicate any inaccuracies in your April 4 letter. Defendants did not do the same, but rather, taking your June 24 letter at face value, it now appears that Defendants either (a) privately disagreed with nearly every aspect of Plaintiffs' April 15 and May 3 letters, or (b) changed their mind two months later. Neither of these reasons, however, is consistent with your duty to cooperate in good faith and to avoid unnecessary delay.

COHENMILSTEIN

July 3, 2023
Page 4

## II.  Production Deficiencies

### A.  Production Quality Issues

One month ago, on May 30 and 31, we raised significant production quality issues that we had identified in your initial document productions. Defendants still have been unable to propose a solution to ensure that they can produce legible copies of emails and PowerPoint presentations. As you know, the ESI Protocol makes clear that the parties should "bring technically adept personnel together to resolve e-discovery issues." If Defendants cannot identify a solution by July 7, the only workable and economical solution is to produce these documents in native format, as we first proposed. Thus, by no later than July 7, please either provide us with your proposed solution to these production quality issues or confirm your agreement to produce all emails, PowerPoints, and other presentations in native format.

### B.  Google Drive and Other Cloud or Modern Attachments

In our June 14 letter, we provided a detailed account showing why the ESI Protocol requires collection and production of Google Drive and other modern attachments as family groups, how that interpretation aligns with the ordinary understanding of attachments and the experience of any Google mail user. We described how traditional and modern attachments are treated identically by leading email and cloud service providers such as Google and Microsoft. We provided examples of cost-effective and commercially available software that can automatically collect Google Drive attachments and preserve their parent-child relationships. And we noted how our position was supported by case law and that the one decision that took a different view has been widely criticized by experts and is factually inapposite. Your response doesn't address, much less dispute, any of these points.

Nor is the rest of your response persuasive. First, you claim that producing Google Drive attachments as family groups would "ensure an inaccurate record" because they are not static and may differ from the operative version of the document at the time an email was sent. But modifications will be reflected in the document's metadata and Google Drive retains a document's version history and file versions.[3] The only collection method that would *guarantee* an inaccurate record is the one that Defendants propose, which would provide the parties with *no possible method* to associate an email and its attachments, even if they were all produced, effectively rendering both the email and its attachments useless. That not only violates the ESI Protocol, but also Defendants' obligation to produce documents in a reasonable usable form. Fed. R. Civ. P. 34(b)(2)(E)(ii). Put simply, your concern about an "accurate record" only supports using a method that Plaintiffs have proposed.

Second, you suggest that collecting Google Drive documents may require collecting documents from custodians that the "parties did not agree to collect" or from a "custodian who is not within the control of Defendants." But the parties have not yet agreed on a list of custodians, the custodians selected should be those likely to possess relevant information, and your speculation that certain attachments might not be in

---

[3] Please confirm that Defendants have retained all versions of potentially relevant documents stored in Google Drive, other cloud and shared storage, and other databases or software platforms likely to contain potentially relevant information.

**COHEN**MILSTEIN

July 3, 2023
Page 5

your possession is no basis to refuse to produce attachments that are in your possession. Defendants should be tracking and recording any collection failures on a per document basis, while still producing all responsive documents that can be collected.

Third, you claim that Google Drive documents "cannot be collected in conjunction with an email collection" and "there is no automated means through which the email and document can be coupled." That is false. As we have already explained, and which you ignore, there are cost-effective and commercially available tools, such as Forensic Email Collector, that address each of the concerns you raised, as shown in the screenshot below: (1) the tool will automatically "detect" and "acquire" Google Drive attachments," (2) it will collect a Google Drive attachment's "revisions" and permits the user to choose which revision of the attachment to include as a child to the email communication, (3) it will collect "both the Drive items that originated from the target user's own Drive and outside items that were shared with the user," and (4) it is cost effective, priced at only $899 to $1,049 for a perpetual license per computer:[4]



Given the availability of these tools, it is no surprise that defendants in securities class actions recognize that proper collection of Google email requires a process that preserves the association between emails and Google Drive attachments. For instance, the defendants in a pending securities class action in the Northern District of Illinois informed that court that because they use "a Google-based email system" that

---

[4] *See* Acquiring Google Drive Attachments of Emails, Metaspike.com, *available at* https://docs.metaspike.com/article/46-acquiring-google-drive-attachments-of-emails (last accessed June 30, 2023)

**COHEN**MILSTEIN

July 3, 2023
Page 6

"employs links to email attachments instead of the traditional method of storing the attachments with the emails," "*[e]mails and their linked attachments must be collected in a specialized manner to ensure they are associated properly.*"[5]

As we stated in our June 14 letter, we are willing to meet and confer about this matter one last time. Please let us know no later than July 7 if we are at an impasse and Defendants are not willing to engage in the above process. But if Defendants are willing to try to resolve this and to ensure any meet and confer is productive, please provide the following information in advance or at the time of our meeting: (a) the email and cloud storage systems used (e.g., Google Mail, Google Drive, Microsoft Outlook/Exchange, OneDrive, SharePoint, Dropbox, etc.); (b) any other messaging or collaboration platforms (e.g. Slack, Teams, etc.) that were used to share Google Drive or other cloud or modern attachments; and (c) other databases or software/service platforms used to store documents shared as modern or cloud attachments. If Defendants are not willing to meet and confer on this subject, Plaintiffs will be forced to move to compel and reserve their right to seek all other appropriate relief under Rules 26 and 37.

