# Exhibit N

**COHEN**MILSTEIN

Jan Messerschmidt
(202) 408-3644
jmeserschmidt@cohenmilstein.com

August 2, 2023

Stephanie L. Jensen
Wilson Sonsini Goodrich & Rosati
701 Fifth Avenue, Suite 5100
Seattle, Washington 98104-7036

      Re:     *Indiana Public Retirement Sys. et al. v. Pluralsight, Inc. et al.,* 1:19-cv-00128 (D. Utah)

Dear Stephanie:

I write in response to your July 26 letter about Plaintiffs' document requests and Defendants responses and objections.

### A.  Prior Productions

We have received your reproductions of the four documents we had identified with production quality issues. When we first raised this issue, you told us that Defendants were working on a comprehensive solution to prevent these production quality issues from arising in future productions. Please confirm that you have identified and implemented such a solution for any future productions.

In your letter, you state that your technical experts confirmed that failed text extraction or OCR of the remaining documents we identified was due to "corruption in the original files" and that you encountered the same problems when attempting "text extraction in multiple platforms." Please produce these documents in native format, so that we can process them ourselves.

Further, in our June 8 meet and confer, you confirmed that Defendants would provide the underlying hyperlink information for any hyperlinks included in produced communications.[1] It has been nearly two months and we still have not received that information. Please provide this information for any hyperlinks in produced documents no later than **Monday, August 7.**

### B.  Google Drive and Other Cloud or Modern Attachments

We have explained why the ESI Protocol and the Federal Rules require production of responsive attachments to emails, whether they are traditional attachments of copies of files or modern attachments via links to files stored on Google Drive or other cloud storage. In our July 3 letter, we also responded to each of your other objections raised in your June 24 letter, explaining that our proposal would not "ensure an

---

[1] Pls. 6/14 Ltr. at 2; *see also* ESI Protocol ¶ 9.3.

COHEN MILSTEIN

August 2, 2023
Page 2

inaccurate record" (noting Defendants' proposal would be far more inaccurate) and would not "require a separate collection process" (cost-effective tools allow it to be done simultaneously with email collections).[2]

In response, you dispute none of those points and merely reiterate your mistaken view that the ESI Protocol does not require production of modern attachments, adding that you have already "chosen" your discovery vendor. But neither of these grounds is a proper basis to refuse to produce modern attachments. To begin with, you have not disputed that Federal Rule 34(b)(2)(E)(ii) independently requires production of modern attachments. But as we have also explained, the term "attachment" clearly encompasses both traditional and modern attachments, as shown by the ordinary usage of that term by Google and other email providers, such as Microsoft, as well as the common experience of Google Mail users.[3] If Defendants wanted to depart from that ordinary understanding, it was incumbent on them, as the party better informed about their email systems, to raise that limitation during our negotiations.

Nor can Defendants shield themselves from discovery by choosing a vendor who is unwilling or unable to conduct compliant document collections. You have not explained why your vendor cannot use the software Plaintiffs have proposed or use any other alternative software to achieve the same result. Indeed, as we have explained, the software we propose, Forensic Email Collector, is used by AmLaw 100 law firms, Big 4 auditors, and other leading legal services firms.[4] If your vendor is for some reason unwilling to use such software, or is technically incapable of doing so, then Defendants must find another vendor. Nothing in the Federal Rules permits Defendants to hide behind an inadequate discovery vendor.

We cannot accept your "compromise." That proposal, in which Defendants would produce certain attachments that Plaintiffs specifically request after reviewing produced emails, would be *more* burdensome and costly, not less. As you stated in your June 24 letter, when Google emails and Google Drive documents have been collected separately, there are "no automated means through which the email and document can be coupled" and connecting the documents "must be done manually for every single instance."[5] Our technical experts concur. That is why we have proposed collecting and linking emails and their modern attachments at the same time, during the collection process, which can be performed automatically. Your proposal would necessarily require either (i) repeated recollections of emails that have already been collected, reviewed, and produced; or (ii) manual linking of emails and their attachments. In either case, Defendants' proposal would be more costly, more burdensome, and more prone to error than Plaintiffs' proposal.

