Gregory L. Watts (#17782)
gwatts@wsgr.com
Caitlin E. McKelvie (#16511)
cmckelvie@wsgr.com
Stevenson C. Smith (#18546)
stevenson.smith@wsgr.com
Tamara Lemmon (#18462)
tlemmon@wsgr.com
Wilson Sonsini Goodrich & Rosati, P.C.
15 West South Temple
Gateway Tower West, Suite 1700
Salt Lake City, UT 84101
Telephone: (801) 401-8510

Ignacio E. Salceda (*pro hac vice*)
isalceda@wsgr.com
Wilson Sonsini Goodrich & Rosati, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300

Stephanie L. Jensen (*pro hac vice*)
sjensen@wsgr.com
Tyre L. Tindall (*pro hac vice*)
ttindall@wsgr.com
McKinney Wheeler (*pro hac vice*)
mckinney.wheeler@wsgr.com
Wilson Sonsini Goodrich & Rosati, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104
Telephone: (206) 883-2500

*Attorneys for Defendants Pluralsight, Inc., Aaron Skonnard, and James Budge*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM and PUBLIC SCHOOL TEACHERS' PENSION AND RETIREMENT FUND OF CHICAGO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PLURALSIGHT, INC.; AARON SKONNARD; and JAMES BUDGE,<br><br>Defendants. | **DECLARATION OF CAITLIN E. McKELVIE IN SUPPORT OF DEFENDANTS' OPPOSITION TO LEAD PLAINTIFFS' SHORT FORM DISCOVERY MOTION TO COMPEL DEFENDANTS TO PRODUCE AUDIT-RELATED DOCUMENTS**<br><br>**Case No. 1:19-CV-00128-DBB-DAO**<br><br>Honorable David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

I, Caitlin E. McKelvie, declare:

I am an attorney duly admitted to practice law in the State of Utah and in the United States District Court for the District of Utah.

1.    I am an associate at the law firm of Wilson Sonsini Goodrich & Rosati, P.C., and am counsel of record for Pluralsight, Inc. ("Pluralsight"), Aaron Skonnard, and James Budge (with Pluralsight, "Defendants"). I have personal knowledge of, and if called as a witness would competently testify to, the matters stated herein. This declaration is submitted in support of Defendants' Opposition to Lead Plaintiffs' Short Form Discovery Motion to Compel Defendants to Produce Audit-Related Documents.

2.    Plaintiffs' First Set of Requests for Production of Documents (the "RFPs") seek an expansive production of audit-related documents.

   a.    Request 17 seeks: "All Documents Concerning PwC's audits, interim reviews, analyses, evaluations, or testing 14 of Pluralsight's accounting for, disclosure of, or internal control over financial reporting of revenue, deferred revenue, Billings, key business metrics, or other GAAP or non-GAAP financial measures during the Audit and Professional Engagement Period for any audit or non-audit services PwC provided during the Relevant Period."  Dkt. 225-1 at 13-14.

   b.    Request 18 seeks: "All Documents Concerning EY's audits, interim reviews, analyses, evaluations, or testing of Pluralsight's accounting for, disclosure of, or internal control over financial reporting of revenue, deferred revenue, Billings, key business metrics, or other GAAP or non-GAAP financial measures during the Audit

1

and Professional Engagement Period for any audit or non-audit services EY provided during the Relevant Period." *Id*. at 14.

c. Definition 15 defines "Concerning" as "constituting, reflecting, referring to, describing, evidencing, demonstrating, showing, involving, regarding, referencing, incorporating, effecting, or otherwise pertaining to or relating to, either directly or indirectly, or being in any way logically or factually connected with the subject matter of the Request. *Id.* at 4.

d. Definition 18 defines "Document" "to be synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes communications, "writings" and "recordings" (as defined by Rule 1001 of the Federal Rules of Evidence), and all forms of ESI [electronically stored information]."

e. Plaintiffs' RFPs do not define "key business metrics," GAAP financial metrics, or non-GAAP financial metrics.

3. Pluralsight filed a Form 10-K for 2018 (the "2018 10-K") with the Securities and Exchange Commission ("SEC"), which is available at https://www.sec.gov/Archives/edgar/data/1725579/000172557919000007/ps201810k.htm#sCAB724202C295598B3AB1F3082FD2632. A true and accurate copy of the 2018 10-K is attached as Exhibit 1.

4. Pluralsight filed a Form 10-K for 2019 (the "2019 10-K") with the Securities and Exchange Commission ("SEC"), which is available at https://www.sec.gov/Archives/edgar/data/1725579/000172557920000008/ps10-k123119.htm. A true and accurate copy of the 2019 10-K is attached as Exhibit 2.

