# Exhibit 3

Robert S. Brewer, Jr. (State Bar No. 65294)
rsbrewer@jonesday.com
JONES DAY
12265 El Camino Real, Suite 200
San Diego, CA 92130
Telephone: (858) 314-1200
Facsimile: (858) 314-1150

Eric Landau (State Bar No. 138849)
elandau@jonesday.com
Shawn Harpen (State Bar No. 198948)
sharpen@jonesday.com
Travis Biffar (State Bar No. 217593)
tbiffar@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 851-3939
Facsimile: (949) 553-7539

Attorneys for defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAUREEN BACKE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NOVATEL WIRELESS, INC., PETER V. LEPARULO, GEORGE B. WEINERT, ROBERT M. HADLEY, SLIM S. SOUISSI AND CATHERINE F. RATCLIFFE,<br><br>Defendants. | Lead Case No. 08-CV-01689-H (RBB) (Consolidated with No. 08-CV-01714-H (RBB))<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOVATEL WIRELESS, INC.'S MOTION TO COMPEL: (1) PRODUCTION OF DOCUMENTS RESPONSIVE TO NOVATEL'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO LEAD PLAINTIFFS, AND (2) ANSWERS TO NOVATEL'S FIRST SET OF INTERROGATORIES TO LEAD PLAINTIFFS**<br><br>Date: January 11, 2010<br>Time: 10:00 a.m.<br>Place: Courtroom B<br>(The Honorable Ruben B. Brooks) |

MEMO. OF POINTS AND AUTHORITIES
RE NOVATEL'S MOTION TO COMPEL
08-CV-1689-H (RBB)

114

Exhibit 3

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................................ 2

III. DISCOVERY RESPONSES IN DISPUTE .................................................................... 3

IV. ARGUMENT ..................................................................................................................... 8

    A. Documents Underlying the Factual Allegations in the Complaint Are Not Privileged and Should Be Produced Now ............................................................ 9

    B. Lead Plaintiffs Should Produce Documents Showing Their Investments in All Securities ............................................................................................................ 10

    C. Lead Plaintiffs Should Produce Their Monitoring Agreements ....................... 13

    D. Lead Plaintiffs Have Improperly Narrowed the Scope of Their Involvement in Other Securities Litigation to a Three-Year Period ....................................... 15

    E. Lead Plaintiffs Must Identify the Confidential Witness Whom They Quote in the Complaint ..................................................................................................... 16

    F. Lead Plaintiffs Must Produce a Privilege Log Identifying Documents Withheld on Privilege Grounds ............................................................................ 19

V. CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page**

CASES

*AES Corp. Securities Litigation*,
    849 F. Supp. 907 (S.D.N.Y. 1994) ........................................................................... 11

*American Floral Services, Inc. v. Florists Transworld Delivery Association*,
    107 F.R.D. 258 (N.D. Ill. 1985) .............................................................................. 18

*Brody v. Zix Corp.*,
    No. 3-04-CV-1931-K, 2007 WL 1544638 (N.D. Tex. May 25, 2007) .................................. 17

*Davis v. Fendler*,
    650 F.2d 1154 (9th Cir. 1981) ................................................................................. 19

*Degulis v. LXR Biotechnology, Inc.*,
    176 F.R.D. 123 (S.D.N.Y. 1997) ................................................................... 11, 12, 13

*Forest Guardians v. Kempthorne*,
    No. 06CV2560-L(LSP), 2008 WL 4492635 (S.D. Cal. Sept. 29, 2008) ............................ 11

*Gonzalez v. Proctor & Gamble Co.*,
    247 F.R.D. 616 (S.D. Cal. 2007) ............................................................................. 11

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) .................................................................................. 11

*Hickman v. Taylor*,
    329 U.S. 495 (1947) ............................................................................................... 8

*Hubbard v. Bankatlantic Bancorp*,
    No. 07-61542-CIV, 2009 WL 3856458 (S.D. Fla. Nov. 17, 2009) ........................... 16, 17, 19

*In re Enron Corp. Securities Litigation*,
    206 F.R.D. 427 (S.D. Tex. 2002) ............................................................................. 15

*In re Faro Technologies Securities Litigation*,
    No. 6:05-cv-1810-Orl-22DAB, 2008 WL 205318 (M.D. Fla. Jan. 23, 2008) ....................... 17

*In re Grand Casinos Inc. Securities Litigation*,
    181 F.R.D. 615 (D. Minn. 1998) .............................................................................. 11

*In re Harcourt Brace Jovanovich, Inc. Securities Litigation*,
    838 F. Supp. 109 (S.D.N.Y. 1993) ........................................................................... 12

*In re Harmonic, Inc. Securities Litigation*,
    245 F.R.D. 424 (N.D. Cal. 2007) ........................................................................ 17, 18

## TABLE OF AUTHORITIES
### (continued)

**Page**

*In re ML-Lee Acquisition Fund II, L.P.*,
  149 F.R.D. 506 (D. Del. 1993) ............................................................................. 12

*In re Netbank, Inc. Securities Litigation*,
  259 F.R.D. 656 (N.D. Ga. 2009) ........................................................................... 18

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing &*
  *Securitization, LLC*, 616 F. Supp. 2d 461 (S.D.N.Y. 2009) ...................................... 13, 14, 15

*Kerr v. United States District Court for the Northern District*,
  511 F.2d 192 (9th Cir. 1975) ................................................................................... 8

*Lefkoe v. Jos. A. Bank Clothiers*,
  Civil No. WMN-06-1892, 2009 WL 3003247 (D. Md. May 1, 2009) .................................. 17

*Mazur v. Lampert*,
  No. 04-61159-CIV, 2007 WL 917271 (S.D. Fla. Mar. 25, 2007) ........................ 9, 10, 17, 19

*Oleson v. Kmart Corp.*,
  175 F.R.D. 560 (D. Kan. 1997) ............................................................................. 11

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*,
  No. C01-20418JW, 2005 WL 1459555 (N.D. Cal. June 21, 2005) .................................... 9, 17

*Ramirez v. County of Los Angeles*,
  231 F.R.D. 407 (C.D. Cal. 2005) ........................................................................... 20

*S.E.C. v. Roberts*,
  254 F.R.D. 371 (N.D. Cal. 2008) ........................................................................... 17

*Superior Communications v. Earhugger, Inc.*,
  257 F.R.D. 215 (C.D. Cal. 2009) ........................................................................... 20

*United States v. Martin*,
  278 F.3d 988 (9th Cir. 2002) ................................................................................. 14

*United States v. Ruehle*,
  583 F.3d 600 (9th Cir. 2009) ................................................................................. 14

**STATUTES**

15 U.S.C. § 78u-4 ...................................................................................................... 1

**TABLE OF AUTHORITIES**
**(continued)**

Page

**R**ULES

Fed. R. Civ. P. 26 .............................................................................................. 8, 9, 19, 20

Fed. R. Civ. P. 33 ...................................................................................................... 10, 11

Fed. R. Civ. P. 34 ............................................................................................................. 9

Fed. R. Evid. 401 ............................................................................................................. 8

MEMO. OF POINTS AND AUTHORITIES
RE NOVATEL'S MOTION TO COMPEL
08-CV-1689-H (RBB)

- iv -

# I. INTRODUCTION

The Court should require "Lead Plaintiffs," Western Pennsylvania Electrical Employees Pension Fund ("Western Penn") and Plumbers & Pipefitters' Local #562 Pension Fund ("Plumbers"), to provide discovery on topics that are directly relevant to class certification and the merits of this case.

