Gregory L. Watts (#17782)
gwatts@wsgr.com
Caitlin E. McKelvie (#16511)
cmckelvie@wsgr.com
Stevenson C. Smith (#18546)
stevenson.smith@wsgr.com
Tamara Lemmon (#18462)
tlemmon@wsgr.com
Wilson Sonsini Goodrich & Rosati, P.C.
15 West South Temple
Gateway Tower West, Suite 1700
Salt Lake City, UT 84101
Telephone: (801) 401-8510

Ignacio E. Salceda (*pro hac vice*)
isalceda@wsgr.com
Wilson Sonsini Goodrich & Rosati, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300

Stephanie L. Jensen (*pro hac vice*)
sjensen@wsgr.com
Tyre L. Tindall (*pro hac vice*)
ttindall@wsgr.com
McKinney Wheeler (*pro hac vice*)
mckinney.wheeler@wsgr.com
Wilson Sonsini Goodrich & Rosati, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104
Telephone: (206) 883-2500

*Attorneys for Defendants Pluralsight, Inc., Aaron
Skonnard, and James Budge*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM and PUBLIC SCHOOL TEACHERS' PENSION AND RETIREMENT FUND OF CHICAGO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>PLURALSIGHT, INC.; AARON SKONNARD; and JAMES BUDGE,<br><br>Defendants. | **MOTION TO MODIFY SUBPOENA TO THE CADENCE GROUP**<br><br>**Case No. 1:19-CV-00128-DBB-DAO**<br><br>Honorable David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

Pursuant to Federal Rule of Civil Procedure 45(d)(3)(B), Defendant Pluralsight, Inc. ("Pluralsight" or the "Company") moves to modify the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Subpoena") served by Plaintiffs on non-party The Cadence Group ("Cadence") to limit the Subpoena's scope to revenue, billings, sales, and the size, capacity, productivity, or retention of Pluralsight's salesforce.[1]

## BACKGROUND

The Tenth Circuit narrowed this case to an allegation of "*only one* materially false or misleading statement" regarding the number of Pluralsight's quota-bearing sales representatives, causing an alleged impact on billings. *Indiana Pub. Ret. Syst. v. Pluralsight, Inc.*, 45 F. 4th 1236, 1237 (10th Cir. 2022) (emphasis added). Dissatisfied with their one-statement case, Plaintiffs have attempted a series of fishing expeditions through Pluralsight's entire financial records, audits, and evaluations of internal control measures. Plaintiffs' latest fishing attempt is a Subpoena to Cadence, an entity that Pluralsight retained to provide services relating to the implementation and testing of internal control measures and compliance with the Sarbanes-Oxley Act.

Despite the limited scope of this one-statement case, Plaintiffs served the Subpoena on Cadence seeking, among other things, the production of the following documents:

---

[1] Pluralsight is simultaneously seeking relief in the form of a motion for a protective order under Federal Rule of Civil Procedure 26(c). Although Pluralsight would ordinarily combine the requests for relief under Rules 26(c) and 45(d)(3) into a single motion, the Local Rules of Practice for the United States District Court for the District of Utah provide different requirements for filing a motion under each rule. Accordingly, in order to comply with the specific requirements with respect to each motion, Pluralsight has filed the requests for relief as two separate motions. Pluralsight has ensured that the overall page count in this motion, if combined with the page count in the motion for a protective order, would still fall under the page limit applicable to this motion.

1

2.      *All Documents related to any audit, evaluation, assessment, or testing of Pluralsight's internal control systems*, including, but not limited to, attestations under Section 404 of Sarbanes-Oxley, that relate to executive and equity-based compensation, revenue, billings, sales, sales headcount, capacity, or productivity, or *any other KPIs*.

3.      *All Documents related* to any communications with PwC, EY, or Tanner concerning Pluralsight's *internal control over financial reporting* that relate to executive and equity-based compensation, revenue, billings, sales, sales headcount, capacity, or productivity, or *any other KPIs*.

4.      *All Documents related* to any *audit, evaluation, assessment, or testing* of Pluralsight's executive and equity-based compensation, revenue, billings, sales, sales headcount, capacity, or productivity, or *any other KPIs*.

