IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PLURALSIGHT, INC., *et al.*, <br><br> Defendants. | **DECLARATION OF JAN MESSERSCHMIDT IN SUPPORT OF LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER RELATING TO SUBPOENA TO THE CADENCE GROUP** <br><br> Case No. 1:19-cv-00128 <br><br> District Judge David Barlow <br><br> Magistrate Judge Daphne A. Oberg |

I, Jan Messerschmidt, declare as follows:

1.    I am an attorney at the law firm of Cohen Milstein Sellers & Toll PLLC and have been admitted to this Court *pro hac vice*. I submit this declaration in support of Plaintiffs' opposition to Defendants' Motion for Protective Order Relating to Subpoena to The Cadence Group. I have personal knowledge of the facts set forth herein and, if called as a witness, I could competently testify as to the matters set forth herein.

**Plaintiffs subpoena PricewaterhouseCoopers and Ernst & Young**

2.    In May 2023, Plaintiffs served subpoenas on PwC and EY requesting documents related to their audits and interim reviews for Pluralsight. The subpoenas included multiple requests, including a request for "[a]ll Documents and Working Papers relating to Pluralsight's process and practice for determining, calculating, forecasting, estimating, documenting, recognizing, disclosing, or accounting for KPIs used or disclosed by Defendants." Defendants never objected to this request or any of the

other requests in the PwC and EY subpoenas. Plaintiffs' negotiations with PwC and EY are ongoing, but both audit firms have made initial productions of documents.

**Plaintiffs learn that Cadence likely possesses relevant documents**

3.  On June 30, Defendants produced to Plaintiffs a set of documents that included a spreadsheet provided by Pluralsight that listed individuals who participated in or were aware about events leading up to the July 31, 2019 disclosure at issue in the case, which included four individuals employed by Cadence. *See* ECF No. 225-8.

**Plaintiffs subpoena Cadence and confer with Cadence's counsel about the subpoena**

4.  On August 21, 2023, Plaintiffs notified Defendants that they intended to serve a subpoena on Cadence, which Plaintiffs served on Cadence on September 13. Ex. A. The subpoena included the following requests:

1.  Documents sufficient to identify all services provided by Cadence to Pluralsight, including, but not limited to any audit, audit related, consulting, or non-audit services.

2.  All Documents related to any audit, evaluation, assessment, or testing of Pluralsight's internal control systems, including, but not limited to, attestations under Section 404 of Sarbanes-Oxley, that relate to executive and equity-based compensation, revenue, billings, sales, sales headcount, capacity, or productivity, or any other KPIs.

3.  All Documents related to any communications with PwC, EY, or Tanner concerning Pluralsight's internal control over financial reporting that relate to executive and equity-based compensation, revenue, billings, sales, sales headcount, capacity, or productivity, or any other KPIs.

4.  All Documents related to any audit, evaluation, assessment, or testing of Pluralsight's executive and equity-based compensation, revenue, billings, sales, sales headcount, capacity, or productivity, or any other KPIs.

5.  All Documents related to any communications with Pluralsight's Board, Board committees, or its members concerning Pluralsight's internal control over financial reporting that relate to executive and equity-based compensation, revenue, billings, sales, sales headcount, capacity, or productivity, or any other KPIs.

ECF No. 246-2.

5. Two weeks later, on September 27, Cadence's counsel emailed Plaintiffs' counsel a letter that included their responses and objections to the subpoena, and stated that "While Cadence is prepared to discuss the scope of the Subpoena and other concerns with you, Cadence is objecting to the Subpoena to preserve its rights pending such discussions." Ex. B. Cadence's objections included that the subpoena was overbroad, unduly burdensome, and not proportional to the needs of the case.

6. In response to Cadence's letter, Plaintiffs' counsel immediately scheduled a call with Cadence's counsel to meet and confer about the subpoena and Cadence's objections. During an October 3 call with Cadence's counsel, Plaintiffs' counsel emphasized that Plaintiffs wanted to minimize the burden imposed by the subpoena and would work with Cadence to limit their requests accordingly. To that end, Plaintiffs explained that we were seeking documents that are unlikely to be in Defendants' possession and would work with Cadence on ways to limit the scope of the collection and production of responsive documents accordingly. Additionally, Plaintiffs explained that they were mainly seeking documents related to "executive and equity-based compensation, revenue, billings, sales, sales headcount, capacity, or productivity." Further, Plaintiffs and Cadence agreed that while Plaintiffs' motion to compel on the discovery period is pending, Cadence would prioritize on producing responsive documents from the period October 1, 2018 to September 30, 2019, and in the event the Court rules and granted Plaintiffs' request for a wider discovery period, Cadence agreed to supplement its production with any additional documents from that wider period. Finally, Plaintiffs agreed to consider reimbursing Cadence for its reasonable costs and expenses incurred in responding to the subpoena, which Cadence's counsel estimated would not likely exceed $1,000 to $1,500.

