Carol V. Gilden
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

*Lead Counsel for Lead Plaintiffs*
*and the Class*

Keith M. Woodwell (#7353)
CLYDE, SNOW & SESSIONS, P.C.
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 322-2516
Facsimile: (801) 521-6280
kmw@clydesnow.com

*Liaison Counsel for Lead Plaintiffs*
*and the Class*

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## NORTHERN DIVISION

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PLURALSIGHT, INC., *et al.*,<br><br>Defendants. | Case No. 1:19-cv-00128<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Daphne A. Oberg |

## LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF LAW IN SUPPORT THEREOF

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ..................................................................... 1

II.   TERMS OF THE SETTLEMENT............................................................... 3

III.  ARGUMENT ............................................................................................. 4

    A.     The Proposed Settlement Merits Final Approval................................. 4

    1.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class ........... 5

    2. The Settlement Was Reached Through Arm's-Length Negotiations and Following Extensive Discovery.................................................................. 6

    3. The Settlement Should Be Approved in Light of the Costs and Risks of Further Litigation and Similar Factors ...................................................... 9

        i.   Risks of Prosecuting Securities Class Actions .................................... 10

        ii.  The Specific Risks of Proving Defendants' Liability and Damages in This Case 13

        iii. All Other Factors Set Forth in Rule 23(e)(2)(C) Support Approval of the Settlement............................................................................... 14

    4. The Plan of Allocation Is Fair and Reasonable and Should Be Approved................ 16

    B.     Notice to the Class Satisfied Rule 23 and Due Process ...................................... 18

IV.  CONCLUSION ................................................................................... 20

i

# TABLE OF AUTHORITIES

**CASES**                                                                                             **PAGE(S)**

*In re 3D Sys. Sec. Litig.*,
  No. 21-cv-1920, 2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ........................................................7

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ...........................................................................................19

*In re Allergan PLC Sec. Litig.*,
  No. 18 Civ. 12089, 2022 WL 17584155 (S.D.N.Y. Dec. 12, 2022) ........................................10

*Balander v. Hermes Consol. Inc.*,
  295 F. App'x 902 (10th Cir. 2008) .........................................................................................4

*In re Barclays Bank PLC Sec. Litig.*,
  No. 09 Civ. 1989, 2017 WL 4082305 (S.D.N.Y. Sept. 13, 2017) ..........................................10

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.*,
  167 F. Supp. 2d 1216 (D. Colo. 2001) ...................................................................................4

*In re Bos. Sci. Corp. Sec. Litig.*,
  708 F. Supp. 2d 110 (D. Mass. 2010), *aff'd sub nom. Mississippi Pub. Emps.'*
  *Ret. Sys. v. Bos. Sci. Corp.*, 649 F.3d 5 (1st Cir. 2011) ..........................................................10

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*,
  853 F. Supp. 2d 181 (D. Mass. 2012), *aff'd sub nom, Bricklayers & Trowel*
  *Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82 (1st
  Cir. 2014) ...............................................................................................................................10

*In re China Med. Corp. Sec. Litig.*,
  No. 8:11-1061, 2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) .................................................7

*Cotte v. CVI SGP Acquisition Tr.*,
  No. 2:21-cv-00299, 2023 WL 1472428 (D. Utah Feb. 2, 2023).........................................5, 9

*In re Crocs, Inc. Sec. Litig.*,
  306 F.R.D. 672 (D. Colo. 2014) ..................................................................................7, 16, 19

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).............................................................................................................17

*Fosbre v. Las Vegas Sands Corp.*,
No. 2:10–cv–00765, 2017 WL 55878 (D. Nev. Jan. 3, 2017), *aff'd sub nom.*,
*Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*,
732 F. App'x 543 (9th Cir. 2018) ............................................................................10

*Fulton Cnty. Emps.' Ret. Sys. on Behalf of Goldman Sachs Grp. Inc. v. Blankfein*,
No. 19-cv-1562, 2022 WL 4292894 (S.D.N.Y. Sept. 16, 2022) ..................................7

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) .......................................................................12

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)...................................................................................................12

*Hardy v. Embark Tech., Inc.*,
No. 3:22-cv-02090-JSC, 2023 WL 6276728 (N.D. Cal. Sept. 26, 2023) .................14

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
No. SACV 15-00865 AG, 2019 WL 11637311 (C.D. Cal. May 22, 2019)...............11

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ..................................................................................11

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)...................................................................................................12

*Karp v. First Conn. Bancorp, Inc.*,
535 F. Supp. 3d 458 (D. Md. 2021), *aff'd*, 69 F.4th 223 (4th Cir. 2023) ..................9

*Law v. NCAA*,
108 F. Supp. 2d 1193 (D. Kan. 2000) .......................................................................16

*Lucas v. Kmart Corp.*,
234 F.R.D. 688 (D. Colo. 2006) ...............................................................................16

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024)...................................................................................................11

*Martinez v. Reams*,
No. 20-cv-00977, 2020 WL 7319081 (D. Colo. Dec. 11, 2020) .................................5

*In re Molycorp, Inc. Sec. Litig.*,
No. 12-cv-00292, 2017 WL 4333997 (D. Colo. Feb. 15, 2017)..................................7

*Morrison v. Nat'l Austl. Bank Ltd.*,
561 U.S. 247 (2010)...................................................................................................12

*Murphy v. Precision Castparts Corp.*,
No. 3:16-cv-00521, 2021 WL 2080016 (D. Or. May 24, 2021)........................................10, 12

