Carol V. Gilden
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

*Lead Counsel for Lead Plaintiffs
and the Class*

Keith M. Woodwell (#7353)
CLYDE, SNOW & SESSIONS, P.C.
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 322-2516
Facsimile: (801) 521-6280
kmw@clydesnow.com

*Liaison Counsel for Lead Plaintiffs
and the Class*

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
### NORTHERN DIVISION

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PLURALSIGHT, INC., et al., <br><br> Defendants. | Case No. 1:19-cv-00128 <br><br> District Judge Ted Stewart <br><br> Magistrate Judge Daphne A. Oberg |

## LEAD PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES, AND MEMORANDUM OF LAW IN SUPPORT THEREOF

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT .................................................................................... 1

II.     ARGUMENT.............................................................................................................. 4

     A.     Lead Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees
        from the Common Fund............................................................................................ 4

     B.     The Requested Attorneys' Fees Are Reasonable as a Percentage of the
        Common Fund ......................................................................................................... 5

     C.     The Johnson Factors Support the Fee Requested Here.......................................... 7

          1.     The Time and Labor Required................................................................... 8

          2.     The Novelty and Difficulty of Questions Raised by the Litigation ........... 9

          3.     The Skill Requisite to Perform the Legal Services Properly and the
               Experience, Reputation, and Ability of the Attorneys............................. 11

          4.     The Contingent Nature of the Fee............................................................ 12

          5.     The Amount Involved and the Results Obtained...................................... 14

     D.     The Reaction of the Class to Date Supports the Requested Fee .......................... 15

     E.     Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred
        to Achieve the Benefit Obtained........................................................................... 16

     F.     Lead Plaintiffs Should Be Awarded Their Reasonable Costs and Expenses
        Pursuant to 15 U.S.C. § 78u-4(a)(4) .................................................................... 17

III.    CONCLUSION......................................................................................................... 19

## TABLE OF AUTHORITIES

CASES                                                                                                   PAGE(S)

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  No. 03 MDL 1529 LMM, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272 F.
  App'x 9 (2d Cir. 2008)..................................................................................................................12

*Anderson v. Merit Energy Co.*,
  No. 07–cv–00916, 2009 WL 3378526 (D. Colo. Oct. 20, 2009)................................................6

*In re BankAtlantic Bancorp, Inc.*,
  No. 07-61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ...................................................13

*In re Barclays Bank PLC Sec. Litig.*,
  No. 09-01989, 2017 WL 4082305 (S.D.N.Y. Sept. 13, 2017) .................................................13

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)...................................................................................................................4

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................................................................9

*Bee v. Greaves*,
  910 F.2d 686 (10th Cir. 1990) ..................................................................................................17

*Billitteri v. Sec. Am., Inc.*,
  No. 3:09-cv-01568-F, 2011 WL 3585983 (N.D. Tex. Aug. 4, 2011)........................................7

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)...................................................................................................................4

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cnty., Okl.*,
  8 F.3d 722 (10th Cir. 1993) ......................................................................................................16

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988) ......................................................................................... *passim*

*In re Crocs, Inc. Sec. Litig.*,
  No. 07-cv-02351, 2014 WL 4670886 (D. Colo. Sept. 18, 2014).................................5, 6, 8, 9

*Farrar v. Workhorse Grp., Inc.*,
  No. 21-02072-CJC, 2023 WL 5505981 (C.D. Cal. July 24, 2023) ........................................14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).....................................................19

*Freudenberg v. E\*Trade Fin. Corp.*,
   No. 07 Civ. 8538, slip op. (S.D.N.Y. Oct. 22, 2012), ECF No. 154.........................................7

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...........................................19

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000).....................................................................................................4

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) .....................................................................................4, 5, 6, 7

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)..............................................................................................................14

*Hicks v. Morgan Stanley*,
   No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................................5

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) ..............................................................................................13

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)............................................................................................10

*Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*,
   45 F.4th 1236 (10th Cir. 2022) ............................................................................................12

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964)................................................................................................................4

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ....................................................................................... *passim*

*Kelley v. City of Albuquerque*,
   No. Civ. 03-507.....................................................................................................................17

*In re King Res. Co. Sec. Litig.*,
   420 F. Supp. 610 (D. Colo. 1976)..........................................................................................14

*Klein v. Altria Grp., Inc.*,
   No. 3:20cv75, slip op. (E.D. Va. Mar. 31, 2022), ECF No. 320 .............................................7

*Law v. NCAA*,
   No. 99-3353, 2001 WL 194048 (10th Cir. 2001) ....................................................................4

*In re Lithium Ion Batteries Antitrust Litig.*,
   2019 WL 3856413 (N.D. Cal. Aug. 16, 2019) .........................................................................9

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*,
   No. 09-cv-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) ..........................6

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
   No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................................18

*In re Merrill Lynch & Co. Sec., Derivative & ERISA Litig.*,
   No. 07-cv-09633, slip op. (S.D.N.Y. Aug. 21, 2009), ECF No. 272 .......................................7

