Carol V. Gilden
COHEN MILSTEIN SELLERS & TOLL PLLC
200 S. Wacker Dr., Suite 2375
Chicago, Illinois 60606
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

Keith M. Woodwell (#7353)
CLYDE, SNOW & SESSIONS, P.C.
201 S. Main St., Suite 2200
Salt Lake City, Utah 84111
Telephone: (801) 322-2516
Facsimile: (801) 521-6280
kmw@clydesnow.com

*Additional Counsel on Signature Page*

*Attorneys for Lead Plaintiffs Indiana Public Retirement System and Public School Teachers' Pension and Retirement Fund of Chicago and the Class*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, *et al.*, | Civil No. 1:19-cv-00128 |
| Plaintiffs, | The Honorable Ted Stewart |
| v. | Magistrate Judge Daphne A. Oberg |
| PLURALSIGHT, INC., *et al.*, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY OF A CLASS DISTRIBUTION ORDER

Lead Plaintiffs the Indiana Public Retirement System ("INPRS") and the Public School Teachers' Pension and Retirement Fund of Chicago ("CTPF") (together, "Lead Plaintiffs") submit this memorandum in support of their unopposed Motion for Entry of a Class Distribution Order (the "Motion"). The proposed plan for distribution of the Net Settlement Fund is set forth in the accompanying Declaration of Sarah Evans Concerning the Results of the Claims Administration

Process ("Evans Decl."), submitted on behalf of the Court-approved Claims Administrator, Strategic Claims Services ("SCS"). Lead Plaintiffs have provided reasonable notice of the Motion to Defendants (together, with Lead Plaintiffs, the "Parties"), consistent with paragraph 30 of the Stipulation and Agreement of Settlement (Dkt. 271-1) (the "Stipulation"). [1]

## I.    OVERVIEW

On May 1, 2024, the Parties to this Action entered into the Stipulation and Lead Plaintiffs filed an unopposed Motion for Preliminary Approval of the Settlement, with supporting documentation. Dkt. Nos. 271, 271-1. On August 2, 2024, the Court entered the Preliminary Approval Order (Dkt. No. 274) preliminarily approving the Settlement and setting a hearing for final approval on January 23, 2025. As part of the Court's Order granting preliminary approval of the Settlement, the Court also approved the form and content of the Notice and Claim Form (together, the "Notice Packet") to be disseminated to potential Class Members. *Id*. Pursuant to the Court's order, SCS, the Court-appointed Claims Administrator, caused the Notice Packet to be mailed to potential Class Members. A total of 26,250 potential Class Members were either mailed a Notice Packet or emailed a direct link to the Notice Packet on the Settlement website. Evans Decl. at ¶ 4. To date, at least 25,635 potential Class Members have received Notice Packets, as adjusted for undeliverable Notice Packets. *Id*. Moreover, SCS established a dedicated website, www.pluralsightsecuritieslitigation.com, to assist potential Class Members. *Id*. at ¶ 6. The website was established on August 15, 2024, and has received 6,246 page views from 2,517 unique users. *Id*. The Settlement website enabled Class Members to obtain information about the Settlement, including the exclusion, objection and Claim-filing deadlines, and provided access to important documents relevant to the Settlement, including the Notice Packet. *Id*.

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and in the Evans Declaration.

Under the terms of the Settlement, a $20 million Settlement Fund was established for the settlement of the Released Claims asserted against Defendants. Pursuant to the Stipulation, Notice, and Claim Form, all Class Members wishing to participate in the Settlement were required to submit Claim Forms postmarked, or submitted online via the Settlement Website, on or before December 21, 2024. As detailed in the Evans Declaration, the Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient in any regard, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to the possible ways to cure the deficiency. Evans Decl. at ¶¶ 8-10.

As described more fully in the Evans Declaration, of the 9,442 properly documented valid Claims received by the Claims Administrator, three were received after the December 21, 2024 submission deadline. Evans Decl. at ¶ 9(a). It is our belief that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit Claim Forms, but while the Claims were still being processed. Accordingly, it is respectfully requested that this Court permit SCS to include late, but otherwise eligible, Claim Forms in the Distribution Plan.

Despite the request that the Court grant approval of distribution to late but otherwise eligible Claims that have been received, there must be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place. Acceptance of any Claim received after this date would necessarily require a delay in the distribution. Accordingly, it is also respectfully requested that this Court enter an Order directing that no Claim received after February 4, 2025, and any responses to deficiency and/or rejection notices received after August 4, 2025, be included in the initial distribution for any reason whatsoever. "[A]t some point in the distribution of a large class action settlement, such as this one,

3

'a cutoff date is essential and … the matter must be terminated.'" *In re Citigroup Inc. Sec. Litig.*, No. 09-MD-2070-SHS, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977)) (ellipses in original). Indeed, because of "*pro rata* distribution[], processing the [l]ate [c]laims would delay pay-out to the current authorized claimants, and 'much of the value of a settlement lies in the ability to make funds available promptly.'" *Id*. (citing *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396, 1406 (E.D.N.Y. 1985)). Accordingly, Lead Plaintiffs respectfully request that the Court impose a cut-off date of February 4, 2025.

## II.    DISSEMINATION OF THE NOTICE

SCS has sent 19,440 Notice Packets to potential Class Members. Evans Decl. at ¶ 4. Further, SCS was notified by nominees that they emailed a direct link to the Notice Packet on the Settlement website to 6,810 of their clients who were potential Class Members to notify them of the Settlement. *Id*. The Court-approved Notice program reached via mail or email at least 25,635 potential Class Members, as adjusted for undeliverable Notice Packets. *Id*. SCS also sent the Notice Packet to the Depository Trust Company, which published the Notice Packet on the Legal Notice System on August 20, 2024. *Id.* at ¶ 5. Additionally, SCS caused the Summary Notice to be published once in the *Wall Street Journal* and transmitted once over *PR Newswire* on September 9, 2024. *Id.* at ¶ 7.

