**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION**

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PLURALSIGHT, INC., *et al.*,<br><br>Defendants. | Case No. 1:19-cv-00128<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Daphne A. Oberg |

**DECLARATION OF SARAH EVANS CONCERNING THE RESULTS OF THE
CLAIMS ADMINISTRATION PROCESS**

I, Sarah Evans, declare as follows:

1.     I submit this declaration in order to provide the Court and the parties involved in the above-captioned litigation with information regarding the results of the claims administration process in this matter. I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein.

2.     I am a Project Manager at Strategic Claims Services ("SCS"), a nationally recognized class action administration firm. I have over eight years of experience specializing in the administration of class action cases. SCS was established in April 1999 and has administered over five hundred and fifty (550) class action cases since its inception.

3.     Pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice, dated August 2, 2024 (ECF No. 274, the "Preliminary Approval Order"), SCS was retained by Lead Counsel as Claims Administrator to supervise and administer the notice

1

procedures as well as the processing of claims in connection with the Settlement of the above-captioned Action.[1]

### UPDATE ON MAILING OF THE NOTICE PACKET

4.      As noted in the Declaration of Sarah Evans Concerning: (A) Mailing of the Notice Packet; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, dated December 27, 2024 (ECF No. 287-4, the "Initial Mailing Declaration") and the Supplemental Declaration of Sarah Evans Concerning: (A) Mailing of the Notice Packet and (B) Report on Requests for Exclusion and Objections (Dkt. No. 289-1, the "Supplemental Mailing Declaration") (collectively, the "Mailing Declarations"), SCS mailed or emailed 2,305 letters about the Settlement to Nominee Account Holders and Institutional Groups contained on SCS's master mailing list. The Mailing Declarations stated that 19,440 Notice Packets had been mailed to potential Class Members or nominees, and SCS was also notified by nominees that they emailed a direct link to the Notice Packet on the Settlement website to 6,810 of their clients who were potential Class Members to notify them of the Settlement. Since the Mailing Declarations were filed, no additional Notice Packets have been mailed, and no additional links to the electronic Notice Packet have been sent via email by SCS or nominees. A total of 26,250 potential Class Members were either mailed a Notice Packet or emailed a direct link to the Notice Packet on the Settlement website. As stated in the Initial Mailing Declaration (*see* ¶ 9) and the Supplemental Mailing Declaration (*see* ¶¶ 5 and 6), the Court-approved Notice program reached via mail or email at least 25,635 potential Class Members, as adjusted for undeliverable Notice Packets.

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated May 1, 2024 (ECF No. 271-1, the "Stipulation") or the Mailing Declarations.

5.      SCS also sent the Depository Trust Company ("DTC") a Notice Packet for the DTC to publish on the Legal Notice System ("LENS") on August 20, 2024, as stated in the Initial Mailing Declaration, *see* ¶ 3.

6.      The Mailing Declarations noted that the dedicated website for the Settlement, www.pluralsightsecuritieslitigation.com, was established on August 15, 2024. The website for the Settlement contains a home page; an important documents page; a page for online claims filing; a nominees page; and a contact us page. To date, the Settlement website has received 6,426 page views, and from 2,517 unique users. SCS will continue to maintain and update the Settlement Website throughout the distribution process.

7.      As reported in the Initial Mailing Declaration (*see* ¶ 10), the Summary Notice was published once in the *Wall Street Journal* and transmitted once over *PR Newswire* on September 9, 2024.

**CLAIMS PROCESSING AND SCS'S DETERMINATIONS**

8.      There have been 14,011 Claim Forms (hereafter referred to as "claims") submitted in connection with this Settlement.[2] SCS has carefully reviewed, analyzed, and processed all of these claims and has responded to all claimant inquiries regarding the action, the Settlement and the procedures for filling out the Claim Forms. SCS has also been in close contact with Lead Counsel to review the administration process. SCS's Report of Claims Administrator is attached hereto as **Exhibit A** and described below.

9.      The attached Report of Claims Administrator sets forth the final status of claims submitted to SCS as follows:

---

[2] SCS has not processed any new claims filed after February 4, 2025, or any additional information received or submitted after June 26, 2025, due to their extreme untimeliness and because their inclusion would have delayed the finalization of the administration.

a.      PROPERLY DOCUMENTED CLAIMS:    SCS  has  identified  9,442 properly documented valid claims. These valid claims represent Recognized Claims totaling $630,485,431.15. Out of the 9,442 properly documented, valid claims, 9,439 were submitted timely, and three were submitted after the December 21, 2024 deadline to file claims for the Settlement but on or before February 4, 2025. These valid claims were calculated in the manner set forth in the Court-approved Plan of Allocation of the Net Settlement Fund, included in the Notice. The 9,439 timely, properly documented claims represent $630,431,342.67 in Recognized Claims, and the three late, properly documented claims represent $54,088.48 in Recognized Claims. Attached as **Exhibit B-1** is a spreadsheet of the 9,439 properly documented and timely submitted claims and **Exhibit B-2** is a spreadsheet of the three late, properly documented claims.