### III. Plaintiffs' Request for Production of Documents

#### A.  Topical and Categorical Documents.

We will not revisit Defendants' proposed restriction of the scope of certain requests—including Requests 5, 6, 15, 19, 21, 22, 27—to "Topical Documents" and "Categorical Documents." The parties addressed this nearly three months ago when we first met and conferred on April 3, and the parties agreed that Defendants "responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement as to search terms, custodians, and time period." Pls. 4/15 Ltr. at 3. Defendants never disputed that account and we will not renegotiate it now.

#### B.  Custodians

We disagree with your assertion that 17 custodians is "exceedingly disproportionate to this single-statement case." To begin, as you well know, this is not just a "single-statement case," but involves disclosures about the Company's most important key performance indicators that were closely followed by investors and analysts, as well as insider trading over the course of the Class Period. Pluralsight's disclosures about its sales force and productivity involve personnel from multiple divisions, including officers and top executives, financial planning and analysis, accounting, investor relations, sales, and human resources. In just your initial "curated" set of around 126 emails alone, more than two dozen Pluralsight employees communicated about matters relevant here. Further, Pluralsight's communications with FINRA during its insider trading investigation includes Pluralsight's identification of 73 people "who participated in or were privity to information leading up to" the July 31, 2019 corrective disclosure at the heart of this case. Our proposal of 17 custodians is reasonable and is not atypical in large securities class actions like this one.

---

[5] Joint Motion for Extension of Time to Complete Discovery, *Allison v. Oak Street Health, Inc.,* No. 1:22-cv-00149, ECF No. 104 (N.D. Ill. June 27, 2023). We have previously explained why the *Noom* decision has been widely criticized by experts and is factually inapposite. Pls. 6/14 Ltr. at 4 n.8.

COHENMILSTEIN

July 3, 2023
Page 7

We have provided concrete and objective support for each of our proposed custodians, including citations to documents Defendants have produced. So far, Defendants have provided no explanation showing that our proposed custodians are unlikely to possess responsive information. But we are, of course, happy to meet and confer. Please let us know your availability.

### C. Non-Custodial, Third-Party, and Inaccessible Data Sources

When we met and conferred on June 8, you said you would endeavor to disclose these sources by the next week. Pls. 6/14 Ltr. at 11. In our June 14 letter memorializing that meeting, we then asked you to let us know if you could not disclose this information by June 16. In your June 16 email response, you stated that "[w]e will also get you our ESI repository disclosure by next week."[6] But you still have not disclosed this information. Please disclose the information by no later than July 7. If you cannot do so, please specifically explain the reason you have been unable to make the disclosure and when you will be able to do so.

### D. Definitions of "All Documents" and "Concerning

The parties already resolved Defendants' objections on this basis for Requests 5, 6, 15, 19, 21-22, 27, 32-33, and 37-38, and agreed that Defendants would produce documents responsive to these Requests in full as written subject to an agreement as to search terms, custodians, and period. For the remaining requests that used this terminology, the parties either reached an agreement or are at an impasse, as described below.

### E. Specific Requests

**Request 1-2.** Your response mischaracterizes the text of Plaintiffs' June 14 letter, which states the limitation on the scope of these Requests that the Parties agreed to. We otherwise refer you to our April 15 letter that documents the parties' agreement.

**Request 3.** Instruction 20 in Plaintiffs' requests makes clear that "[e]ach document is to be produced along with all drafts, without abbreviation or redaction." Defendants did not object to Instruction and any objection to producing drafts was long ago waived. That said, in the interests of compromise, Plaintiffs will not insist on production of draft employment agreements at this time but reserve their rights to seek production of those documents at a later date.

**Request 4.** Plaintiffs understand that Defendants have now confirmed that they will not produce documents responsive to this request. While Plaintiffs does not understand the basis for this refusal, Plaintiffs will consider whether to pursue this Request and reserve their rights to seek an order compelling Defendants to produce responsive documents.

**Request 5, 6, 9, 15, 16, 19, 21, 22, 27, 29, 32-33, and 37-38.** The parties agreed on these requests on April 3 and Plaintiffs will not renegotiate that agreement. Please confirm by July 7 that you will hold to that

---

[6] Email from S. Smith to Pls. Counsel, June 16, 2023.