In short, we have proposed a reasonable and minimally burdensome method for collection of emails and their modern attachments that preserves their family relationships. And Defendants have provided no plausible justification for refusing to agree. We are still willing to meet and confer about alternatives, but only if they achieve substantially the same result. Please tell us no later than **Monday, August 7** whether

---

[2] Pls. 7/3 Ltr. at 4-6.

[3] Pls. 6/14 Ltr. at 2-5.

[4] Pls. 6/14 Ltr. at 5 & n.9.

[5] Defs. 6/24 Ltr. at 2.

**COHEN**MILSTEIN

August 2, 2023
Page 3

Defendants' position has changed. Otherwise, Plaintiffs will be forced to move to compel and seek all other appropriate relief.

### C. Non-Custodial, Third-Party, and Inaccessible Data Sources

We received your July 28 disclosure of non-custodial, third-party, and inaccessible data sources, which we discussed during our August 1 meeting. We will address those topics in separate correspondence.

### D. Search Terms

In your June 24 letter, you told us that "Defendants will endeavor to send Plaintiffs a proposed list of search terms by June 30."[6] It has now been a month and Defendants still have not provided their proposed search terms. In our August 1 meeting yesterday, you told us that Defendants were still working on completing their proposal. Please provide your proposed search terms no later than **Monday, August 7.**

### E. Requests 5, 6, 9, 15, 16, 19, 21, 22, 27, 29, 32-33, and 37-38

Defendants appear to misunderstand our position on these Requests. We have never said that Defendants "waived" their objections "solely" because they did not respond to Plaintiffs' April 15 and May 3 letters within a given timeframe. Rather, Plaintiffs' position is that the parties reached *an agreement* when we met and conferred on April 3, which we memorialized in writing *three times* and which Defendants never disputed for two months. Good faith cooperation and negotiation depends on the parties promptly and transparently disclosing their positions and complying with their agreements. We simply cannot and will not agree to negotiate in a manner that allows Defendants to agree to the scope of 14 discovery requests and then disavow that agreement months later.

Again, we first confirmed our April 3 agreement in writing with our April 15 letter, which stated that the "parties agreed that Defendants' responses to these requests amounted to an agreement to produce documents responsive to the Requests in full as written, subject to an agreement as to search terms, custodians, and time period."[7] Less than two weeks later, on April 27, we met and conferred again, during which Defendants never disputed (or even mentioned) any disagreement with our April 15 letter. We then confirmed our April 3 agreement in writing for the *second* time in our May 3 letter memorializing our April 27 meeting, writing: "the Parties are in agreement on the scope of these Requests, subject to Relevant Time Period, search terms, and custodians."[8] We confirmed our April 3 agreement in writing for the *third* time just one week later in a May 9 email, in which we requested to schedule a meeting to discuss the few remaining disputes on our Requests, writing: "[G]iven that we have reached agreement on the scope of

---

[6] Defs. 6/24 Ltr at 4.

[7] Pls. 4/15 Ltr at 3.

[8] Pls. 5/3 Ltr. at 3.

COHENMILSTEIN

August 2, 2023
Page 4

most of our RFPs pending discussion of search terms and custodians, we would like to schedule a meet and confer to discuss search terms and custodians for early next week."[9]

Your May 9 response email, the only written correspondence that you rely on, did not remotely suggest that Defendants disagreed with Plaintiffs' account of the parties' agreements on any request—much less more than a third of them. Nor did your email propose "postponing" negotiations until after our May 31 mediation. Instead, you wrote that "[i]n order for both sides to be prepared for the mediation later this month, we *propose prioritizing the ESI protocol."* You then stated that once that protocol was submitted to the Court, "Defendants can begin a rolling production of documents that are not in dispute" and "[o]nce that rolling production is underway, we would be happy to resume the RFP negotiations." Responding the next day, we agreed to prioritize resolution of ESI Protocol and to defer "our conferral *as to search terms and custodians until that protocol is finalized,*" but asked to "schedule times to resume the RFP negotiations next week" given that we were "approaching the seventh month of discovery without any productions from either party."[10] We also asked you to address certain priority issues that remained outstanding (such as the discovery period) by the end of that week, stressing that it was essential "that the parties make it a priority to respond and resolve disputes consistent with the parties' expectations, and, if they are unable to do so, to promptly notify the other parties of that fact." You never responded to that email. In short, Defendants never proposed postponing negotiations until after the mediation and we never agreed to do so. And regardless, there is simply no plausible reason why Defendants could not have told Plaintiffs they disagreed with our April 15 and May 3 letters at that time.