5.      Pluralsight's 2018 10-K includes more than 100 financial measures on the GAAP consolidated balance sheet, consolidated statement of operations, consolidated statements of comprehensive loss, and consolidated statement of cash flows.  Ex. 1 at 71-77.  A full list of such financial measures is set forth below in paragraph 35.

6.      Pluralsight's 2019 10-K includes more than 30 additional financial measures on the GAAP consolidated balance sheet, consolidated statement of operations, and consolidated statement of cash flows, beyond those in the 2018 10-K.  Ex. 2 at 78-85.  A full list of such additional financial measures is set forth below in paragraph 36.

7.      Pluralsight's 2018 10-K and 2019 10-K include the following as non-GAAP financial measures:

       a.   Gross profit;

       b.   Gross margin;

       c.   Operating loss; and

       d.   Free cash flow.

Ex. 1 at 46-47; Ex. 2 at 48-49.

8.      Pluralsight's 2018 10-K and 2019 10-K include the following key business metrics:

       a.   Business customers;

       b.   Billings;

       c.   Billings from business customers;

       d.   Percentage of billings from business customers; and

       e.   Dollar-based net retention rate.

Ex. 1 at 45-46; Ex. 2 at 47-48.

9.      Defendants do not believe that any of the information sought by RFPs 17 and 18 is relevant to the claims and defenses at issues in this case.  Nevertheless, Defendants offered to compromise with Plaintiffs by agreeing to produce a more limited universe of materials related to Pluralsight's historical, current, and projected billings, revenue, or sales, or (to the extent they exist) the size, capacity, retention, or productivity of Pluralsight's sales force.  *See* Dkt. 225-11 at 9-10; Dkt. 225-14 at 3.

10.     Plaintiffs rejected Defendants' attempts to compromise, and now move the Court to compel Defendants to produce all documents responsive to Requests 17 and 18 without any limitations.

11.     In moving to compel on Requests 17 and 18,





20.     Defendants cannot estimate the precise burden associated with producing *all* documents responsive to Requests 17 and 18 due to the significant scope and lack of reasonable particularity of the Requests. Further, although the parties have reached an agreement with respect to overall document custodians, the parties are still in the process of meeting and conferring regarding the parameters applicable to non-custodial data sources, which will increase the universe of data that needs to be reviewed. Moreover, Plaintiffs' motion to compel a responsive time period 50% longer than that Defendants have agreed to is still pending. Accordingly, the universe of data that must be reviewed for responsive documents has not yet been set. However, I am able to estimate a portion of the burden associated with just a subset of data.

21.     Pluralsight has engaged a vendor—Lighthouse Global Technologies, Inc. ("Lighthouse")—to assist in document collection, processing, promotion, hosting, and production.

22.     Pluralsight has collected, processed, and promoted available data from certain data sources for the sixteen agreed-upon document custodians, including the custodians' email, the custodians' non-shared Google Drive files, and Slack, for the 12-month time period of October 1, 2018 through September 30, 2019.[1]

---

[1] The parties have agreed to begin the time period on May 1, 2019, for one custodian. Accordingly, this data is limited to May 1, 2019, to September 30, 2019, for one custodian.

23.     Consistent with the ESI Protocol, Defendants have instructed Lighthouse to de-duplicate the data collected from these document custodians.  Based on this deduplication, if ten of the sixteen document custodians are in possession of the same email, the email will only constitute a single document in any search results.

24.     When Lighthouse promotes data, it is available for my review through a platform called Relativity.  The data available for my review has been deduplicated.

25.     I performed searches in Relativity to identify the promoted documents for the sixteen document custodians, limited to the time period of October 1, 2018, through September 30, 2019, and limited to the sources of those custodians' non-shared Google Drive files, email, and Slack.

26.     These searches resulted in more than 650,000 unique (deduplicated) documents for the sixteen document custodians, solely from those custodians' non-shared Google Drive files, email, and Slack, for the time period of October 1, 2018, through September 30, 2019.

27.     These figures do not include other custodial and non-custodial data sources.  As an example, these figures do not include Dropbox, which contains a very substantial volume of data, or shared Google Drives.  Further, these figures do not include documents from the expanded time period that is the issue of another motion to compel.

28.     The ultimate number of documents to be reviewed for responsiveness will depend upon the parties' negotiations of search terms, combined with the parties' negotiations relating to non-custodial data sources and the Court's determination with respect to time period.