First, Lead Plaintiffs should be required to produce documents underlying the factual allegations in the consolidated complaint herein ("Complaint" or "CC").

Second, Lead Plaintiffs should be required to produce their securities trading records for their entire portfolio from January 1, 2006 to the present. Lead Plaintiffs' investment histories directly impact their ability to satisfy the requirements of commonality and typicality under Rule 23 of the Federal Rules of Civil Procedure, and should not be limited to their investments in Novatel Wireless, Inc. ("Novatel") or the putative class period herein.

Third, Lead Plaintiffs should be required to produce documents reflecting the procedures they used to monitor their investments in Novatel securities, including without limitation "monitoring agreements" with counsel. These procedures and agreements speak to the adequacy of Lead Plaintiffs and plaintiffs' counsel to prosecute this litigation, and are not protected by any privilege.

Fourth, Lead Plaintiffs should be required to identify the cases in which they served in a lead plaintiff capacity for the past ten years. This period of time will allow the Court to evaluate whether they satisfy the adequacy prong of Rule 23, or whether they function as "professional plaintiffs" disfavored by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 *et seq.*

Fifth, Lead Plaintiffs should identify the confidential witness upon whom they rely to support their claims. In the Complaint, Lead Plaintiffs quoted from a supposed former employee who is alleged to have had knowledge of accounting improprieties through discussions with employees of Novatel's shipping department. This is the only support plaintiffs offer for their claims of accounting problems in 2007.

-

MEMO. OF POINTS AND AUTHORITIES
RE NOVATEL'S MOTION TO COMPEL
08-CV-1689-H (RBB)

1

Sixth, Lead Plaintiffs should be required to produce a privilege log forthwith so their claims of privilege and work product can be evaluated.

## II.  FACTUAL BACKGROUND

On October 8, 2009, Novatel propounded its first set of requests for production of documents ("RFPs") and its first set of interrogatories ("ROGs") on each of the Lead Plaintiffs. (*See* Declaration of Travis Biffar in Support of Novatel's Motion to Compel ("Biffar-Novatel Decl."), Exs. A-D.)  Each separately propounded set of RFPs and ROGs is identical.  In its first set of RFPs, Novatel sought production of various categories of documents, including, among others: (1) documents underlying the factual allegations in the Complaint; (2) documents reflecting Lead Plaintiffs' investment histories in all securities, not just Novatel; (3) documents reflecting any procedures Lead Plaintiffs used to monitor their investments in Novatel securities; and (4) documents reflecting Lead Plaintiffs' involvement in other class action litigation.  (*See id.*, Exs. A, at 8-13; B, at 19-24.)  Novatel also served its first set of ROGs, seeking information on the same subjects, as well as the identity of the confidential witness quoted in the Complaint.  (*Id.*, Exs. C, at 29-32; D, at 37-40.)

On or about November 9, 2009, Lead Plaintiffs served their written responses to Novatel's first sets of RFPs and ROGs.  (Biffar-Novatel Decl., Exs. E-H.)  With respect to the RFPs, in many cases Lead Plaintiffs objected without agreeing to produce any responsive documents.  (*Id.*, Exs. E, at 46-64; F at 71-89.)  Of the 22 ROGs that were propounded, Lead Plaintiffs made an attempt to answer only one.  (*Id.*, Exs. G, at 96-110; H, at 117-30.)

Counsel for defendants and plaintiffs' counsel initially met and conferred on November 24, 2009 concerning Lead Plaintiffs' responses.  (Biffar-Novatel Decl., ¶ 5.)  During this meeting, when asked what documents Lead Plaintiffs would be producing, Lead Plaintiffs' counsel stated that their document production had been sent to defense counsel by overnight carrier the day before, and it would comprise the totality of Lead Plaintiffs' document production at this stage of the litigation, absent any agreements to supplement reached during the meet and confer process. (*Id.*, ¶ 6.)  Defense counsel has since received and reviewed Lead Plaintiffs' document production,

MEMO. OF POINTS AND AUTHORITIES
RE NOVATEL'S MOTION TO COMPEL
08-CV-1689-H (RBB)

2

Exhibit 3

which consists of four categories of documents: (1) investment management agreements between Lead Plaintiffs and their investment advisers, (2) Lead Plaintiffs' general policies and investment guidelines for pension fund investments, (3) redacted account statements showing only transactions in Novatel stock during the putative class period, and (4) copies of securities class action complaints that Lead Plaintiffs have filed over the three-year period prior to the commencement of this litigation. (*Id.*, ¶ 11.) Counsel for the parties conferred again following the receipt of Lead Plaintiffs' document production, but the parties were unable to resolve all disputed issues.[1] (*Id.*, ¶ 13.)

### III. DISCOVERY RESPONSES IN DISPUTE

Novatel moves to compel Lead Plaintiffs to produce documents responsive to RFP Nos. 1, 7, 17 to 18, 20 to 24, 36 to 37, 39 to 40, and 43 to 46. Because of the volume of these requests and responses, a copy of the RFPs and responses are included as exhibits A, B, E and F to the Declaration of Travis Biffar filed herewith.

Novatel also moves to compel full and complete substantive answers to ROG Nos. 3, 6 to 9, and 19 to 21. In accordance with Southern District of California Local Rule 33.1, the ROGs and responses at issue are reproduced in their entirety below:

**INTERROGATORY NO. 3:**

Identify all cases in which you have served as a plaintiff during the past ten years involving any claim under the federal securities laws, the corporate laws of any state, or common-law fraud, and include in the description of each case: (a) the name of the court or arbitration panel and the docket number of the lawsuit; (b) the name of the lawyer or lawyers, including law firm(s), who represented you; (c) the name(s) of the party(ies) to the lawsuit; (d) the claims asserted in the lawsuit; and (e) the disposition or present status of the lawsuit.