5.      *All Documents related* to any communications with Pluralsight's Board, Board committees, or its members concerning Pluralsight's *internal control over financial reporting* that relate to executive and equity-based compensation, revenue, billings, sales, sales headcount, capacity, or productivity, or *any other KPIs*.

Decl. of Caitlin E. McKelvie ("McKelvie Decl."), ¶3 & Ex. 1 (emphases added). The Subpoena defines "related" as "constitutes, contains, discusses, embodies, evidences, reflects, identifies, states, refers to, deals with, bears upon, or is in any way pertinent to that subject, including documents concerning the preparation of other documents." McKelvie Decl. ¶ 4 & Ex. 1.

The Subpoena does not define "other KPIs." McKelvie Decl. ¶ 5 & Ex. 1. However, Plaintiffs have served other subpoenas on non-parties containing the following definition for "KPIs": "any operating or other metrics, including *GAAP and non-GAAP financial measures* as well as *nonfinancial reporting information*, used by Pluralsight to evaluate, monitor, track, calculate, or disclose management or operational performance." McKelvie Decl. ¶ 7 & Ex. 2 (emphases added). Pluralsight's publicly filed Form 10-Ks for 2018 and 2019 disclosed more than 130 different GAAP and non-GAAP financial measures, ranging from accrued author fees to

2

facility financing obligations to income taxes to amortization of acquired intangible assets. McKelvie Decl. ¶¶ 13-18 & Exs. 4-5.

The Subpoena contains similar, but even broader, language and scope as Requests for Production 17 and 18 that Plaintiffs served on Defendants relating to two of Pluralsight's auditors. Those requests sought "[a]ll Documents Concerning PwC's [EY's] audits, interim reviews, analyses, evaluations, or testing of Pluralsight's accounting for, disclosure of, or internal control over financial reporting of revenue, deferred revenue, Billings, key business metrics, or other GAAP or non-GAAP financial measures during the Audit and Professional Engagement Period for any audit or non-audit services PwC [EY] provided during the Relevant Period." Dkt. 225-1 at 13-14.

Requests for Production 17 and 18 were the subject of Lead Plaintiffs' Short Form Discovery Motion to Compel Defendants to Produce Audit-Related Documents, Dkt. No. 225. Defendants opposed that motion on grounds of facial overbreadth, lack of reasonable particularity, relevance, and burden. Defs.' Opp'n to Lead Pls.' Short Form Disc. Mot. to Compel Defs. to Produce Audit-Related Docs, Dkt. No. 236. At the October 4 hearing on that motion to compel, Plaintiffs agreed to limit the scope of Requests for Production 17 and 18 to revenue, billings, sales, and the size, capacity, productivity, and retention of Pluralsight's sales force—a scope that Defendants had offered, and Plaintiffs had rejected, before Plaintiffs filed the motion to compel.[2]

Due to the sensitive nature of the information sought by the Subpoena and its expansive scope unrelated to this litigation, and in an effort to resolve its concerns without the need for court

---

[2] A transcript of the hearing is not yet available. Pluralsight would be happy to provide the Court with specific citations to the transcript when it becomes available.

intervention, Pluralsight asked Plaintiffs to agree to limit the scope of Requests 2-5 in the Subpoena to "revenue, billings, sales, sales headcount, capacity, or productivity," consistent with the scope that Plaintiffs agreed upon with respect to Plaintiffs' Requests for Production 17 and 18 just last week.  McKelvie Decl. ¶ 9 & Ex. 3.

Plaintiffs declined this compromise and refused to meet and confer with Pluralsight on this issue, simply responding: "Plaintiffs are in discussions with Cadence's counsel about its responses to the subpoena, including the appropriate scope of Requests 2-5.  We do not believe that there is a need to separately meet and confer with Defendants' counsel."  McKelvie Decl. ¶ 10 & Ex. 3.  Accordingly, Pluralsight respectfully requests the Court modify the Subpoena to limit the scope of Requests 2-5 to revenue, billings, sales, and the size, capacity, productivity, or retention of Pluralsight's sales force.