7. Later that day, Cadence's counsel sent Plaintiffs an email memorializing some their agreements during their call, including that Cadence:

> will work on submitting the response [to Plaintiffs' subpoena] by 10/27, which will include documents requested/responsive for the Relevant Period of Oct. 1, 2018-September 30, 2019, for now, but will be supplemented if the Relevant Period is enlarged by the court, and as originally requested in the subpoena. Further, your office will consider reimbursement for Cadence's efforts in responding to the subpoena, for a reasonable amount and documented hours.

Ex. C.

8. The following week, Plaintiffs emailed Cadence's counsel to confirm that Plaintiffs would reimburse Cadence for its reasonable costs and expenses incurred in responding to the subpoena up to $1,500, and that Plaintiffs were willing to discuss covering additional reasonable costs and expenses in the event Cadence anticipated exceeding that amount. Ex. D.

**Defendants threaten to move to quash the Cadence Subpoena unless Plaintiffs agree to limit its scope**

9. On October 11,[1] Defendants' counsel emailed Plaintiffs about their Cadence subpoena, writing as follows:

> I am reaching out to you about Plaintiffs' subpoena to the Cadence Group (the "Subpoena"). Requests 2-5 of the Subpoena request documents with respect to "executive and equity-based compensation, revenue, billings, sales, sales headcount, capacity, or productivity, or any other KPIs."
>
> It is Defendants' position that the scope of the Subpoena is too broad. Accordingly, Defendants request that Plaintiffs agree to limit the scope of Requests 2-5 to "revenue, billings, sales, sales headcount, capacity, or productivity," consistent with the scope the parties agreed upon with respect to Requests for Production 17 and 18 in Plaintiffs' First Set of Requests for Production to Defendants. If the parties are not able to reach

---

[1] The previous day, on October 10, Defendants' counsel emailed Plaintiffs' counsel offering to withdraw their motion to compel Plaintiffs to produce documents responsive to Defendants' Request Nos. 31 and 32, ECF No. 216, on the condition that each Plaintiff sign a sworn declaration that attested to certain facts about their agreements with Lead Counsel. Ex. E. The following day, on October 11, Plaintiffs' counsel emailed Defendants to confirm their agreement to sign the declarations requested and asked Defendants to file their withdrawal by October 13 to avoid burdening the Court with additional and unnecessary briefing on Defendants' motion to compel. Ex. F. Defendants' counsel replied later that day, confirming their agreement. Ex. G.

an agreement on this scope, Defendants will file a short motion to quash the Subpoena on October 12 seeking to limit the Subpoena to this scope.

Please let me know if you would like to meet and confer regarding this issue. I can make myself available at any time today or tomorrow after 2:00 eastern.

Ex. H.

10. Because Plaintiffs had already met and conferred with Cadence and agreed to limit the scope of their requests, they saw no need to separately meet and confer with Defendants' counsel. Plaintiffs thus responded to Defendants by writing: "Plaintiffs are in discussions with Cadence's counsel about its responses to the subpoena, including the appropriate scope of Requests 2-5. We do not believe that there is a need to separately meet and confer with Defendants' counsel." Ex. I. Defendants did not respond to Plaintiffs' email.

**Defendants file motions to quash and for a protective order regarding the subpoena to Cadence**

11. On October 12, 2023, Defendants filed two discovery motions regarding the Cadence subpoena. As stated in Defendants' October 11 email, Defendants filed a motion to quash Plaintiffs' subpoena to the Cadence group. ECF No. 247. However, the main basis for the motion to quash was that the subpoena sought Pluralsight's "confidential commercial information" and that the disclosure of that information "might cause Pluralsight harm," ECF No. 247, a basis that Defendants did not mention in their October 11 email. In addition, even though Defendants had only told Plaintiffs that they would file a motion to quash, Defendants also filed a motion for a protective order regarding "personal finance and business documents" Defendants believe may be produced in response to the Cadence subpoena. *See* ECF No. 246.