*In re Mylan N.V. Sec. Litig.*,
666 F. Supp. 3d 266 (S.D.N.Y. 2023)........................................................................................10

*In re Myriad Genetics, Inc. Sec. Litig.*,
No. 2:19-cv-00707-JNP-DBP (D. Utah Aug. 25, 2023), ECF No. 285.......................7, 14, 19

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................................................8

*In re Novatel Wireless Sec. Litig.*,
830 F. Supp. 2d 996 (S.D. Cal. 2011) .......................................................................................10

*In re Nu Skin Enters., Inc., Sec. Litig.*,
No. 2:14-cv-00033-JNP-BCW (D. Utah May 20, 2016), ECF No. 134-1 ...............................15

*O'Dowd v. Anthem, Inc.*,
No. 14-cv-02787, 2019 WL 4279123 (D. Colo. Sept. 9, 2019)..............................................4, 8

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)...................................................................................................................12

*In re Omnicom Grp., Inc. Sec. Litig.*,
541 F. Supp. 2d 546 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010) .............................10

*In re Oracle Corp. Sec. Litig.*,
No. C01–00988, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d
376 (9th Cir. 2010)....................................................................................................................10

*Or. Labs. Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,
No. 19-cv-0124, 2024 WL 98387 (D. Colo. Jan. 1, 2024) ......................................................16

*Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita Inc.*,
No. 17-cv-0304, 2021 WL 2981970 (D. Colo. July 15, 2021) ................................................15

*In re REMEC Inc. Sec. Litig.*,
702 F. Supp. 2d 1202 (S.D. Cal. 2010).....................................................................................10

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
314 F.3d 1180 (10th Cir. 2002) ..................................................................................................5

*Tennille v. W. Union Co.*,
785 F.3d 422 (10th Cir. 2015) ..................................................................................................18

*In re Tesla Inc., Sec. Litig.*,
No. 18-cv-04865, 2023 WL 4032010 (N.D. Cal. June 14, 2023)............................................11

*Tuten v. United Airlines, Inc.*,
   41 F. Supp. 3d 1003 (D. Colo. 2014) ................................................................4

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .............................6, 8

*In re Vivint Solar, Inc. Sec. Litig.*,
   No. 2:20-cv-919-JNP-CMR (D. Utah Nov. 10, 2021), ECF No. 87-2 ...................................15

*Voulgaris v. Array Biopharma, Inc.*,
   60 F.4th 1259 (10th Cir. 2023) ................................................................15

*In re Wells Fargo & Co. Sec. Litig.*,
   No. 1:20-cv-04494-JLR-SN (S.D.N.Y. Sept. 8, 2023), ECF No. 207 ......................................6

*In re Xerox Corp. Sec. Litig.*,
   935 F. Supp. 2d 448 (D. Conn. 2013), *aff'd*, 766 F.3d 172 (2d Cir. 2014) .............................10

## STATUTES

15 U.S.C. § 78u-4 ................................................................18

## OTHER AUTHORITIES

*About Us*, JAMS, https://www.jamsadr.com/about (last visited December 23,
   2024) ................................................................6

Fed. R. Civ. P. 23(a)(4) ................................................................5

Fed. R. Civ. P. 23(c)(2)(B) ................................................................17, 18, 19

Fed. R. Civ. P. 23(e) ................................................................ *passim*

*Jed D. Melnick, Esq.*, JAMS, https://www.jamsadr.com/melnick (last visited
   December 23, 2024) ................................................................6

Laarni T. Bulan and Laura E. Simmons, *Cornerstone Research: Securities Class
   Action Settlements – 2023 Review and Analysis* (2024) ........................................9

Pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs and Class Representatives the Indiana Public Retirement System ("INPRS") and the Public School Teachers' Pension and Retirement Fund of Chicago ("CTPF") (collectively, "Lead Plaintiffs"), on behalf of themselves and the Court-certified Class, respectfully move this Court, and submit this Memorandum of Law in support of their Motion for Final Approval of Settlement and Plan of Allocation (the "Plan of Allocation").[1]

## I. PRELIMINARY STATEMENT

Lead Plaintiffs have agreed, subject to Court approval, to settle all claims in this Action in exchange for a total settlement value of $20 million in cash. Lead Plaintiffs respectfully submit that the proposed Settlement is a very good result for the Class and easily satisfies the standards for final approval under Rule 23(e)(2) of the Federal Rules of Civil Procedure. As detailed in  the accompanying Gilden Declaration[2] and as set forth herein, the Settlement Amount represents a favorable recovery for the Class given the risks inherent in this litigation.

Lead Plaintiffs and Lead Counsel have a well-developed understanding of the strengths and weaknesses of the Action. As detailed in the accompanying Gilden Declaration, Lead Plaintiffs and Lead Counsel committed the resources necessary to become deeply familiar with the strengths and weaknesses of the Class's claims and Defendants' defenses, including: (i) conducting an extensive pre-suit investigation that included a detailed review and analysis of the voluminous

---

[1] Unless otherwise defined in this declaration, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement dated May 1, 2024, and previously filed with the Court, *see* ECF No. 271-1 (the "Settlement Stipulation" or "Stipulation"), or in the Declaration of Carol V. Gilden in Support of (A) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses (the "Gilden Declaration" or "Gilden Decl."), filed herewith. Citations to "¶" in this memorandum refer to paragraphs in the Gilden Declaration and citations to "Ex." in this memorandum refer to exhibits to the Gilden Declaration. Unless otherwise indicated, internal quotations and citations are omitted.