*Millsap v. McDonnell Douglas Corp.*,
   No. 94-CV-633-H(M), 2003 WL 21277124 (N.D. Okla. May 28, 2003) ...............................5

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
   No. 08–6324, 2012 WL 12903758 (D. Minn. Nov. 8, 2012) ...................................................7

*In re Molycorp, Inc. Sec. Litig.*,
   No. 1:12-cv-00292-RM-KMT, slip op. (D. Colo. June 16, 2017), ECF No. 263 .....................6

*In re Myriad Genetics, Inc. Sec. Litig.*,
   No. 2:19-cv-00707, ECF No. 300 (D. Utah Dec. 15, 2023) ...............................................6, 19

*In re N.M. Indirect Purchasers Microsoft Corp., Antitrust Litig.*,
   149 P.3d 976 (N.M. Ct. App. Nov. 15, 2006)..........................................................................6

*In re NU Skin Enters., Inc. Sec. Litig.*,
   No. 2:14-cv-00033-JNP-BCW, 2016 WL 6916486 (D. Utah Oct. 13, 2016) ........................18

*In re Omnicom Grp., Inc. Sec. Litig.*,
   541 F. Supp. 2d 546 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010) .............................13

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   No. 01-1451-REB-CBS, 2006 WL 8429707 (D. Colo. Sept. 29, 2006).................9, 11, 12, 13

*Rosenbaum v. MacAllister*,
   64 F.3d 1439 (10th Cir. 1995*)* ...............................................................................................4

*San Antonio Fire & Police Pension Fund v. Dole Food Co.*,
   No. 15-CV-1140, slip op. (D. Del. July 18, 2017), ECF No. 100 ...........................................7

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) .............................................................................................9

*Tellabs, Inc. v. Makor Issues & Rts., Ltd*,
   551 U.S. 308 (2007).................................................................................................................4

*In re The Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ............................................................................................10

iv

*Tuten v. United Airlines, Inc.*,
    41 F. Supp. 3d 1003 (D. Colo. 2014) .................................................................................12

*Uselton v. Commercial Lovelace Motor Freight*,
    9 F.3d 849 (10th Cir. 1993) ..............................................................................5, 7, 8

*Vaszlavik v. Storage Tech. Corp.*,
    No. 95-B-2525, 2000 WL 1268824 (D. Colo. Mar. 9, 2000) ........................................ *passim*

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) .................12

**STATUTES**

15 U.S.C. § 78u-4(a)(4) ...........................................................................................17, 18

15 U.S.C. § 78u-4(a)(6) .................................................................................................6

**OTHER AUTHORITIES**

Laarni T. Bulan & Laura E. Simmons, *Cornerstone Research: Securities Class Action
    Settlements: 2022 Review and Analysis* (2023) .........................................................14

Court-appointed Lead Counsel, Cohen Milstein Sellers & Toll PLLC ("Lead Counsel"), respectfully moves this Court, and submits this Memorandum of Law in support of its Motion, on behalf of itself and Liaison Counsel ("Plaintiffs' Counsel"), for an award of attorneys' fees in the amount of 20% of the Settlement Fund. Plaintiffs' Counsel also seeks payment of $276,166.46 in Litigation Expenses that were incurred in prosecuting and resolving the Action and $39,620.66 for costs, expenses, and lost wages incurred by Lead Plaintiffs and Class Representatives the Indiana Public Retirement System ("INPRS") and the Public School Teachers' Pension and Retirement Fund of Chicago ("CTPF") (together, "Lead Plaintiffs") directly related to their representation of the Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## I.    PRELIMINARY STATEMENT

The proposed Settlement resolves all claims in the Action in exchange for a total settlement value of $20 million in cash. This recovery was achieved after extensive, highly-contested litigation, including an appeal to the Tenth Circuit, resulting in a reversal of the case dismissal and significant discovery disputes and negotiations, against highly skilled defense counsel. Working on a fully contingent basis, Plaintiffs' Counsel faced numerous challenges to proving liability, loss causation, and damages, all of which raised serious risks that there would be no recovery or a significantly lesser recovery than the Settlement.

---

[1] Unless otherwise defined in this declaration, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement dated May 1, 2024, and previously filed with the Court, *see* ECF No. 271-1 (the "Settlement Stipulation" or "Stipulation"), or in the Declaration of Carol V. Gilden in Support of (A) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses (the "Gilden Declaration" or "Gilden Decl."), filed herewith. Citations to "¶" in this memorandum refer to paragraphs in the Gilden Declaration and citations to "Ex." in this memorandum refer to exhibits to the Gilden Declaration. Unless otherwise indicated, internal quotations and citations are omitted.