## III.    THE CLAIMS REVIEW PROCESS AND DISPUTED CLAIMS

If a Claim Form was deficient or defective, SCS sent a deficiency notice, advising the Claimant to submit additional information to cure the Claim, or else SCS would recommend the Claim for rejection. SCS sent a total of 34 deficiency notices, and an example of the standard deficiency notice is attached as Exhibit C to the Evans Declaration. *Id*. at ¶ 9(b). SCS worked diligently with Claimants to resolve deficiencies where possible. *Id*.

Claimants who received deficiency notices were advised of their rights to challenge SCS's administrative determination by providing a statement indicating the grounds for their challenge, along with supporting documentation. *Id*. Of the 34 deficient Claims SCS identified, 12 have been successfully cured and are considered valid. *Id*. Each of the remaining 22 deficient Claimants either did not respond to the deficiency notice or responded with insufficient documentation, and were sent a rejection notice (described below) setting forth the reason for their rejection and the procedure to be followed to contest or seek reconsideration of the rejection. To date, none of these 22 rejected Claimants has objected to or contested this determination. *Id*.

In addition to Claimants that received a deficiency notice, SCS has identified 4,547 Claims which are recommended for rejection in their entirety. *Id*. at ¶ 9(c). Each Claimant with an ineligible Claim was sent a rejection notice which set forth the specific reason(s) for the rejection and the procedure to be followed to contest or seek reconsideration of the rejection. *See* Evans Decl. at ¶ 9(c) and Ex. E (list of ineligible Claims), Ex. F (sample rejection notice). SCS has communicated with these 4,547 Claimants and advised them of its determination. To date, no Claimant has objected to or contested the rejection of a Claim. Evans Decl. at ¶ 9(c).

## IV.    DISPOSITION OF CLAIMS

As detailed in the Evans Declaration, SCS has determined that 9,442 Claims are acceptable and should receive a distribution. This number includes 9,439 timely filed valid Claims and three late, but otherwise valid, Claims. *Id.* at ¶ 9(a). SCS ultimately recommends allowing these late but otherwise valid claims to be paid. *Id*.

For the 9,442 Claim Forms that SCS recommends be accepted, those claims represent Recognized Claims totaling $630,485,431.15.[2]

## V.    DISTRIBUTION OF NET SETTLEMENT FUND

Based on the substantial experience of Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Class Members who filed valid Claims will not be cashed promptly. SCS will make reasonable and diligent efforts to encourage Authorized Claimants to cash the checks they have received. *Id.* at ¶ 11(d). To further encourage Authorized Claimants to promptly cash their distributions and to avoid or reduce future expenses relating to unpaid distributions, all distribution checks will bear the notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." *Id.* at ¶ 11(c).

Moreover, as described *supra* in Section I, in order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement beyond the amount allocated to them. Accordingly, it is respectfully requested that the Court issue an order for distribution of the balance of the Net Settlement Fund allowing for these terms. The proposed Class Distribution Order filed herewith includes such terms at paragraph 8.

---

[2] As detailed in the Evans Declaration, timely filed valid Claims represent $630,431,342.67 in Recognized Claims. Late, but otherwise valid, Claims represent $54,088.48 in Recognized Claims. *Id.* at ¶ 9(a).

## VI.    DISPOSITION OF ANY UNCLAIMED/UNCASHED DISTRIBUTION CHECKS OR REMAINING FUNDS IN THE NET SETTLEMENT FUND

Appendix A of the Court-approved Notice of Pendency of Class Action and Proposed Settlement (Dkt. 274) ("Plan of Allocation") provides that if any funds remain in the Net Settlement Fund by reason of uncashed checks or otherwise, after the Claims Administrator has made reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution checks, then the Net Settlement Fund will be paid to Authorized Claimants from the Escrow Account in specified increments until, in the determination of the Claims Administrator, in consultation with Lead Counsel, it is no longer economically feasible to distribute the remaining funds, at which time any such remaining funds, after payment of any further Notice and Administration Costs and Taxes, shall be donated to a nonsectarian charitable organization(s) certified as tax-exempt under the United States Internal Revenue Code Section 501(c)(3), to be designated by Lead Counsel. The proposed Class Distribution Order filed herewith confirms the Plan of Allocation's provisions for such re-distribution of any residue of the Net Settlement Fund.

## VII.    CONCLUSION

For the reasons described above, Lead Plaintiffs respectfully request that their Motion for a Class Distribution Order be granted.

August 29, 2025

Respectfully submitted,

By:  */s/ Carol V. Gilden*
COHEN MILSTEIN SELLERS & TOLL PLLC
Carol V. Gilden (admitted *pro hac vice*)
200 S. Wacker Dr., Suite 2375
Chicago, IL 60606
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

Steven J. Toll (admitted *pro hac vice*)
Jan E. Messerschmidt (admitted *pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. N.W., Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

CLYDE SNOW & SESSIONS, P.C.
Keith M. Woodwell
201 S. Main St., Suite 2200
Salt Lake City, Utah 84111
Telephone: (801) 322-2516
Facsimile: (801) 521-6280
kmw@clydesnow.com

*Counsel for Lead Plaintiffs Indiana Public Retirement System and Public School Teachers' Pension and Retirement Fund of Chicago and the Class*