b.      INADEQUATELY DOCUMENTED CLAIMS: SCS initially identified 34 inadequately documented claims. SCS sent deficiency notices to each of these claimants, advising them of the nature of their deficiency and providing them an opportunity to cure. A sample deficiency notice is attached hereto as **Exhibit C**. Among these 34 deficient claims, 12 have been successfully cured and are considered valid. The remaining 22 claimants whose claims were inadequate either did not respond to the deficiency notice or responded with insufficient documentation and were sent a rejection notice setting forth the reason for their rejection. To date, none of the 22 deficient claimants has objected to or contested this determination. *See* **Exhibit D** for a list of the inadequate, rejected claimants.

c.      INELIGIBLE CLAIMS: In addition to the 22 claims discussed above in paragraph b, SCS has identified 4,547 claims which it recommends for rejection in their entirety. Included in this category are: (i) claims filed for shares purchased outside of the

4

Class Period; (ii) claims with no Recognized Claims; (iii) claims filed for shares that were received or transferred into an account, but not purchased; (iv) claims with shares that were sold short; (v) duplicate claims filed; (vi) claims which were withdrawn by the filing entity; and (vii) a fraudulent claim filed. *See* **Exhibit E** for a list of these ineligible claims. We have communicated with these 4,547 claimants and advised them of our determination. A sample ineligibility notice is attached hereto as **Exhibit F**. To date, none of these ineligible claimants has contested SCS's determination.

10.     In anticipation of completing this administration, SCS respectfully requests that the Court reject as untimely any claims received after February 4, 2025, and any responses to deficiency and/or rejection notices received after August 4, 2025, deadlines which SCS requests in order to finalize the administration process. The claims filing deadline required that claims be postmarked, if mailed, or submitted online no later than December 21, 2024; however, SCS processed late claims received through February 4, 2025 to allow claims received through the rescheduled Settlement Hearing date to be processed. Deficiency and rejection notices gave claimants twenty (20) days to respond. If no response or inadequate documentation was provided after that timeframe, deficient claimants were given another twenty (20) days to respond. The last date to respond to the deficiency and rejection notices was August 4, 2025.

11.     Should the Court concur with SCS's administrative determinations concerning the claims recommended for acceptance and rejection, SCS recommends the following distribution plan:

    a.     Per the Plan of Allocation, each Authorized Claimant shall receive its *pro rata* share of the Net Settlement Fund, consisting of the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of the 9,439 Authorized Claimants and the

three late but otherwise valid claims, if those three late claims are deemed valid by the Court, multiplied by the total amount in the Net Settlement Fund. The balance of the Net Settlement Fund (less amounts to be withheld for potential tax liabilities and related fees and expenses) shall be distributed to Authorized Claimants.

b.      The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment is $10.00 or greater. If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

c.      In order to encourage Authorized Claimants to cash their distribution checks promptly, and to avoid or reduce future expenses relating to unpaid distribution checks, all checks will bear the notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." Likewise, all other checks issued in connection with subsequent distributions shall bear the same notation.

d.      After the initial distribution of the Net Settlement Fund, the Claims Administrator will make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks.  To the extent any monies remain in the Net Settlement Fund after the initial distribution, if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so, the Claims Administrator, no less than seven (7) months after the initial distribution, will conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution. Additional re-distributions to Authorized Claimants who have cashed their prior checks

may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determines that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such redistributions, would be cost-effective.  At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be selected by Lead Counsel.

e.      Authorized Claimants who do not cash their distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement unless good cause is shown. The funds allocated to all such stale-dated checks will be available for re-distribution to other Authorized Claimants in subsequent distributions, if such distributions are determined to be economically feasible.

f.      SCS respectfully requests the Court order that: All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Class Members and other Claimants, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund, Lead Plaintiffs, Plaintiffs' Counsel, the Claims Administrator and its agents/employees, the Escrow Agent, or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the

terms of the distribution order, provided that such released persons acted in accordance with the Stipulation, the Final Judgment, and the Class Distribution Order.

g.      SCS respectfully requests the Court order that: (i) no less than one (1) year after the final distribution of the Net Settlement Fund, SCS may destroy the paper copies of the Claim Forms and all supporting documentation; and (ii) no less than three (3) years after the final distribution of the Net Settlement Fund, SCS may destroy the electronic copies of the Claim Forms and all supporting documentation. This is the customary document retention period SCS uses to prevent additional costs to the Class in storage expenses and related fees.

I declare under penalty of perjury that the foregoing is true and correct. Signed this 28th day of August 2025, in Media, Pennsylvania.

_____
Sarah Evans