**COHEN**MILSTEIN

July 3, 2023
Page 8

agreement. Otherwise, Plaintiffs will be forced to move to compel and seek all other remedies under Rules 26 and 37.

**Request 7.** We disagree with your assertion that this Request must include a limitation of relevant custodians. This is a "documents sufficient to identify" request, which as you acknowledge, does not necessarily require running search terms across custodians. For that reason, we are willing to forgo general custodial searches for this Request if Defendants propose a reasonable method to identify responsive documents.

**Request 8.** We understand that Defendants have confirmed their agreement memorialized in our May 3 letter that they will "produce written policies, procedures, or guidelines concerning the recording, reporting, tracking, categorizing, or accounting for sales and billings to the extent such policies exist. Defs. 6/24 Ltr. at 7-8..  Plaintiffs reserve the right to seek production of communications about written or unwritten policies, procedures, or guidelines on these topics.

**Request 10.** We disagree with your purported clarification of the parties' agreement as to this request. As we memorialized in our April 15 letter, Plaintiffs agreed to defer this Request until Defendants made the required disclosures under the ESI Protocol. Pls. 4/15 Ltr at 4. That protocol requires Defendants to disclose the non-custodial and third-party data sources likely to contain responsive information.

**Request 12.** While we will agree to amend the scope of Request 12 to encompass the identified priority document custodians, we will not limit the scope of this Request to the Class Period, which was never a limitation on the Parties' agreement. Pls. May 3 Ltr. at 2. Please confirm by July 7 that Defendants agree that the scope of this request will include either the period Defendants have proposed for other requests, October 1, 2018 to September 30, 2019, or any period ordered by the Court.

**Request 13.** We understand that Defendants have agreed to produce calendar appointments that respond to search terms later agreed to for other requests. Pls. 4/15 Ltr. at 4-5; Defs. 6/124 Ltr. at 8-9. We reserve our right to request that Defendants produce documents responsive to this request if other agreed-upon search terms do not reasonably identify responsive documents, including, telephone logs and phone records.

**Request 14.** We understand that Defendants have agreed to produce final memoranda regarding the accounting principles used or estimates and assumptions made in connection with determining, accounting for, recognizing, or disclosing, revenue, billings, sales, and any key business metrics and non-GAAP financial measures disclosed in Pluralsight's Form 10-K and 10-K/A for fiscal year ended December 31, 2018. Plaintiffs reserve their rights to seek draft memoranda regarding the same topics, as well as communications concerning any draft or final memoranda.

**Request 17 and 18.** We understand that Defendants' position on these requests, as articulated in your June 24 letter, is that they do not agree to produce documents responsive to these requests that are not otherwise responsive to other agreed upon requests, that they do not agree to craft search terms specific to this request, and that they will not agree to search terms that refer to Pluralsight's outside auditors (e.g., "PricewaterhouseCoopers," "PwC," "Ernst & Young," "EY"), their personnel (e.g., "Danny w/2 Wallace," "Nick w/2 Velhorn"), or the audits. If this is Defendants' position, Plaintiffs consider your response

COHENMILSTEIN

July 3, 2023
Page 9

to amount to refusing to produce documents responsive to these requests and anticipate moving to compel. Please confirm by July 7 whether this is your position.

**Request 20.** Plaintiffs have considered your request that Plaintiffs provide a narrowed proposal. We propose using the language Plaintiffs proposed for Requests 14, 17-18, and thus limit the Request to "All Documents Concerning the recognition or disclosure of revenue (including any other reported revenue metric, such as deferred revenue), billings, sales, and any key business metrics and non-GAAP financial measures disclosed in Pluralsight's Form 10-K and 10-K/A for fiscal year ended December 31, 2018 in any filings by Pluralsight or the Individual Defendants with the SEC." Please let us know by July 7 if you agree to produce documents responsive to this Request as limited, subject to an agreement on search terms and custodians, and an agreement or Court ruling on period.

**Requests 23-25.** Defendants have now confirmed that they refuse to produce documents responsive to these Requests. But your claim that "all causes of action relating to the SPO were dismissed" is incorrect. Defs. 9/24 Ltr. at 11. Plaintiffs' Section 20A claim was not dismissed and that claim specifically alleges that "[o]n March 11, 2019, as part of the SPO, while Pluralsight's securities traded at artificially inflated and distorted prices, while in possession of adverse, material non-public information about Pluralsight, the Officer Defendants personally and illegally profited." ¶ 160. Further, the Complaint is filled with allegations about the SPO, which occurred during the Class Period. *See* ¶ 10, 71-83, 113-14, 118, 121 & n.17. Please confirm by July 7 whether the parties are at an impasse. If so, we will move to compel.