That said, Plaintiffs have sought to review Defendants' objections to determine whether there is a way to avoid court intervention. Based on that review, Plaintiffs believe that the parties are closer than it may appear and Plaintiffs provide below their proposals on these requests. We make these proposals without waiver of our position that Defendants' belated reassertion of their objections are improper, and we reserve our rights to seek all appropriate relief. We also stress that Plaintiffs cannot and will not agree to further delay, that their proposals below are largely nonnegotiable, and that Defendants must confirm their agreement no later than **Monday, August 7.** If Defendants believe conferral would be fruitful, they must notify us this week, specifically identifying the requests they wish to discuss, and confirming their agreement as to all other requests no later than **Monday, August 7**. If Defendants have not confirmed their position on any of these requests by Monday, Plaintiffs will consider Defendants' position to be unchanged and we will be forced to move to compel and seek all other appropriate relief.

1. **Requests 5, 6, 9, 21, 22**

These requests are already limited to documents related to "historical, current, or projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force."[11] Thus, as written,

---

[9] Email from W. Wilder to S. Jensen, May 9, 2023.

[10] Email from J. Messerschmidt to S. Jensen, May 10, 2023.

[11] *See* Request 5  ("All Documents Concerning the recording, tracking of, monitoring of, calculation of, accounting for, or disclosure of *historical, current, or projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force.*"); Request 6 ("All Documents prepared for, distributed at, or memorializing any meetings, whether internal or external to Pluralsight, involving the Individual Defendants or any other officer or Executive of Pluralsight, during which

COHENMILSTEIN

August 2, 2023
Page 5

the scope of these requests is coextensive with Defendants' proposed limitation to "Topical Documents."[12] Plaintiffs thus believe there is no disagreement as to these requests as written and that Defendants proposed limitation is unnecessary. Please confirm by **Monday, August 7** that Defendants agree.

### 2.   Request 15

This request is narrow, discrete, and particularized, requesting Board materials for formal or informal meetings of Pluralsight's Board or committees during the Relevant Period. Defendants have represented that "Pluralsight utilized Diligent for Board materials, which served as a non-custodial data source for Board presentations during the relevant time period."[13] Thus, there is no basis to narrow this request further or to impose search terms. Please confirm by **Monday, August 7** whether Defendants agree to produce all nonprivileged documents responsive to this request in full as written, subject to the Court's ruling on the discovery period.

### 3.   Request 16

Defendants proffered that Pluralsight's Board used Diligent as its Board Management Application during the January 1 to July 31, 2019 period. Please confirm by **Monday, August 7** that Defendants will identify the Board Management Application used during any other period covered by the discovery period approved by the Court.

### 4.   Requests 19 and 27

In the interest of compromise, Plaintiffs will agree to limit the scope of Request 19 to all Documents concerning any communications, press releases, conference calls, webcasts, presentations, or meetings with any Pluralsight shareholders, securities analysts, financial analysts, institutional investors, financial publications, or investment banks, including, but not limited to, the specific investor meetings, conferences, and conference calls listed in Request 19, that concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force. Please confirm by **Monday, August 7** whether Defendants agree.

---

*historical, current, or projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force* was discussed."); Request 9 ("Documents sufficient to identify all CRM and Business Intelligence Applications, internal databases, or other systems used to record, track, monitor, calculate, visualize, or account for *historical, current, or projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force.*"); Request 21 (related to Documents concerning Budge's January 16, 2019 statements about the number of "enterprise-class reps," "quota-bearing reps," "B2B billings number," sales "efficiencies," "cash flow" and profitability, quality and productivity of sales reps, and "infrastructure," "retention," and "scale" of sales); Request 22 ("All documents concerning Pluralsight's disclosure on July 31, 2019 of "*sales execution challenges," billings growth* of 23% year-over-year, and *B2B billings growth* of 27% year-over-year.")