29.     The speed at which documents are reviewed is highly dependent upon the type of documents covered by the review.  It is faster to review short emails than it is to review 100-page presentations or complex spreadsheets.

30.     As an average rate of review throughout an entire case, I anticipate that the level of review from Wilson Sonsini attorneys will be done at roughly 45–55 documents per hour.  The review for audit-related documents may take longer than this overall average.  Certain documents will also go through an additional level of review.  The speed of this additional level of review will vary.  The Wilson Sonsini attorneys that will conduct reviews have a billing rate of at least $615.

31.     Without a specified scope for the RPFs, I cannot estimate the burden associated with collecting documents from non-custodial data sources or negotiating search terms.  The Wilson Sonsini attorneys that will participate in negotiating search terms and non-custodial data sources and conduct review of same have a billing rate of at least $615.

32.     The costs associated with negotiating search terms, reviewing documents, and producing documents would include at least the following:

    a.   Search term and non-custodial data source negotiations, charged by Wilson Sonsini at a minimum of $615 per hour;

    b.   Document review, charged by Wilson Sonsini at a minimum of $615 per hour;

    c.   Data collection from non-custodial data sources specific to these RFPs, charged by Lighthouse per hour[2];

---

[2] Pluralsight is contractually obligated to keep confidential the specific rates charged by Lighthouse due to the sensitive and competitive nature of those rates.

d. Most data processing, charged by Lighthouse per gigabyte;

e. Project management, charged by Lighthouse per hour;

f. Technical support, charged by Lighthouse per hour;

g. Senior management and expert consulting services, charged by Lighthouse per hour;

h. Data promoting for review, charged by Lighthouse per gigabyte;

i. Data hosting, charged by Lighthouse per gigabyte per month;

j. OCR, charged by Lighthouse per page; and

k. Document production, charged by Lighthouse per hour.

33. Pluralsight's 2018 10-K includes the following financial measures on the GAAP consolidated balance sheet, consolidated statement of operations, consolidated statements of comprehensive loss, and consolidated statement of cash flows:

a. Consolidated balance sheet:

1) Assets;

2) Cash and equivalents;

3) Accounts receivable, net of allowances of $2,501 and $1,552 as of December 31, 2018 and 2017, respectively;

4) Prepaid expenses and other current assets;

5) Total current assets;

6) Property and equipment, net;

7) Content library, net;

8) Intangible assets, net;

9) Goodwill;

10) Restricted cash;

11) Other assets;

12) Total assets;

13) Liabilities, redeemable convertible preferred unites, and stockholders' equity/members' deficit;

14) Accounts payable;

15) Accrued expenses;

16) Accrued author fees;

17) Deferred revenue;

18) Total current liabilities;

19) Deferred revenue, net of current portion;

20) Long-term debt, less current portion, net;

21) Facility financing obligation;

22) Other liabilities;

23) Total liabilities;

24) Commitments and contingencies;

25) Redeemable convertible preferred unites, no par value; 48,447,880 unites authorized, issued and outstanding as of December 31, 2017;

26) Preferred stock, $0.0001 par value per share, 100,000,000 shares authorized, no shares issued and outstanding as of December 31, 2018;

27) Class A common stock;

28) Class B common stock;

29) Class C common stock;

30) Additional paid-in capital;

31) Accumulated other comprehensive (loss) income;

32) Accumulated deficit;

33) Total stockholders' equity/members' deficit; and

34) Total liabilities, redeemable convertible preferred units, and stockholders' equity/members' deficit;

b.  Consolidated statement of operations:

1)  Revenue;

2) Cost of revenue;

3) Gross profit;

4) Sales and marketing operating expenses;

5) Technology and content operating expenses;

6) General and administrative operating expenses;

7) Total operating expenses;

8) Loss from operations;

9) Interest expense;

10) Loss on debt extinguishment;

11) Other income, net;

12) Loss before income taxes;

13) Provision for income taxes;

14) Net loss;

15) Net loss attributable to non-controlling interests;

16) Net loss attributable to Pluralsight, Inc;

17) Accretion of Series A redeemable convertible preferred unites;

18) Net loss attributable to common shares;

19) Net loss per share, basic and diluted; and

20) Weighted-average common shares used in computing basic and diluted net loss per share;

c. Consolidated statements of comprehensive loss:

1) Net loss;

2) Foreign currency translation (losses) gains, net

3) Comprehensive loss;

4) Comprehensive loss attributable to non-controlling interests; and

5) Comprehensive loss attributable to Pluralsight, Inc.;

d. Consolidated statements of cash flows:

1) Net loss;

2) Depreciation of property and equipment;