**PLUMBERS' RESPONSE TO INTERROGATORY NO. 3:**

Lead Plaintiff incorporates herein each of the foregoing General Objections. Lead Plaintiff further objects because this interrogatory is compound, vague, overbroad, unduly burdensome, and seeks information that is irrelevant to the claim or defense of any party. Lead Plaintiff further

---

[1] Pleadings make up the vast majority of Lead Plaintiffs' document production. In Plumbers' production, 115 of 159 pages are made up of complaints from other cases, and in Western Penn's production, 944 of 1,068 pages are made up of complaints from other cases. None of the documents produced by Lead Plaintiffs bear on the merits of this case.

objects to this interrogatory to the extent it imposes obligations that are not imposed by law, and in particular the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which requires lead plaintiffs to disclose such information for a three-year period.  Lead Plaintiff further objects on the grounds it has provided such information as required under the PSLRA in its certification for appointment as lead plaintiff, and on the ground that most if not all of the information requested by this interrogatory is publicly available.

Subject to and without waiving the foregoing objections, Lead Plaintiff responds it has served as a representative party in the following actions filed under the federal securities laws or in a shareholder derivative action within the past three years (excluding the present action):

*Plumbers' & Pipefitters' Local #562 Pension Fund v. Connectics Corp.*, No C-06-0569l-PJH (N.D. Cal.).  Lead Plaintiff filed a complaint on September 18, 2006 against Connectics Corporation, Thomas G. Wiggans, C. Gregory Vontz and Alexander J. Yaroshinsky for violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") but did not seek appointment as lead plaintiff of the consolidated action.

*Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust, et al. v. J.P. Morgan Acceptance Corp.*, No 08-05 675 (Supreme Court of the State of New York  – Nassau County ).  Lead Plaintiff filed a complaint against J.P Morgan Chase, David M. Duzyk, Louis Schioppo, Christine E. Cole, Edwin F. McMichael and various J.P. Morgan related entities on March 26, 2008 for violation of §§11 and 15 of the Securities Act of 1933.  The action was removed to the Eastern District Court of New York (No. 2:08-cv-01713-ERK-WDW), and Lead Plaintiff did not move to be appointed lead plaintiff in the federal action.

*Plumbers' & Pipefitters' Local #562 Pension Fund v. MGIC Invest. Corp.*, No . 2:08-CV-00458-AEG (E.D. Wis.).  Lead Plaintiff filed a complaint against MGIC Investment Corporation, Curt S. Culver, Patrick Sinks, and J. Michael Lauer on May 22, 2008 for violation of §§10(b) and 20(a) of the 1934 Act, but did not seek appointment as lead plaintiff of the consolidated action.

In each of the above actions, Lead Plaintiff was or is currently represented by Coughlin Stoia Geller Rudman & Robbins LLP, or its predecessor firm.

**WESTERN PENN'S RESPONSE TO INTERROGATORY NO. 3:**

Lead Plaintiff incorporates herein each of the foregoing General Objections.  Lead Plaintiff further objects because this interrogatory is compound, vague, overbroad, unduly burdensome, and seeks information that is irrelevant to the claim or defense of any party.  Lead Plaintiff further objects to this interrogatory to the extent it imposes obligations that are not imposed by law, and in particular the Private Securities Litigation Reform Act of 1995 ("PSLRA") which requires lead plaintiffs to disclose such information for a three-year period.  Lead Plaintiff further objects on the grounds it has provided such information as required under the PSLRA in its certification for appointment as lead plaintiff, and on the ground that most if not all of the information requested by this interrogatory is publicly available.

MEMO. OF POINTS AND AUTHORITIES
RE NOVATEL'S MOTION TO COMPEL
08-CV-1689-H (RBB)

4

Subject to and without waiving the foregoing objections, Lead Plaintiff responds it has served as a representative party in the following actions filed under the federal securities laws or in a shareholder derivative action within the past three years (excluding the present action):

*In re HCA Inc. Sec. Litig.*, No. 3:05-cv-00960 (M.D. Tenn). Lead Plaintiff filed a complaint against HCA, Inc., Jack O. Bovender, Jr., Richard M. Bracken, and Robert Milton Johnson on November 8, 2005 for violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), but was not appointed lead plaintiff of the consolidated action.

*Beaver County Ret. Board., et al. v. AOL Time Warner Inc.*, No. 2:06-cv-00124-TFM (W.D. Pa.). Lead Plaintiff, Beaver County Retirement Board, Greater Pennsylvania Carpenters Pension Fund, Iron Workers of Western Pennsylvania Pension and Profit Plans filed a complaint against AOL Time Warner Inc., several AOL Time Warner executives, Citigroup, Inc., Salomon Smith Barney, Inc., Morgan Stanley & Co., Inc. and Ernst & Young LLP for violation of §§11, 12(a)(2) and 15 of the Securities Act of 1993 and §§10(b), 14(a) and 20(a) of the 1934 Act on January 30, 2006. The case has been resolved.

*Western Penn. Elec. Employees Pension Fund v. Plexus Corp.*, No. 2:07-cv-00582-LA (E.D. Wisc.). Lead Plaintiff filed a complaint against Plexus Corp., Dean A. Foate, F. Gordon Bitter and John L. Nussbaum for violation of §§10(b) and 20(a) of the 1934 Act on June 25, 2007. The case has been resolved.

*Western Penn. Elec. Employees Pension Fund v. Candela Corp.*, No. 1:08-cv-10551 (D. Mass.). Lead Plaintiff filed a complaint against Candela Corporation, Gerard E. Puorro and Paul Broyer for violation of §§10(b) and 20(a) of the 1934 Act on April 2, 2008. The case has been resolved.

*Phillips v. Triad Guaranty Inc.*, No. 1:09-cv-00071 (M.D. N.C.) On June 22, 2009, Lead Plaintiff filed a Amended Class Action Complaint against Triad Guaranty, Inc., Mark K. Tonnesen and Kenneth W. Jones for violation of §§10(b) and 20(a) of the 1934 Act. The case is ongoing.

In each of the above actions, Lead Plaintiff was or is currently represented by Coughlin Stoia Geller Rudman & Robbins LLP, or its predecessor firm.

**INTERROGATORY NO. 6:**

Identify any review or diligence process used, including without limitation any manuals, guidelines or criteria employed, and any communication with any investment advisor or consultant in connection with your consideration of any actual or potential purchases or sales of publicly traded securities.