## ANALYSIS

### I.      Pluralsight Has Standing to Move to Modify the Subpoena

"Generally, a party does not have standing to object to a subpoena issued to a third party, unless the party challenging the subpoena has a personal right or privilege with respect to the subject matter sought by the subpoena." *Ennis v. Alder Protection Holdings*, 2022 WL 4290099, at *2 (D. Utah Sept. 16, 2022).  A party has a personal right or privilege for "documents involving personal financial and business documents" that are "highly sensitive."  *US Magnesium, LLC v. ATI Titanium LLC*, 2020 WL 12847147, at *4 (D. Utah May 22, 2020); *see also Ennis*, 2022 WL 4290099, at *2 ("Defendants have a privacy interest in their personal financial affairs that gives them standing."); *Consumer Fin. Prot. Bureau v. Integrity Advance, LLC*, 2022 WL 2791173, at *4 (D. Kan. July 15, 2022) ("Consistent with other decisions in this district, the Court finds all

4

Movants have standing to challenge the subpoenas to the extent the subpoenas seek the respective Movant's own financial records.").

The Subpoena seeks all documents concerning Pluralsight's internal controls over hundreds of financial and non-financial metrics and any audits, evaluations, or testing of those internal controls or metrics. Cadence's testing of Pluralsight's internal financial controls encompassed detailed documentation supporting all financial reconciliations, including granular information as to each of those specific financial details. Decl. of James Wing, ¶ 5 ("Wing Decl."). Further, Pluralsight's contract with Cadence provides that the work-product created by Cadence is the "exclusive property" of Pluralsight. Accordingly, Pluralsight has standing to challenge the Subpoena.

## II.     The Subpoena Should Be Modified to Limit Its Scope

"To protect a person . . . affected by a subpoena," the court may quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B). A party resisting discovery must establish that the information sought is a trade secret or confidential information and "then demonstrate that its disclosure might be harmful." *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981); *see Stand v. USANA Health Sciences, Inc.*, 2019 WL 6324629, at *3 (D. Utah Nov. 26, 2019) (applying *Centurion* to a motion to quash under Rule 45(d)(3)). "If these requirements are met, the burden shifts to the party seeking discovery to establish that the [information] is relevant and necessary to the action." *Centurion*, 665 F.2d at 325. "The district court must balance the need for the [information] against the claim of injury resulting from

5

disclosure." *Id.* "If proof of relevancy or need is not established, discovery should be denied."

*Id.*

### a. The Subpoena Seeks Pluralsight's Confidential Commercial Information, the Disclosure of Which Might Cause Pluralsight Harm

"Trade secret or commercially sensitive information must be 'important or proprietary information' and the party challenging the subpoena must make 'a strong showing that it has historically sought to maintain the confidentiality of this information.'" *Zoobuh, Inc. v. Rainbow Intern. Corp.*, 2015 WL 2093292, at \*3 (D. Utah May 5, 2015).  The Subpoena seeks, among other items, all documents relating to Cadence's audit or testing of any internal controls over hundreds of Pluralsight's financial and non-financial metrics.  Pluralsight used Blackline, a SaaS system, to manage its recurring accounting reconciliations and internal controls documentation tasks.  Wing Decl. ¶ 5.  These reconciliations are completed on a monthly, quarterly, and annual basis for each of Pluralsight's balance sheet accounts.  *Id.*  Blackline contains detailed documentation supporting all reconciliations and tasks.  *Id.*  This supporting documentation provides detailed, granular information as to each specific financial metric and Pluralsight's overall financial results, including information relating to Pluralsight's business strategy.  *Id.*

Cadence's access to Blackline allowed Cadence to review and/or download documentation from Blackline to perform testing on Pluralsight's internal controls, and Cadence would have reviewed that detailed financial information as part of its testing.  *Id.* ¶¶ 6-7.  Accordingly, the Subpoena compels production of granular detail supporting each of Pluralsight's financial metrics because that information was required to test Pluralsight's internal controls.