**Plaintiffs unsuccessfully request the withdrawal of Defendants' October 12, 2023 discovery motions**

12. On October 17, 2023, Plaintiffs sent Defendants a letter notifying them that the two discovery motions should be withdrawn, stating that both are "procedurally improper and substantively without merit." Ex. J, at 1.[2]

13. In this October 17 letter, Plaintiffs rebutted both motions on procedural grounds given the lack of notice under both Federal Rule 26(c) and Local Civil Rule 37-1, pointing out that Plaintiffs' response did not "refuse[] Pluralsight's request for this limitation," as Defendants' motion claimed. Ex. J, at 1.

14. Plaintiffs' letter also raised that Defendants mentioned nothing about planning to file a motion for a protective order or that their grounds for moving to quash would be that the subpoena supposedly sought "confidential commercial information." Nor did Defendants respond and explain why Plaintiffs' response—that they were negotiating the scope of the subpoena with Cadence's counsel—was inadequate. In sum, Plaintiffs believe that Defendants' "failure to even alert [Plaintiffs] to the

---

[2] Plaintiffs' October 17 letter also pointed out that the motions are "an improper (and unnecessary) intrusion into [Plaintiffs'] negotiations with a non-party's counsel":

> While we need not tell Defendants about the nature of our discussions or agreements with a nonparty's counsel, we note that Cadence has retained counsel to represent them for their responses to our subpoena, and their counsel served objections and then met and conferred with Plaintiffs' counsel. During our conferral, we emphasized to Cadence's counsel that would strive to mitigate the burden imposed by the subpoena and clarified the scope of our requests as detailed above. Cadence's counsel is able to represent Cadence's interests on their own—without Defendants' involvement or oversight. You may disagree with that, but Rules 26(c) and 45 are tools to police the outer limits of discovery, not to micromanage a nonparty's counsel.

Ex. J, at 2; *see supra* ¶¶10-12.

nature of the discovery dispute, much less make 'reasonable efforts' to resolve it, alone renders [the] short-form motion for a protective order procedurally deficient." Ex. J, at 1-2 (citations omitted). Moreover, Plaintiffs' letter highlighted that "[e]ven if Defendants have a personal right or privilege with respect to the subject matter of the subpoena, Defendants lack standing to quash or modify a nonparty subpoena on the grounds that it is overbroad or seeks irrelevant information. *Hutchison v. Kamauu*, 2022 WL 1469447, *2 (May 10, 2022) (Oberg, M.J.)." Ex. J, at 2.

15. As to the substance of the motions, Plaintiffs explained that even if Defendants had standing to bring their motions, Plaintiffs' subpoena to Cadence "falls squarely within the broad scope of relevancy in discovery matters. *US Magnesium*, 2020 WL 12847147, *5." Ex. J, at 2. While Defendants raised a concern about the scope, Plaintiffs had already limited the relevant information sought in their discussions with Cadence's counsel. Ex. J, at 2.

16. Plaintiffs' October 17 letter closed by requesting Defendants withdraw both motions "no later than 12pm ET on Thursday, October 19." Ex. J, at 2.

17. Late in the evening on October 18, Defendants sent Plaintiffs a letter that refused to withdraw their motion. Defendants' letter claimed that Pluralsight had a right to move to quash the subpoena but did not respond to any of the authority Plaintiffs cited in their letter and provided no other authority to support any of Defendants' assertions. Ex. K, at 1.

18. Further, Defendants claimed that "the subpoena that the documents and information Plaintiffs seek from non-party Cadence are primarily *Pluralsight's* documents and information." Ex. K, at 1. But as Plaintiffs explained to Cadence's counsel, their focus was on documents that would not otherwise be in Defendants' possession. Defendants also provided no explanation for their failure to notify Plaintiffs about their intention to move for a protective order. Nor did Defendants explain why they wrongly characterized Plaintiffs as having "refused Pluralsight's request" for limiting the scope of

7

Requests 2-5 of the Cadence Subpoena, *see* ECF No. 246, when Plaintiffs merely stated that they were "in discussions" with Cadence's counsel about the subpoena's scope and did not see a need to separately confer with Pluralsight, Ex. I. Lastly, Defendants suggested (incorrectly) that Plaintiffs and Cadence "have not reached an agreement on the scope of the subpoena or the materials that Cadence might produce in response." Ex. K, at 2.