[2] The Gilden Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action, ¶¶ 9–13; the nature of the claims asserted, *id.*; the negotiations leading to the Settlement, ¶¶ 38–42; the risks and uncertainties of continued litigation, ¶¶ 44–49; and the terms of the Plan of Allocation of the Settlement proceeds, ¶¶ 43, 60–67.

public record, including public filings by Pluralsight with the Securities and Exchange Commission ("SEC"), conference call transcripts, press releases, news articles, and analyst reports and advisories; (ii) interviews of former Pluralsight employees; (iii) consultations with damages, accounting, insider trading, and e-discovery experts; (iv) preparing and filing multiple detailed complaints; (v) opposing Defendants' motion to dismiss the CAC; (vi) successfully appealing the District Court's dismissal order, whereby the Tenth Circuit concluded that one of Defendants' statements was false, misleading and actionable, leading to a reversal of the full dismissal in part and a remand for further proceedings; (vii) obtaining certification of the Class; (viii) serving, responding to and negotiating the parties' extensive discovery requests, including robust negotiations regarding complex, technical discovery protocols, reviewing and producing Lead Plaintiffs' documents to Defendants and reviewing productions from Defendants; (ix) serving subpoenas on numerous third parties, negotiating those productions and reviewing documents produced; (x) defending and attending depositions; (xi) briefing and arguing three discovery motions; (xii) engaging in multiple extensive, arm's-length settlement negotiations to achieve the Settlement, including two all-day, in-person mediation sessions; (xiii) selecting a claims administrator through a competitive bid process; and (xiv) drafting and negotiating the Stipulation and related settlement documentation. ¶¶ 9–42.

Although Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit, they recognized the substantial risks that the Class could recover far less (or even nothing) if litigation were to continue to trial. In particular, Lead Plaintiffs and Lead Counsel recognized that there were substantial risks to proving Defendants' liability, including the required elements of falsity, scienter, loss causation, and damages. Absent the Settlement, the Parties faced the prospect of protracted litigation through the completion of costly expert

discovery, additional contested motions, a trial, post-trial motion practice, and likely ensuing appeals. The Settlement avoids these risks while providing a substantial, certain, and immediate benefit to the Class in the form of a $20 million recovery.

In light of these considerations, Lead Plaintiffs and Lead Counsel respectfully submit that the proposed Settlement is fair, reasonable, and adequate and warrants final approval by the Court. Additionally, Lead Plaintiffs and Lead Counsel request that the Court approve the proposed Plan of Allocation, which was set forth in the Notice mailed to potential Class Members. The Plan of Allocation provides a reasonable method for allocating the Net Settlement Fund among Class Members who submit valid claims based on damages they suffered that were attributable to the alleged fraud. Significantly, and following extensive notice to the Class, Lead Plaintiffs have not received a single objection to the Settlement to date.

## II.    TERMS OF THE SETTLEMENT

The Stipulation provides that Pluralsight will pay or cause to be paid $20 million in cash (the "Settlement Amount") into the Escrow Account within thirty (30) days after the later of: (i) the Court having entered an order preliminarily approving the Settlement, and (ii) Pluralsight and/or its insurers having received customary written instructions for payment of the Settlement Amount by check or wire into the Escrow Account and a Form W-9 for the Escrow Account. Stipulation ¶ 7. This money has since been paid, and is being held in the Escrow Account. The Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court, Taxes, Notice and Administration Costs, and any other costs or fees approved by the Court (the "Net Settlement Fund"), will be distributed among Authorized Claimants in accordance with a plan of allocation to be approved by the Court. *Id.* ¶ 9. If the Settlement receives the Court's final approval, Class Members will release the "Released

Plaintiffs' Claims" in exchange for the Settlement Amount. *Id.* ¶ 4. The release's scope is reasonable as it is limited to claims that *both* were or could have been asserted by Lead Plaintiffs in the Action *and* that arise out of, are based upon, or relate to either the allegations set forth in the complaints filed in the Action or the purchase or other acquisition of Pluralsight common stock during the Class Period. *Id.* at ¶ 1(nn).

## III.    ARGUMENT

### A.    The Proposed Settlement Merits Final Approval

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class-action claims, Fed. R. Civ. P. 23(e)(2), and the Tenth Circuit encourages the settlement of litigation, *see Balander v. Hermes Consol. Inc.*, 295 F. App'x 902, 906 (10th Cir. 2008) ("Settlements are favored by Tenth Circuit law." (cleaned up)); *see also Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001) ("As a matter of public policy, the law favors and encourages settlements . . . [and] [t]he settlement of actions should be fostered to avoid protracted, wasteful and expensive litigation."). The policy in support of settlement is particularly strong in complex class actions such as this one, "where substantial judicial resources can be conserved by avoiding formal litigation." *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014); *see also O'Dowd v. Anthem, Inc.*, No. 14-cv-02787, 2019 WL 4279123, at *12 (D. Colo. Sept. 9, 2019) ("The 'presumption in favor of voluntary settlement agreements' is especially strong in class actions.").