The litigation's prosecution and settlement required extensive efforts on the part of Plaintiffs' Counsel. As detailed in the Gilden Declaration, Plaintiffs' Counsel prosecuted this Action by, among other things: (i) conducting an extensive pre-suit investigation that included a detailed review and analysis of the voluminous public record, including public filings by Pluralsight with the Securities and Exchange Commission ("SEC"), conference call transcripts, press releases, news articles, and analyst reports and advisories; (ii) interviews of former Pluralsight employees; (iii) consultations with damages, accounting, insider trading, and e-discovery experts; (iv) preparing and filing multiple detailed complaints; (v) opposing Defendants' motion to dismiss the CAC; (vi) successfully appealing the District Court's dismissal order, whereby the Tenth Circuit concluded that one of Defendants' statements was false, misleading and actionable, leading to a reversal of the full dismissal in part and a remand for further proceedings; (vii) obtaining certification of the Class; (viii) serving, responding to and negotiating the parties' extensive discovery requests, including robust negotiations regarding complex, technical discovery protocols, reviewing and producing Lead Plaintiffs' documents to Defendants and reviewing productions from Defendants; (ix) serving subpoenas on numerous third parties, negotiating those productions and reviewing documents produced; (x) defending and attending depositions; (xi) briefing and arguing three discovery motions; (xii) engaging in multiple extensive, arm's-length settlement negotiations to achieve the Settlement, including two all-day, in-person mediation sessions; (xiii) selecting a claims administrator through a competitive bid process; and (xiv) drafting and negotiating the Stipulation and related settlement documentation.[2]

---

[2] The Gilden Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action, ¶¶ 9–13; the nature of the claims asserted, *id.*; the negotiations leading to the Settlement, ¶¶ 38–42; the risks and uncertainties of continued litigation, ¶¶ 44–49; and the terms of the Plan of Allocation of the Settlement proceeds, ¶¶ 43, 60–67.

As compensation for Plaintiffs' Counsel's considerable efforts on behalf of the Class on a fully contingent basis, Lead Counsel seeks attorneys' fees in the amount of 20% of the Settlement Fund. As demonstrated below, the request is well within the range of percentage attorneys' fees awarded in securities class actions in this Circuit—indeed it is on the low end of the range—and is otherwise well supported in the case law and by the facts of this case. The requested fee also represents a negative multiplier of 0.66 on Plaintiffs' Counsel's lodestar, which means that, if awarded, the requested 20% fee will result in a substantial discount on Plaintiffs' Counsel's time which further supports the reasonableness of the requested fee. In addition, the expenses for which Plaintiffs' Counsel seek payment were reasonable and necessary for the Action's successful prosecution.

Lead Plaintiffs—who are the quintessential type of sophisticated investors that, in enacting the PSLRA, Congress envisioned leading securities class actions—actively supervised the Action through its litigation and settlement. They observed first-hand the enormous efforts made by Lead Counsel, and fully support the requested fee as fair and reasonable in light of the quality of the result obtained, the amount of work counsel performed in litigating the Action, the high-quality work counsel performed, and the risks inherent in the litigation. *See* Declaration of Jeffrey Gill, INPRS Chief Legal Officer, submitted on behalf of INPRS (the "INPRS Decl."), Gilden Decl. Ex. 1, and Declaration of Carlton W. Lenoir, Sr., CTPF Executive Director, submitted on behalf of CTPF (the "CTPF Decl."), Gilden Decl. Ex. 2.

Moreover, the Court-approved notice regarding the fee and expense request was provided to the Class, and to date, not a single Class Member has objected to the request.

For all the reasons set forth above and more fully below, Lead Counsel respectfully submits that the requested fees and expenses are justified in light of Plaintiffs' Counsel's substantial

3

commitment of effort and resources on a contingency basis to this challenging case and the result it achieved for the benefit of the Class.

## II.    ARGUMENT

### A.    Lead Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund

The Supreme Court has made clear that private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions brought . . . by the . . . SEC. *Tellabs, Inc. v. Makor Issues & Rts., Ltd*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'") (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

In addition, the Supreme Court has emphasized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The Tenth Circuit agrees and has repeatedly held that a court may award attorneys' fees from a common fund in situations where, as here, that fund is the result of the attorneys' successful prosecution of the action. *See, e.g.*, *Law v. NCAA*, No. 99-3353, 2001 WL 194048, at *2 (10th Cir. 2001); *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988); *see also Rosenbaum v. MacAllister*, 64 F.3d 1439, 1444 (10th Cir. 1995*)* ("The common fund doctrine 'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.'").

Courts regularly award attorneys' fees in securities class actions pursuant to the common fund doctrine, because "[f]ederal securities class actions require plaintiffs' counsel to expend substantial time and effort with no guarantee of success" and "[i]n light of these difficulties, 'public policy supports granting attorneys fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.'" *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014). Compensating plaintiffs' counsel for such actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

**B.    The Requested Attorneys' Fees Are Reasonable as a Percentage of the Common Fund**

As compensation for their efforts and achievements in this Action, Lead Counsel seeks a reasonable 20% of the common fund. As noted above, the Tenth Circuit routinely awards attorneys' fees pursuant to the common fund doctrine. *See, e.g.*, *Brown*, 838 F.2d at 454 (affirming the propriety of awarding attorneys' fees on a percentage basis in a common fund case); *Gottlieb*, 43 F.3d at 483 (10th Cir. 1994) (emphasis added) (citing *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849, 853 (10th Cir. 1993)); s*ee also Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-H(M), 2003 WL 21277124, at *12 (N.D. Okla. May 28, 2003) ("Attorneys must have incentive to take undesirable cases in order to assure access to the courts for all people; awarding fees based on a reasonable percentage of the recovered fund provides such an incentive"); *see also Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *2 (D. Colo. Mar. 9, 2000) ("the Tenth Circuit has expressed 'a preference for the percentage of the fund method'").[3]

---

[3] Other courts have noted that using the percentage method for determining a fee "is less subjective than the lodestar plus multiplier approach," and provides a better incentive to counsel where class counsel "was initially retained on a

5

And the text of the PSLRA also supports awarding attorneys' fees in securities cases using the percentage method, providing that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount . . . actually paid to the class." 15 U.S.C. § 78u-4(a)(6).