**Requests 26 and 35.** As you correctly note, in their responses and objections, Defendants agreed to produce "Pluralsight's final correspondence with FINRA between August 2019 and April 2020," but proffered that "during the class period Pluralsight did not receive inquiries from the SEC or NASDAQ regarding issues relevant to this case." Defs. 6/24 Ltr at 11. When we first met and conferred on April 3, we asked Defendants to confirm whether this response applied to the entire Relevant Period, from August 2018 to January 2020, and not just the Class Period, and Defendants agreed to do so. Pls. 6/23 Ltr. at 2. For more than two months, we repeatedly asked Defendants to confirm this fact. ███████████████████████████████████████████████, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ s.

We do not agree that Defendants have satisfied Requests 26 and 35. ████████████████████████████████████████████████████████████

---

[7] ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ F████████████████████████████████████████████████████████████████████████████████████████████. *Id.*

COHEN MILSTEIN

July 3, 2023
Page 10



[10] As we requested in our June 23 letter, please provide by July 7 the earliest and latest date of any communications with the SEC, FINRA, or any other governmental or self-regulatory organization relevant in any way to this action.

**Request 28.** In your June 24 letter, you reassert your position you will not run search terms on this Request for any custodians other than Skonnard and Budge. As we explained in our April 15 letter, we do not accept that proposal, noting that documents from other custodians, such as Pluralsight's directors or investor relations personnel, may be highly relevant to the claims here. This has been borne out by initial document productions from Defendants and nonparties.[11] Thus, you have not provided any plausible or reasonable justification for limiting this Request to Skonnard and Budge. Please confirm by July 7 whether your position has changed or whether we are now at an impasse such that Plaintiffs will need to move to compel.

**Request 30.** Plaintiffs will not accept limiting this Request to "final 10b5-1 plans that were in effect during the class period." Our request extends to all documents concerning the formation and terms of the Individual Defendants' 10b5-1 plans, including amendments and modifications. Documents produced by Defendants show that Pluralsight employees specifically discussed potential modifications of existing 10b5-1 plans, including cancellations, on the basis of inside information about Pluralsight's billings for the second

---

[9] *See* Fed. R. Civ. P. 37, Adv. Comm., Notes (1993 Amendments) (explaining that under Rule 37, "evasive or incomplete disclosures and responses to interrogatories and production requests are treated as failures to disclose or respond" and that "requests for production should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions"); *see also Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 405 (E.D.N.C. 2014), *aff'd sub nom. Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118 (4th Cir. 2019) (explaining that parties cannot "craft objections to requests for production of documents….so as to avoid disclosure").

[10] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[11] *See, e.g.,* PS00001571; TSCM-000105.

COHENMILSTEIN

July 3, 2023
Page 11

quarter of 2019 and before Pluralsight disclosed its billings for that quarter to investors. Defendants' limitation to "final 10b5-1 plans" is without basis and has no plausible or reasonable basis. Please confirm by no later than July 7 whether your position has changed. Otherwise, Plaintiffs will be forced to move to compel and seek other relief.

**Request 31.** Plaintiffs agree to limit this Request to documents sufficient to show Skonnard's and Budge's holdings and transactions in Pluralsight securities, subject to the Court ordered or otherwise agreed-to period and Defendants' use of a reasonable search method. Please explain Defendants' proposed search method so that we may determine whether there is a dispute.

**Request 34.** When we met and conferred on April 27, we were told that Defendants would move this Request into a "search terms discussion" and "to the extent a search term discussion makes us comfortable, we can figure this out." Plaintiffs have agreed with this proposal but will not agree to limit the scope of the request other than with the selection of agreed upon search terms, custodians, and any Court-ordered or otherwise agreed-to period. Please confirm by July 5 that this remains your position.

**Request 36.** Defendants have represented that they have produced all Directors & Officers' liability policies that are potentially relevant to coverage for Defendants' liability, including all insurance agreements under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment. Please notify us no later than July 7 if there are other policies in effect that potentially would provide coverage.

**Request 39.** Defendants confirmed that the parties have agreed to defer this Request, but that Plaintiffs have reserved their right to insist on production of responsive documents at a later date.

**Request 40.** Your statement as to this Request differs from the language of Rule 26(a). For the avoidance of doubt, it is our understanding that Defendants have agreed to produce all documents required to be produced under that rule, and thus that Defendants have agreed to produce all documents Defendants *may* use to support their claims or defenses. Please confirm by July 7.

\*                \*                \*

Lastly, we cannot agree that Defendants have met and conferred "in good faith in an effort to eliminate the need for motion practice or to eliminate as many of the disputes as possible," given Defendants' evasive discovery responses and continually changing positions, which appear designed to cause unnecessary delay and needlessly increase the costs of litigation.

Please provide us with the responses and information requested above no later than July 7.

Very truly yours,

*/s/ Jan Messerschmidt*
Jan Messerschmidt