[12] Defs. 6/24 Ltr at 7 (defining "Topical Documents" to mean nonprivileged, responsive documents that "hit on one or more of the search terms and custodians negotiated by the parties and concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force").

[13] Defs. 7/18 Ltr at 2.

**COHEN**MILSTEIN

August 2, 2023
Page 6

Similarly, Plaintiffs will agree to limit the scope of Request 27 to all documents concerning the retention, engagement, or consultation with any third party, including public relations consultants, disclosure consultants, or legal advisors in connection with Pluralsight's public disclosures" that concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force. Please confirm by **Monday, August 7** whether Defendants agree.

### 5.   Request 29

Plaintiffs will agree to limit this Request to documents sufficient to show Skonnard's and Budge's compensation during the discovery period approved by the Court, including, but not limited to, all pay slips and vesting, net settlement, and sell-to-cover records for all periods covered by the discovery period approved by the Court. Please confirm by **Monday, August 7** whether Defendants agree.

### 6.   Requests 32 and 33

We cannot agree to Defendants' proposals for these requests because they exclude communications regarding "compliance with or violations of" Pluralsight's public disclosure and insider trading policies. There is no basis to exclude such communications, which are unquestionably relevant. Indeed, Defendants have also produced documents showing that Pluralsight's employees communicated about compliance with such policies.[14] Plaintiffs will thus agree to limit Request to all written policies, procedures, or guidelines concerning public disclosures to investors that were in effect during the discovery period approved by the Court, to the extent they exist and all communications regarding compliance with or violations of those policies, procedures, or guidelines. Similarly, Plaintiffs will agree to limit Request 33 to all written policies, procedures, or guidelines concerning insider trading or 10b5-1 Plans in place at Pluralsight during the discovery period approved by the Court and all communications regarding compliance with or violations of those policies, procedures, or guidelines. Please confirm by **Monday, August 7** whether Defendants agree.

### 7.   Request 37

Plaintiffs will agree to limit this request to the final indemnification agreements between Skonnard or Budge and Pluralsight effective during the discovery period approved by the Court, to the extent such documents exist. Please confirm by **Monday, August 7** whether Defendants agree.

---

[14] PS00001210-11 (Slack chat between Eric Teuscher and Mark Hansen discussing whether cancellation of 10b5-1 trading plans would be permissible in connection with disclosure of the financial results for the second quarter of 2019).

**COHEN**MILSTEIN

August 2, 2023
Page 7

### 8. Request 38

Plaintiffs will agree to limit this request to any, written policies, procedures, or guidelines concerning document retention and destruction that were in place during the discovery period approved by the Court, to the extent such documents exist. Please confirm by **Monday, August 7** whether Defendants agree.

## F.  Other Specific Requests

### 1.  Requests 1-2

Plaintiffs understand Defendants have represented that they have completed their production of Pluralsight's corporate structure chart and organizational charts for the eight persons identified in their disclosures of priority document custodians. Plaintiffs reserve their right to seek production of additional responsive documents if your production proves to be incomplete.

### 2.  Request 3

Plaintiffs understand Defendants have represented that they have completed their production of employment agreements for Budge, Skonnard, and DiBartolomeo that were drafted, prepared, or in effect during the Relevant Period. Defendants acknowledge that Plaintiffs reserve their right to seek production of draft employment agreements, and Plaintiffs also reserve their right to seek production of additional responsive documents if your production proves to be incomplete.