3) Amortization of acquired intangible assets;

4) Amortization of course creation costs;

5) Equity-based compensation;

6) Provision for doubtful accounts;

7) Amortization of debt discount and debt issuance costs;

8) Debt extinguishment costs;

9) Deferred tax benefit;

10) Other adjustments to reconcile net loss to net cash (used in) provided by operating activities;

11) Accounts receivable;

12) Prepaid expenses and other assets;

13) Accounts payable;

14) Accrued expenses and other liabilities;

15) Accrued author fees;

16) Deferred revenue;

17) Related party note payable;

18) Net cash (used in) provided by operating activities;

19) Purchases of property and equipment;

20) Purchases of content library;

21) Purchases of business, net of cash acquired;

22) Net cash used in investing activities;

23) Financing activities;

24) Proceeds from initial public offering, net of underwriting discounts and commissions;

25) Payments of costs related to initial public offering;

26) Taxes paid related to net share settlement of equity awards;

27) Proceeds from issuance of common stock from employee equity plans;

28) Borrowings of long-term debt;

29) Repayments of long-term debt;

30) Payments of debt extinguishment costs;

31) Payments of debt issuance costs;

32) Payments to settle equity appreciation rights;

33) Proceeds from the issuance of Series C redeemable convertible preferred unites, net of issuance costs;

34) Redemption of incentive units;

35) Repayments of related-party note payable;

36) Deemed landlord financing proceeds;

37) Other financing activities;

38) Net cash provided by financing activities;

39) Effect of exchange rate changes on cash, cash equivalents, and restricted cash;

40) Net increase in cash, cash equivalents, and restricted cash;

41) Cash, cash equivalents, and restricted cash, beginning of period;

42) Cash, cash equivalents, and restricted cash, end of period;

43) Cash paid for interest;

44) Cash paid for income taxes, net;

45) Conversion of redeemable convertible preferred units;

46) Redeemable convertible preferred unit accretion;

47) Property acquired under build-to-suit lease agreements;

48) Issuance of warrants to purchase shares of Class A common stock;

49) Unpaid capital expenditures;

50) Equity-based compensation capitalized as internal-use software;

51) Offering costs, accrued but not yet paid;

52) Cash and cash equivalents;

53) Restricted cash; and

54) Total cash, cash equivalents, and restricted cash.

Ex. 1 at71-77.

13

34.     Beyond the financial measures on the 2018 10-K GAAP consolidated balance sheet, consolidated statement of operations, and consolidated statement of cash flows, the 2019 10-K included the following additional measures:

a.  Consolidated balance sheets

    1)  Short-term investments;

    2)  Accounts receivable, net of allowances of $3, 465 and $2,501 as of December 31, 2019 and 2018, respectively;

    3)  Deferred contract acquisition costs, net;

    4)  Long-term investments;

    5)  Deferred contract acquisition costs, noncurrent, net;

    6)  Lease liabilities;

    7)  Deferred revenue, noncurrent;

    8)  Convertible senior notes, net;

    9)  Lease liabilities, noncurrent;

    10) Total stockholders' equity attributable to Pluralsight, Inc.;

    11) Total stockholders' equity; and

    12) Total liabilities and stockholders' equity;

b.  Consolidated statement of operations

    1)  Net loss attributable to shares of Class A common stock;

c.  Consolidated statement of cash flows

    1)  Amortization of deferred contract acquisition costs;

    2)  Amortization of debt discount and issuance costs;

    3)  Investment discount and premium amortization, net;

    4)  Loss on debt extinguishment;

    5)  Deferred contract acquisition costs;

    6)  Right-of-use assets;

    7)  Lease liabilities;

    8)  Cash paid for acquisition, net of cash acquired;

14

9)  Purchases of investments;

10) Proceeds from sales of investments;

11) Proceeds from maturities of investments;

12) Net cash used in investing activities;

13) Proceeds from issuance of convertible senior notes, net of discount and issuance costs;

14) Purchase of capped calls related to issuance of convertible senior notes;

15) Repurchases of convertible senior notes;

16) Proceeds from issuance of common stock from employee equity plans;

17) Lease liabilities arising from obtaining right-of-use assets;

18) Unrealized gains on investments; and

19) Costs related to initial public offering, accrued but not yet paid.

Ex. 2 at 78-85.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in Salt Lake City, Utah on this twenty-fifth day of September, 2023.

> _/s/ Caitlin E. McKelvie_
> Caitlin E. McKelvie (#16511)

> _/s/ Gregory L. Watts (Filing Attorney)_
> Gregory L. Watts (#17782)