**RESPONSE TO INTERROGATORY NO. 6:**

Lead Plaintiff herein incorporates each of the foregoing General Objections. Lead Plaintiff objects to this interrogatory as vague and ambiguous, overbroad and unduly burdensome, and without reasonable

limitation in its scope. In addition, Lead Plaintiff objects on relevance grounds to this interrogatory to the extent it calls for information about securities other than Novatel. Lead Plaintiff further objects to this interrogatory on privacy grounds and to the extent that it seeks or requires disclosure of information which is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Lead Plaintiff is producing documents pursuant to Novatel Wireless Inc.'s First Set of Requests for Production of Documents that contain relevant information requested in this interrogatory regarding Lead Plaintiff's Class Period transactions in Novatel securities.

**INTERROGATORY NO. 7:**

Identify any procedures you use for monitoring any public statements or news coverage of any entity in which you have an investment.

**RESPONSE TO INTERROGATORY NO. 7:**

Lead Plaintiff incorporates herein each of the foregoing General Objections. Lead Plaintiff objects to this interrogatory as vague and ambiguous, overbroad and unduly burdensome, and without reasonable limitation in its scope. Lead Plaintiff further objects to this interrogatory on privacy grounds and to the extent that it seeks or requires disclosure of information which is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity.

**INTERROGATORY NO. 8:**

Identify the persons or entities responsible for, and the specific roles of these individuals in choosing and or approving your investments in publicly traded securities.

**RESPONSE TO INTERROGATORY NO. 8:**

Lead Plaintiff incorporates herein each of the foregoing General Objections. Lead Plaintiff objects to this interrogatory as compound, vague and ambiguous, overbroad and unduly burdensome, and without reasonable limitation in its scope. In addition, Lead Plaintiff objects on relevance grounds to this interrogatory to the extent it calls for information about securities other than Novatel. Lead Plaintiff further objects to this interrogatory on privacy grounds and to the extent that it seeks or requires disclosure of information which is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Lead Plaintiff is producing documents pursuant to Novatel Wireless Inc.'s First Set of Requests for Production o f Documents that contain relevant information

requested in this interrogatory regarding Lead Plaintiff's Class Period investment in Novatel securities.

**INTERROGATORY NO. 9:**

Identify all persons or entities you consulted with or sought advice from concerning your decision to purchase Novatel securities, including the date on which you sought such consultation or advice.

**RESPONSE TO INTERROGATORY NO. 9:**

Lead Plaintiff incorporates herein each of the foregoing General Objections. Lead Plaintiff objects to this interrogatory as compound, vague and ambiguous, overbroad and unduly burdensome, and without reasonable limitation in its scope. Lead Plaintiff further objects to this interrogatory on privacy grounds and to the extent that it seeks or requires disclosure of information which is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, and pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Lead Plaintiff is producing documents pursuant to Novatel Wireless Inc.'s First Set of Requests for Production of Documents that contain relevant information requested in this interrogatory regarding Lead Plaintiff's Class Period investment in Novatel securities.

**INTERROGATORY NO. 19:**

Identify any agreements you have now or had in the past with Coughlin Stoia Geller Rudman & Robbins or other counsel representing you in this Action that provide for monitoring of any of your investments.

**RESPONSE TO INTERROGATORY NO. 19:**

Lead Plaintiff incorporates herein each of the foregoing General Objections. In addition to the General Objections, Lead Plaintiff objects to this interrogatory as vague and ambiguous, harassing, overbroad and unduly burdensome, and without reasonable limitation in its scope. Lead Plaintiff further objects to this interrogatory because it seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. Finally, Lead Plaintiff objects to this interrogatory on privacy grounds and to the extent that it seeks or requires disclosure of information which is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity.

**INTERROGATORY NO. 20:**

Identify the confidential witness referred to in paragraphs 6, 28 and 112 of the Complaint.

MEMO. OF POINTS AND AUTHORITIES
RE NOVATEL'S MOTION TO COMPEL
08-CV-1689-H (RBB)

7

**RESPONSE TO INTERROGATORY NO. 20:**

Lead Plaintiff incorporates herein each of the foregoing General Objections. Lead Plaintiff further objects to this interrogatory on privacy grounds and to the extent that it seeks or requires disclosure of information which is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege, immunity, or protection.

**INTERROGATORY NO. 21:**

Identify the position of the confidential witness referred to in paragraph 6, 28 and 112 of the Complaint and her basis for personal knowledge concerning any statement attributed to her in the Complaint.

**RESPONSE TO INTERROGATORY NO. 21:**

Lead Plaintiff incorporates herein each of the foregoing General Objections. Lead Plaintiff further objects to this interrogatory on privacy grounds and to the extent that it seeks or requires disclosure of information which is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege, immunity, or protection.

(Biffar-Novatel Decl., Exs. G, at 98-99, 101-03, 108-09; H, at 119-24, 129-30.)

### IV. ARGUMENT

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable," Fed. R. Evid. 401, and "the question of relevancy is to be more loosely construed at the discovery stage than at the trial." *Kerr v. United States Dist. Ct. for the N. Dist.*, 511 F.2d 192, 196 (9th Cir. 1975) (internal quotation marks omitted), *aff'd*, 426 U.S. 394 (1976). The United States Supreme Court has instructed that these rules "are to be accorded a broad and liberal treatment" in favor of discovery. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

**A.** **Documents Underlying the Factual Allegations in the Complaint Are Not Privileged and Should Be Produced Now**

In the Complaint, plaintiffs refer to and rely on a number of documents to support their allegations, which Novatel has requested they produce. (*See* RFP Nos. 1 & 7 (Biffar-Novatel Decl., Exs. E, at 46-47, 49; F, at 71-72, 74).) Production would seem like a "no-brainer," but Lead Plaintiffs have objected across the board to these requests on the grounds that the documents are protected by the attorney-client privilege and/or attorney work product doctrine, or are publicly available. (*Id.*, Exs. E, at 46-64; F, at 71-89.) Lead Plaintiffs also have objected to Novatel's request calling for documents which support Lead Plaintiffs contention that the market for Novatel securities was artificially inflated on the ground that the request is premature, and have stated that responsive documents would be produced "at the appropriate time." (*Id.*, Exs. E, at 49; F, at 74.) The responding party may not unilaterally determine the appropriate time to produce documents, most likely calculated to provide the defense with the least amount of discovery time possible. To the contrary, the responding party must produce the documents within its possession, custody or control at the time specified in the request. *See* Fed. R. Civ. P. 34(b)(1)(B). Moreover, there is a continuing duty to supplement production and responses as the responding party becomes aware of additional documents or facts that may be responsive to a given discovery request. *See* Fed. R. Civ. P. 26(e)(1).