This level of detailed financial information is extremely confidential and Pluralsight made significant efforts to keep this information confidential.  Access to Blackline is strictly controlled,

and Blackline is only accessible through a secure portal that requires both a username and password, as well as authentication under a dual verification system. *Id.* ¶ 8. Additionally, individuals with access to Blackline only have access to the specific information that they are assigned to prepare or review. *Id.* There are only a select few individuals on Pluralsight's accounting team that have access to see all supporting documentation. *Id.* Cadence had this high level access. The controlled information they could view constitutes confidential commercial information.

Further, disclosure of this financial information—granular details supporting each of Pluralsight's financial and non-financial metrics—might cause Pluralsight harm. This financial information could be used to recreate sensitive information or business strategy, including, but not limited to: customer lists and details pertaining to deals with customers, including preferential pricing; vendor lists and details pertaining to deals with vendors, including preferential pricing provided to Pluralsight; and details related to agreements with authors of Pluralsight's content and payments due to them. *Id.* ¶ 7.

Accordingly, Pluralsight's confidential information contained in Cadence's files should not be produced unless Plaintiffs can establish the relevance of the information and that Plaintiffs' need for the information outweighs the potential harm to Pluralsight. Plaintiffs cannot do so.

### b. Plaintiffs Cannot Establish the Information in the Subpoena is Relevant and Any Relevance is Outweighed by the Harm to Pluralsight in Disclosure

Plaintiffs cannot establish the relevance of granular, detailed information supporting hundreds of varying financial metrics. "[D]iscovery must be relevant to 'issues of the present lawsuit as it currently exists' and cannot be used to 'investigate previously dismissed claims and explore alternative theories.'" *Prime Alliance Bank v. Regents Cap.*, 2022 WL 671186, *2 (D.

7

Utah Mar. 7, 2022).  "A lawsuit does not give a party a free pass to fish through all of another party's financial records merely to see if anything interesting turns up." *Ennis*, 2022 WL 4290099, *4.

Plaintiffs cannot justify their attempt to engage in a broad fishing expedition into the testing of internal controls of all of Pluralsight's financial metrics and non-financial metrics.  Plaintiffs have not alleged that Pluralsight had insufficient internal controls, even with respect to the metrics that Pluralsight has elected not to challenge in this motion to quash in the interest of compromise. Accordingly, none of the information sought is relevant.  Further, Plaintiffs cannot justify the relevance of hundreds of additional business metrics—from effect of exchange rate changes on cash to lease liabilities to purchases of content library—let alone their corresponding documentary support in periodic financial reconciliations and the Company's and/or Cadence's judgment as to whether the Company's internal control concerning those irrelevant metrics was adequate.

Even if Plaintiffs could somehow establish minimal relevance as to some information, Plaintiffs "are using an exceptionally large net to gather information without clear justification as to the need of the information and do not appear to have exerted any effort to specifically tailor their requests." *US Magnesium*, 2020 WL 12847147, at *5.  In the balance of interests, Plaintiffs have nothing to put on the relevancy scale.  And if Plaintiffs could somehow identify a minimal need Plaintiffs have for the information, that relevance would be significantly outweighed by the harm the disclosure will cause to Pluralsight.

Pluralsight respectfully requests the Court modify the Subpoena to limit the scope of Requests 2-5 to revenue, billings, sales, and the size, capacity, productivity, or retention of Pluralsight's sales force, a limitation Plaintiffs accepted with respect to audit-related documents in

8

the Company's possession but for some reason refused to accept with respect to Pluralsight information in the possession of third-party Cadence.

Dated:  October 12, 2023

/s/ Caitlin E. McKelvie

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
Gregory L. Watts (#17782)
Caitlin E. McKelvie (#16511)
Stevenson C. Smith (#18546)
Tamara Lemmon (#18462)
Ignacio E. Salceda (admitted *pro hac vice*)
Stephanie L. Jensen (admitted *pro hac vice*)
Tyre L. Tindall (admitted *pro hac vice*)
McKinney Wheeler (admitted *pro hac vice*)

*Attorneys for Defendants*