19. In an effort to clarify any confusion, Plaintiffs sent an email to Defendants' counsel on October 19, 2023 explaining that Plaintiffs do not believe that a dispute between the parties exists and that, if there is one, they do not believe it is significant. Ex. L. Plaintiffs clarified that, during their first meet and confer with Cadence's counsel, Plaintiffs made Cadence aware that "(1) Plaintiffs were not seeking documents from Cadence that would likely be in Defendants' possession and agreed to work with Cadence on methods to limit their collection and production accordingly" and that "(2) [Plaintiffs] were only seeking documents about 'other KPIs' that are related to executive and equity-based compensation, revenue, billings, sales, sales headcount, capacity, or productivity." Ex. L. Plaintiffs noted that they would clarify the above with Cadence's counsel directly. Ex. L.

20. Also in this October 19 email, Plaintiffs communicated to Defendants that Plaintiffs would file their response to Defendants' motion for a protective order that evening and that Plaintiffs are "happy to confer about [Defendants'] motion for a protective order consistent with the local rules and to discuss any related issues" as Plaintiffs "would prefer to resolve this issue without burdening the Court with unnecessary motion practice." Ex. L.

21. In addition to and as noted in Plaintiffs' October 19 email to Defendants, Plaintiffs sent a letter to Cadence's counsel that same day, which was copied to Defendants' counsel. Ex. N. This October 19 letter confirmed Plaintiffs' and Cadence's agreements on the October 3 call and the documents sought by the subpoena, stating, in relevant part, that Plaintiffs:

    a. are "seeking documents that are unlikely to be in Defendants' possession and would work with Cadence on ways to limit the scope of the collection and production of responsive documents accordingly," and

    b. are "mainly seeking documents related to 'executive and equity-based compensation, revenue, billings, sales, sales headcount, capacity, or productivity.' To the extent there is any confusion about that limitation, Plaintiffs are not seeking documents about any 'other KPIs' that are unrelated to those topics."

Ex. M; *see supra* ¶¶6-7. Plaintiffs also stated that "Cadence acknowledged that it possessed responsive documents and agreed to work on producing those documents by October 27." Ex. M.

22. Attached are true and correct copies of the following documents:

| | |
|---|---|
| Exhibit A | Lead Plaintiffs' Notice of Nonparty Document Subpoenas, dated August 21, 2023 |
| Exhibit B | Letter from Cadence's counsel to Plaintiffs' counsel, dated September 27, 2023 |
| Exhibit C | Email from Cadence's counsel to Plaintiffs' counsel, dated October 3, 2023 |
| Exhibit D | Email from Plaintiffs' counsel to Cadence' counsel, dated October 11, 2023. |
| Exhibit E | Email from Defendants' counsel to Plaintiffs' counsel regarding Withdrawal of Defendants' Motion to Compel, dated October 10, 2023 |
| Exhibit F | Email from Plaintiffs' counsel to Defendants' counsel regarding Withdrawal of Defendants' Motion to Compel, dated October 11, 2023. |
| Exhibit G | Email from Defendants' counsel to Plaintiffs' counsel regarding Withdrawal of Defendants' Motion to Compel, dated October 11, 2023 |
| Exhibit H | Email from Defendants' counsel to Plaintiffs' counsel regarding the Cadence Subpoena, dated October 11, 2023 |
| Exhibit I | Email from Plaintiffs' counsel to Defendants' counsel regarding the Cadence Subpoena, dated October 11, 2023. |
| Exhibit J | Letter from Plaintiffs' counsel to Defendants' counsel regarding the Cadence Subpoena, dated October 17, 2023 |

Exhibit K        Letter from Defendants' counsel to Plaintiffs' counsel regarding the Cadence Subpoena, dated October 18, 2023

Exhibit L        Email from Plaintiffs' counsel to Defendants' counsel regarding the Cadence Subpoena, dated October 19, 2023

Exhibit M        Letter from Plaintiffs' counsel to Cadence's counsel regarding the Cadence Subpoena, dated October 19, 2023

This declaration is executed in Washington, D.C. on October 19, 2023, under penalty of perjury pursuant to the laws of the United States.

*/s/ Jan Messerschmidt*
Jan Messerschmidt