Rule 23(e)(2) instructs courts to determine whether a proposed settlement is "fair, reasonable, and adequate" by considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the

class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Tenth Circuit has elaborated on these factors, holding that courts should also consider the following factors, many of which overlap with the Rule 23(e)(2) factors:

(1) whether the proposed Settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).[3] As set forth below, all of the applicable factors strongly weigh in favor of approval here.

### 1.  Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class

As explained above, courts should consider whether the class representatives and class counsel have adequately represented the class, which involves evaluating: (1) whether any conflicts exist between lead plaintiff and the class; and (2) the ability of the lead plaintiff and its counsel to conduct the litigation. *See id.* at 1187–88; *Cotte v. CVI SGP Acquisition Tr.*, No. 2:21-cv-00299, 2023 WL 1472428, at *7 (D. Utah Feb. 2, 2023) (explaining that courts have "analyzed the adequacy of representation [under Rule 23(e)(2)(A)] by evaluating adequacy under Rule 23(a)(4)").

By certifying the Class, the Court has already determined that no conflicts or antagonism exist between Lead Plaintiffs and the Class. Lead Plaintiffs, like the other members of the certified Class, purchased shares of Pluralsight common stock during the Class Period and were injured by

---

[3] The Advisory Committee Notes to the 2018 amendment to the Federal Rules note that the four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by a Court of Appeals, but "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2)'s advisory committee's note to 2018 Amendment.

the same alleged misleading statement. *Martinez v. Reams*, No. 20-cv-00977, 2020 WL 7319081, at *6 (D. Colo. Dec. 11, 2020) (finding adequate representation where "[t]here is nothing in the record or proposed settlement agreement that raises obvious concerns regarding interclass conflicts").

Additionally, a settlement reached "under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'" *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007). Throughout the course of litigating the Action, Lead Plaintiffs and Lead Counsel have zealously represented the Class in the face of fervent opposition from skilled opposing counsel, culminating in a favorable $20 million Settlement. Lead Plaintiffs are sophisticated institutional investors that played active roles in supervising this litigation, as envisioned by the PSLRA, and both strongly endorse the Settlement. Lead Counsel also notes that Cohen Milstein is highly experienced in securities class action litigation and has recovered hundreds of millions of dollars for investors. Last year, as co-lead counsel in a securities fraud class action against Wells Fargo, Cohen Milstein obtained approval of a $1 billion settlement— the 17th largest in U.S. history. *In re Wells Fargo & Co. Sec. Litig.*, No. 1:20-cv-04494-JLR-SN (S.D.N.Y. Sept. 8, 2023), ECF No. 207 (Gilden Decl. Ex. 6). Cohen Milstein was also named as a 2023 Securities Practice Group of the Year. Law360, *Law360 Names Practice Groups; see also* Cohen Milstein Firm Resume (Gilden Decl. Ex. 5A-3).

### 2. The Settlement Was Reached Through Arm's-Length Negotiations and Following Extensive Discovery

Courts also consider whether a settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The Settlement here is the product of fair, honest, and vigorous negotiations between experienced and informed counsel under the supervision of a highly experienced

mediator. As noted above, settlement negotiations were supervised by Jed Melnick Esq. of Judicial Arbitration and Mediation Services, Inc. ("JAMS"). Declaration of Jed. D. Melnick ("Melnick Decl."), Gilden Decl. Ex. 3, ¶ 4. JAMS is "the world's largest private alternative dispute resolution (ADR) provider." *About Us*, JAMS, https://www.jamsadr.com/about (last visited December 23, 2024). Mr. Melnick "has resolved over one thousand disputes, with an aggregate value in the billions of dollars," *Jed D. Melnick, Esq.*, JAMS, https://www.jamsadr.com/melnick (last visited December 23, 2024); Melnick Decl., ¶ 5. Courts in this Circuit and elsewhere have held that the involvement of an experienced mediator strongly supports the fairness of a proposed settlement, and that Mr. Melnick in particular is "a highly qualified mediator" who possesses considerable expertise in mediating complex cases such as this one. *See, e.g.,* Order Preliminarily Approving Settlement and Providing for Notice, *In re Myriad Genetics, Inc. Sec. Litig.*, No. 2:19-cv-00707-JNP-DBP (D. Utah Aug. 25, 2023), ECF No. 285 (finding "probative that the Settlement was negotiated at arm's length under the oversight of experienced mediators") (Gilden Decl. Ex. 7)[4]; *In re 3D Sys. Sec. Litig.*, No. 21-cv-1920, 2024 WL 50909, at *2 & n.2 (E.D.N.Y. Jan. 4, 2024) (collecting cases in which courts have found Mr. Melnick to be "a highly qualified mediator").[5]

At the time the Settlement was reached, Lead Plaintiffs and Lead Counsel were knowledgeable about the strengths and weaknesses of the case, having intensely litigated this Action for more than four years. Indeed, Lead Plaintiffs achieved this Settlement only after, among other things: (i) conducting an extensive pre-suit investigation that included a detailed review and

---

[4] *See also In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 679, 690 (D. Colo. 2014) (citing the parties' mediation before an experienced mediator in support of preliminary approval of a proposed settlement); *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-00292, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017) (same).