Here, the 20% fee requested by Lead Counsel is well within, and at the low end of, the range of percentage fees that are regularly awarded in securities class actions and other class actions in this Circuit—even in cases that do not involve the type of technical and complex issues present here. *See, e.g.*, *Brown*, 838 F.2d at 455 n.2 (recognizing that a typical percentage award in a common fund case can be 33% of the recovery or more); *In re Molycorp, Inc. Sec. Litig.*, No. 1:12-cv-00292-RM-KMT, slip op. at 1 (D. Colo. June 16, 2017), ECF No. 263 (awarding 30% of settlement amount) (Ex. 10); *Crocs*, 2014 WL 4670886, at *5 (awarding 30% of settlement fund); *Vaszlavik*, 2000 WL 1268824, at *2 ("[C]lass action fee awards are typically 30% of the fund created by the settlement."); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *Anderson v. Merit Energy Co.*, No. 07–cv–00916, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009) (same); s*ee also In re Myriad Genetics, Inc. Sec. Litig.*, No. 2:19-cv-00707, ECF No. 300 (D. Utah Dec. 15, 2023) (awarding 19% of $77.5 million settlement fund, representing .93% of plaintiffs' counsel's lodestar) (Ex. 11).

---

contingent fee basis." *Gottlieb*, 43 F.3d at 484; *see also In re N.M. Indirect Purchasers Microsoft Corp., Antitrust Litig.*, 149 P.3d 976, 993 (N.M. Ct. App. Nov. 15, 2006) ("The percentage method is preferred in some jurisdictions, including the Tenth Circuit, because this method rewards efficient and prompt resolutions of class actions.").

The requested fee is also lower than fee awards in securities class actions in other circuits. *See, e.g.*, *Klein v. Altria Grp., Inc.*, No. 3:20cv75, slip op. at 10 (E.D. Va. Mar. 31, 2022), ECF No. 320 (awarding 30% of $90 million settlement) (Ex. 12); *San Antonio Fire & Police Pension Fund v. Dole Food Co.*, No. 15-CV-1140, slip op. at 2 (D. Del. July 18, 2017), ECF No. 100 (awarding 25% of $74 million settlement) (Ex. 13); *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, No. 08–6324, 2012 WL 12903758, at *1 (D. Minn. Nov. 8, 2012) (awarding 25% of $85 million settlement); *Freudenberg v. E\*Trade Fin. Corp.*, No. 07 Civ. 8538, slip op. at 6 (S.D.N.Y. Oct. 22, 2012), ECF No. 154 (awarding 28% of $79 million settlement) (Ex. 14); *Billitteri v. Sec. Am., Inc.*, No. 3:09-cv-01568-F, 2011 WL 3585983, at *9 (N.D. Tex. Aug. 4, 2011) (awarding 25% of $80 million settlement); *In re Merrill Lynch & Co. Sec., Derivative & ERISA Litig.*, No. 07-cv-09633, slip op. at 6 (S.D.N.Y. Aug. 21, 2009), ECF No. 272 (awarding 25% of $75 million settlement) (Ex. 15).

### C.    The *Johnson* Factors Support the Fee Requested Here

When determining the appropriate percentage of attorneys' fees in common fund cases, the Tenth Circuit has adopted the factors set forth in the Fifth Circuit's decision in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See Gottlieb*, 43 F.3d at 483 ("the court must consider the twelve *Johnson* factors" to determine the reasonableness of a common fund fee award); *see also Brown*, 838 F.2d at 454–55*; Uselton*, 9 F.3d at 853. This requires consideration of the following:

> (1) The time and labor required. . . . (2) The novelty and difficulty of the questions. . . . (3) The skill requisite to perform the legal service properly. . . . (4) The preclusion of other employment. . . . (5) The customary fee. . . . (6) Whether the fee is fixed or contingent. . . . (7) Time limitations imposed by the client or the circumstances. . . . (8) The amount involved and the results obtained. . . . (9) The experience, reputation, and ability of the attorneys. . . . (10) The "undesirability"

of the case. . . . (11) The nature and length of the professional relationship with the client. [and] (12) Awards in similar cases.