### 3.  Request 4

Plaintiffs fully explained the basis for this request when we met and conferred on April 3. In support of Defendants' refusal to produce documents responsive to this request, your July 26 letter refers only to Defendants' responses and objections, which consist of a single general, boilerplate objection to relevance and objections "to the extent" that the request calls for the creation of documents or documents not in Defendants' possession, custody, or control. Such boilerplate objections are improper and irrelevant, and Plaintiffs reserve the right to seek production of documents responsive to this request, as well as the right to assert that Defendants waived any objections to this request.[15]

### 4.  Request 7

Plaintiffs will agree to confer about search methods to identify documents responsive to this request. But given that Defendants have disclosed 9 non-custodial data sources and 3 inaccessible "data sources potentially containing information concerning the size, capacity, retention, or productivity of Pluralsight's

---

[15] *See Smash Tech., LLC v. Smash Sols., LLC,* 335 F.R.D. 438, 442 (D. Utah 2020) (explaining that "boilerplate objections waives the objections while violating the rules"); *Johnson v. Kraft Foods N. Am., Inc.,* 236 F.R.D. 535, 538 (D. Kan. 2006) ("The Court agrees with these cases and holds that a general objection which objects to a discovery request "to the extent" that it asks the responding party to provide certain categories of documents or information is tantamount to asserting no objection at all.").

**COHEN**MILSTEIN

August 2, 2023
Page 8

salesforce," Plaintiffs do not believe that it makes sense to limit the search methods to "custodial searches that hit on agreed-upon search terms." Please propose your method for identifying documents responsive to this request when you provide Plaintiffs with your proposed search terms on **Monday, August 7**.

### 5.  Request 8

We understand that Defendants have confirmed their agreement memorialized in our May 3 letter that they will "produce written policies, procedures, or guidelines concerning the recording, reporting, tracking, categorizing, or accounting for sales and billings to the extent such policies exist."[16] As you acknowledge, Plaintiffs reserve the right to seek production of communications about written or unwritten policies, procedures, or guidelines on these topics.

### 6.  Request 10

The parties agreed to postpone negotiations on this Request until after Defendants disclosed the non-custodial, third-party, and inaccessible data sources likely contain responsive information. Defendants disclosed those data sources on July 28, which identified 9 non-custodial data sources (Workday, Anaplan, Salesforce, Tableau, Lucidchart, Dropbox, Blackline, Shared Google Drive, Snowflake) and 3 inaccessible data sources (Domo, Hadoop, and Blue Jeans) likely to contain "information concerning the size, capacity, retention, or productivity of Pluralsight's salesforce." Please let us know by **Monday, August 7** whether you agree to produce documents responsive to Request 10 as to those data sources, in full or in part (that is documents sufficient to show use of or access to these data sources, such as user activity reports, logins, and data viewed).

### 7.  Request 11

We understand that Defendants have confirmed their agreement to produce nonprivileged documents sufficient to identify the electronic devices, accounts, and addresses for each of the Individual Defendants and current or former employees identified in Defendants' initial disclosures to the extent such devices and accounts were used to conduct Pluralsight business or are otherwise likely to contain potentially relevant information, to the extent such information exists.[17]

### 8.  Request 12

Defendants stated that they would await the Court's ruling on the discovery period "before revisiting this Request." Plaintiffs see no reason why the parties cannot reach agreement pending the Court's ruling, as they have for other requests. Please confirm no later than **Monday, August 7** that you will produce

---

[16] Defs. 6/24 Ltr. at 7-8.

[17] Defs. 6/24/Ltr. at 8.

**COHEN**MILSTEIN

August 2, 2023
Page 9

documents sufficient to identify the executive assistants or chiefs of staff for the priority document custodians during the discovery period approved by the Court.

### 9. Request 13

We understand that Defendants have agreed to produce calendar appointments that respond to agreed search terms.[18] As you acknowledge, Plaintiffs reserve their right to request that Defendants produce documents responsive to this request if other agreed-upon search terms do not reasonably identify responsive documents, including, telephone logs and phone records.

### 10. Request 14

Plaintiffs understand that Defendants have agreed to produce final memoranda regarding the accounting principles used or estimates and assumptions made in connection with determining, accounting for, recognizing, or disclosing, revenue, billings, sales, and any key business metrics and non-GAAP financial measures disclosed in Pluralsight's Form 10-K and 10-K/A for fiscal year ended December 31, 2018. As you acknowledge, Plaintiffs reserve their right to seek draft memoranda regarding the same topics, as well as communications concerning any draft or final memoranda.