Lead Plaintiffs contend that the selection of these documents would reveal the mental impressions of their attorneys (most likely because Lead Plaintiffs do not understand the basis of their case) and, thus, are protected as attorney work product. Lead Plaintiffs cannot hide the facts. As the district court in *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*, No. C01-20418JW, 2005 WL 1459555 (N.D. Cal. June 21, 2005), explained, "the work product doctrine does not shield the discovery of documents or people with knowledge of the facts relevant to Plaintiffs' claim." *Id*. at *5. For example, if counsel were to compile a list of documents based on the perceived importance of each document to the case, the list – but not the underlying documents – may constitute work product, but counsel cannot prevent discovery of documents on which they relied to draft a complaint. *See Mazur v. Lampert*, No. 04-61159-CIV,

2007 WL 917271, at \*3 (S.D. Fla. Mar. 25, 2007) ("[A]n interrogatory asking for identification of relevant documents would not require a responding party to isolate those particular documents that *really, really* help one's cause. Consequently, a non-specific identification of those witnesses and those documents would clearly satisfy a party's obligations under Rule 26."). Therefore, the Court should compel Lead Plaintiffs to produce all documents responsive to RFP Nos. 1 and 7.

**B. Lead Plaintiffs Should Produce Documents Showing Their Investments in All Securities**

Novatel requested that Lead Plaintiffs provide information regarding their investments in all publicly traded securities, not limited to Novatel:

**REQUEST FOR PRODUCTION NO. 22:**

All documents sufficient to identify all publicly traded securities you purchased, held and/or sold from January 1, 2003 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Lead Plaintiff incorporates herein each of the foregoing General Objections. Lead Plaintiff further objects to this Request to the extent it is not relevant nor reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome as it seeks document regarding trading in "all publicly traded securities," and not just transactions in Novatel securities.

Subject to and without waiving the foregoing objections, Lead Plaintiff will produce responsive, relevant, non-privileged documents to the extent such documents exist and are in its possession, custody or control.

(Biffar-Novatel Decl., Exs. E, at 55; F, at 80.)[2] Lead Plaintiffs clarified, during the meet and confer process, that no documents pertaining to their trades in securities apart from Novatel would be produced on the basis of relevance, and no interrogatories on this subject would be answered.[3]

(Biffar-Novatel Decl., ¶ 10.)

---

[2] Although Novatel requested documents sufficient to identifiy Lead Plaintiffs' investments in publicly traded securities from January 1, 2003 to the present, Novatel moves to compel these documents only for the period from January 1, 2006 to the present.

[3] In responding to these and other ROGs propounded by Novatel, each Lead Plaintiff asserted that "pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Lead Plaintiff is producing documents pursuant to [Novatel's first RFP] that contain relevant information requested in this interrogatory…." (Biffar-Novatel Decl., Ex. G, at 101-03; H, at 122-24.) This is improper. Rule 33(d) applies only "[i]f the *answer* to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records." Fed. R. Civ. P. 33(d) (emphasis added). Here, Novatel cannot determine with any degree of certainty who was

Lead Plaintiffs' trading histories in other publicly traded securities are relevant to class certification because they bear on "typicality," including the degree to which Lead Plaintiffs may be subject to individual defenses. In *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992), the Ninth Circuit upheld the district court's denial of class certification, stating that "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id*. at 508; *accord Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 622 (S.D. Cal. 2007) (Hayes, J.). The court in *Hanon* observed that the proposed class representative would be subject to unique defenses because his "reliance on the integrity of the market would be subject to serious dispute as a result of his extensive experience in prior securities litigation, his relationship with his lawyers, his practice of buying a minimal number shares of stock in various companies, and his uneconomical purchase of only ten shares of stock." *Hanon*, 976 F.2d at 508.

Following this logic, courts across the country have held that plaintiffs' general investment histories are relevant, without any limitation as to the securities at issue in the litigation. *See, e.g., In re Grand Casinos Inc. Sec. Litig.*, 181 F.R.D. 615, 619-21 (D. Minn. 1998) (plaintiffs' "general investment histories," as well as plaintiffs' investment histories in the defendant company's stock, were both relevant and discoverable); *AES Corp. Sec. Litig.*, 849 F. Supp. 907, 909 (S.D.N.Y. 1994). In *AES*, the Southern District of New York rejected a similar attempt by plaintiffs to limit their production to past investments in the same industry as the defendant company. The court held that all of plaintiffs' investments, regardless of industry, were relevant to plaintiffs' sophistication. *See AES*, 849 F. Supp. at 910-11; *see also Degulis v. LXR Biotechnology, Inc.,* 176

---

(continued…)

responsible for making investment decisions on behalf of Lead Plaintiffs, let alone what due diligence they customarily undertook, simply by looking at partially redacted account statements. (*See* ROGs 6 and 8 (Biffar-Novatel Decl., G, at 101-02; H, at 121-23.) In *Oleson v. Kmart Corp.*, 175 F.R.D. 560 (D. Kan. 1997), plaintiff propounded an interrogatory on the defendant asking each position the plaintiff had held at his employer and the relevant dates. "Defendant, apparently in an effort to utilize the provisions of Fed. R. Civ. P. 33(d), referred plaintiff to approximately 307 pages from plaintiff's personnel file to identify the title of positions held by plaintiff along with the dates the positions were held." *Id*. at 564. The court ruled that such practices do not comply with Rule 33(d). *Id*.; *see also Forest Guardians v. Kempthorne*, No. 06CV2560-L(LSP), 2008 WL 4492635, at *2 (S.D. Cal. Sept. 29, 2008) (Papas, M.J.) (rejecting application of Rule 33(d) response where complete answers to questions could not be determined from the documents cited).

Case 3:08-cv-01689-AJB-RBB Document 106-1 Filed 12/09/09 PageID.2473 Page 17 of 26

F.R.D. 123, 126-27 (S.D.N.Y. 1997) (plaintiff's investment documents were discoverable to show plaintiff's sophistication and strategy, relevant to establishing whether reliance element of Rule 10b-5 claim were met); *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F. Supp. 109, 114 (S.D.N.Y. 1993) (permitting discovery into plaintiff's investment history because named plaintiff's sophistication is relevant to issue of reliance in fraud-on-market case).