[5] *See Fulton Cnty. Emps.' Ret. Sys. on Behalf of Goldman Sachs Grp. Inc. v. Blankfein*, No. 19-cv-1562, 2022 WL 4292894, at *3 (S.D.N.Y. Sept. 16, 2022) (observing that Mr. Melnick was a "highly experienced" mediator); *In re China Med. Corp. Sec. Litig.*, No. 8:11-1061, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) (finding that "Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive").

analysis of the voluminous public record, including public filings by Pluralsight with the SEC, conference call transcripts, press releases, news articles, and analyst reports and advisories; (ii) interviews of former Pluralsight employees; (iii) consultations with damages, accounting, insider trading, and e-discovery experts; (iv) preparing and filing multiple detailed complaints; (v) opposing Defendants' motion to dismiss the CAC; (vi) successfully appealing the District Court's dismissal order, whereby the Tenth Circuit concluded that one of Defendants' statements was false, misleading and actionable, leading to a reversal of the full dismissal in part and a remand for further proceedings; (vii) obtaining certification of the Class; (viii) serving, responding to and negotiating the parties' extensive discovery requests, including engaging in robust negotiations regarding complex, technical discovery protocols, reviewing and producing Plaintiffs' documents to Defendants and reviewing Defendants document productions; (ix) serving subpoenas on numerous third parties, negotiating those productions and reviewing documents produced; (x) defending and attending depositions; (xi) briefing and arguing three discovery motions; (xii) engaging in multiple extensive, arm's-length settlement negotiations to achieve the Settlement, including two all-day, in-person mediation sessions; (xiii) selecting a claims administrator through a competitive bid process; and (xiv) drafting and negotiating the Stipulation and related settlement documentation. ¶¶ 9–42.

In addition, Lead Counsel, a nationwide leader in securities class actions that has a thorough understanding of the factual and legal issues in the Action, supports the Settlement. Courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998); *see also O'Dowd*, 2019 WL 4279123, at

*14 ("the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight").

Further, Lead Plaintiffs—who are experienced, sophisticated institutional investors—have endorsed the Settlement. *See Veeco Instruments*, 2007 WL 4115809, at *5 ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness . . . . Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.'") (citation omitted).

The fact that the Settlement is the product of an arm's-length negotiation overseen by an experienced mediator and has been approved by sophisticated Lead Plaintiffs appointed pursuant to the PSLRA, with guidance and input from experienced and informed counsel, demonstrates that the process by which the Settlement was reached is procedurally fair. It is, therefore, presumptively fair, reasonable, and adequate.

### 3.  The Settlement Should Be Approved in Light of the Costs and Risks of Further Litigation and Similar Factors

In determining whether a settlement is "fair, reasonable, and adequate," the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" and similarly relevant factors. Fed. R. Civ. P. 23(e)(2)(C). As noted above, the proposed Settlement—$20 million in cash—is an excellent result for Class Members, especially considering the significant risks of continued litigation. *See Cotte*, 2023 WL 1472428, at *6 (finding "[t]he value of immediate relief to the class outweighs the possibility of future relief"). Although Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit, they recognize that the Class could recover far less (or even nothing) if

litigation were to continue to trial due to the risks involved in proving Defendants' liability, including the required elements of falsity, scienter, loss causation, and damages.

### i. Risks of Prosecuting Securities Class Actions

In recent years, securities class actions have become riskier and more difficult to prove, given changes in the law, including numerous U.S. Supreme Court decisions. For example, data from Cornerstone Research shows that, in each year between 2013 and 2020, approximately half of all securities class actions filed were dismissed. *See* Laarni T. Bulan and Laura E. Simmons, *Cornerstone Research: Securities Class Action Settlements – 2023 Review and Analysis* (2024), at 19.

Even when they have survived motions to dismiss and been certified as class actions as here, securities class actions can be defeated subsequently, in connection with *Daubert* motions or at summary judgment. For example, multiple securities class actions have recently been dismissed at the summary judgment stage. *See, e.g.*, *Karp v. First Conn. Bancorp, Inc.*, 535 F. Supp. 3d 458, 475 (D. Md. 2021), *aff'd*, 69 F.4th 223 (4th Cir. 2023) (granting summary judgment after approximately three years of litigation); *In re Mylan N.V. Sec. Litig.*, 666 F. Supp. 3d 266, 328 (S.D.N.Y. 2023) (granting summary judgment after approximately six years of litigation); *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089, 2022 WL 17584155, at *7 (S.D.N.Y. Dec. 12, 2022) (granting summary judgment after approximately four years of litigation); *Murphy v. Precision Castparts Corp.*, No. 3:16-cv-00521, 2021 WL 2080016, at *6 (D. Or. May 24, 2021) (granting summary judgment after approximately five years of litigation); *In re Barclays Bank PLC Sec. Litig.*, No. 09 Civ. 1989, 2017 WL 4082305, at *25 (S.D.N.Y. Sept. 13, 2017) (summary judgment granted in 2017 after eight years of litigation); *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554–55 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010) (summary judgment granted

after six years of litigation and millions of dollars spent by plaintiffs' counsel); *see also In re Xerox Corp. Sec. Litig.*, 935 F. Supp. 2d 448, 496 (D. Conn. 2013), *aff'd*, 766 F.3d 172 (2d Cir. 2014); *Fosbre v. Las Vegas Sands Corp.*, No. 2:10–cv–00765, 2017 WL 55878, at *28 (D. Nev. Jan. 3, 2017), *aff'd sub nom.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018); *In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1015 (S.D. Cal. 2011); *In re Oracle Corp. Sec. Litig.*, No. C01-00988, 2009 WL 1709050, at *34 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010); *In re Bos. Sci. Corp. Sec. Litig.*, 708 F. Supp. 2d 110, 113 (D. Mass. 2010), *aff'd sub nom. Mississippi Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*, 649 F.3d 5 (1st Cir. 2011); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202 (S.D. Cal. 2010).