*Johnson*, 488 F.2d at 717–19. That said, "rarely are all of the *Johnson* factors applicable" in a common fund case, *Brown*, 838 F.2d at 456; *see also Uselton*, 9 F.3d at 853, so the lower courts exercise their discretion in determining which *Johnson* factors are applicable under the circumstances of the case, *Brown*, 838 F.2d at 456. As set forth below, Lead Counsel's fee request is supported by the relevant *Johnson* factors, and should be approved.[4]

### 1.    The Time and Labor Required

While the Tenth Circuit has found this first *Johnson* factor to be of less importance in a common fund case, *Brown*, 838 F. 3d at 456, it nonetheless bears mentioning, as it weighs heavily in support of Plaintiffs' Counsel's fee request.

Lead Counsel's and Liaison Counsel's work in support of this Action are detailed extensively in the Gilden Declaration, *see* ¶¶ 14–44, and the Clyde Snow declaration, Ex. 5B. Further, in total, Plaintiffs' Counsel, including attorneys and other professional support, dedicated over 7,585.85 hours to this Action on a fully contingent basis——7,279.75 hours from Lead Counsel, Ex. 5A ¶ 7, and 306.10 hours from Liaison Counsel, Ex. 5B, with a total lodestar of $6,036,206.25—$5,896,838.75 from Lead Counsel, Ex. 5A ¶ 7, and $139,367.50 from Liaison Counsel. Based on this lodestar, Plaintiffs' Counsel's request for 20% of the Settlement Fund, or $4 million plus interest at the same rate as earned on the Settlement Fund, represents a "negative" multiplier of 0.66. This multiplier is significantly below the range of multipliers commonly

---

[4] Two of the factors—the customary fee (*Johnson* factor 5) and awards in similar cases (*Johnson* factor 12)—are often assessed in tandem (*see Crocs*, 2014 WL 4670886, at *3), and are addressed *supra* in § II.B. The rest of the *Johnson* factors are discussed herein, other than: preclusion of other employment (*Johnson* factor 4), time limitations imposed by the client or the circumstances (*Johnson* factor 7), and the nature and length of the professional relationship with the client (*Johnson* factor 11).

awarded in securities class actions and other comparable litigation. Indeed, in cases of this nature, fees representing multiples *above* the lodestar are regularly awarded to reflect the contingency fee risk and other relevant factors. *See., e.g.*, *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-1451-REB-CBS, 2006 WL 8429707, at *4 (D. Colo. Sept. 29, 2006) ("[L]ead counsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure, and in some cases reach as high as five to ten times the lodestar figure."); *Vaszlavik*, 2000 WL 1268824, at *3 (noting that "[c]ourts in common fund cases regularly award multipliers of two to three times the lodestar or more to compensate for risk and to reflect the quality of the work performed"). A "negative" multiplier is additional evidence that the requested fee is reasonable. *See In re Lithium Ion Batteries Antitrust Litig.*, 2019 WL 3856413, at *8 (N.D. Cal. Aug. 16, 2019) (finding requested fee "particularly appropriate where the lodestar cross-check results in a negative multiplier"); *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (negative multiplier was a "strong indication of the reasonableness of the [requested] fee").

### 2. The Novelty and Difficulty of Questions Raised by the Litigation

The next *Johnson* factor, the novelty and difficulty of the issues in the Action, is a significantly-weighted factor that weighs in favor of Plaintiffs' Counsel's fee request. As noted in the contemporaneously filed motion for final approval of the Settlement § III.A.3, securities class actions are inherently difficult. *See, e.g.*, *Crocs*, 2014 WL 4670886, at *3 ("[l]itigating an action under the PSLRA is not a simple undertaking"); *Qwest*, 2006 WL 8429707, at *1149 ("There are few simple class action cases involving securities law. This area of law may not be novel, but it generally is complex and difficult."); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y.

9

1999) ("'[C]lass action suits' in general 'have a well-deserved reputation as being most complex.'… [F]ederal courts, including this Court, 'have long recognized that [securities class actions are] notably difficult and notoriously uncertain.'") (internal citations omitted); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 263 (E.D. Va. 2009) ("The very nature of a securities fraud case demands a difficult level of proof to establish liability. Elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish."); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").

Beyond the standard risks and complexities of securities class actions, Lead Plaintiffs and Lead Counsel also faced substantial risks that, based on the specifics of this case, the Class would recover far less than the Settlement Amount, or even nothing. The subject matter of this case was technical and factually complex, creating potential hurdles to proving the elements of falsity and scienter required to prove a securities fraud claim. Notably, following the ruling on the motion to dismiss and subsequent appeal, Lead Plaintiffs' claims had been narrowed to a single alleged misstatement regarding Pluralsight's sales force. Lead Plaintiffs faced challenges in establishing that Pluralsight's statement was false or misleading and that the Individual Defendants knew that the statement was false or misleading, or were reckless in making it. Defendants have contended—and would have contended at summary judgment or trial—that their statement was neither false nor misleading and was supported by contemporaneous facts. Lead Plaintiffs also faced risks relating to loss causation and damages. Defendants would have contended at summary judgment and trial, supported by their economic expert's analysis, that Lead Plaintiffs could not establish a causal connection between the alleged misrepresentation about the size of Pluralsight's sales force and

10

the losses investors allegedly suffered, contending that investor losses were caused by a host of other "sales execution" challenges.