### 11. Request 17 and 18

Plaintiffs understand that Defendants confirmed that they will not produce documents specifically responsive to this request unless they also "concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force" and that Defendants will "not agree to any special search terms for these Requests, including search terms that refer to Pluralsight's outside auditors." Plaintiffs have explained why Defendants' conditions are unacceptable, noting that Ernst & Young's document production shows that audit-related documents are relevant not only to Pluralsight's public disclosures, but also to its insider trading policies and practices. Defendants also produced documents provided to FINRA that confirm that PricewaterhouseCoopers and other accounting firms "participated in or were privy to information" about Pluralsight's financial results for the second quarter of 2019 before the Company's July 31, 2019 disclosure.[19] Defendants thus have no legitimate basis to refuse to produce documents specifically responsive to this request, and Plaintiffs are left with no choice but to move to compel. Because Plaintiffs do not believe Defendants' position is substantially justified, they reserve the right to seek an order requiring Defendants to pay Plaintiffs' costs incurred in bringing a motion to compel.

### 12. Request 20

In your July 26 letter, you state that Defendants will agree to Plaintiffs' proposal to limit this Request to "[a]ll Documents Concerning the recognition or disclosure of revenue (including any other reported

---

[18] Defs. 7/26 Ltr. at 3; Pls. 4/15 Ltr. at 4-5; Defs. 6/14 Ltr. at 8-9.

[19] PS00002428; PS00002403

COHENMILSTEIN

August 2, 2023
Page 10

revenue metric, such as deferred revenue), billings, sales, and any key business metrics and non-GAAP financial measures disclosed in Pluralsight's Form 10-K and 10-K/A for fiscal year ended December 31, 2018 in any filings by Pluralsight or the Individual Defendants with the SEC." But you add that Defendants will only agree to this proposal, subject to an understanding that responsive documents would also need to concern historical, current, and projected billings, revenue, or sales, or the size, capacity, retention, or productivity of Pluralsight's sales force. Plaintiffs view that condition as unnecessary because, like Requests 5, 6, 9, 21, 22, discussed above, Plaintiffs' proposal is already limited to disclosures of revenue, billings, sales, and other related key business metrics and financial measures. Plaintiffs thus believe there is no disagreement as to these requests and that Defendants' proposed additional limitation is unnecessary. Please confirm by **Monday, August 7** that Defendants agree to produce nonprivileged documents responsive to these requests as limited above, subject to an agreement on search terms and custodians, and the Court's ruling on the discovery period.

### 13. Requests 23-25

Plaintiffs explained in their July 3 letter that specific allegations show that documents responsive to Requests 23-25 are relevant, which you do not address or dispute in your July 26 letter. Instead, you assert for the first time that these requests should be limited to "the indicia—or non-indicia—of scienter, claiming that Plaintiffs' requests have "clearly *not* been limited…as they instead seek 'all documents' concerning' the March 2019 SPO and September 21, 2018 Draft Registration Statement."[20]

That characterization is inaccurate. Request 23 is limited to "[a]ll documents concerning or memorializing communications with the SPO Underwriters in connection with the September 21, 2018 Draft Registration Statement, the March 2019 SPO, or the SPO Offering Documents *in which Pluralsight's historical or projected billings, sales, revenue, profitability, common stock's trading or offering price, or the timing of the SPO, was discussed.*" Similarly, Request 24 is limited to "[a]ll **d**ocuments concerning or memorializing discussions with or between Pluralsight's officers, directors or employees, or with third parties, concerning *the SPO, the SPO's timing, number of shares, offering price, the decision not to proceed with the September 21, 2018 Registration Statement or the decision to proceed with the March 2019 offering.*" Thus, Plaintiffs maintain Requests 23 and 24 are narrow and particularized as written, and that there is no basis to limit the scope of these requests.

Plaintiffs will agree to defer Request 25, which we recognize is broader in scope, if Defendants agree to produce documents responsive to Requests 23 and 24 in full as written, subject to an agreement on search terms and custodians, and the Court's ruling on the discovery period. Please confirm whether you agree no later than **Monday, August 7**. If Defendants will not agree, Plaintiffs will be forced to compel production of documents responsive to all three requests, without restriction. Because Plaintiffs do not believe Defendants' position is substantially justified, they reserve the right to seek an order requiring Defendants to pay Plaintiffs' costs incurred in bringing a motion to compel.