Also pertinent is *In re ML-Lee Acquisition Fund II, L.P.*, 149 F.R.D. 506, 508 (D. Del. 1993), in which defendants sought discovery of certain documents pertaining to plaintiffs' investment history, including "all documents provided to or received from any office of Merrill [plaintiffs' brokers] or any investment adviser relating to any brokerage account maintained or proposed to be maintained by plaintiffs,"…"all documents provided to or received from any brokerage firm other than [plaintiffs' brokers] or any investment adviser relating to any brokerage account maintained or proposed [to] be maintained by plaintiff at such brokerage firm(s)," and "all account statements, confirmations, brokerage house records, or other documents concerning transactions by or on behalf of plaintiffs in publicly traded securities." *Id*. at 508 n.2. Plaintiffs objected to these requests on the grounds of relevance. The court held that plaintiffs' investment histories were relevant to their sophistication, which bore on whether plaintiffs could satisfy the typicality requirement of Rule 23(a)(3). *Id*. at 508. According to the court, "[a] determination that Plaintiffs are 'sophisticated' is relevant to, *inter alia*, the issues of Plaintiffs' reliance on the alleged fraud, and Plaintiffs' burden of showing that they exercised due diligence in investigating the alleged fraud." *Id*.

Here, according to their counsel, Lead Plaintiffs will claim that they ceded all investment decision-making authority to their investment advisers pursuant to investment management agreements and, thus, they exercised no discretion and played no part in determining which securities to buy or sell. This admission does not remove Lead Plaintiffs' investment histories from the realm of discovery relevance. Indeed, the strategies employed by Lead Plaintiffs' advisers, which may be reflected by the transactions in Lead Plaintiffs' investment histories, may rebut the presumption of reliance and render Lead Plaintiffs' claims atypical. Novatel is entitled

MEMO. OF POINTS AND AUTHORITIES
RE NOVATEL'S MOTION TO COMPEL
08-CV-1689-H (RBB)

12

to discover this information since it is directly relevant to Novatel's defense of non-reliance. *See Degulis*, 176 F.R.D. at 126-27. Therefore, the Court should compel Lead Plaintiffs to produce all documents responsive to RFP Nos. 17 and 20 to 24 and to answer fully ROG Nos. 6 and 8 to 9.

**C.      Lead Plaintiffs Should Produce Their Monitoring Agreements**

Novatel has requested that Lead Plaintiffs produce all documents that reflect the manner in which they monitor their investments, including procedures for their attorneys to monitor their investments in advance of litigation through the use of "monitoring agreements," a dubious practice which allows plaintiffs' law firms to troll for new lawsuits. (*See* RFP Nos. 18, 43-45 (Biffar-Novatel Decl., Exs. E, at 53-54, 63-64; F, 78-79, 88-89).) During the meet and confer process, Lead Plaintiffs' counsel confirmed that such agreements exist, but refused to produce them on the basis of relevance and privilege. (*See id.*, ¶ 7.) Lead Plaintiffs' objections are unfounded.

First, monitoring agreements are relevant, as the adequacy of both counsel and proposed class representatives will be at issue when the Court considers class certification. In a recent decision involving the very same counsel, the Honorable Jed S. Rakoff of the Southern District of New York observed that the use of such monitoring agreements by lead counsel in this action raised a "seeming conflict of interest" that may violate ethics rules. *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009). Judge Rakoff noted that counsel only received a fee under such agreements if they brought a suit and recovered a settlement or judgment for an individual or entity having its investments monitored, which cast significant doubt on the propriety of these agreements:

> Going far beyond any traditional contingency arrangement of which the Court is aware, this practice, on its face, creates a clear incentive for Coughlin Stoia to discover "fraud" in the investments it monitors and to recommend to the Fund's non-lawyer administrator (and, through him, to the trustees) that the Fund, at no cost to itself, bring a class action lawsuit. In other words, the practice fosters the very tendencies toward lawyer-driver litigation that the PSLRA was designed to curtail.

*Id*. The existence and terms of these agreements bear directly on the adequacy of Lead Plaintiffs' counsel to represent the putative class and on any Lead Plaintiffs who would allow themselves to be used as mere pawns, contrary to the dictates of the PSLRA.

Novatel anticipates that Lead Plaintiffs will point to unpublished cases in which classes have been certified despite the use of monitoring agreements, and that in *Iron Workers* the plaintiff selected as lead plaintiff had some form of monitoring agreement as well. However, in *Iron Workers*, Judge Rakoff concluded that one plaintiff was a better candidate for lead plaintiff than the other by *comparing the terms of their monitoring agreements*. *Iron Workers*, 616 F. Supp. 2d at 466. The court ruled that it was significant that the party ultimately chosen as lead plaintiff had monitoring agreements with multiple firms, and had not turned over the right to litigate a future claim identified by the monitoring to one particular firm. *Id.* Judge Rakoff's analysis makes clear that the *contents* of a monitoring agreement are crucial for determining if a disabling conflict of interest exists.

Moreover, it does not matter that other courts interpreting the ethics rules of other jurisdictions have disagreed with *Iron Workers*. The issue will likely be one of first impression in this district when presented to Judge Huff at the class certification stage. To fully and fairly evaluate the propriety of these agreements, the district court should be allowed to see the agreements and evaluate whether they fall within ethical boundaries. Certainly, these agreements should not be hidden from view.

Second, plaintiffs' claim that the monitoring agreements are protected by attorney-client privilege is without merit. The attorney-client privilege protects confidential communications between attorney and client made for the purpose of obtaining legal advice. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). The proponent of the privilege bears the burden of establishing its elements, *id.* at 608, and "[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed," *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). Defendants do not know the precise terms of the monitoring agreements because Lead Plaintiffs have refused to disclose any information about them other than their existence, but it

would seem that an agreement entered *before* counsel is retained to provide information *in the future* about alleged frauds by other parties does not fall within the scope of the attorney-client privilege. Certainly, an agreement to violate ethics rules cannot be protected from disclosure, and if they do comply with ethics rules, it seems odd that plaintiffs' counsel fights so hard to keep them out of the light. Therefore, the Court should compel Lead Plaintiffs to produce all documents responsive to RFP Nos. 18 and 43 to 45, and to answer fully ROG Nos. 7 and 19.

**D.      Lead Plaintiffs Have Improperly Narrowed the Scope of Their Involvement in Other Securities Litigation to a Three-Year Period**

Novatel requested that Lead Plaintiffs identify certain types of lawsuits in which they have been involved as named or lead plaintiffs during the past ten years. (*See* RFP Nos. 36 to 37 and 39 to 40; ROG No. 3 (Biffar-Novatel Decl., Exs. E, at 60-62; F, at 85-87; G, at 98-99; H, at 119-20).) Lead Plaintiffs responded by providing information for only the three years before their appointment as lead plaintiffs in this action in December 2008. Lead Plaintiffs' unilateral narrowing of the scope of Novatel's RFPs is improper.