Even cases that have survived summary judgment have been dismissed prior to trial in connection with *Daubert* motions. *See, e.g.*, *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*, 853 F. Supp. 2d 181, 196, 198 (D. Mass. 2012), *aff'd sub nom*, *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82 (1st Cir. 2014) (granting summary judgment *sua sponte* in favor of defendants after finding that plaintiffs' expert was unreliable).

And even when securities class action plaintiffs are successful in certifying a class, prevailing at summary judgment, and overcoming *Daubert* motions, there remain significant risks that a jury will not find the defendants liable or award expected damages. *See, e.g.*, *HsingChing Hsu v. Puma Biotechnology, Inc*., No. SACV 15-00865 AG, 2019 WL 11637311, at *1 (C.D. Cal. May 22, 2019) (jury verdict in favor of defendants on three of four alleged misstatements, reducing potential damages to only 5% or less of claimed damages); *In re Tesla Inc., Sec. Litig.*, No. 18-cv-04865, 2023 WL 4032010, at *2–5 (N.D. Cal. June 14, 2023) (jury verdict for defense delivered

in securities class action involving Elon Musk's tweets about taking Tesla private, even though the court had already found the tweets were false and Musk acted recklessly in issuing them, and the same conduct had resulted in SEC charges and a settlement). Further, post-trial motions, based on a complete record, also present substantial risks. For example, in *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, a jury rendered a verdict in plaintiffs' favor on liability in 2010. No. 07–61542, 2011 WL 1585605, at *6 (S.D. Fla. Apr. 25, 2011). Yet in 2011, the district court granted defendants' motion for judgment as a matter of law and entered judgment in favor of the defendants on all claims. *Id.* at *38. And the Eleventh Circuit affirmed the district court's ruling in 2012, finding that there was insufficient evidence to support a finding of loss causation. *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 725 (11th Cir. 2012).

There is also the risk that an intervening change in the law can result in the dismissal of a case after significant effort has been expended. The Supreme Court has heard numerous securities cases in recent years, often announcing holdings that dramatically changed the law in the midst of long-running cases—including after trial. *See Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024); *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014); *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011); *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010) ("*Morrison*"). As a result, many cases have been lost after thousands of hours have been invested in briefing and discovery. For example, in *In re Vivendi Universal, S.A. Sec. Litig.*, after a verdict for class plaintiffs, the district court granted judgment for defendants following a change in the law announced in *Morrison*, dismissing claims that had been proven at trial for the vast majority of the class. 765 F. Supp. 2d 512, 524–25, 533 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016). Changes in the law at the circuit level have similarly upended pending

cases; for example, in *Murphy*, the court reconsidered its denial of summary judgment and granted it for defendants based explicitly on an intervening Ninth Circuit decision. 2021 WL 2080016, at *6.

In sum, securities class actions generally face serious risks of dismissal and non-recovery at all stages of the litigation. *See, e.g.*, *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 844 (E.D. Va. 2016) ("[S]ecurities fraud cases require significant showings of fact in order to prevail before a jury, and 'elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish'").

### ii. The Specific Risks of Proving Defendants' Liability and Damages in This Case

Although Lead Plaintiffs believe that their claims have merit, they also faced substantial risks that, based on the specifics of the case, the Class would recover far less than the Settlement Amount, or even nothing.

As to falsity and scienter, Defendants had asserted, and would continue to assert, that their statement regarding the number of Pluralsight's quota-bearing sales representatives was not false or, even if false, was not made recklessly, much less intentionally. Defendants argued, for instance, that determining the number of quota-bearing sales representatives was a time-consuming, manual process that involved significant judgment and discretion about how the number should be calculated, and which often resulted in multiple different numbers at any given time. Further, Defendants also argued that documents and testimony would show that Defendants reasonably believed that the statement that Pluralsight had "about 250" quota-bearing sales representatives was accurate when made and that Defendants reasonably believed at the time that Pluralsight would continue to achieve historical billings growth.

Lead Plaintiffs faced additional risks associated with proving loss causation, as Defendants would continue to argue that the stock price decline on the alleged corrective disclosure date could not be connected to the fraud alleged. In particular, Defendants would argue that any damages attributable to the statement that Pluralsight had "about 250" quota-bearing sales representatives would need to be disaggregated from damages attributable to a host of other "sales execution" challenges that were revealed to the market on July 31, 2019. If successful, Defendants' arguments would significantly limit recoverable damages in the case, if not eliminate damages entirely.

Lead Plaintiffs also allege that Defendants Budge and Skonnard are liable for their sales of approximately $19 million worth of Pluralsight stock while they were in possession of material adverse nonpublic information about the size of Pluralsight's sales force. Defendants, however, would argue that these were all pre-planned sales made pursuant to "Rule 10b5-1 trading plans." While the Tenth Circuit rejected this argument as a basis for dismissing Lead Plaintiffs' claim at the motion to dismiss stage, there is no guarantee Lead Plaintiffs would prevail at summary judgment or at trial on this argument.

On all of these issues, Lead Plaintiffs would have to prevail at several stages, including summary judgment and at trial, and even if they prevailed on those, then on the appeals that would likely follow and could take years. The Settlement avoids these risks and provides a prompt and certain benefit to the Class now.