Additionally, Pluralsight has since been taken private, and news reports and records searches and other information obtained indicate that the Company's financial condition was uncertain such that any future recovery might be limited solely to available insurance proceeds. Combined, the risks that Plaintiffs' Counsel and Lead Plaintiffs would continue to invest financial resources yet receive nothing from this complex and risky litigation weighs in favor of the fee request.

### 3. The Skill Requisite to Perform the Legal Services Properly and the Experience, Reputation, and Ability of the Attorneys

Two related *Johnson* factors—the skill required to properly perform the legal services (*Johnson* factor 3) and the experience, reputation, and ability of counsel (*Johnson* factor 9)—are particularly important in securities class actions, and both support Plaintiffs' Counsel's requested fee award. *Qwest*, 2006 WL 8429707, at *4 ("Particularly in a case as complex as this [securities class action]. . . [t]his factor carries significant weight because the plaintiff class likely would not have obtained any relief without the assistance of counsel with a high level of skill and expertise."). As discussed in the Gilden Declaration, Lead Counsel is among the most experienced and skilled law firms in the field of securities litigation, with a long and successful track record representing investors in cases of this kind, and is consistently ranked among the top plaintiffs' firms in the country. Lead Counsel's experience and skill were apparent during the prosecution and litigation of this Action, including obtaining class certification and Lead Counsel's vigorous advocacy during discovery. ¶¶ 25–33. Lead Counsel's litigation of this Action also involved achieving reversal of the District Court's dismissal, in which the Tenth Circuit issued a strong opinion holding

11

Lead Plaintiffs sufficiently alleged scienter, including holding that the existence of a Rule 10b5-1 trading plan does "not *per se* rebut the inference of scienter where . . . a defendant was allegedly motivated to misrepresent or withhold material information to affect a stock price." *Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1266 (10th Cir. 2022); ¶ 23.

Courts also take into consideration the caliber of defendants' counsel's opposition. Defendants here were represented by attorneys from Wilson Sonsini Goodrich & Rosati—a large, highly experienced, and highly skilled international law firm that zealously represented its clients. In the face of this skillful and well-financed opposition, Lead Counsel were nonetheless able to develop a case that was sufficiently strong to persuade Defendants to settle the case on terms that will significantly benefit the Class. *See Qwest*, 2006 WL 8429707, at *4 (finding that defendants were also "represented by lawyers of similar expertise and experience"); *see also In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) (among factors supporting 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 LMM, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work"), *aff'd*, 272 F. App'x 9 (2d Cir. 2008).

### 4.   The Contingent Nature of the Fee

*Johnson* factor 6 instructs court to consider the contingent nature of the fee at issue. *See Vaszlavik*, 2000 WL 1268824, at *4; *see also Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) ("Class Counsel took the case on a contingent basis, which permits a higher recovery to compensate for the risk of recovering nothing for their work."); *Qwest*, 2006 WL

12

8429707, at *5 (a contingent fee "is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful").

Indeed, Lead Counsel prosecuted this matter on a wholly contingent basis, bearing all risks of litigating the Action through trial and appeals. From the start, Lead Counsel understood that the Action would involve complex, risky, and potentially lengthy litigation with potentially no monetary reward, and committed their time and financial resources to obtaining the best possible result for the Class. As detailed in the motion for final approval of the Settlement, securities class actions are particularly risky cases to take on a contingency basis. As noted, recent surveys show that more than half of securities class actions are dismissed or otherwise do not survive, including at the class certification stage, in response to expert challenges, or at summary judgment—all stages at which counsel have dedicated numerous hours and significant capital to litigation of their respective cases. *See In re Barclays Bank PLC Sec. Litig.*, No. 09-01989, 2017 WL 4082305 (S.D.N.Y. Sept. 13, 2017) (summary judgment granted after eight years of litigation); *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554–55 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010) (summary judgment granted after six years of litigation and millions of dollars spent by plaintiffs' counsel). And even if securities class action plaintiffs succeed at the class certification and summary judgment stages and proceed to trial, a risk of no or low recovery persists. *See, e.g.*, *In re BankAtlantic Bancorp, Inc.*, No. 07-61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (district court displaced the jury verdict in favor of securities class action plaintiffs, instead granting defendants' motion for judgment as a matter of law, and entered judgment in favor of defendants on all claims); *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming the district court's ruling, holding that there was insufficient evidence to support a finding of loss causation).

Across all of these cases, securities class action plaintiffs had strong arguments in their favor, and the parties litigated each case for years, yet investors (and their attorneys) ultimately recovered nothing. Given the riskiness of securities class actions and class actions in general, the risk that Lead Counsel would invest significant financial resources in this case and receive nothing due to the contingent nature of Plaintiffs' Counsel's fee weighs in favor of their fee request.

### 5.    The Amount Involved and the Results Obtained

In addition to the contingent nature of the fee, courts also consider the result achieved for the class (*Johnson* factor 8), which is often cited as the most important of the *Johnson* factors. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client").