---

[20] Defs. 7/26 Ltr. at 4 (emphasis in original).

**COHEN**MILSTEIN

August 2, 2023
Page 11

### 14. Requests 26 and 35.

██████████████████████████████████████████████████████████
████████████████ ██████████ ███████████████████████████Plaintiffs specifically requested documents related to inquiries by the SEC or FINRA about "Defendants' public statements or transactions in Pluralsight securities." In response, Defendants proffered that "during the class period Pluralsight did not receive inquiries from the SEC…regarding issues relevant to this case." Defendants coupled that proffer with their disclosure of correspondence with FINRA *outside* the class period from August 2019 to April 2020. █████████████████████████████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████
████████████[23] █████████████████████████████████████████████ ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
███████████████████████████. At the very outset of our negotiations on our requests, on April 3, we asked you to confirm whether Defendants received relevant inquiries from the SEC outside the class period, from August 1, 2018 to January 31, 2020. You told us that you did not know whether such inquiries were made but agreed to confirm internally,[24] █████████████████████████████████████████████
███████████████████████████████████████████[25] Over the next two months, we repeatedly asked you in our written correspondence to promptly answer our straightforward question.[26] ████████████████████████

---

[21] Defs. 7/26 Ltr. at 4.

[22] ████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

[23] Compl. ¶ 109 ("On July 26, 2019, in brazen disregard of the fact that the Company was days away from shocking the market with the truth about the condition of its sales force, just **five days before the disastrous Q2 2019 earnings call**, Skonnard sold 84,594 shares of Class A common stock at an average price of $30.47, for a total value of $2,577,849.88. Had he sold at the lowest point on August 1, 2019 ($18.16), he would have received $1,536,227.04—meaning that **by trading before he disclosed the truth, he profited by an additional $1,041,622.84**.") (emphasis in original); *see also id.* ¶ 12.

[24] *See* Defs. 4/4 Ltr. at 3 ("Pursuant to Plaintiffs request, Defendants undertook to confirm whether their Response with respect to the SEC and NASDAQ would also apply to the period August 2018 through January 2020.")

[25] ████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

[26] *See* Pls. 4/15 Ltr at 5, 6 (requesting Defendants to confirm the existence of any SEC inquiries by April 21); Email from W. Wilder to S. Jensen, Apr. 21, 2023 (asking whether Plaintiffs could expect a response to their April 15 letter); Pls. 5/3 Ltr at 3 (requesting Defendants to confirm the existence of any SEC inquiries by May 5); Email from W. Wilder to S. Jensen, May 9, 2023 (asking for a response on Requests 26 and 35); Pls. 6/14 Ltr. at 9 (requesting Defendants to confirm the existence of any SEC inquiries by June 16).

COHENMILSTEIN

August 2, 2023
Page 12

███████████████████████████████████, you not only failed to respond to our written requests, each time we met and conferred, on April 27 and again on June 8, you continued to claim that you had not yet determined whether an SEC inquiry took place.[27] ████████████████████████████ ████████████████████████████████████████████████ ████████████████████[28]

There is no justification for such blatant and persistent concealment of relevant information. ████████ █████████████████████████████████████████████████ ████████████████████████████████████ Moreover, Request 26 was not limited to correspondence and extended to all other documents relating to communications with, requests by, or actions by the SEC, FINRA, or other governmental or regulatory organizations. Given Defendants' evasion and concealment of information responsive to these requests, we cannot accept anything less than full and complete production of all documents responsive to Requests 26 and 35 as written. Please produce all documents responsive to those requests no later than **Monday, August 7.** If Defendants fail to do so, Plaintiffs will be forced to move to compel and seek all other appropriate relief.