The information sought is relevant. One of the primary reasons the PSLRA was enacted was to prevent "professional plaintiffs" from driving securities litigation. *Iron Workers*, 616 F. Supp. 2d at 466. Involvement in multiple legal actions may drain a plaintiff's resources and distract his attention from supervising counsel, as Rule 23 requires. *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455 (S.D. Tex. 2002). Lead Plaintiffs' litigation histories thus bear on their adequacy to serve as class representatives. Moreover, providing basic docket information is minimally burdensome for Lead Plaintiffs relative to the burdens defendants would have in gathering this information from the dockets of many different courts in many different jurisdictions.

Lead Plaintiffs have objected in part on the ground that the PSLRA requires disclosure of a lead plaintiff's litigation history for only three years. However, the PSLRA's certification provision does not establish the bounds of discovery relevance. In fact, it does not speak to discovery relevance whatsoever. It establishes *minimum* requirements that must be demonstrated

MEMO. OF POINTS AND AUTHORITIES
RE NOVATEL'S MOTION TO COMPEL
08-CV-1689-H (RBB)

15

to qualify as a lead plaintiff at the pleading stage, not what may be germane to class certification under Rule 23.

During the meet and confer process, counsel for Novatel offered to compromise on this issue and accept information about Lead Plaintiffs' litigation for less than the ten-year period Novatel requested but more than the three years Lead Plaintiffs proposed. (Biffar-Novatel Decl., ¶ 8.) Lead Plaintiffs refused Novatel's offer. (*Id*.) The Court should compel Lead Plaintiffs to produce all documents responsive to RFP Nos. 36 to 37 and 39 to 40 and ROG No. 3 for a ten-year period.

## E.     Lead Plaintiffs Must Identify the Confidential Witness Whom They Quote in the Complaint

In the Complaint, plaintiffs quote a confidential witness as saying that Novatel had a "regular practice" of shipping product early to meet Wall Street expectations. (CC, ¶ 6.) Plaintiffs also attribute to the confidential witness the statement that "there was always a 'crunch time' at the end of the quarter." (*Id*., ¶ 28.) The witness is described only as a "former Novatel employee [] who had frequent discussions with shipping department employees about Novatel's early shipments." *Id*. Judge Huff concluded that plaintiffs' "allegations of internal control deficiencies in 2007 are corroborated by a confidential witness's allegations that Novatel regularly engaged in early shipments." (Order Denying Defendants' Renewed Motion to Dismiss (Dkt. No. 97, entered July 28, 2009), at 16.)

Because of plaintiffs' reliance on this testimony to advance beyond the pleading stage, Novatel served ROGs on Lead Plaintiffs seeking the identity of the confidential witness (ROG No. 20) and what personal knowledge he or she has of Novatel's accounting (ROG No. 21). (*See* Biffar-Novatel Decl, Exs. G at 108-09; H at 129-30.) Lead Plaintiffs refused to respond to these ROGs on the grounds that this information is protected by the attorney-client privilege and the work product doctrine.[4] Despite the key nature of this witness's testimony, Lead Plaintiffs tell

---

[4] Lead Plaintiffs also objected on privacy grounds, but there is no privacy right in one's own identity. *See*, *e.g.*, *Hubbard v. Bankatlantic Bancorp*, No. 07-61542-CIV, 2009 WL 3856458, at *5 (S.D. Fla. Nov. 17, 2009) (holding that there is no public policy protecting the names of confidential witnesses and no right of privacy concerning the confidential witnesses in a securities fraud complaint brought under the PSLRA).

defendants to pound sand. A majority of courts, however, have held that the identity of a confidential witness must be disclosed in discovery.[5] *See, e.g., Cisco Sys.*, 2005 WL 1459555, at *6 ("the Court can see no justifiable reason why Plaintiffs should not produce, or at least identify, documents that support Plaintiffs' allegations in the FAC").

First, the work product doctrine is concerned with protecting the mental impressions of attorneys, not the identities of witnesses. *See, e.g., S.E.C. v. Roberts*, 254 F.R.D. 371, 374 (N.D. Cal. 2008). Disclosure of the identity of the confidential witness does not undermine this protection. As the court in *In re Faro Technologies Securities Litigation*, No. 6:05-cv-1810-Orl-22DAB, 2008 WL 205318 (M.D. Fla. Jan. 23, 2008), observed,

> Plaintiff has already revealed which witnesses counsel finds important, by setting forth specific information as to their knowledge, in the [second amended complaint]. Plaintiff has already pled *generally* who they are (*e.g.*, "a manager in FARO's purchasing department") and *specifically* what they know. Their name and address does not add to counsel's mental impression.

*Id*. at *2 n.1. (emphasis in original). Likewise, in this action it is obvious what plaintiffs' counsel finds significant about the confidential witness's allegations – that Novatel allegedly shipped product early. Defendants must be afforded the opportunity to question this witness about the statements attributed to him or her.

Second, Lead Plaintiffs waived the right to conceal this witness's identity, not only because he or she was quoted in the Complaint, but also because Lead Plaintiffs say the witness's name is among the more than 100 witnesses listed in their initial disclosures. (Biffar-Novatel Decl., ¶ 9.) At the height of gamesmanship, Lead Plaintiffs tell defendants to interview or depose everyone to find out who he or she is. This very same ploy has been considered and rejected by another California district court, in *In re Harmonic, Inc. Securities Litigation*, 245 F.R.D. 424 (N.D. Cal. 2007):

> The issue here, like that in [*Miller v. Ventro Corp.*, No. C01-01287 SBA (EDL), 2004 Wl 868202 (N.D. Cal. Apr. 21, 2004)], is not *if* the CWs' identities will ever be discovered, but rather *when* they will be discovered.

---

[5] *See, e.g., Hubbard*, 2009 WL 3856458, at *5; *Lefkoe v. Jos. A. Bank Clothiers*, Civil No. WMN-06-1892, 2009 WL 3003247, at *10 (D. Md. May 1, 2009); *Brody v. Zix Corp.*, No. 3-04-CV-1931-K, 2007 WL 1544638, at *1-2 (N.D. Tex. May 25, 2007); *Mazur v. Lampert*, No. 04-61159-CIV, 2007 WL 917271, at *5 (S.D. Fla. Mar. 25, 2007);

*See Ventro*, 2004 U.S. Dist. LEXIS 6913, at *7, 2004 WL 868202, at *2 (finding that the CWs identities would be inevitably revealed over the course of the trial process). Plaintiffs admit as much by acknowledging that the five CWs have been identified among the list of 77 witnesses in their initial disclosures. They concede that by deposing or otherwise investigating all of the 77 witnesses, Defendants will eventually be able to discern who the five CWs are. Thus, as in *Ventro*, it is a matter of when, not if, the CWs' identities will be discovered. While there are some instances in which the timing or sequencing of disclosures may affect counsel's strategy (such as the sequence and timing of expert disclosures), here there is no cognizable strategic advantage to be gained by Plaintiffs in withholding the identities. The only effect is to force the Defendants to expend resources on taking the depositions of 77 people in order to obtain the information. Because the information will inevitably be disclosed and the earlier disclosure does not compromise Plaintiffs' strategic or tactical position, there is no basis for finding work product protection.