### iii. All Other Factors Set Forth in Rule 23(e)(2)(C) Support Approval of the Settlement

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under

Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)–(iv). Each of these factors supports approval here.

First, the procedures for processing Class Members' claims and distributing the proceeds of the Settlement to eligible claimants are well-established, effective methods widely used in securities class action litigation. The Settlement proceeds will be distributed to Class Members who submit eligible Claim Forms with required documentation to Strategic Claims Services ("SCS" or the "Claims Administrator").[6] SCS will review and process the Claims, will provide Claimants with an opportunity to cure any deficiencies in their Claims or request the Court's review, and will then mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon the Court's approval. This is the standard method in securities class actions and has long been found effective. *See, e.g.*, Stipulation and Agreement of Settlement at 37–43, *In re Myriad Genetics, Inc. Sec. Litig.*, No. 2:19-cv-00707-JNP-DBP (D. Utah Aug. 3, 2023), ECF No. 283-1 (Gilden Decl. Ex. 8); Stipulation and Agreement of Settlement at 22–29, *In re Vivint Solar, Inc. Sec. Litig.*, No. 2:20-cv-919-JNP-CMR (D. Utah Nov. 10, 2021), ECF No. 87-2 (Gilden Decl. Ex. 9).

Second, the Settlement's relief for the Class is also adequate when accounting for the proposed attorneys' fees to be paid upon award by the Court. The Notice provides that Lead Counsel will apply for an award of attorneys' fees in an amount not to exceed 20% of the Settlement Fund, plus payment of Litigation Expenses (including requested PSLRA awards to Lead Plaintiffs) in an amount not to exceed $350,000. A proposed attorneys' fee of up to 20% is reasonable in light of the work performed by Plaintiffs' Counsel, and is well within the range of percentage fees that are

---

[6] SCS is a well-known claims administrator with substantial experience in administering securities class action settlements. *See, e.g.*, *Hardy v. Embark Tech., Inc.*, No. 3:22-cv-02090-JSC, 2023 WL 6276728, at *3 (N.D. Cal. Sept. 26, 2023) (approving and appointing SCS as Settlement Administrator, noting that "SCS has extensive experience providing notice in securities class action settlements").

regularly awarded in securities class actions and other class actions in this Circuit. *See, e.g., Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1263–64 (10th Cir. 2023) (upholding district court's award of 33% fees and noting that "awards across a range of percentages may be reasonable"); *In re Myriad Genetics, Inc. Sec. Litig.*, No. 2:19-cv-00707, ECF No. 300 (D. Utah Dec. 15, 2023) (awarding 19% of $77.5 million settlement fund, representing .93% of plaintiffs' counsel's lodestar) (Gilden Decl. Ex. 11); *Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita Inc.*, No. 17-cv-0304, 2021 WL 2981970, at *3 (D. Colo. July 15, 2021) ("Courts in the Tenth Circuit have noted that 'the typical fee award in complex cases is around one third of the common fund.'") (quotations omitted).

Lastly, Rule 23 asks the Court to consider the fairness of the proposed settlement in light of any agreements required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). In addition to the Stipulation (which subsumes and supersedes the Term Sheet), the only other agreement entered into by the Parties regarding the Settlement is a confidential Supplemental Agreement regarding requests for exclusion, or opt-outs, from the Class. *See* Stipulation ¶ 38(b).[7] This agreement provides that Pluralsight will have the right to terminate the Settlement if timely and valid opt-outs exceed the threshold set in the Supplemental Agreement. These are the only agreements between the Parties relevant to the Settlement.

### 4.    The Plan of Allocation Is Fair and Reasonable and Should Be Approved

Rule 23(e)(2)(D) directs the Court to evaluate whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The objective of a plan of allocation is to provide an equitable method for distributing a settlement fund among eligible class members.

---

[7] As is customary and standard in securities class actions, the Supplemental Agreement is not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the threshold to extract individual settlements. At the Court's request, it will be filed *in camera*.

Like the standard governing approval of the settlement itself, a plan for allocating settlement proceeds warrants approval if the distribution of funds is "fair, reasonable and adequate." *Crocs*, 306 F.R.D. at 692. Where, as here, an allocation plan is endorsed by competent and experienced counsel, it "need only have a reasonable, rational basis." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006). Additionally, in determining whether a plan of allocation is fair, courts give substantial weight to the opinions of experienced counsel. *See, e.g.*, *Law v. NCAA*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000). As set forth below, the Plan of Allocation is fair and reasonable, and results in equitable treatment of Class Members, so the Plan of Allocation should be approved.

Here, the Plan of Allocation provides that Class Members whose claims are Court-approved will receive their *pro rata* share of the recovery based on their losses resulting from their transactions in Pluralsight common stock during the relevant time periods, and Lead Plaintiffs will receive the same level of *pro rata* recovery (based on the Plan of Allocation) as all other Class Members. This ensures equitable treatment among the Class.