As discussed, the $20 million cash Settlement is a significant and very good result for the Class. According to Lead Plaintiff's expert's analysis, $20 million represents between 3.0% and 3.4% of maximum possible recoverable damages of $593 to $658 million (assuming total success on every issue and at every remaining stage of the litigation), or 4.1% of Defendants' expert's calculation of $485 million in maximum possible damages —percentages well within the range of damages seen in other comparable cases. *See* Laarni T. Bulan & Laura E. Simmons, *Cornerstone Research: Securities Class Action Settlements: 2022 Review and Analysis* (2023), at 20 ("[T]he median [securities class action] settlement as a percentage of estimated damages in in 2022 was 3.6%"); *see, e.g., Farrar v. Workhorse Grp., Inc.*, No. 21-02072-CJC, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) ("Indeed, a 3% recovery is within the range of the percentages of recov-

14

ery approved in other securities class action settlements.") (collecting cases and authorities). Importantly, these damages estimates assume Lead Plaintiffs' complete success in establishing Defendants' liability on the remaining claims, and that the trier of fact would reject Defendants' falsity, scienter, loss causation, and damages arguments. In this regard, Defendants asserted that, even if Lead Plaintiffs were able to prove their claims, they would be required to disaggregate factors other than salesforce headcount, which would reduce damages to well below Defendants' $485 million estimate of maximum damages. In reaching this $20 million all-cash settlement, as detailed in the motion for final approval of the Settlement and Plan of Allocation and discussed *supra*, Lead Counsel overcame significant obstacles as to the underlying liability, as well as Pluralsight's ability to pay. Section III.3. Reaching this Settlement allows the Class to receive a real, tangible benefit without having to wait years for a possible Settlement, with no assurance of recovering as much or anything, particularly in light of the risks posed to both this Action and securities class actions generally. Indeed, even if Lead Plaintiffs were to obtain a favorable jury verdict that would survive the inevitable round of appeals, there could be insufficient Company assets or insurance policy proceeds to satisfy a substantial judgment—or fund a settlement of greater or even equal size to the proposed Settlement—years down the road. Pluralsight has since been taken private, and public information—including news reports and record searches—and other information obtained indicate that the Company's financial condition is uncertain such that any future recovery might be limited solely to any insurance proceeds available at that time. As such, this is an excellent result that supports the requested fee.

### D.    The Reaction of the Class to Date Supports the Requested Fee

The reaction of the Class to date also supports the requested fee. To date, the Claims Administrator has disseminated over 26,219 Notice Packets to potential Class Members advising

them that Lead Counsel would apply for attorneys' fees in an amount not to exceed 20% of the Settlement Fund and up to $350,000 in Litigation Expenses. *See* Declaration of Sarah Evans Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date, Ex. A, ¶ 5. While the time to object to the fee and expense request does not expire until January 14, 2025, to date, Lead Plaintiffs have received no objections to either the stated maximum attorneys' fees or Litigation Expenses. Lead Counsel will address any objections received after the filing of this Motion in their reply papers, due January 28, 2025.

### E.    Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Lead Counsel is also seeking reimbursement of Plaintiffs' Counsel's reasonably incurred and necessary Litigation Expenses. These expenses are properly recovered by counsel, *Vaszlavik*, 2000 WL 1268824, at *4 ("As with attorneys' fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred."). As set forth in Exs. 5A and 5B, Plaintiffs' Counsel incurred $276,166.46 in Litigation Expenses in their prosecution of the Action, consisting of $274,292.36 from Lead Counsel and $1,874.10 from Liaison Counsel. Reimbursement of these expenses from the Settlement Fund is fair and reasonable.

Lead Counsel seeks reimbursement for the types of expenses that are necessarily incurred in litigation and are routinely charged to clients billed by the hour. *See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cnty., Okl.*, 8 F.3d 722, 722–26 (10th Cir. 1993) (holding expenses reimbursable if such charges would normally be billed to client) (citing *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990)); *Kelley v. City of Albuquerque*, No. Civ. 03-507 JBACT, 2005

16

WL 3663515, at *17–18 (D.N.M. Oct. 24, 2005) (awarding reasonable expenses that would normally be billed to paying client.). These expenses include, among others, charges for experts, mediation, online legal and factual research, e-discovery/document management, copying, and travel.

A complete breakdown by category of the expenses incurred by Lead and Liaison Counsel is set forth in Exs. 5A and 5B. These expense items are billed separately by Plaintiffs' Counsel, so such charges are not duplicated in the respective firms' hourly billing rates. As set forth in Ex. 5, the largest expense is for experts, in the amount of $162,189.72, or approximately 59% of the total Litigation Expenses.

The Notice informed potential Class Members that Lead Counsel would apply for payment of Litigation Expenses in an amount not to exceed $350,000, which might include the reasonable costs and expenses of Lead Plaintiffs directly related to their representation of the Class. The total amount of expenses requested by Lead Counsel is $315,787.12, which includes payment of $276,166.46 for expenses incurred by Plaintiffs' Counsel and $39,620.66 in reimbursement of costs, expenses, and lost wages incurred by Lead Plaintiffs, an amount below the amount listed in the Notice. To date, there has been no objection to the request for reimbursement of Litigation Expenses.