████████████████████████████████████████ please confirm no later than **Monday, August 7** whether, from August 1, 2018 to Present, Defendants received ████████████ ████████████████████████████████████████████████ ███████████████████████████

### 15. Request 28

As Plaintiffs have repeatedly explained, Defendants have provided no plausible or reasonable justification for limiting this request to Skonnard and Budge, noting that documents produced thus far show that documents possessed by other custodians may be relevant.[29] In your July 26 letter, you again fail to explain why this request should be limited to two custodians and merely assert generalized, boilerplate, and unsupported objections that the request is "overbroad and disproportionate."[30] That said, to try to compromise and to avoid bringing unnecessary disputes to the Court, Plaintiffs propose that the parties confer about this request during negotiations about search terms and custodians. If Defendants believe that searching for responsive documents from custodians other than Skonnard and Budge would be disproportionate, they can support that claim by providing search term hit counts, broken down by custodian. Please confirm no later than **Monday, August 7** that Defendants agree. If Defendants do not agree,

---

[27] Pls. 5/3 Ltr. at 3 ("Defendants stated that they have not yet been able to confirm whether the SEC or NASDAQ contacted Pluralsight during the Relevant Time Period."); Pls. 6/14 Ltr. at 9 ("You stated that you had been unable to confirm whether SEC or NASDAQ contacted Pluralsight during the Relevant Time Period but would do so as soon as possible.").

[28] Pls. 6/3 Ltr. at 1-3.

[29] Pls. 7/3 Ltr. at 10.

[30] Defs. 7/26 Ltr. at 4.

COHENMILSTEIN

August 2, 2023
Page 13

Plaintiffs will be forced to move to compel production of documents responsive to this request without restriction.

### 16. Request 30

Plaintiffs understand that Defendants have agreed to produce the final 10b5-1 plans for Skonnard and Budge and non-privileged documents that respond to agreed upon search terms, limited to the custodial files of Skonnard and Budge, that concern the entry or modification of Skonanrd's or Budge's 10b5-1 plans. We cannot agree to limit this request to Skonnard's and Budge's custodial files. Under Pluralsight's insider trading policy, "[t]he Company must be promptly notified of any modification or termination of the trading plan, including any suspension of trading under the plan,"[31] and the 10b5-1 plans themselves provide for notice to other Pluralsight employees, such as Joseph DiBartolomeo and Mark Hansen, who are both proposed custodians.[32] Those other proposed custodians are thus likely to possess documents responsive to this request. We propose that the parties negotiate appropriate custodians as we confer about search terms and custodians. Please confirm no later than **Monday, August 7** that this is acceptable.

### 17. Request 31

In your July 26 letter, you state that your production of Form 4s for both Skonnard and Budge "satisfies this Request in full." We do not agree. Skonnard's and Budge's Form 4s are documents that they filed reporting their transactions, with individual transactions often aggregated into weighted average bands;[33] they are not records of the transactions themselves. This case involves insider trading claims against the two individual defendants and all trading records must be produced, including:

- Documents sufficient to identify all financial institution, securities, or brokerage accounts in which any trading of Pluralsight securities occurred;

- Documents sufficient to identify all holdings or transactions of Pluralsight securities from those accounts, including account statements and trade confirmations;

- Documents sufficient to identify all orders and any other instructions given or received for Skonnard's or Budge's purchase or sale of Pluralsight securities;

- Documents sufficient to identify all communications concerning the executions of transactions under Budge's or Skonnard's 10b5-1 plans, including notifications required by Pluralsight's insider trading policy.[34]

---

[31] PS00002521.

[32] PS00002793.

[33] PS00002696.

[34] PS00002479.

**COHEN**MILSTEIN

August 2, 2023
Page 14

Please confirm no later than **Monday, August 7** that Defendants agree to produce these documents.

### 18. Request 34

We understand that Defendants have agreed to defer this request to the parties' negotiations on applicable search terms and custodians.

### 19. Request 36

We understand Defendants have represented they have produced all insurance policies that would potentially provide coverage to a possible judgment.

### 20. Request 39

As you have acknowledged, Plaintiffs have agreed to defer this Request, but reserve their right to insist on production of responsive documents at a later date.[35]

### 21. Request 40

Defendants have represented that they will produce all documents Defendants may use to support their claims or defenses.

*          *          *

Please confirm your agreement or disagreement with any of the above no later than **Monday, August 7.** As always, we are happy to meet and confer about these matters.

Very truly yours,

*/s/ Jan Messerschmidt*

---

[35] Defs. 6/24 Ltr. at 13.