*Id*. at 427-28.[6] Likewise, in *In re Netbank, Inc. Securities Litigation*, 259 F.R.D. 656 (N.D. Ga. 2009), plaintiffs refused to provide the names of confidential witnesses in discovery, saying only that the names were included among 130 witnesses listed in their initial disclosures. *Id*. at 677. The court noted that plaintiffs' argument that defendants conduct their own investigation of these 130 witnesses "smacks of a needle-in-haystack search: time-consuming, wasteful and expensive," and granted defendant's motion to compel disclosure of the witnesses' identities. *Id*.; *see also Am. Floral Services, Inc. v. Florists Transworld Delivery Ass'n*, 107 F.R.D. 258 (N.D. Ill. 1985) (rejecting "'fox-hunt' theory of litigation" whereby party refuses to narrow down large list of potential witnesses with knowledge of facts at issue). As noted above, the burdens of discovery in this action already fall disproportionately on defendants in this action, and it makes no sense to place even greater burdens on defendants when the information is at Lead Plaintiffs' fingertips.

Third, considerations of public policy and fairness militate strongly in favor of disclosure. It is unfair and improper for plaintiffs to use a confidential witness to get past the pleading stage in an action, and then refuse to disclose the identity of the accuser. In this case, the confidential

---

[6] Likewise, in *In re Netbank, Inc. Securities Litigation*, 259 F.R.D. 656 (N.D. Ga. 2009), plaintiffs refused to provide the names of confidential witnesses in discovery, saying only that the names were included among 130 witnesses listed in their initial disclosures. *Id*. at 677. The court noted that plaintiffs' argument that defendants conduct their own investigation of these 130 witnesses "smacks of a needle-in-haystack search: time-consuming, wasteful and expensive," and granted defendant's motion to compel disclosure of the witnesses' identities. *Id*.; *see also Am. Floral Services, Inc. v. Florists Transworld Delivery Ass'n*, 107 F.R.D. 258 (N.D. Ill. 1985) (rejecting "'fox-hunt' theory of litigation" whereby party refuses to narrow down large list of potential witnesses with knowledge of facts at issue).

witness constitutes plaintiffs' *only* allegation of accounting violations by Novatel in 2007. Considering that the witness's statement obviously has been heavily edited in the Complaint,[7] and that serious questions about the witness's personal knowledge and credibility exist, the factual underpinnings of Lead Plaintiffs' allegations should be subject to discovery now. Novatel anticipates that plaintiffs will argue that it is necessary to protect the identities of confidential witnesses to encourage whistleblowing in securities class actions. However, failure to answer the ROGs does not serve this end, because plaintiffs have injected him or her into these proceedings and, thus, have subjected this witness to the discovery process. *See Mazur*, 2007 WL 917271, at *5 ("once a case proceeds in discovery and nears the time of trial, whatever policy protections prevented the disclosure of that witness's identity also evaporate when balanced against the operative requirements of Rule 26"); *Hubbard*, 2009 WL 3856458, at *5 ("There is no public interest privilege that precludes lawful discovery of confidential witnesses in this case."). Therefore, the Court should compel Lead Plaintiffs to provide full and complete substantive answers to Novatel's ROG Nos. 20 to 21.

**F.   Lead Plaintiffs Must Produce a Privilege Log Identifying Documents Withheld on Privilege Grounds**

Lead Plaintiffs have objected to numerous document requests and almost every ROG on grounds of attorney-client privilege, the work product doctrine and/or a "right to privacy." Apart from these three objections, Lead Plaintiffs object to all but one of Novatel's ROGs on the grounds of "any other applicable privilege or immunity." Such boilerplate objections are useless for determining whether a legitimate claim for privilege may attach. Plaintiff should be required to compile a privilege log for any documents withheld on privilege, work product, or "right to privacy" grounds. *See Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (asserting privilege "requires, at a minimum, a good faith effort to provide the trial judge with sufficient information

---

[7] For example, the Complaint contains the allegation that "[t]he Company would frequently ship large amounts of product 'up to 4 weeks early' so they could recognize the revenue up front in the current quarter and meet or exceed Wall Street expectations." (CC, ¶ 112.) The quotation marks are placed around the words "up to 4 weeks early," which is the only portion of the allegation directly attributed to the confidential witness.

MEMO. OF POINTS AND AUTHORITIES
RE NOVATEL'S MOTION TO COMPEL
08-CV-1689-H (RBB)

19

from which he can make an intelligent evaluation of the claim"). Pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure, where a party withholds documents on a claim of privilege, the party "shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. Proc. 26(b)(5). Thus, a "party who withholds discovery materials must provide sufficient information (*i.e.*, a privilege log) to enable the other party to evaluate the applicability of the privilege or protection." *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 411 (C.D. Cal. 2005); *see also Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 220 (C.D. Cal. 2009) (requiring production of privilege log for documents withheld on claims of attorney-client privilege or work product). Failure to provide sufficient information may constitute a waiver of the privilege. *Ramirez*, 231 F.R.D. at 411.

## V. CONCLUSION

For the reasons set forth herein, Novatel respectfully requests that the Court overrule Lead Plaintiffs' objections, and enter an order directing Lead Plaintiffs, within five days of entry of the Court's order, to:

(1)     Produce all documents responsive to Novatel's RFP Nos. 1, 7, 17 to 18, 20 to 24, 36 to 37, 39 to 40, and 43 to 46;

(2)     Provide full and complete substantive answers to Novatel's ROG Nos. 3, 6 to 9, 19 to 21; and

(3)     Produce a privilege log to Novatel's counsel.

Dated:  December 9, 2009

Respectfully submitted,

Jones Day

By:  s/Travis Biffar
Travis Biffar

Attorneys for defendants

IRI-1535v1

MEMO. OF POINTS AND AUTHORITIES
RE NOVATEL'S MOTION TO COMPEL
08-CV-1689-H (RBB)

20

138

Exhibit 3