The Plan of Allocation is consistent with plans of allocation regularly approved by courts in securities class actions. *See, e.g.*, *Or. Labs. Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, No. 19-cv-0124, 2024 WL 98387, at *5 (D. Colo. Jan. 1, 2024) (approving plan allocating fund "to authorized claimants on a *pro rata* basis based on the relative size of their recognized claims"). The Plan provides for distribution of the Net Settlement Fund to Class Members demonstrating a loss on their transactions in Pluralsight common stock. The formula to apportion the Net Settlement Fund among Class Members is based on the estimated amount of artificial price inflation in Pluralsight common stock during the Class Period that was allegedly caused by Defendants' misconduct. Once the Claims Administrator has processed all submitted claims, it will make distributions to Authorized Claimants until additional re-distributions are no longer cost

effective. At such time, any remaining balance will be contributed to a non-sectarian, not-for-profit, 501(c)(3) organization selected by Lead Counsel.

Lead Plaintiffs and Lead Counsel believe that the Plan of Allocation has a reasonable and rational basis for equitably allocating the Net Settlement Fund among Authorized Claimants. As of the deadline for filing Claims, 26,219 copies of the Notice—which describes the proposed Plan of Allocation in detail and advises Class Members of their right to object to the Plan of Allocation—have been sent to potential Class Members and nominees. *See* Declaration of Sarah Evans Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date ("SCS Decl."), Gilden Decl. Ex. 4, ¶ 14. To date, no objection to the Plan of Allocation has been received. *Id.* Accordingly, the Plan of Allocation should be approved as fair, reasonable and adequate.

**B.    Notice to the Class Satisfied Rule 23 and Due Process**

Notice to the Class of the proposed Settlement also readily satisfied Rule 23's requirement of "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–75 (1974). The Notice similarly satisfied Rule 23(e)(1)'s requirement that notice of a settlement be "reasonable"—*i.e.*, it "'must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tennille v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015) (quoting *Eisen*, 417 U.S. at 174). Here, both the Notice's substance and the method of its dissemination to potential Class Members easily satisfied these standards.

The Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Class Members will have. Consistent with Rule 23(e), the Notice

apprised Class Members of the terms of the Settlement and the options available to them. The Notice also satisfied the requirements imposed by Rule 23(c)(2)(B) and the PSLRA, *see* 15 U.S.C. § 78u-4, in that it, *inter alia*: (1) states the amount of the Settlement on an absolute and per-share basis; (2) states the maximum amount of attorneys' fees and Litigation Expenses that Lead Counsel will seek; (3) provides the names, address, and telephone number of Lead Counsel who will be available to answer questions from Class Members; and (4) provides a brief statement explaining the reasons why the Parties are proposing the Settlement. *Id.*; SCS Decl. Ex. 4-A, ¶¶ 1, 2, 5, 51. The Notice also discloses the date and time of the Settlement Hearing and the procedures and deadlines for the submission of Claim Forms, requests for exclusion, and objections to any aspect of the Settlement, the Plan of Allocation, and/or the requested attorneys' fees and expenses.

The proposed method for disseminating notice, as set forth in the Preliminary Approval Order, also readily met the standards under the Federal Rules and due process. Federal Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). In compliance with the Preliminary Approval Order, SCS disseminated a total of 26,219 Notice Packets to potential Class Members and nominees, of which 19,440 have been sent by mail and 6,779 by email. SCS Decl. at ¶¶ 6–8. Further, on September 9, 2024, SCS caused the Summary Notice to be published in the *Wall Street Journal* and to be transmitted over *PR Newswire*. *Id.* at ¶ 10. Lead Counsel also caused SCS to establish a dedicated Settlement website, www.PluralsightSecuritiesLitigation.com, to provide potential Class Members with information concerning the Settlement and access to copies of the Notice and Claim Form, as well as the Stipulation and Preliminary Approval Order. *See* ¶ 58. That website became operational on August 15, 2024. *Id.* Lead Counsel also made copies of

the Notice and Claim Form and other documents available on its own website, https://www.cohenmilstein.com/.

This combination of individual notice by first-class mail or email to all members of the Class who could be identified with reasonable effort, supplemented by notice in a widely circulated publication, transmission over a newswire, and availability on internet websites, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Crocs*, 306 F.R.D. at 693; *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182–83 (S.D.N.Y. 2014); *see also, e.g.*, Preliminary Approval Order, *In re Myriad Genetics*, ECF No. 285 (Gilden Decl. Ex. 7).

## IV.    CONCLUSION

Based on the foregoing and the declarations submitted herewith, Lead Plaintiffs respectfully submit that the Settlement and Plan of Allocation are fair, reasonable, and adequate, and respectfully request that the Court grant final approval of the Settlement and the Plan of Allocation. A proposed Judgment and Order granting the requested relief will be filed with Lead Plaintiffs' reply papers, to be filed on or before January 28, 2025.

Dated:  December 30, 2024                    Respectfully submitted,

*/s/ Carol V. Gilden*
Carol V. Gilden (admitted *pro hac vice*)

COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

Steven J. Toll (admitted *pro hac vice*)
Jan E. Messerschmidt (admitted *pro hac vice*)

COHEN MILSTEIN SELLERS & TOLL 1100 New York
Avenue N.W., Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

*Lead Counsel for Lead Plaintiffs
and the Class*

Keith M. Woodwell (#7353)
CLYDE, SNOW & SESSIONS, P.C.
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 322-2516
Facsimile: (801) 521-6280
kmw@clydesnow.com

*Liaison Counsel for Lead Plaintiffs
and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 30th day of December, 2024, I caused to be served a true and correct copy of the foregoing **LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF LAW IN SUPPORT THEREOF**, with the Clerk of the Court using the CM/ECF system that will send an electronic notification to all counsel of record.

*/s/ Carol V. Gilden*
Carol V. Gilden