**F.      Lead Plaintiffs Should Be Awarded Their Reasonable Costs and Expenses Pursuant to 15 U.S.C. § 78u-4(a)(4)**

In conjunction with its request for reimbursement of Litigation Expenses, Lead Counsel also seeks reimbursement of the costs and expenses incurred directly by the Court-appointed Lead Plaintiffs and Class Representatives INPRS and CTPF for which the PSLRA specifically provides: an "award of reasonable costs and expenses (including lost wages) directly relating to

17

the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, INPRS seeks reimbursement of $15,750.00 from lost wages that INPRS personnel incurred as a result of INPRS's role in this Action and representation of the Class. This is time that they otherwise would have expected to spend on other work for INPRS and, thus, represented a cost to INPRS.

Here, CTPF seeks reimbursement for $23,845.22 in lost wages that CTPF personnel incurred as a result of CTPF's role in this Action and representation of the Class. This is time that they otherwise would have expected to spend on other work for CTPF and, thus, represented a cost to CTPF. Additionally, CTPF seeks $25.44 in unreimbursed expenses incurred in connection with the Action.

Courts routinely approve such reasonable awards to "reimburse [a lead plaintiff] for the time it dedicated to the prosecution of the Action on behalf of the Settlement Class." *In re NU Skin Enters., Inc. Sec. Litig.*, No. 2:14-cv-00033-JNP-BCW, 2016 WL 6916486, at *1 (D. Utah Oct. 13, 2016). As one court explained, Lead Plaintiffs' efforts in, among other things, communicating with lead counsel, reviewing submissions to the court, and participating in settlement discussions were "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding $144,657 to the New Jersey Attorney General's Office and $70,000 to certain Ohio pension funds to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class. Here, Lead Plaintiffs did much more than this, including but not limited to: (a) regularly communicating with Lead Counsel Cohen Milstein by email, videoconference, telephone, and in-person

18

regarding the posture and progress of the case and case strategy; (b) reviewing all significant pleadings and briefs filed in the Action, including the briefs on appeal; (c) reviewing discovery requests and receiving regular updates concerning the progress of discovery, including Defendants' and third parties' document productions, depositions, and expert reports and analyses; (d) gathering and producing documents in response to Defendants' discovery requests and reviewing and providing comments on interrogatory responses; (e) preparing for and sitting for a deposition; (f) participating in, attending, and consulting with Cohen Milstein concerning two full-day mediation sessions, the latter of which ultimately led to the agreement-in-principle to settle the Action; and (g) evaluating and approving the proposed Settlement and Lead Counsel's request for attorneys' fees and reimbursement of Litigation Expenses. *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-3400, 2010 WL 4537550, at *31 (S.D.N.Y. Nov. 8, 2010) (approving award of $100,000 to Lead Plaintiff for time spent on the litigation); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007) (granting PSLRA awards where, as here, "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks and rates appear reasonable to the furtherance of the litigation"); *see also In re Myriad Genetics, Inc. Sec. Litig.*, No. 2:19-cv-00707, ECF No. 300 (D. Utah Dec. 15, 2023) (awarding the lead plaintiff $43,320.41 for its reasonable costs and expenses directly related to its representation of the class) (Ex. 11).

Under this precedent, Lead Plaintiffs' costs and expenses are reasonable and fully justified under the PSLRA based on their involvement in the Action, and their request should be granted.

## III.    CONCLUSION

For the reasons discussed above and in the Gilden Declaration, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 20% of the Settlement Fund; award

19

payment of $276,166.46 to Plaintiffs' Counsel for their reasonable Litigation Expenses incurred in prosecuting the Action—$274,292.36 for Lead Counsel and $1,874.10 for Liaison Counsel; and award $15,750.00 in reimbursement of the lost wages incurred by INPRS and $23,870.66 in reimbursement of the lost wages and costs and expenses incurred by CTPF directly relating to their respective representation of the Class. A proposed Order granting the requested relief will be filed with Lead Counsel's reply papers, to be filed on or before January 28, 2025.

Dated:  December 30, 2024

Respectfully submitted,

*/s/ Carol V. Gilden*
Carol V. Gilden (admitted *pro hac vice*)

COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

Steven J. Toll (admitted *pro hac vice*)
Jan E. Messerschmidt (admitted *pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL 1100 New York
Avenue N.W., Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

*Lead Counsel for Lead Plaintiffs and the Class*

Keith M. Woodwell (#7353)
CLYDE, SNOW & SESSIONS, P.C.
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 322-2516
Facsimile: (801) 521-6280
kmw@clydesnow.com

*Liaison Counsel for Lead Plaintiffs and the Class*

20

## CERTIFICATE OF SERVICE

I certify that on the 30th day of December, 2024, I caused to be served a true and correct copy of the foregoing **LEAD PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES**, with the Clerk of the Court using the CM/ECF system that will send an electronic notification to all counsel of record.

/s/ *Carol V. Gilden*___
Carol V. Gilden